

Lawrence S. Lustberg

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731
llustberg@gibbonslaw.com

October 17, 2023

**VIA ECF**

Honorable Sidney H. Stein
United Stated District Judge
Southern District of New York
500 Pearl Street, Courtroom 23A
New York, New York 10007

      **Re:**    *United States of America v. Menendez, et al.*,
           **Dkt. No. 23-cr-490-SHS**

Dear Judge Stein:

      This firm represents defendant Wael Hana in the above-captioned matter. As the Court is aware, Mr. Hana is scheduled to be arraigned on the superseding indictment in this case tomorrow, October 18, 2023. We write to respectfully request a modification to Mr. Hana's conditions of pretrial release to remove the GPS electronic monitoring in light of certain changed circumstances and the specific facts of Mr. Hana's voluntary return following indictment. We have consulted with the Government and have been advised that it will not consent to any change in Mr. Hana's conditions of release that would remove electronic GPS monitoring at this time.

      Pursuant to 18 U.S.C. § 3142(c)(1)(B), the Court is required, as Your Honor knows, to release a defendant pending trial under "the least restrictive . . . condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(c)(1)(B). Under subsection (c)(3) of that same statute, this Court "may at any time amend the order to impose additional or different conditions of release." Mr. Hana was initially arraigned and released on September 26, 2023, subject to certain conditions that were negotiated with and ultimately agreed upon with the Government. Those conditions provided that Mr. Hana execute a $5 million bond, secured by collateral in the form of cash and a pledge of property, all to be provided on an agreed-upon schedule which he, alone among the defendants, met in a timely fashion. He was also required to surrender all travel documents (which he has done) and was subject to travel restrictions, a curfew and electronic GPS monitoring. *See* ECF Nos. 15, 59. As noted, Mr. Hana timely complied with those conditions and provided confirmation to the Government of both his pledge of property (which was adjusted to assure that it would provide most effective security) and two wire transfers, each totaling $150,000. He has also worn the GPS monitoring ankle device, been fully compliant with the terms of his curfew and other conditions of his release, and has, of course, appeared in Court as required, which he will again do tomorrow.

GIBBONS P.C.

October 17, 2023
Page 2

The GPS monitor, however, is and has been extremely uncomfortable and even painful for Mr. Hana over the past three weeks since it was applied, including that it makes is very difficult for him to sleep at night, as he has to do in order to effectively assist in his own defense. That device does not meet the statutory requirement that it be "the least restrictive" condition or combination of conditions to "reasonably assure [his] appearance" at trial, 18 U.S.C. § 3142(c)(1)(B), and should be removed. There are three closely related reasons for this. *First*, the circumstances of Mr. Hana's return to the United States following his indictment make clear, beyond doubt, that he is not a flight risk. Indeed, those circumstances show just the opposite. Specifically, counsel was advised that a grand jury had returned an indictment against Mr. Hana and received an unsealed copy on the morning of September 21, 2023. The Government also advised that it had a warrant for Mr. Hana's arrest. At that time, Mr. Hana was physically located in Egypt, which does not have an extradition treaty covering the conduct in this case. *See* Bilateral Extradition Treaty, US-Egypt, art. II, Apr. 22, 1875 (covering murder, rape, arson, piracy, mutiny on board a ship, burglary, robbery, forgery, fabrication or circulation of counterfeit money, embezzlement of public moneys by public officers or depositors, and embezzlement by an employer). Nonetheless, Mr. Hana promptly informed the Government, through counsel, that he would return to the United States to confront the charges and clear his name. Within hours of learning about the Indictment, Mr. Hana booked a one-way ticket to the United States and provided the confirmation and flight number for that flight to the Government. And upon learning that despite his voluntary return, he would be arrested at the airport upon his arrival, he nevertheless boarded the plane and returned to the United States to defend himself in this case.

*Second*, although at the time of his return, Mr. Hana had been temporarily residing in Egypt with his wife and very young daughters, it has always been his desire and intention to return to the United States, where he maintains a residence and has his business's main office. Specifically, Mr. Hana returned to Egypt last year when his wife started experiencing complications from her pregnancy with twins. Even before that time, Mr. Hana's wife had, with his assistance, applied for her visa to join him in the United States, but her interview, necessary for her to obtain that visa, had been held up for more than a year. Thus, Mr. Hana had been residing with his wife, 2½ year old daughter, and new baby twin daughters, who are now eight (8) months old, when the indictment was returned. He took the extraordinary, and heartbreaking, step of leaving his family—three very young daughters and wife—behind because he is not a criminal and wants to clear his name. If Mr. Hana was truly a flight risk, quite simply, he would not be here. And it is here in the United States, to which Mr. Hana emigrated 17 years ago and applied for and was granted citizenship, that he wants to stay. Electronic monitoring is not necessary to assure that, having come here, he will remain here, and the inconvenience and pain of that monitoring system, including its cost (which he bears), is simply not required to assure his appearance, as the law demands.

*Third*, and relatedly, there is a change of circumstances since the time of his initial release, even beyond the fact that he, among all defendants timely fulfilled the conditions of his release by timely posting the property required (though he is also the only one subject to electronic monitoring). Specifically, several days ago, Mr. Hana received confirmation that his wife's

G<small>IBBONS</small> P.C.

interview at the U.S. Consulate in Cairo has finally been scheduled for next month.  Accordingly, he is very hopeful that his family will soon be able to join him here at his home in New Jersey, an eventuality that will further assure that he remains here (regardless of any property that he continues to own abroad, to which he cannot travel without permission of the Court).  Certainly, should any concern about his risk of flight remain following his voluntary return from Egypt after he learned of the charges against him, that his family will join him here in the very near future obviates any risk that he will leave the country.  He already surrendered his passport at the time of his initial arraignment, and upon locating an additional travel identification card in his apartment this week (well after the defense had already begun to receive discovery in this case), he promptly provided it to counsel, who communicated with the Office of Pretrial Services to coordinate its surrender tomorrow.  These are not the acts of a man who intends to flee from justice, nor could he without any travel documents.  We respectfully submit that the Government's concerns that Mr. Hana's presence in these proceedings cannot be assured without GPS monitoring are unfounded and that Mr. Hana's conditions of release should be modified to remove the condition that he be subject to electronic monitoring.

We thank the Court for its time and kind consideration of this matter.

Respectfully,

s/ Lawrence S. Lustberg

Lawrence S. Lustberg

cc: All counsel of record (via ECF)