**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

    -against-

ROBERT MENENDEZ et al.,

        Defendants.

Case No. S2 23-cr-490 (SHS)

**UNDER SEAL**

---

### SENATOR ROBERT MENENDEZ'S MEMORANDUM OF LAW
### IN SUPPORT OF HIS MOTION TO SUPPRESS SEARCH WARRANT RETURNS

**PAUL HASTINGS LLP**

Adam Fee
Avi Weitzman
Robert D. Luskin
200 Park Avenue
New York, N.Y. 10166
(212) 318-6000


**JONES DAY**

Yaakov M. Roth (*pro hac vice*)
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939


*Attorneys for Defendant Robert Menendez*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

SPECIFIC RELIEF SOUGHT ............................................................................ 5

I.  THE COURT SHOULD ORDER A FRANKS HEARING IN LIGHT OF THE
    GOVERNMENT'S MATERIAL MISREPRESENTATIONS AND OMISSIONS IN THE
    AFFIDAVITS SUPPORTING (A) THE FIRST ESI WARRANT, (B) THE FIRST HOME
    WARRANT, AND (C) THE SECOND HOME WARRANT ................................................ 6

    A.  Applicable Legal Standard ................................................................... 6

    B.  Three Separate Search Warrants Were Riddled with Misrepresentations and Omissions . 8

        1.  Misrepresentations and Omissions in the First ESI Warrant ........................ 8

        2.  Misrepresentations and Omissions in the First Home Warrant ..................... 14

        3.  Misrepresentations and Omissions in the Second Home Warrant .................... 16

    C.  The Misrepresentations And Omissions In Agent Corkery's Affidavits Were Material and
        Necessitate A *Franks* Hearing ............................................................ 19

        1.  Material Misrepresentations Regarding the CS's Statements and Credibility Misled
            Magistrate Judges into Granting the First Email and First Home Warrants ............... 20

        2.  The FBI Agent's Failure to Disclose Substantial Exculpatory Evidence Was Material,
            and Misled the Magistrate into Granting  the Second Home Warrant ...................... 21

II. THE ESI WARRANTS SHOULD BE SUPPRESSED AS UNCONSTITUTIONAL
    "GENERAL WARRANTS" ............................................................................. 24

    A.  Applicable Legal Standard ................................................................. 24

    B.  Specifics of ESI Warrants Challenged Here ............................................... 25

    C.  The Lack of Particularity and Overbreadth of the ESI Warrants Require Suppression ... 27

CONCLUSION ................................................................................................ 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Davis v. United States,*
564 U.S. 229 (2011)..................................................................................25

*Franks v. Delaware,*
438 U.S. 154 (1978)....................................................................................6

*Groh v. Ramirez,*
540 U.S. 551 (2004)..................................................................................32

*Illinois v. Gates,*
462 U.S. 213 (1983)....................................................................................6

*Riley v. California,*
573 U.S. 373 (2014)............................................................................14, 28

*Rivera v. United States,*
728 F. Supp. 250 (S.D.N.Y. 1990)...............................................................7

*Rivera v. United States,*
928 F.2d 592 (2d Cir. 1991)........................................................................7

*Stansbury v. Wertman,*
721 F.3d 84 (2d Cir. 2013)...................................................................22, 23

*United States v. Abboud,*
438 F.3d 554 (6th Cir. 2006) .....................................................................30

*United States v. Abrams,*
615 F.2d 541 (1st Cir. 1980).......................................................................31

*United States v. Awadallah,*
349 F.3d 42 (2d Cir. 2003)...........................................................................7

*United States v. Canfield,*
212 F.3d 713 (2d Cir. 2000)..........................................................................7

*United States v. Castellanos,*
820 F. Supp. 80 (S.D.N.Y. 1993).................................................................6

*United States v. Falso,*
544 F.3d 110 (2d Cir. 2008)........................................................................24

*United States v. Galpin*,
    720 F.3d 436 (2d Cir. 2013)................................................................ *passim*

*United States v. George*,
    975 F.2d 72 (2d Cir. 1992).........................................................................28

*United States v. Hester*,
    No. S1 16-cr-324 (NSR), 2020 WL 3483702 (S.D.N.Y. June 26, 2020) .................8

*United States v. Kow*,
    58 F.3d 423 (9th Cir. 1995) .......................................................................31

*United States v. Lahey*,
    967 F. Supp. 2d 698 (S.D.N.Y. 2013)...........................................................24

*United States v. Nejad*,
    436 F. Supp. 3d 707 (S.D.N.Y. 2020).........................................................4, 7

*United States v. Perez*,
    247 F. Supp. 2d 459 (S.D.N.Y. 2003)............................................................7

*United States v. Rajaratnam*,
    719 F.3d 139 (2d Cir. 2013)..............................................................7, 8, 20

*United States v. Reilly*,
    76 F.3d 1271 (2d Cir. 1996)......................................................8, 12, 13, 22

*United States v. Simmons*,
    771 F. Supp. 2d 908 (N.D. Ill. 2011) ......................................................8, 20

*United States v. Voustianiouk*,
    685 F.3d 206 (2d Cir. 2012)..................................................................4, 25

*United States v. Watson*,
    404 F.3d 163 (2d Cir. 2005).......................................................................6

*United States v. Wey*,
    256 F. Supp. 3d 355 (S.D.N.Y. 2017)...........................................25, 28, 29, 30

*United States v. Zemlyansky*,
    945 F. Supp. 2d 438 (S.D.N.Y. 2013)...........................................27, 28, 30, 32

*Washington v. Napolitano*,
    29 F.4th 93 (2d Cir. 2022) .....................................................................22, 23

*Werner v. Werner*,
    267 F.3d 288 (3d Cir. 2001)......................................................................19

**Other Authorities**

Fed. R. Crim. P. 12 ...................................................................................................................4

U.S. Const. Amend. IV ................................................................................................ *passim*

## INTRODUCTION

The government's apparent zeal to "get back" at Senator Menendez for defeating its prior prosecution has overwhelmed its sound judgment. As set forth in prior motions, the government crafted an Indictment that trespasses on the Constitution's protections of federal legislators, among other defects. The focus of the instant motion is the government's repeated violations of the Senator's Fourth Amendment right to be free from unreasonable searches and seizures. Specifically, several of the government's search warrants were riddled with material misrepresentations and omissions that deceived the authorizing magistrate judge and now require an evidentiary *Franks* hearing. Other search warrants were overbroad and unparticularized "general warrants" that permitted the government to rummage through the Senator's personal life going back years before the conduct at issue. The government's overreach now requires judicial intervention.

The government left no stone unturned in this years-long investigation into Senator Menendez. Even before the government searched the Senator's home, it obtained more than 20 search warrants relating to alleged co-conspirators in this investigation, including several omnibus warrants authorizing the search and review of email, cellphone and other electronic data of the targets of the government's searches. Those earlier search warrants and supporting affidavits totaled approximately 5,000 pages—an unprecedented commitment of resources to this investigation, in defense counsel's collective experience in many hundreds of criminal investigations over the past several decades. Nevertheless, none of the "evidence" obtained from these search warrants of alleged co-conspirators remotely tied Senator Menendez to knowing involvement in any alleged bribery scheme. Rather than abandon its already expansive investigation of the Senator, the government dug in its heels and obtained judicial permission to search Senator Menendez's electronic devices, electronic accounts, and home, in 5 separate

search warrants between January 2022 and September 2023. Those search warrants were incredibly invasive and resulted in a comprehensive search of the Senator's digital devices, including his cellphone, multiple email accounts, and his iCloud account—essentially allowing the government to reverse engineer a complete record of the Senator's life and location, dating back years—as well as an overbroad and intrusive search of his private home.

The problem, however, is that to obtain several of these search warrants, the government actively *distorted* the evidence and *withheld* key exculpatory information, misleading well-meaning Magistrate Judges into granting warrants that should never have issued.

For example, with respect to a January 2022 warrant to search the Senator's email and iCloud accounts, the only connective tissue the government identifies in the supporting application purportedly linking Senator Menendez to a bribery scheme is a brief description of an audio recorded conversation between a confidential source ("CS") and "Associate-1," ███████ ████████████████ As summarized by the government to the Magistrate Judge, the FBI agent swore that Associate-1 told the CS that ███████████████████████████████ ████████████████████████████████████████████████████ ████████████ This was false. A review of the transcript of that conversation proves just the opposite: far from inculpating Senator Menendez, in the recording, ███████████████ ████████████████████████████████████████████████████ With nothing tying Senator Menendez to the knowing receipt of a bribe, there simply was no basis for the Magistrate Judge to authorize the invasive search. Nor was this a one-time inadvertent error; rather, substantially the same erroneous description is incorporated into each of the five search warrant applications relating to Senator Menendez.

As another example, in the June 16 search warrant application of the Senator's home, the government intentionally or recklessly omitted disclosure of substantial exculpatory evidence the FBI received from witnesses that very same day.  Among others, ██████████████

████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████ Again, given the closeness in time between these exculpatory statements and the FBI agent's swearing out of the June 16 affidavit (in the evening), the failure to disclose these exculpatory statements can only be described as intentional or reckless.  And as explained in greater detail at 14 - 22, *infra*, there are many more omissions of critical exculpatory evidence in multiple search warrant affidavits that calls into serious question the candor and forthrightness of the search warrant affidavits.

In circumstances such as these, where a defendant "make[s] a substantial ***preliminary*** showing that (i) there were intentional misrepresentations or omissions in [a] warrant affidavit . . . and (ii) those misrepresentations or omissions were material, or 'necessary to the issuing judge's probable cause finding,'" the Court must convene an evidentiary hearing to take evidence from the affiant (and others) to determine whether to suppress unlawfully obtained

---

[1] Citations to Ex. __ are to the Exhibits to the Declaration of Avi Weitzman dated January 22, 2024 and submitted herewith.

evidence.  *See United States v. Nejad*, 436 F. Supp. 3d 707, 718-719 (S.D.N.Y. 2020) (quoting *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013)) (emphasis added).

The problems with the government's search warrant applications are not limited to misrepresentations and omissions.  Two of the warrants were facially overbroad and authorized unconstitutional "general warrants."  *See United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013).  More specifically, warrants to search both the Senator's cellphone and his email address and iCloud account permitted the FBI to undertake an "exploratory rummaging" through the Senator's phone records, emails, text messages, and personal digital belongings without adequate limitations as to the scope of the search, and without even ***any limitation as to date***.  This is precisely what the Fourth Amendment prohibits. *Galpin*, 720 F.3d at 445 (2d Cir. 2013).  On this basis alone, the Court must suppress the referenced search warrants, separate and apart from any material misrepresentations and omissions.

To be absolutely clear, Senator Menendez does not believe that anything uncovered in these illegal searches comes remotely close to implicating his knowing involvement in the charged bribery schemes.  Still, "[t]he Fourth Amendment's requirements regarding search warrants are not 'formalities.'"  *United States v. Voustianiouk*, 685 F.3d 206, 210 (2d Cir. 2012) (quoting *McDonald v. United States*, 335 U.S. 451, 455 (1948)).  They are to be enforced to the letter, and where sufficient violations are shown, evidence derived from those violations must be suppressed, in order to protect of the accused, deter future misconduct and "compel respect for the constitutional guaranty."  *Voustianiouk*, 685 F.3d at 217 (quoting *Elkins v. United States*, 364 U.S. 206, 217 (1960)).  As such, Senator Menendez respectfully submits this Motion, pursuant to Federal Rule of Criminal Procedure 12 and the Fourth Amendment to the United States

Constitution, to suppress evidence obtained following execution of five different search

warrants.

## SPECIFIC RELIEF SOUGHT

The warrants that Senator Menendez challenges here are as follows:

1.      22-Mag-748 (S.D.N.Y.): A January 24, 2022 warrant authorizing the search of an email account (███████████) and associated iCloud account belonging to Senator Menendez  (the "**First ESI Warrant**") (Ex. A);

2.      Mag. 22-10273 (D.N.J.):  A June 15, 2022 warrant authorizing a search of Senator Menendez's home (█████████████████████████) and the seizure of certain electronics and "movable things of value," among other items (the "**First Home Warrant**") (Ex. C);

3.      Mag. 22-10284 (D.N.J.): A June 16, 2022 warrant authorizing a *second* search of Senator Menendez's home and seizure of certain documents (the "**Second Home Warrant**") (Ex. E));

4.      22-Mag-5801 (S.D.N.Y.):  A July 14, 2022 warrant authorizing the seizure, search and review of a *second* email account (█████████████)[2] and associated iCloud account belonging to Senator Menendez (the "**Second ESI Warrant**") (Ex. G); and

5.      23-Mag-6481 (S.D.N.Y.): A September 20, 2023 "omnibus" warrant authorizing, among many other things, the search and review of electronically stored information kept on a cellphone belonging to Senator Menendez █████████ (the "**Cellphone Warrant**") (Ex. H) (and together with the Second ESI Warrant, the "**ESI Warrants**").

Further, Senator Menendez requests:

1.      An evidentiary hearing pursuant to the Supreme Court's decision in *Franks v. Delaware* in which the Court may assess the misstatements and omissions in the government's warrant applications and order any appropriate relief; and

2.      An Order suppressing all evidence extracted from email accounts, cloud accounts, and cellphones belonging to Senator Menendez pursuant to the ESI Warrants, because all three are unconstitutional "general warrants" lacking required particularity in the scope of ESI to be searched;

Senator Menendez has standing to challenge all of the above warrants because he has a

legitimate expectation of privacy both in his home and in the information stored on his personal

---

[2] Not to be confused with ███████████████, the account searched in the First ESI Warrant.

cellphone, emails accounts and iCloud account. *See* ███████████████████████

███████████ *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) (A defendant may

challenge an illegal search when he establishes "a legitimate expectation of privacy" in the place

searched).

I.     **THE COURT SHOULD ORDER A FRANKS HEARING IN LIGHT OF THE GOVERNMENT'S MATERIAL MISREPRESENTATIONS AND OMISSIONS IN THE AFFIDAVITS SUPPORTING (A) THE FIRST ESI WARRANT, (B) THE FIRST HOME WARRANT, AND (C) THE SECOND HOME WARRANT**

     A.     **Applicable Legal Standard**

"When the Fourth Amendment demands a factual showing sufficient to comprise

'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks v.*

*Delaware*, 438 U.S. 154, 164-65 (1978) (quoting *United States v. Halsey*, 257 F. Supp. 1002,

1005 (S.D.N.Y. 1966)) (emphasis in original). What is known by a court reviewing a warrant

application is limited to the information and circumstances set forth in the affidavit before it, and

therefore, the veracity of the affiant is paramount. *See Illinois v. Gates*, 462 U.S. 213, 238

(1983); *Franks*, 438 U.S. at 164 ("The bulwark of Fourth Amendment protection, of course, is

the Warrant Clause . . . which surely takes the affiant's good faith as its premise"). The Fourth

Amendment protection would be "reduced to a nullity if a police officer was able to use

deliberately falsified allegations to demonstrate probable cause, and, having misled the

magistrate, then was able to remain confident that the ploy was worthwhile." *United States v.*

*Castellanos*, 820 F. Supp. 80, 84 (S.D.N.Y. 1993) (Sotomayor, J.) (quoting *Franks*, 438 U.S. at

168). As such, evidence seized pursuant to a warrant based on materially false and misleading

information provided by the affiant is subject to the exclusionary rule and must be suppressed.

Franks, 438 U.S. at 155-56; *id.* at 164 ("Because it is the magistrate who must determine

independently whether there is probable cause, it would be an unthinkable imposition upon his

authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment.") (citations omitted).

"To obtain a *Franks* hearing on a motion to suppress on the basis of alleged misstatements or omissions in a warrant affidavit, a defendant must make a substantial ***preliminary*** showing that (i) there were intentional misrepresentations or omissions in the warrant affidavit, or, in other words 'the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth'; and (ii) those misrepresentations or omissions were material, or 'necessary to the issuing judge's probable cause finding.'" *Nejad*, 436 F. Supp. 3d at 718-719 (quoting *Rajaratnam*, 719 F.3d at 146) (emphasis added); *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000); *see also United States v. Awadallah*, 349 F.3d 42, 64-65 (2d Cir. 2003) (holding that in evaluating materiality court should determine whether "putting aside erroneous information . . ., there remains a residue of independent and lawful information sufficient to support probable cause"); *Rajaratnam*, 719 F.3d at 146-47; *Rivera v. United States*, 728 F. Supp. 250, 258 (S.D.N.Y. 1990) ("Reckless disregard for the truth means failure to heed or to pay attention to facts as [the affiant] knew them to be" (internal quotation marks omitted)), *aff'd in relevant part*, 928 F.2d 592 (2d Cir. 1991). "[T]he reviewing court must be presented with credible and probative evidence that [a misstatement or] omission of information in a [warrant] application was designed to mislead or was made in reckless disregard of whether [it] would mislead." *Rajaratnam,* 719 F.3d at 154 (internal quotation marks omitted).

"Intentional or reckless omissions of material information, like false statements, may [also] serve as the basis for a *Franks* challenge." *Rivera v. United States,* 928 F.2d 592, 604 (2d Cir. 1991); *United States v. Perez,* 247 F. Supp. 2d 459, 474 (S.D.N.Y. 2003) (holding that an

omission is made with reckless disregard when "any reasonable person would have known that this was the kind of thing the judge would wish to know") (internal quotations omitted). This is particularly critical when an affiant leaves out exculpatory information because "[t]he good faith exception to the exclusionary rule does not protect searches by officers who fail to provide *all potentially adverse information* to the issuing judge[.]" *United States v. Reilly,* 76 F.3d 1271, 1280 (2d Cir. 1996) (emphasis added); *see also United States v. Simmons,* 771 F. Supp. 2d 908, 918 (N.D. Ill. 2011) (inferring recklessness where the "cumulative effect" of each challenged omission was exculpatory); *cf. Rajaratnam,* 719 F.3d at 155-56 (finding that recklessness should not be inferred where omissions are *not* exculpatory). Thus, "while an affiant need not provide 'every fact that arguably cuts against the existence of probable cause,' he or she must not 'omit circumstances that are critical to its evaluation.'" *United States v. Hester,* No. S1 16-cr-324 (NSR), 2020 WL 3483702, at *19 (S.D.N.Y. June 26, 2020) (citations omitted).

**B.** **Three Separate Search Warrants Were Riddled with Misrepresentations and Omissions**

**1.** **Misrepresentations and Omissions in the First ESI Warrant**

On or about January 24, 2022, the government submitted an application for a warrant to search an email and iCloud account belonging to Senator Menendez to Magistrate Judge Ona T. Wang of the Southern District of New York. In support of the warrant application, the FBI submitted an affidavit by Special Agent Mary Jo Corkery (the "**First Corkery Affidavit**"). Ex B. In purporting to establish probable cause to search the Senator's emails, the First Corkery Affidavit avers that ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Ex. B

at SDNY_R_00004206-07.  This conversation, which occurred in Arabic, was audio recorded, translated, transcribed, and produced by the government. *See* Ex J.

Notably, however, Agent Corkery materially mischaracterized the statements that Associate-1 made to the CS.  Far from reflecting a conversation in which Associate-1 informed the CS of a bribery scheme involving Wael Hana and Senator Menendez, the transcript *actually* reflects that



Although the translation is somewhat choppy, this conversation is notable for three reasons. █████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

Second, this conversation confirms that the Senator was not serving as a bribed agent of Egypt, as the government alleged. ███████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████

Third, the conversation makes clear that Senator Menendez was not aware of any bribes or alleged improper payments to Nadine. ██████████████████████████████

████████████████████████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Each of these three points is *inconsistent* with any bribery conspiracy between Senator Menendez and Defendant Hana or others.  Yet Agent Corkery disclosed not a word of any of this in her affidavit. That is the opposite of the "frank" assessment an agent is required to provide the authorizing judge. *Reilly*, 76 F.3d at 1273.

The FBI Agent made even more material omissions in her affidavit.  The First Corkery Affidavit failed to disclose that as of June of 2019 (*years before* the search of Menendez's email account, and close in time to the above conversation between Associate-1 and the CS), the FBI was aware that [REDACTED] [REDACTED] This is a hugely significant admission, because it casts substantial doubt on the likelihood that Hana and the Senator are involved a bribery scheme and *corroborates* the suggestion that Hana was puffing to others (like Associate-1) and swindling the Senator and others.

Moreover, the government recently turned over additional material that exposes how badly it misled the authorizing court (and now this Court and the public) in accusing the Senator of conspiring with Wael Hana, and in accusing Hana of being an Egyptian agent.  [REDACTED] [REDACTED]

[REDACTED]

Despite these critical admissions from the CS, the First Corkery Affidavit is laden with innuendo suggesting that Senator Menendez—via his relationship with Hana—was engaged in some type of improper relationship with the Egyptian government. ████████████████

████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████ These assertions are

substantially undermined—if not wholly discredited—by the government's recent disclosures

mentioned directly above.

*All* of this exculpatory evidence should have been presented to the magistrate judge so

she could evaluate the government's claim of probable cause before authorizing a wide ranging

search through the a sitting Senator's email and iCloud account. *See Riley v. California*, 573

U.S. 373, 394-95 (2014) (noting that "[t]he sum of an individual's private life can be

reconstructed" through data stored on a typical modern cellphone or cloud account).

Unfortunately, none of it was.

Laboring under a materially inaccurate description of the conversation between

Associate-1 and the CS, and deprived of Associate-1's critical admission about the relationship

between Menendez and Hana and credibility, Magistrate Judge Wang issued the First ESI

Warrant.

## 2. Misrepresentations and Omissions in the First Home Warrant

About six month later, on June 15, 2022, the government returned to Court, this time

approaching Magistrate Judge Michael Hammer of the District of New Jersey to seek a warrant

to search Senator Menendez's home (among many other places). One might expect that,

following the collection of Senator Menendez's emails, this warrant application would be replete

with *new* allegations of probable cause derived from that email search. Not so. Instead, in

another affidavit signed by Special Agent Corkery (the "**Second Corkery Affidavit**"), the

government largely restated the same theories and evidence asserted in the First Corkery

Affidavit, *including* ███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

     This bears emphasis: in the six months between obtaining the First ESI Warrant, presumably finding nothing, and then seeking the First Home Warrant, the government *neither* added any new allegations of criminal wrongdoing *nor* corrected its mischaracterizations and omissions.  Laboring under these government created misimpressions, Magistrate Judge Hammer issued the First Home Warrant, authorizing FBI agents to enter Senator Menendez's private home and rummage throughout the house to locate and seize virtually anything of value, including ██████████████████████████████████████████████████

████████████████████████████████████████████

     When FBI agents executed the First Home Warrant on the morning of June 16, 2022, they—to put it bluntly—ransacked Senator Menendez's home.  Agents broke down doors (even, in some cases, where the doors were unlocked) and tore apart closets, wardrobes, dressers and

other storage locations in the home, flipped over documents and rifled through file folders. ████████████████████████████████ The FBI seized all manner of things, including the cash and gold bars that the government has made the centerpiece of its case.

### 3. Misrepresentations and Omissions in the Second Home Warrant

Later in the evening of June 16, 2022 (the same day that the FBI conducted the first search of Senator Menendez's home), the FBI applied for a *second* warrant to conduct yet another search of the Senator's private home. This Second Home Warrant was again submitted to Magistrate Judge Hammer and supported by an affidavit from Special Agent Corkery (the "**Third Corkery Affidavit**"), which attached the Second Corkery Affidavit (with all its failings), and added further assertions of probable cause. *See* Ex. F (Third Corkery Affidavit).

The Third Corkery Affidavit is noteworthy for two reasons. *First*, unlike the earlier affidavits, which sought permission to seize a long and generic list of potential evidence, the Third Corkery Affidavit is highly targeted. ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*Second*, the Third Corkery Affidavit misleadingly omitted *even more* exculpatory information that the FBI learned before applying for the Second Home Warrant. In particular, we now know from the government's *Brady* disclosures that, on June 16, 2022, FBI agents fanned out to interview a number of witnesses and alleged co-conspirators, likely before the

---

[3] Agent Corkery specifically noted in her affidavit ████████████████████████

submission of the Second Home Warrant on the evening of June 16. But during those interviews, multiple witnesses made highly exculpatory statements regarding Senator Menendez that Agent Corkery never disclosed in the Third Corkery Affidavit, including the following:



The government's misrepresentations and omissions did not end with these concerning the ███████████ that allegedly gave rise to probable cause. Rather, the Third Corkery Affidavit contains even more mischaracterizations regarding evidence relied on in the affidavit:

---

[4] Although the government omitted this fact from its *Brady* disclosure letter, the underlying FBI Form 302 describing the interview of ███████████████████████████



The government's mischaracterization of its descriptions of Senator Menendez's *lawful* conduct further underscores their desperation in seeking to establish probable cause.



**C.** **The Misrepresentations And Omissions In Agent Corkery's Affidavits Were Material and Necessitate A *Franks* Hearing**

There can be no reasonable dispute that Senator Menendez has satisfied his burden to

make a *preliminary* showing that (i) the omissions and misstatements in all three Corkery

Affidavits were either deliberate falsehoods or made with reckless disregard for the truth; and (ii)

that these were material to the Magistrate's determination to issue both Home Warrants. *See*

---

[5] In later submitted affidavits (e.g., the September 2023 Cellphone Warrant), the government disclosed various pieces of exculpatory evidence, but did so in the least conspicuous way imaginable. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Cf. Werner v. Werner*, 267 F.3d 288, 297 (3d Cir. 2001) (under the "buried facts" doctrine, a disclosure is deemed inadequate if it is presented in a way that conceals or obscures the information sought to be disclosed. The doctrine applies when the fact in question is hidden in a voluminous document or is disclosed in a piecemeal fashion which prevents [the reader] from realizing the "correlation and overall import of the various facts interspersed throughout" the document) (quoting *Kas v. Financial General Bankshares, Inc.*, 796 F.2d 508, 516 (D.C. Cir. 1986).

*supra* at 7.  Importantly, these two prongs are linked—where an omission is materially exculpatory, the Court can *infer* that the omission was made intentionally or recklessly.  *United States v. Simmons,* 771 F. Supp. 2d 908, 918 (N.D. Ill. 2011) (inferring recklessness where the "cumulative effect" of each challenged omission was exculpatory); *cf. Rajaratnam,* 719 F.3d at 155-56 (finding that recklessness should not be inferred where omissions are *not* exculpatory).

Here, each of the categories of omissions and/or mischaracterizations in the three Corkery Affidavits referenced above evinces a strong inference of recklessness, based both on the materiality of such mischaracterizations and omissions and on their ready, contemporaneous availability to the agent making the affidavit.

1.  **Material Misrepresentations Regarding the CS's Statements and Credibility Misled Magistrate Judges into Granting the First Email and First Home Warrants**

The mischaracterization of this key conversation is highly material because the *only* link between Senator Menendez and any criminal conduct in the First and Second Corkery Affidavits (*i.e.*, the affidavits associated with the First Email Warrant and First Home Warrant) is *this* conversation between Associate-1 and the CS.  As described above, the other acts mentioned in the Corkery Affidavits ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████ are all legitimate constituent services.  ████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

As discussed above, the FBI agent misled the authorizing judge regarding this conversation.  ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ All of this flies in the face of the government's theory and basis for the assertion of probable cause in the First Corkery Affidavit. Accordingly, if the conversation between Associate-1 and the CS were properly reported, there would have been *no basis at all* for probable cause to search the Senator's email and iCloud account, as well as the Senator's home.

There is no dispute that the transcript of this conversation was available to the government at the relevant time, such that it could have been presented accurately to the Magistrate Judge. Agent Corkery *must* have had the transcript of the conversation between the CS and Associate-1 in preparing her affidavits—she purported to summarize it. Yet, by mischaracterizing what Associate-1 actually said, Agent Corkery abandoned her duty of candor and created a false impression of criminality. This was, at minimum, a reckless disregard for the truth.

The same holds true for the multiple CS reports between 2020 and 2022 reflecting ██████ ████████████████████████████████████████ If the agent had disclosed this information accurately, it would have entirely undercut the assertion that ██████ ████████████████████████████████████████████ It defies reason to believe that this information—eviscerating over and over again the very "foreign agent" theory at the core of this prosecution—somehow escaped Agent Corkery's attention. The far more reasonable conclusion is that she elected, unlawfully, to conceal its existence from the Magistrate Judge.

> 2. **The FBI Agent's Failure to Disclose Substantial Exculpatory Evidence Was Material, and Misled the Magistrate into Granting the Second Home Warrant**

As for the exculpatory witness statements that were not disclosed to the authorizing judge, those too are material.  Again contrary to the government's representations, multiple witnesses made clear that the bribery scheme *never happened*: ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████ All this was devastating to the government's theory of probable cause, and that is plainly why the government omitted it from the affidavit supporting the Second Home Warrant.  Specifically, these statements provide corroboration that the "bribery scheme" underlying the finding of probable cause supporting the Second Home Warrant did not occur, either because the alleged beneficiary of the scheme ██████ never asked for (nor received) the alleged benefit, or because the "bribe" ████████ was never given, or both.

Critically, it is immaterial whether the government *believed* that ████████████ or others were truthful in their statements to FBI agents.  In submitting a warrant affidavit, "an officer may not disregard plainly exculpatory evidence," *Washington v. Napolitano*, 29 F.4th 93, 107 (2d Cir. 2022), and must be "frank with the magistrate in proceedings to obtain [a] warrant[,]" especially because such proceedings are *ex parte*. *Reilly*, 76 F.3d at 1273.  While the government is of course free to argue that the magistrate should discredit apparently exculpatory evidence, the government is *not* permitted to short-circuit the magistrate's review by omitting exculpatory evidence entirely.  *See Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013) ("review for probable cause should encompass 'plainly exculpatory evidence' alongside inculpatory evidence to ensure the court has a full sense of the evidence"); *see also Washington*,

29 F.4th at 108 (quoting *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) ("a police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence"). Here, by omitting exculpatory witness statements from the Third Corkery Affidavit, the government abandoned its obligations to be "frank" with Magistrate Judge Hammer and to provide him with a "full sense of the evidence." *Wertman*, 721 F.3d at 93.

And the government has admitted that the exculpatory statements of ███████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ The other exculpatory statements were also taken on June 16, although the government has not disclosed the time of day of those witness interviews. The government's choice to omit this volume of plainly available exculpatory evidence can only be explained by an intentional or reckless disregard for submitting a complete and accurate affidavit.

***

Were Special Agent Corkery's affidavits to be rewritten to include the exculpatory information that was omitted or mischaracterized, it is hard to conceive of any reasonable Magistrate Judge finding probable cause to conclude that Senator Menendez was involved in criminal activity. As described in detail above, a truthful "rewrite" of the Corkery affidavits would need to reveal that, among other things: ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

██████████████ These admissions would completely eviscerate the government's theory of wrongdoing—eliminating any inculpatory inferences that could be drawn from the conversation between Associate-1 and the CS and further undermining those inferences with contemporaneous exculpatory statements. Such circumstances do not support a finding of probable cause. *See United States v. Falso*, 544 F.3d 110, 124 (2d Cir. 2008) (finding search warrant unsupported by probable cause when affidavit contained only speculative statement that defendant "may" have engaged in certain criminal conduct and generalized conclusions about the habits of other individuals likely to engage in the charged offense, but affirming denial of suppression under good faith exception); *United States v. Lahey*, 967 F. Supp. 2d 698, 727 (S.D.N.Y. 2013) (granting suppression where warrant was not supported by probable cause because it was "premised on very thin evidence connecting [defendant] (let alone [the place to be searched]), to the [alleged criminal conduct]").

## II.   THE ESI WARRANTS SHOULD BE SUPPRESSED AS UNCONSTITUTIONAL "GENERAL WARRANTS"

### A.   Applicable Legal Standard

To prevent law enforcement from engaging in "'general, exploratory rummaging in a person's belongings' and the attendant privacy violations . . . the Fourth Amendment provides that 'a warrant may not be issued unless probable cause is properly established and *the scope of the authorized search is set out with particularity*.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) and *Kentucky v. King*, 5634 U.S. 452, 459 (2011)) (emphasis added). Such requirements "are not formalities" but rather "ensure[] that [an authorized] search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to

prohibit." *Voustianiouk*, 685 F.3d at 210-11 (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)).

"Failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are *no more than absolutely necessary*.'" *Galpin*, 720 F.3d at 446 (emphasis added; quoting *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992)). As specifically relevant here, "a warrant is overbroad if its 'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'" *United States v. Wey*, 256 F. Supp. 3d 355, 382 (S.D.N.Y. 2017) (quoting *United States v. Lustyik*, 57 F. Supp. 3d 213, 228 (S.D.N.Y. 2014)).

Where a warrant is overbroad or lacking sufficient particularization, suppression of the illegally gathered evidence is required "'to compel respect for the constitutional guaranty'" in the Fourth Amendment or to otherwise "deter police misconduct." *Voustianiouk*, 685 F.3d at 217 (quoting *Davis v. United States*, 564 U.S. 229, 236 (2011)). Put another way, suppression is appropriate where "the deterrence benefits of suppression" outweigh its costs. *Davis*, 564 U.S. at 237.

### B. Specifics of ESI Warrants Challenged Here

On June 16, 2022, in addition to the search of Senator Menendez's home, the government obtained permission to conduct an expansive review of a wide swath of data stored on Senator Menendez's cellphone and in his email and iCloud storage accounts. More specifically, both the Second ESI Warrant and the Cellphone Warrant obtained by the government allowed the FBI to collect and rummage through an extraordinary scope of the Senator's communications, documents, and entire life—from his emails and text messages to his photos and location

history—with almost no subject matter limitations, and with respect to the Cellphone Warrant, no date limits either.

In particular, and among many other categories of information, the Second ESI Warrant allowed the government to collect and review communications and other documents of over 21 identified individuals "and/or others" "concerning interactions with 18 identified individuals and "Menendez or others acting on Menendez's behalf":



Ex. G at SDNY_R_00005891.

The Cellphone Warrant is even broader, allowing review of communications with eight more individuals in a seeming ever-growing attempt to find *something* to justify the continued investigation, again with barely any subject matter limitation. Specifically, the Cellphone Warrant permits review of:



That is, the ESI Warrants authorized the government to search and seize all manner of communications and documents with no relation whatsoever to any suspected offense, including private marital communications between the Senator and his spouse, communications reflecting (uncharged) financial, business and personal dealings of Menendez and his family and friends, and many other categories of materials.

The lack of limitation was even more egregious with the Cellphone Warrant, which contained no date limitation on the scope of materials to be seized and reviewed. Rather, the Cellphone Warrant permitted the government to seize records dating as far back as they exist, despite the government's already incredible allegation of a conspiracy spanning the five years between 2018-2023. Indictment ¶ 1. While the Cellphone Warrant does state in formulaic terms that the government can only search for evidence of certain enumerated offenses, the actual *categories* of data authorized for the seizure (*i.e.*, the categories listed directly above) lack any limitation restricting that seizure to evidence of any particular offense(s).

### C. The Lack of Particularity and Overbreadth of the ESI Warrants Require Suppression

The Constitution requires that a search warrant "permit[] invasion of a suspect's privacy and property . . . no more than absolutely necessary." *Galpin*, 720 F.3d at 445 (quoting *George*, 975 F.2d at 76). The ESI Warrants clearly fail that requirement. The huge topical over-breadth of materials to be seized, and the failure to tie categories of seized materials to particular offenses, are classic overbreadth that violates the particularization requirement. *See United States v. Zemlyansky*, 945 F. Supp. 2d 438, 459 (S.D.N.Y. 2013) (where a warrant "fails to coherently guide discretion in the search of electronics" by failing to link charged offenses to

categories of material to be seized "it violates the Fourth Amendment"); *see also George*, 975 F.2d at 76 ("A failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary").

The ESI Warrants authorized seizure of a broader scope of documents than "can be justified by the probable cause upon which the warrant is based," in three key respects. *See Wey*, 256 F. Supp. 3d at 382 (quoting Lustyik, 57 F. Supp. 3d at 228).

*First*, the ESI Warrants are laden with "unduly broad, ambiguous, or catch-all categories" of materials to be seized which, it is well established, lack required particularity. *Zemlyansky*, 945 F. Supp. 2d at 472 (citing *United States v. Buck*, 813 F.2d 588, 591 (2d Cir. 1987)). Indeed, the ESI Warrants by their plain terms authorized the government to collect *all* communications between Senator Menendez and his wife (no matter how personal and private, nor how banal or divorced from any indicia of wrongdoing) in addition to all communications between Menendez and many others (again, without regard to subject matter or privacy interests).

This failure of particularity in the ESI Warrants is especially significant given that the warrants concerned electronically stored materials. As the Supreme Court recognized in *Riley v. California*, 573 U.S. 373 (2014), searches of modern cellular phones implicate privacy concerns far beyond those associated with a traditional search of a person or his home: "Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any

form—unless the phone is." *Id.* at 396–97 (emphasis in original). This analysis applies as well to information kept in an email inbox or stored on the "cloud."

Echoing the Supreme Court's concern in *Riley*, the Second Circuit has held (in the equivalent context of the search of a computer hard drive):

> [T]he potential for privacy violations occasioned by an unbridled, exploratory search . . . is enormous. This threat is compounded by the nature of digital storage. Where a warrant authorizes the search of a residence, the physical dimensions of the evidence sought will naturally impose limitations on where an officer may pry: an officer could not properly look for a stolen flat-screen television by rummaging through the suspect's medicine cabinet, nor search for false tax documents by viewing the suspect's home video collection. Such limitations are largely absent in the digital realm, where the size or other outwardly visible characteristics of a file may disclose nothing about its content.

*Galpin*, 720 F.3d at 447. Accordingly, "heightened sensitivity to the particularity requirement in the context of digital searches" is necessary. *Wey*, 256 F. Supp. 3d at 383 (quoting *Galpin*, 720 F.3d at 447).

The ESI Warrants captured vast sums of information that similarly necessitates heightened sensitivity to the particularity requirement. The Second ESI Warrant, for example, authorized review of Senator Menendez's iCloud account. An iCloud account often contains, among many other things, calendar entries dating back years; personal photos and videos; text message histories with every person ever messaged through a particular account; records of the applications stored and used on a phone; GPS and "pin drop" records; internet browsing history; and a multitude of other data. *See* Ex. X available at https://support.apple.com/en-us/108770 ("What does iCloud back up?"). It is hard to imagine an aspect of a person's life in the modern era that is *not* captured through data stored in an iCloud account.[6] If the Fourth Amendment's

---

[6] In fact, the index of discovery produced by the government identifies approximately 18,000 pages of material extracted from Senator Menendez's cellphone pursuant to the Cellphone

restrictions on exploratory "general warrants" are to have any teeth at all, they must clearly bar the type of search apparently permitted under the ESI Warrants.

The Cellphone Warrant was no less expansive in its search. Indeed, it is often the case that iPhones like the Senator's are linked to an iCloud account, and thus much of the information on the iCloud—photos, text messages, and the like—would be similarly stored on and could be seized from the Senator's iPhone. *See, e.g.,* Ex. Y, available at https://support.apple.com/en-us/HT204184 (providing instructions on how to restore the data on an iPhone from an iCloud account backup). Indeed, using the iCloud, a new iPhone can restore the data from prior iPhones going back years. *See, e.g.,* Ex. Z, available at https://support.apple.com/en-us/108344 ("Use iCloud to transfer data from your previous iOS or iPadOS device to your new iPhone, iPad, or iPod touch.").

*Second*, the Cellphone Warrant was even broader than the Second ESI Warrant because the Cellphone Warrant lacked any date limitation as to the materials to be seized.[7] Courts have held that the absence of a date restriction for a digital search can, on its own, render a search warrant unconstitutionally overbroad, requiring suppression. *See e.g., Wey*, 256 F. Supp. 3d at 388 ("'absence of [a time] limit reinforces the Court's conclusion' that the Warrants are insufficiently particularized"); *Zemlyansky*, 945 F. Supp. 2d at 459 ("[a] warrant's failure to include a time limitation, where such limiting information is available and the warrant is otherwise wide-ranging, may render it insufficiently particular"); *see also United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) ("Failure to limit broad descriptive terms by relevant

---

Warrant, and *160,000 pages* of material extracted from Senator Menendez's email and iCloud accounts pursuant to the Second ESI Warrant.

[7] The Second ESI Warrant, by contrast, limited collection of documents and ESI to those dated "████████████████████████████" ████████

dates, when such dates are available to the police, will render a warrant overbroad") (quoting *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (invalidating a warrant as unconstitutional where "the government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place"); *United States v. Abrams*, 615 F.2d 541, 543 (1st Cir. 1980) (invalidating a warrant as unconstitutional where "there is no limitation as to time").

In this case, failure to include a date limitation was not merely a ministerial or theoretical concern; review of the government's search warrant returns reveals that the FBI seized as part of the Cellphone Warrant documents that precede the start of the alleged conspiracies (*i.e.*, documents that predate 2018). These include text messages, voicemail recordings, and photographs, all from before any criminal wrongdoing is even *alleged*. *See, e.g.*, Ex. AA. Collecting and reviewing documents from a personal cellphone that predate any alleged wrongdoing is precisely the sort of "exploratory rummaging" through a person's effects that the Fourth Amendment is meant to prohibit. *Galpin*, 720 F.3d at 445.

*Third*, the ESI Warrants failed to limit the scope of the officers' search to evidence of specified crimes. This is not to say that the ESI Warrants entirely omitted a list of crimes to be investigated—the Cellphone Warrant does state that ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ Ex. H at SDNY_R03_00000317. But swiftly thereafter, the ESI Warrants authorize seizure of *all* ███████████████ ████████████████████████████████████████████████████ ██████████ without *any* attempt to restrict that collection to communications actually tending to evidence a crime. *Id.* The government should have, at a minimum, been required to seize only

those communications between these individuals that fall within categories conceivably related to evidence of a crime.[8]

"Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh v. Ramirez,* 540 U.S. 551, 563 (2004). The collective effect of the particularity failures detailed above simply doom the constitutionality of the ESI Warrants, even where well-meaning officers attempt to comply in good faith.

In *Voustianiouk*, for example, the Second Circuit noted that it did not "doubt that the officers involved in th[e] case were well-meaning," but nevertheless suppressed evidence gathered pursuant to an overbroad warrant and held that "simply because [the officers] were trying to do the right thing does not mean that they reasonably concluded that the warrant in their possession authorized the search they conducted." 685 F.3d at 216–17. Similarly, in *Zemlyansky*, Judge Oetken found that "[w]hile all evidence suggests that the searching officers meant well, that question is not presently at issue" and suppressed evidence because "[t]he officers violated clearly established Fourth Amendment law in two respects, by executing a warrant that lacked both particularly and overbreadth . . . even though they are presumed to be familiar with the governing law." 945 F. Supp. 2d at 475-76. That case (*Zemlyansky*) is especially analogous – the warrant challenged there allowed "extremely broad electronic searches, and are, by the logic of the warrant, not narrowed by any references to the crimes committed." *Zemlyansky*, 945 F. Supp. 2d at 455.

---

[8] Notably, other warrants obtained by the government in this very case do *not* suffer from this problem. The *First* ESI Warrant (not challenged as overbroad), for example, limited collection to communications ██████████████████████████████████████████████████████
██████████████████████

32

This Court should do the same. No reasonable officer could have concluded that the ESI Warrants, which authorized near-limitless searches of the Senator's communications with much of his social network *and* lacked any date limitation (for the Cellphone Warrant)– satisfies the Constitution's particularity requirement. As a consequence, and whether or not the officers intended to do so, the officers violated clearly established law. The FBI ran roughshod over the Senator's Fourth Amendment rights, and all evidence collected from those searches must therefore be suppressed.

## CONCLUSION

For the foregoing reasons, Senator Menendez respectfully requests that the Court suppress the fruits of each of the five search warrants involving the Senator, or preliminarily, hold a *Franks* hearing, and grant such other relief as the Court deems just and proper.

Dated: January 22, 2024

Respectfully submitted,

By: */s/  Adam Fee*
     Adam Fee
     PAUL HASTINGS LLP
     1999 Avenue of the Stars
     Los Angeles, CA 90067
     Telephone: 1(310) 620-5719
     Facsimile: 1(310) 620-5819

Yaakov M. Roth (*pro hac vice*)
JONES DAY
51 Louisiana Avenue N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

     Avi Weitzman
     PAUL HASTINGS LLP
     200 Park Avenue
     New York, NY 10166
     Telephone: 1(212) 318-6000
     Facsimile: 1(212) 725-3620

     Robert D. Luskin
     PAUL HASTINGS LLP
     2050 M Street NW
     Washington, D.C. 20036
     Telephone: 1(202) 551-1966
     Facsimile: 1(202) 551-0466

*Attorneys for Defendant Robert Menendez*