# **Exhibit A**

[to be filed under seal]



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 28, 2023

**BY EMAIL**

Robert Luskin, Esq. (robertluskin@paulhastings.com)
Avi Weitzman, Esq. (aviweitzman@paulhastings.com)
Adam Fee, Esq. (adamfee@paulhastings.com)

    Re:    *United States v. Robert Menendez,*
            S1 23 Cr. 490 (SHS)

Dear Counsel:

       The Government writes to disclose certain information regarding certain potential witnesses in the above-captioned matter, to reiterate its request for reciprocal discovery, and to request material obtained via Rule 17(c) subpoenas. This disclosure should not be taken to indicate the Government necessarily believes that it has an obligation to disclose this information at this time, *see* 18 U.S.C. § 3500; Fed. R. Crim. P. 16(a)(2); rather, we make this disclosure as a courtesy and to assist you in preparing your defense.[1] Nor should this letter be read as waiving the Government's right to decline to provide additional information regarding potential witnesses at this time. This letter and the information contained herein is designated as Attorney's Possession Only under the October 6, 2023 protective order entered by the Court.

[REDACTED]

---

[1] We are amenable to discussing a specific timeline for the production of 3500 material as part of a mutual schedule for all pretrial and trial-related disclosures, including expert notice, Rule 26.2 material, a defense witness list, and defense exhibits.

[REDACTED]

2023.06.08

2023.06.08

11. On or about March 29, 2023, ▮▮▮▮▮ stated to law enforcement agents and representatives of this Office, in substance and in part:

   a. ▮▮▮ Egyptian president Abdel Fattah el-Sisi, and Menendez met in October 2021. At the meeting, Menendez and Sisi and discussed the Israeli-Palestinian conflict, Grand Ethiopian Renaissance Dam, human rights issues, and democracy. Menendez and Sisi "got into it a bit" regarding human rights issues. Sisi stated Egypt would do better on human rights. ▮▮▮ does not recall military funding being discussed related to GERD or human rights.

   b. Nothing about Menendez's congressional delegation to Egypt stands out to ▮▮▮.

12. On or about July 26, 2022, ▮▮▮▮▮▮▮▮▮▮ representatives of this Office, in substance and in part:

   a. From 2018 to the present, ▮▮▮ has not seen an evolution in Menendez's position on aid to various Middle Eastern countries or Egypt in particular.

15. On or about June 22, 2022, ▮▮▮▮▮ made the following statements to law enforcement agents and representatives of this Office, in substance and in part:

2023.06.08

    a. Prior to the pandemic, Menendez called ████'s personal cellphone and asked him to meet at Menendez's Senate office in New Jersey. ████ was asked if this call occurred in January 2019. ████ stated, "that sounds about right." ████ did not recall phone calls with Menendez on September 4, 2019 or January 16, 2020.

16. On or about September 1, 2023, ████ made the following statements to a law enforcement agent and representatives of this Office, in substance and in part:

    a. After being shown a page of his toll records from September 4, 2019 and a calendar entry from September 6, 2019, ████ agreed that the September 4, 2019 phone call with Menendez, which took place two days prior to his meeting with Menendez, was probably a call in which ████ and Menendez set up the meeting.

    b. After being shown a page of his toll records from January 29, 2019 and a printout from Menendez's public website, which listed 202-224-4744 as Menendez's Washington, DC office phone number, ████ did not remember the January 29, 2019 phone call from 202-224-4744 reflected on those records. The only time that ████ remembers Menendez raising a criminal investigation with ████ was during the September 6, 2019 meeting. ████ did not remember what was discussed on the January 29, 2019 phone call. If Menendez brought up something like he did during the September 6 meeting, that would have stuck out in ████'s mind, and ████ would have expected to tell ████ and ████ about it.

    c. ████ believed his call with ████ took place after ████'s meeting with Menendez. ████ linked his call with ████ to his meeting with Menendez because the subject matter of the two was the same. Because the subject matter of the ████ call and the Menendez meeting was the same, ████ thought that the ████ call happened after the Menendez meeting.

2023.06.08



21. On or about February 27, 2023, ▅▅▅▅▅▅[8] made the following statements to law enforcement agents and representatives of this Office, in substance and in part:

   a. Once ▅▅▅ became ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Menendez made a phone call to ▅▅▅▅▅ or ▅▅▅▅▅ cellphone to congratulate ▅▅▅ on the new position. Menendez also complimented ▅▅▅▅▅ brother, ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ as well as two other lawyers, Larry Lustberg and Michael Critchley. ▅▅▅▅ advised he did not recall any conversations with Menendez regarding particular cases.

22. On or about August 11, 2023, ▅▅▅▅▅▅▅[9] made the following statements to a law enforcement agent and representatives of this Office, in substance and in part:

---

[8] The Government understands that ▅▅▅▅ is represented by ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅.

[9] The Government understands that ▅▅▅ is represented by ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅.

a. ▓▓▓▓ was not aware of many social meetings between Menendez and foreign government officials. Menendez would occasionally have evening/dinner meetings for which the Senate Foreign Relations Committee ("SFRC") staff would prepare memos (such as when Menendez had dinner with certain Greek people). If Menendez had dinner/evening meetings with foreign government officials, ▓▓▓▓ did not attend them.

b. With regard to Menendez's constituents and SFRC business, ▓▓▓▓ would "bear in mind" those things that were relevant to Menendez as Chairman or Ranking Member ▓▓▓▓ had staff meet with New Jersey constituents to help understand their issues.

c. The SFRC's work involved handling a lot of classified information. SFRC work also involved non-public information, such as the negotiations related to a piece of legislation. There was no absolute prohibition on members sharing non-public SFRC information with third parties.

d. With regard to Foreign Military Sales ("FMS"), there was a period of SFRC review prior to Congressional notification. The fact that a sale was pending was not public information. ▓▓▓▓ did not recall Menendez ever directing ▓▓▓▓ to convey messages about FMS, prior to Congressional notification, to ▓▓▓▓ third parties (apart from registered agents of a foreign government and possibly with respect to the Greeks). ▓▓▓▓ could recall occasions when they spoke to a foreign government official about human rights concerns prior to Congressional notification. Contracting companies sometimes called to ask whether a sale was going to go through. Such communication generally went through ▓▓▓▓ there was no prohibition on ▓▓▓▓ being frank with the company if the Senator had already made a decision on the sale.

e. ▓▓▓▓ stated that Menendez held up Egypt money for "forever and a day." SFRC staff could not hold up a billion dollars without Menendez's approval. Egypt received $1.3 billion in Foreign Military Financing ("FMF") per year; Menendez held up that money for a long time.

2023.06.08

2023.06.08

2023.06.08

[REDACTED]

Separately, we note that we have not received any reciprocal discovery to date. We again renew our request for reciprocal disclosure from the defendant. Please confirm whether the defendant has, to date, met the defendant's respective reciprocal disclosure obligations under Rule 16(b). *See* Fed. R. Crim. P. 16(b)(1); *see also, e.g.*, *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2011 WL 723530, at *5 (S.D.N.Y. Feb. 25, 2011). Please also confirm whether the defendant recognizes that such obligations are continuing ones.

Finally, we request material obtained pursuant to Rule 17(c) subpoenas. *See* Fed. R. Crim. P. 17(c)(1); *see also, e.g.*, *United States v. Sellers*, 275 F.R.D. 620, 625 (D. Nev. 2011); *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995). So that we may seek relief from the Court if warranted, please advise us as to whether you have received any such material, and if you have not, whether you agree to produce any such material that you receive in the future.

2023.06.08

As always, the Government remains available to confer at your convenience regarding discovery or the case generally.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

By:   s/ Paul M. Monteleoni
Eli J. Mark
Daniel C. Richenthal
Paul M. Monteleoni
Lara Pomerantz
Assistant United States Attorneys
(212) 637-2431/2109/2219/2343