# ARLEO & DONOHUE, L.L.C.

Frank P. Arleo
Timothy M. Donohue
Jo Ann K. Dobransky
———————
Kamron A. Sharif

622 Eagle Rock Avenue
West Orange, NJ 07052
Telephone: (973) 736-8660
Fax: (973) 736-1712

February 12, 2024

*Via ECF*
The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: United States v. Robert Menendez et al.,
23 Cr. 490 (SHS)**

Dear Judge Stein:

Please accept this letter memorandum by way of a brief reply to the government's opposition to Daibes' omnibus motions.

## DISCUSSION

### I. The Indictment Fails to Sufficiently Allege an Offense Under McDonnell

In its opposition brief, the government goes to great lengths to argue that the indictment sufficiently alleges a quid pro quo to support its charge of a single overarching conspiracy involving all of the defendants. However, as to Daibes, the indictment is deficient. It fails to specify that at the time when any alleged bribe was exchanged with Menendez that there was a definite and concrete agreement by Menendez to take specific official action.

In McDonnell v. United States, 579 U.S. 550 (2016), the Supreme Court held that there are two requirements for an official act. "First, the Government must identify a 'question, matter, cause, suit, proceeding or controversy'" and "[s]econd, the Government must prove that the public

1

official made a decision or took an action 'on' that question, matter, cause, suit, proceeding or controversy, or agreed to do so." Id. at 551.

In United States v. Silver, the Second Circuit noted that under McDonnell, the relevant point in time in a quid pro quo bribery scheme is the moment at which the public official accepts the payment. "McDonnell suggests that, as the bribe is made, the promised official act must relate to a 'properly defined' 'question, matter, cause, suit, proceeding or controversy.'" 948 F. 3d 538, 556 (2020) (citing McDonnell, 136 S Ct. at 2374). The Silver court emphasized that a public official's acceptance of a bribe in return for a promise to take action as the opportunity arises is a "promise so vague as to be meaningless." 948 F. 3d at 556. The court noted that greater specificity was required. "Absent any additional specificity, criminal liability could attach to any later action the official takes so long as the official is exercising some ability granted to him or her by law, regardless of the fact that the official essentially promised nothing in return for the payment." Id. at 557.

To put it plainly, the public official must make an agreement to take some specific action when the alleged bribe is paid. There is good reason why such specificity must be required. Absent an agreement made <u>at the time when something of value is exchanged</u>, anyone who exchanges gifts with a public official would be later susceptible to a bribery charge if that public official later did something to benefit that person (however tangentially or incidentally). As noted in Daibes' initial brief, the indictment has identified two alleged schemes directly involving Daibes – the U.S. Attorney scheme and the Qatar Investment scheme. In each instance, the indictment fails to allege that a promise to act was made <u>at the time when Menendez accepted any alleged payment</u>. The indictment attempts to compensate for this lack of specificity by resorting to broad allegations that fall short of the mark. For example, in ¶ 2, the indictment alleges that Menendez agreed to use his

2

influence and power in the U.S. Attorney scheme but makes no allegation that any such agreement was made at the time he supposedly accepted any payment from Daibes. See also Indictment ¶ 46 (alleging that at some point between December 2020 to early 2022, Menendez agreed to attempt to influence Daibes' pending federal prosecution in exchange for cash, furniture, and gold bars). Assuming arguendo that the indictment sufficiently alleges a specific "question, matter, cause, suit, proceeding or controversy," it does not provide the specificity required by Silver. It does not allege that the promise to perform any official act was made at "the moment at which the public official accept[ed] payment." Silver, 948 F. 3d at 556.

The indictment is similarly deficient as to the alleged Qatar Investment scheme. The Indictment at ¶ 2 simply alleges that Menendez accepted payment from Daibes "knowing that Daibes expected Menendez in exchange" to use his influence to assist Daibes with the Qatar Investment. See also ¶ 45 (alleging that when Menendez accepted some things of value from Daibes that Menendez "knew" that Daibes expected Menendez to take action in the Qatar Investment matter). These broad allegations do not meet the specificity requirement enunciated in McDonnell and its progeny. In order to pass scrutiny, the indictment must allege that an explicit agreement was made at the time when a payment or bribe was paid. The present indictment fails to do that as to Daibes. Therefore, it must be dismissed.

**II. The Indictment is Duplicitous and Must be Dismissed**

To prove a single conspiracy, "the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." United States v. Maldonado-Rivera, 922 F. 2d 934, 963 (2d Cir. 1990). The government argues that each of the first two counts of the indictment allege a single scheme, rather than multiple, distinct conspiracies.

3

To make its point, the government relies heavily on the fact that, "boilerplate allegations" are sufficient to survive a "facial test" with respect to whether an indictment has alleged a single conspiracy. United States v. Ohle, 678 F. Supp. 2d 215, 222-23 (S.D.N.Y. 2010)) (Governments Mot. 89). While it may recite boilerplate language, an indictment is nevertheless subject to dismissal where it combines separate crimes in a single count in violation of Fed. R. Crim. Pri. 8(a) and causes prejudice to the defense. United States v. Sturdivant, 244 F. 3d 71, 75 (2d Cir. 2001). Here, the indictment is duplicitous and must be dismissed.

The government's boilerplate allegations sets forth a medley of disjointed allegations, falling far short of alleging a unified, overarching conspiracy. The government refers to ¶ 1 of the indictment in an effort to establish that an "overarching scheme" has been alleged. That paragraph states in pertinent part: "MENENDEZ and NADINE MENENDEZ agreed to and did accept hundreds of thousands of dollars of bribes in exchange for using MENENDEZ's power and influence as a Senator to seek to protect and enrich HANA, URIBE, DAIBES and to benefit the Arab Republic of Egypt and the State of Qatar" (Indictment ¶1). According to the government, the defendants "willfully and knowingly combined, conspired, and confederated, and agreed together and with each other to" achieve the object of these conspiracies: "bribery of a federal employee." (Government Mot. 91).

However, a close reading of the indictment reveals that subsequent paragraphs of the indictment directly contradict and undermine the government's allegation of a single conspiracy. The body of the indictment expressly identifies four separate schemes - - (1) Menendez's promise to use his influence and power to assist Hana and the Government of Egypt; (2) Menendez's promise to use his influence to disrupt state criminal cases related to Uribe's associates; (3) Menendez's promise to disrupt the federal prosecution of Daibes; and (4) Menendez's agreement

4

to act to benefit Qatar and Daibes. In doing so, the government actually highlights the lack of any unified conspiracy.

For example, in the allegations describing the disruption of the state prosecution scheme, the indictment does not even mention Daibes. See ¶¶ 44(a) – (g). In its brief, the government tries to demonstrate some relevant connection to Daibes by improperly referring to facts it intends to prove at trial.[1] Government Mo. at 94. But even that reference lacks any substance. The government's brief merely states that it "expects to prove at trial that Hana twice asked Daibes to fund Nadine Menendez's purchase of the Mercedes-Benz convertible before Uribe eventually stepped in and did so." Id. This certainly is not sufficient to demonstrate any real connection between Daibes and this scheme. Nor does it establish interdependence between the scheme involving Uribe and those totally unrelated schemes involving Daibes. Indeed, this allegation in the government's brief apparently reveals that Daibes did not agree to participate in the scheme since the indictment alleges that Uribe is the person who took action. Conversely, the allegations related to the two alleged Daibes' schemes fail to make any reference whatsoever to Uribe. See ¶¶ 45-67. Thus, the indictment does not even attempt to make any allegation that Uribe had any relationship, or involvement in the allegations related to Daibes. In short, these allegations demonstrate that the defendants were not participants in what each knew to be a collective venture directed toward a common goal.

Accordingly, the, the indictment expressly asserts separate and distinct schemes lacking the mutual dependence and assistance necessary to allege a single conspiracy. For that reason, the indictment is duplicitous and must be dismissed.

---

[1] In referring to matters outside the four corners of the indictment, the government does exactly that for which it has criticized the defense.

III. **The Matter Should Be Transferred**

Daibes respectfully asks the Court to consider a transfer of this matter pursuant to <u>Platt v. Minnesota Mining & Manufacturing Co.</u>, 376 U.S. 240 (1964). From the perspective of Daibes and his counsel, the <u>Platt</u> factors strongly support a transfer to the District of New Jersey.

1. <u>Residence of the Defendants</u>

As the government concedes, <u>all</u> of the defendants reside in New Jersey. While the government goes to great lengths to minimize the disruption caused by commuting to Manhattan every day, it overlooks the extent to which this would impact each defendant's time and ability to prepare their defense in preparation for each day of trial. While the distance traveled may be similar, the commute to Newark will take significantly <u>less</u> time than commuting to Manhattan every day at rush hour. The government's brief fails to account for the fact that each and every trip by the defendants would require crossing extremely busy bridges or tunnels during rush hour each day. That time is critical while defendants will be defending these charges.

2. <u>Location of Witnesses</u>

Counsel anticipates that most of the witnesses at trial will reside in New Jersey. This factor also favors transfer.

3. <u>Location of Events</u>

It is abundantly clear (despite the governments attempts to argue otherwise) that nearly <u>all</u> of the relevant events took place in New Jersey. Even a cursory reading of the indictment supports this conclusion.

4. <u>Location of Documents and Physical Evidence</u>

This would appear to be a neutral factor since all counsel have access to discovery. However, to the extent that defendants may obtain additional discovery from third party witnesses,

it is anticipated that any such documents will be located in New Jersey.

     5. <u>Disruption of Defendants' Business</u>

To the extent that a trial in the Southern District of New York will involve more time commuting to and from court each day, this factor also favors a transfer to the District of New Jersey.

     6. <u>Expense to the Parties</u>

While all defense counsel have been retained in this case, it is anticipated that counsel will need to relocate to a hotel in New York for the duration of this trial. This represents a significant expense to the defendants. This factor favors transfer of the matter.

     7. <u>Location of Counsel</u>

Counsel for Daibes lives in suburban New Jersey and maintains an office in suburban New Jersey, as does counsel for Hana. A trial in Manhattan is particularly burdensome for defense counsel.

     8. <u>Relative Accessibility of Place of Trial</u>

This is a neutral factor since both New York and Newark are relatively accessible locations. However, as noted above New York may not be accessed from New Jersey without crossing one of the major bridges or tunnels. Thus, defense counsel, their clients and witnesses would have to waste valuable time each day commuting during rush hour.

     9. <u>Docket Conditions</u>

At this time, counsel is not in a position to make an assessment between docket conditions of the two districts. At best this is a neutral factor.

On balance, the circumstances in this case strongly favor a transfer to the District of New Jersey. The gravamen of this indictment involves a conspiracy among New Jersey defendants to

bribe a New Jersey Senator to take actions in New Jersey which deprived the citizens of New Jersey of their intangible right to honest services. Under those facts, a transfer is definitely warranted.

## CONCLUSION

For the foregoing reasons, Mr. Daibes respectfully requests that defendant's motions be granted.

Respectfully,

*/s/ Timothy M. Donohue*

Timothy M. Donohue

cc: All Counsel via ECF