# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT MENENDEZ, *et al.*,<br><br>Defendants. | Criminal Action No. 23-490 (SHS)<br><br>*Document Electronically Filed* |

---

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT WAEL HANA'S OMNIBUS PRETRIAL MOTIONS

---

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

**<u>TABLE OF CONTENTS</u>**

                                                                                          **Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I.     COUNTS 1 AND 2 OF THE INDICTMENT SHOULD BE DISMISSED FOR
           FAILURE TO CHARGE AN OFFENSE. .......................................................... 2

          A.     Applicable Legal Standard ........................................................................ 2

          B.     The Indictment Fails To Allege Essential Facts Demonstrating That
               Senator Menendez Promised To Take Or Undertook Any Official Act..... 5

               i.     Whether The Allegations Satisfy McDonnell's Legal Definition Of
                     "Official Act" Is Properly Before The Court. ................................. 5

               ii.    None Of The Alleged Promises Or Actions Involving Mr. Hana
                     Constitute An "Official Act" Under McDonnell And The
                     Government Fails To Argue Otherwise. ......................................... 7

          C.     The Indictment Does Not Allege The Essential *Quid Pro Quo* Element Of
               Counts 1 And 2, Which Is Required By The Controlling Precedent That
               The Government Asks This Court To Ignore. ......................................... 12

    II.    COUNT 4 OF THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE
           TO CHARGE AN OFFENSE. .............................................................. 20

          A.     Count 4 Of The Indictment Fails To Properly Charge A Conspiracy To
               Violate 18 U.S.C. § 219. ......................................................... 20

          B.     As Applied To Mr. Hana And Alleged In The Indictment, 18 U.S.C. § 219
               Is Also Unconstitutionally Vague. ................................................. 23

          C.     18 U.S.C. § 219 And FARA Do Not Permit Charging Mr. Hana With
               Conspiracy Liability ................................................................. 28

          D.     The Court Should Strike From The Indictment Any Mention Of Mr. Hana
               In Paragraph 15. ..................................................................... 32

    III.   THE INDICTMENT IS DUPLICITOUS, OR IN THE ALTERNATIVE,
           MULTIPLICITOUS, AND SHOULD BE DISMISSED. .................................... 35

           A.     The Indictment, On Its Face, Charges Multiple Conspiracies in a Singular
               Offense. ............................................................................... 37

          B.     The Court Should Grant Mr. Hana's Pre-Trial Motion And Dismiss The
               Duplicitous Charges. ................................................................ 45

          C.     Alternatively, The Indictment Is Multiplicitous And Must Be Dismissed.
               ............................................................................................ 48

    IV.   THE INDICTMENT FAILS TO ADEQUATELY ALLEGE VENUE AS TO
           THE COUNTS AGAINST MR. HANA. ........................................... 51

    V.    THE COURT SHOULD ORDER A BILL OF PARTICULARS TO CLARIFY
           THE VAGUE ALLEGATIONS IN THE INDICTMENT THAT CANNOT BE
           CURED BY THE GOVERNMENT'S EXTENSIVE DISCOVERY. ................. 56

CONCLUSION .................................................................................................................. 63

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arthur Andersen LLP v. United States*,
544 U.S. 696 (2005) ................................................................................................24

*Blumenthal v. United States*,
332 U.S. 539 (1947) ................................................................................................42

*Copeland v. Vance*,
893 F.3d 101 (2d Cir. 2018) ...................................................................................27

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*,
643 F. Supp. 3d 421 (S.D.N.Y. 2022) .....................................................................9

*Davis v. United States*,
411 U.S. 233 (1973) ................................................................................................47

*Gebardi v. United States*,
287 U.S. 112 (1932) ................................................................................................32

*Grady v. Artuz*,
931 F. Supp. 1048 (S.D.N.Y. 1996) ........................................................................39

*Hamling v. United States*,
418 U.S. 87 (1974) ....................................................................................................3

*Kolender v. Lawson*,
461 U.S. 352 (1983) ................................................................................................25

*McDonnell v. United States*,
579 U.S. 550 (2016) ...................................................................................... *passim*

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1976) ................................................................................................51

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ................................................................................................50

*Ocasio v. United States*,
578 U.S. 282 (2016) ........................................................................................7, 31, 32

*People v. Luciano*,
951 N.Y.S.2d 88 (N.Y. Sup. Ct. 2012) ...................................................................46

*Rubin v. Garvin,*
    544 F.3d 461 (2d Cir. 2008) ................................................................24

*Russell v. United States,*
    369 U.S. 749 (1962) ..........................................................................57

*SEC v. Rosenthal,*
    650 F.3d 156 (2d Cir. 2011) ................................................................30

*Sessions v. Dimaya,*
    138 S. Ct. 1204 (2018) ......................................................................25

*Travis v. United States,*
    364 U.S. 631 (1961) ..........................................................................51

*United States v. Abdelaziz,*
    68 F.4th 1 (1st Cir. 2023) ..................................................................38

*United States v. Alcorta,*
    145 F. Supp. 3d 357 (M.D. Pa. 2015) ................................................53

*United States v. Aleynikov,*
    676 F.3d 71 (2d Cir. 2012) ................................................................3, 4

*United States v. Aleynikov,*
    737 F. Supp. 2d 173 (S.D.N.Y. 2010) ..............................................14, 17

*United States v. Alfonso,*
    143 F.3d 772 (2d Cir. 1998) ..........................................................15, 16, 54

*United States v. Aliperti,*
    867 F. Supp. 142 (E.D.N.Y. 1994) ....................................................62

*United States v. Amen,*
    831 F.2d 373 (2d Cir. 1987) ..............................................................32

*United States v. Aprahamian,*
    No. 20-cr-64, 2022 WL 221615 (E.D. Pa. Jan. 25, 2022) ....................55

*United States v. Aracri,*
    968 F.2d 1512 (2d Cir. 1992) ..........................................................39, 45

*United States v. Benjamin,*
    No. 21-cr-706, 2022 WL 17417038 (S.D.N.Y. Dec. 5, 2022) ..............16

*United States v. Bin Laden,*
    92 F. Supp. 2d 225 (S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings*
    *of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008) ..............59, 60

*United States v. Birdsall*,
    233 U.S. 223 (1914)............................................................................................11

*United States v. Boffa*,
    513 F. Supp. 444 (D. Del. 1980)......................................................................36

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987).......................................................................59, 60

*United States v. Boyland*,
    862 F.3d 279 (2d Cir. 2017)..............................................................................11

*United States v. Cabrales*,
    524 U.S. 1 (1998)...............................................................................................51

*United States v. Carey*,
    152 F. Supp. 2d 415 (S.D.N.Y. 2001)..............................................................33

*United States v. Carrano*,
    340 F. Supp. 3d 388 (S.D.N.Y. 2018) .........................................................20, 22

*United States v. Carter*,
    576 F.2d 1061 (3d Cir. 1978)...........................................................................50

*United States v. Chandler*,
    388 F.3d 796 (11th Cir. 2004) .........................................................................42

*United States v. Conley*,
    826 F. Supp. 1536 (W.D. Pa. 1993).................................................................48

*United States v. Cornelson*,
    609 F. Supp. 3d 258 (S.D.N.Y. 2022)..............................................................20

*United States v. Crosby*,
    No. 08-cr-186A, 2013 WL 3354422 (W.D.N.Y. July 3, 2013) .........................61

*United States v. Davidoff*,
    845 F.2d 1151 (2d Cir. 1988)............................................................................60

*United States v. Dawkins*,
    999 F.3d 767 (2d Cir. 2021).................................................................23, 37, 38

*United States v. DeFrance*,
    577 F. Supp. 3d 1085 (D. Mont. 2021).............................................................24

*United States v. Dougherty*,
    No. 19-cr-64, 2020 WL 5231684 (E.D. Pa. Sept. 1, 2020).................................6

*United States v. Droms*,
566 F.2d 361 (2d Cir. 1977).............................................................46

*United States v. Duffey*,
456 F. App'x. 434 (5th Cir. 2012) ..................................................42

*United States v. Dupree*,
870 F.3d 62 (2d Cir. 2017)..............................................................14

*United States v. Feola*,
651 F. Supp. 1068 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989) ...............61

*United States v. Friedman*,
854 F.2d 535 (2d Cir. 1988)............................................................45

*United States v. Gabriel*,
920 F. Supp. 498 (S.D.N.Y. 1996), *aff'd*, 125 F.3d 89 (2d Cir. 1997) ..................37

*United States v. Geibel*,
369 F.3d 682 (2d Cir. 2004)......................................................39, 42

*United States v. Gonzalez*,
686 F.3d 122 (2d Cir. 2012)............................................................20

*United States v. Gordon*,
844 F.2d 1397 (9th Cir. 1988) ........................................................46

*United States v. Greebel*,
No. 15-cr-637, 2017 WL 3610570 (E.D.N.Y. Aug. 4, 2017) ...........................33, 35

*United States v. Greenberg*,
No. 21-cr-92, 2022 WL 827304 (S.D.N.Y. Mar. 9, 2022) ....................................40

*United States v. Hardy*,
762 F. Supp. 1403 (D. Haw. 1991) ................................................45, 48

*United States v. Heicklen*,
858 F. Supp. 2d 256 (S.D.N.Y. 2012).......................................3, 4, 5, 16

*United States v. Hickey*,
16 F. Supp. 2d 223 (E.D.N.Y. 1998) ..................................................58

*United States v. Holland*,
No. 17-cr-00234, 2018 WL 8867811 (N.D. Ga. Aug. 6, 2018)...............................53

*United States v. Hughes*,
505 F.3d 578 (6th Cir. 2007) ..........................................................40

*United States v. Jefferson,*
    289 F. Supp. 3d 717 (E.D. Va. 2017) ..............................................9, 10

*United States v. Jensen,*
    93 F.3d 667 (9th Cir. 1996) .....................................................................55

*United States v. Johansen,*
    56 F.3d 347 (2d Cir. 1995)......................................................................47

*United States v. Keleher,*
    505 F. Supp. 3d 41 (D.P.R. 2020)...........................................................15

*United States v. Keystone Biofuels,*
    350 F. Supp. 3d 310 (M.D. Pa. 2018) .....................................................37

*United States v. Khalupsky,*
    5 F.4th 279 (2d Cir. 2021) ......................................................................22

*United States v. Killeen,*
    No. 98-cr-143, 1998 WL 760237 (S.D.N.Y. Oct. 29, 1998) ...................38

*United States v. Kirk Tang Yuk,*
    885 F.3d 57 (2d Cir. 2018)........................................................53, 55, 56

*United States v. Laurent,*
    861 F. Supp. 2d 71 (E.D.N.Y. 2011) ........................................................4

*United States v. Lee,*
    919 F.3d 340 (6th Cir. 2019) .........................................................6, 12, 15

*United States v. Lounsberry,*
    No. 18-cr-49, 2018 WL 6517554 (W.D.N.Y. Oct. 1, 2018)....................61

*United States v. Macchia,*
    35 F.3d 662 (2d Cir. 1994).....................................................................49

*United States v. Maldonado-Rivera,*
    922 F.2d 934 (2d Cir. 1990)....................................................................41

*United States v. Malka,*
    602 F. Supp. 3d 510 (S.D.N.Y. 2022).....................................................23

*United States v. Maloney,*
    287 F.3d 236 (2d Cir. 2002)....................................................................46

*United States v. Marlinga,*
    No. 04-cr-80372, 2005 WL 513494 (E.D. Mich. Feb. 28, 2005) .........44, 45, 47, 48

*United States v. Martin*,
    411 F. Supp. 2d 370 (S.D.N.Y. 2006)..................................................22

*United States v. Martin-Escobar*,
    622 F. Supp. 3d 1057 (N.D. Ok. 2022)..............................................24

*United States v. McDermott*,
    245 F.3d 133 (2d Cir. 2001)...............................................................47

*United States v. Mennuti*,
    639 F.2d 107 (2d Cir. 1981), *abrogated in part on other grounds by Russell v.*
    *United States*, 471 U.S. 858 (1985) ....................................................4

*United States v. Michel*,
    No. 19-cr-148-1, 2022 WL 4182342 (D.D.C. Sept. 13, 2022) ...............25

*United States v. Miselis*,
    972 F.3d 518 (4th Cir. 2020) .............................................................27

*United States v. Munoz-Franco*,
    986 F. Supp. 70 (D.P.R. 1997)......................................................44, 45

*United States v. Nachamie*,
    101 F. Supp. 2d 134 (S.D.N.Y. 2000)............................................45, 62

*United States v. Nachamie*,
    91 F. Supp. 2d 565 (S.D.N.Y. 2000)..................................................61

*United States v. Napout*,
    963 F.3d 163 (2d Cir. 2020)...............................................................23

*United States v. Neumann*,
    No. 21-cr-439, 2022 WL 3445820 (S.D.N.Y. Aug. 17, 2022) ...............3

*United States v. Nicolo*,
    523 F. Supp. 2d 303 (W.D.N.Y. 2007) ...............................................24

*United States v. Notch*,
    939 F.2d 895 (10th Cir. 1991) ...........................................................30

*United States v. Oaks*,
    302 F. Supp. 3d 716 (D. Md. 2018) ...................................................15

*United States v. Pacione*,
    738 F.2d 567 (2d Cir. 1984)...........................................................3, 17

*United States v. Percoco*,
    16-cr-776 (S.D.N.Y.) .........................................................................17

*United States v. Peterson*,
  357 F. Supp. 2d 748 (S.D.N.Y. 2005).................................52

*United States v. Pinto-Thomaz*,
  352 F. Supp. 3d 287 (S.D.N.Y. 2018).................................59

*United States v. Pirro*,
  212 F.3d 86 (2d Cir. 2000)..........................................3, 17

*United States v. Pleasant*,
  125 F. Supp. 2d 173 (E.D. Va. 2000) ................................48

*United States v. Portillo*,
  No. 09-cr-1142, 2014 WL 97322 (S.D.N.Y. Jan. 8, 2014)..............35

*United States v. Praddy*,
  725 F.3d 147 (2d Cir. 2013).........................................7

*United States v. Prejean*,
  429 F. Supp. 2d 782 (E.D. La. 2006)................................47

*United States v. Rajaratnam*,
  736 F. Supp. 2d 683 (S.D.N.Y. 2010)................................46

*United States v. Ramirez*,
  602 F. Supp. 783 (S.D.N.Y. 1985) ..................................63

*United States v. Ramirez*,
  609 F.3d 495 (2d Cir. 2010).........................................60

*United States v. Raniere*,
  384 F. Supp. 3d 282 (E.D.N.Y. 2019) ...............................24

*United States v. Reed*,
  639 F.2d 896 (2d Cir. 1981).........................................50, 51

*United States v. Reichberg*,
  5 F.4th 233 (2d Cir. 2021) .........................................19, 20

*United States v. Requena*,
  980 F.3d 30 (2d Cir. 2020)..........................................23

*United States v. Rigas*,
  605 F.3d 194 (3d Cir. 2010).........................................48

*United States v. Rodrigues*,
  No. 22-cr-391, 2024 WL 113744 (S.D.N.Y. Jan. 10, 2024)............6

*United States v. Savin*,
    No. 00-cr-45, 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) .................................................62

*United States v. Scarpa*,
    913 F.2d 993 (2d Cir. 1990).................................................................................................33

*United States v. Seeger*,
    303 F.2d 478 (2d Cir. 1962).................................................................................................15

*United States v. Shear*,
    962 F.3d 488 (5th Cir. 1992) ...............................................................................................29

*United States v. Siddiqi*,
    No. 06-cr-377, 2007 WL 549420 (S.D.N.Y. Feb. 21, 2007) .................................................62

*United States v. Silver*,
    15-cr-93 (S.D.N.Y.) .............................................................................................................17

*United States v. Silver*,
    864 F.3d 102 (2d Cir. 2017).....................................................................................11, 13, 18

*United States v. Silver*,
    948 F.3d 538 (2d Cir. 2020)...................................................................................... *passim*

*United States v. Smith*,
    985 F. Supp. 2d 547 (S.D.N.Y. 2014), *aff'd sub nom. United States v.*
    *Halloran*, 664 F. App'x 23 (2d Cir. 2016)...........................................................................24

*United States v. Stein*,
    429 F. Supp. 2d 633 (S.D.N.Y. 2006)..................................................................................52

*United States v. Stokes*,
    726 F.3d 880 (7th Cir. 2013) ...............................................................................................27

*United States v. Sturdivant*,
    244 F.3d 71 (2d Cir. 2001)...................................................................................................39

*United States v. Swinton*,
    No. 19-cv-65, 2020 WL 1940744 (D. Conn. Apr. 22, 2020)..................................................33

*United States v. Viserto*,
    596 F.2d 531 (2d Cir. 1979).................................................................................................46

*United States v. Williams*,
    No. 16-cr-00003, 2017 WL 1030804 (N.D. Ga. Mar. 16, 2017) ............................................15

**Statutes**

18 U.S.C. § 201 ......................................................................................................................5, 29

18 U.S.C. § 219 ........................................................................................... *passim*

18 U.S.C. § 371 ................................................................................... 20, 29

18 U.S.C. § 1343 ............................................................................................ 5

18 U.S.C. § 1951(b)(2) ............................................................................... 31

18 U.S.C. §§ 2241–2244 chapter 109A ................................................... 27

18 U.S.C. § 2423(b)'s ................................................................................ 27

22 U.S.C. § 611 ..................................................................... 22, 26, 29

22 U.S.C. § 613 ............................................................................................ 34

22 U.S.C. § 618(a) ...................................................................................... 25

26 U.S.C. 7206 ............................................................................................ 30

**Rules**

Federal Rule of Criminal Procedure 7 .......................................................... 2

Federal Rule of Criminal Procedure 12 ............................... 36, 46, 47, 50, 52, 54

**Regulations**

28 C.F.R. § 5.100(a)(8) ............................................................................. 26

**Constitutional Provisions**

U.S. Const. amend. V .................................................................................. 57

U.S. Const. amend VI ........................................................................... 47, 48

## PRELIMINARY STATEMENT

No matter how weighty the issues, the Government in its brief gives the back of the hand to them, implicitly (or in some cases explicitly) urging the Court not to consider them seriously or at all. Disparaging the federal rule that requires the issues included in Defendant Wael Hana's brief to be raised on pretrial motion—meritorious issues like venue, duplicity and multiplicity, for example—the Government urges the Court not to decide them now but to wait for trial, a trial that will be far more complicated, cumbersome and time-consuming for the Court and the parties if the Court follows the Government's lead and just waits to resolve these legal issues later. Moreover, in doing so, the Government violates the same rule that it invokes: even as it insists that Mr. Hana's arguments be limited to the four corners of the Indictment, which is presumed to be true, the Government repeatedly adds new facts, not included in the Indictment, to its argument in an effort to win when it otherwise would not. These instances are detailed below. And, though it is willing to put before the Court certain additional facts of its choosing, the Government refuses to provide the most basic bill of particulars to identify basic elements of the offenses alleged for the benefit of the Court and the defense, again urging a trial that will be more problematic and unfair as a result.

These are not the only deep-seated flaws in the Government's pretrial motion response. Again and again, the Government relies upon the bulk of its Indictment to excuse the legal insufficiency of its position, and to justify its refusal to provide appropriate details of the charges brought. But however long the Indictment, it fails to set forth an official act, within the meaning of the pertinent Supreme Court precedent, underlying the bribery conspiracy charges against Mr. Hana, and it does not connect any agreement by Senator Menendez to do anything to a benefit provided by Mr. Hana. Likewise, no matter how many pages the Indictment takes up, the Government cannot explain how the statute pursuant to which Mr. Hana is alleged to have

1

conspired to have Senator Menendez act as an agent of a foreign principle can be applied to him, given that it is aimed specifically at public officials. Nor can the Government avoid the confused and confusing language of that statute, by arguing, in a way that defies any principle, that it cannot be vague given how extensive the defense briefs addressed to it are. The legal and logical fallacy of that position is obvious.

Finally, as is also detailed in Mr. Hana's moving brief and below, the Government's response does not explain away the troubling consequences of an indictment that combines numerous conspiracies to do different things into single counts, with all of the trial complications that this form of indictment, bereft of any substantive charges, will entail. Then, by arguing that it is all really one big conspiracy—though it clearly is not—the Government seeks to justify, again by deferring to a trial, the question that it has itself answered: whether that supposed single conspiracy has been divided into different counts, risking multiple punishments and a fundamentally unfair process. Substantively and procedurally, the Government is wrong, and Mr. Hana's motions should be granted.

## ARGUMENT

## I.   COUNTS 1 AND 2 OF THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE TO CHARGE AN OFFENSE.

### A.   Applicable Legal Standard

As Mr. Hana articulated in his moving brief, Hana Br. 7-11, the law on determining the sufficiency of an indictment is clear. The Federal Rules of Criminal Procedure establish two separate requirements: the indictment must (1) "be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and (2) include the "statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). Because these requirements are distinct, "[a]lthough the language of the statute may be used in the

description of the offense, the description must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific [offense], coming under the general description, with which he is charged." *United States v. Neumann*, No. 21-cr-439, 2022 WL 3445820, at *3 (S.D.N.Y. Aug. 17, 2022) (alteration in original) (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)). Therefore, an indictment that fails to allege the essential facts constituting the offense is "legally insufficient." *United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012).

Notwithstanding these well-established principles, the Government insists that "the Indictment sufficiently tracks the statutory language, and no more is required." Opp. at 72-73. But that is not the law in this Circuit, where "a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *Aleynikov*, 676 F.3d at 75-76; *see also* Hana Br. at 8-9. Because "[t]he sufficiency of an indictment and the interpretation of a federal statute are both matters of law," *Aleynikov*, 676 F.3d at 76, consideration of a motion to dismiss on this ground is, notwithstanding the Government's complaints, entirely proper. *See United States v. Heicklen*, 858 F. Supp. 2d 256, 262 n.5, 263 (S.D.N.Y. 2012) ("Whether or not the Indictment charges an offense squarely presents an issue of law determinable before trial.").

For example, in *United States v. Pirro*, the Second Circuit upheld the dismissal of a portion of a count charging the defendant with filing a false tax return by failing to disclose his ownership interest in an S corporation. 212 F.3d 86, 88, 91, 95 (2d Cir. 2000). Although the indictment tracked the language of the statute, the court concluded that the indictment failed to allege "a violation of a known legal duty" where it did not allege the "crucial background fact" that defendant was a "shareholder" who had a duty to disclose his ownership interest. *Id.* at 90-91, 93-94. Indeed, the Second Circuit routinely upholds the dismissals of indictments that fail to allege

essential facts supporting the charge. *See*, *e.g.*, *United States v. Pacione*, 738 F.2d 567, 572-73 (2d Cir. 1984) (affirming dismissal of indictment charging extortionate credit transactions, even though it recited the statutory elements, because the non-violent conduct on which the violation was premised fell outside the scope of the statute); *United States v. Mennuti*, 639 F.2d 107, 113 (2d Cir. 1981), *abrogated in part on other grounds by Russell v. United States*, 471 U.S. 858 (1985) (holding indictment insufficient where arson statute in issue was limited to destruction of "property currently used in commerce or in an activity affecting it," but the indictment alleged only that defendants destroyed private residences); *Aleynikov*, 676 F.3d at 74, 76, 78 (indictment was "legally insufficient" because the source code defendant allegedly unlawfully transferred did not "constitute[] stolen 'goods,' 'wares,' or 'merchandise'" within the meaning of the statute in issue because it was "purely intangible property embodied in a purely intangible format," and thus "[t]here was no allegation that [the defendant] physically seized anything tangible"); *see also Heicklen*, 858 F. Supp. 2d at 260, 275-76 (dismissing indictment charging defendant with attempt to influence the decision of a juror where indictment alleged only that defendant distributed pamphlets in front of the entrance to a courthouse that generically "discuss[ed] the role of juries in society and urge[d] jurors to follow their consciences regardless of instructions on the law," which failed as a matter of law to "allege that [the defendant] attempted to influence a juror through a written communication made in relation to a specific case").

These cases clearly illustrate that, although the Government refuses to accept it, when an indictment alleges facts that, taken as true, do not violate the statute charged, it must be dismissed, even if it tracks the statutory language and conveys the relevant core of criminality. Thus, although the Indictment here parrots the language of the applicable statutes, "[d]ismissal is required [because] the conduct alleged in the [I]ndictment as a factual basis for the offense is not actually

prohibited by the language of the statute." *See United States v. Laurent*, 861 F. Supp. 2d 71, 109 (E.D.N.Y. 2011).

**B.      The Indictment Fails To Allege Essential Facts Demonstrating That Senator Menendez Promised To Take Or Undertook Any Official Act.**

The question before the Court is whether the "alleged activities" identified in the Indictment, "accepted as true, are prohibited by the [applicable] statute[s]." *Heicklen*, 858 F. Supp. 2d at 263.   Again, the issue of "[w]hether or not the Indictment charges an offense squarely presents an issue of law determinable before trial." *Id.*

**i.      Whether The Allegations Satisfy McDonnell's Legal Definition Of "Official Act" Is Properly Before The Court.**

To establish an "official act" for purposes of the federal bribery statute, 18 U.S.C. § 201, which as the Government concedes also applies to honest services fraud, 18 U.S.C. § 1343, Opp. at 32 n.6, the Government must satisfy the standard established by the United States Supreme Court in *McDonnell v. United States*, 579 U.S. 550, 567 (2016).   *First*, the Government must identify a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" "before a public official" akin to "a lawsuit before a court, a determination before an agency, or a hearing before a committee."   *Id.* at 567, 569.   This is referred to below as the "question or matter element."   *Second*, the Government must establish that "the public official made a decision or took an action 'on' that question, matter, cause, suit, proceeding, or controversy, or agreed to do so."   *Id.* at 567. This is referred to as the "decision or action element," which can only be satisfied by something more than "[s]etting up a meeting, talking to another official, or organizing an event (or agreeing to do so)."   *Id.* at 567, 574; *see also* Hana Br. at 11-14 (articulating the *McDonnell* standard).

The Government argues that because *McDonnell* concerned the sufficiency of jury instructions, its "official act" standard is inapplicable on a motion to dismiss.  Opp. at 33.  But the

inquiry in *McDonnell* was the purely legal question of what constitutes an "official act." *See* 579 U.S. at 566 ("The issue in this case is the proper interpretation of the term 'official act.'"). That this was the procedural posture does not, as the Government contends, diminish *McDonnell*'s holding, which establishes whether, as a matter of law, an indictment alleges sufficient factual allegations to meet the Court's definition of an "official act." Indeed, in *United States v. Lee*, 919 F.3d 340 (6th Cir. 2019), which the Government cites, Opp. at 33, the Sixth Circuit examined the sufficiency of an indictment's factual allegations in light of *McDonnell*'s commands. There, the Government charged that the defendant exerted pressure on a local prosecutor with respect to a pending criminal matter. *Lee*, 919 F.3d at 354. However, rather than merely alleging the existence of a conversation between the defendant and the prosecutor, the indictment included a transcript of the conversation in which the defendant stated "I'm not trying to influence you, you can't say I'm trying to influence you. I'm trying to make you think. That's all I'm trying to do; just trying to make you think." *Id.* The Sixth Circuit undertook precisely the analysis sought here—to determine whether, under *McDonnell*, the substance of the factual allegations was enough to support an inference that the defendant "had agreed to perform an official act or pressure or advise other officials to perform official acts in exchange for gifts or loans." *Id.* The Government's argument that *McDonnell* has no impact on this case, at this stage, is then undermined by the very cases that it cites, among others. *See* , *e.g.*, *United States v. Rodrigues*, No. 22-cr-391, 2024 WL 113744, at *3 (S.D.N.Y. Jan. 10, 2024) (applying *McDonnell* in analyzing the sufficiency of an indictment and holding that the conduct alleged "clearly goes beyond the conduct that was held not to constitute an 'official act' by the Supreme Court in *McDonnell*"); *United States v. Dougherty*, No. 19-cr-64, 2020 WL 5231684, at *10-11 (E.D. Pa. Sept. 1, 2020) (applying

*McDonnell* in analyzing whether five categories of alleged official acts should be stricken from indictment).

> ii. *None Of The Alleged Promises Or Actions Involving Mr. Hana Constitute An "Official Act" Under McDonnell And The Government Fails To Argue Otherwise.*

In his moving brief, Mr. Hana demonstrated why the factual allegations in the Indictment, accepted as true for purposes of this motion, are insufficient to charge conspiracy to violate either the federal bribery statute or honest services fraud because those factual allegations do not establish, as a matter of law, that Senator Menendez promised to take or undertook "official acts" under *McDonnell*. Hana Br. at 11-19. As Mr. Hana explained, to charge conspiracy, the Government must allege that the Defendants agreed to engage in conduct that, if completed, would be unlawful. *Id.* at 14 (citing *United States v. Praddy*, 725 F.3d 147, 153 (2d Cir. 2013)). Thus, whether the Government charges that Senator Menendez promised to undertake an official act or whether he did undertake such act, the Government must allege actions that, if completed, would satisfy *McDonnell*'s "official act" standard.[1] *Id.*; *see also Ocasio v. United States*, 578 U.S. 282, 287 (2016) ("[T]he fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" (alteration in original)). For the reasons set forth in Mr. Hana's moving brief and discussed a bit more below by way of reply, the Indictment fails to charge those essential facts.

---

[1] In its opposition, the Government submits that "whether charged in conspiracy counts or substantive counts, provided the elements are otherwise met, a defendant is guilty of participating in a bribery . . . irrespective of whether the public official took any action in exchange for the bribe." Opp. at 53. Mr. Hana does not dispute this principle of law. However, the Government still must establish that if the promise at issue was fulfilled (*i.e.*, "completed"), that act would satisfy the underlying elements of the substantive count. *See Praddy*, 725 F.3d at 153; *Ocasio*, 578 U.S. at 287.

In its opposition, the Government identifies six (6) acts allegedly promised or undertaken by Senator Menendez, four of which purportedly involve Mr. Hana:  (1) "Promising and agreeing that Menendez would use his official position to facilitate billions of dollars in U.S. military aid to Egypt"; (2) "Providing and agreeing to provide the Government of Egypt with sensitive and non-public U.S. government information and other forms of surreptitious assistance"; (3) "Agreeing and attempting to pressure the U.S. Department of Agriculture ('USDA') to acquiesce to a lucrative business monopoly the Government of Egypt granted to Hana"; and (4) "Agreeing and attempting to disrupt a criminal prosecution and related criminal investigation being supervised by the New Jersey Attorney General's Office."[2]  Opp. at 2-3.  Mr. Hana set forth in detail why each of these alleged schemes fail to constitute an agreement for the Senator to undertake any official act, and the Government's opposition, which focuses almost entirely on the Senator's motion to dismiss the Indictment, fails to meaningfully consider, let alone refute, Mr. Hana's arguments.[3]

---

[2] The Government also identifies two other alleged schemes that involve only Senator Menendez and Mr. Daibes; as previously explained, Mr. Hana is not alleged to be involved in either the alleged scheme to assist with Mr. Daibes's federal criminal prosecution or the one to benefit the Government of Qatar.  Hana Br. at 4-5, n.3.

[3] The Government submits that "not all acts promised or agreed to be taken, or in fact taken, in connection with or furtherance of the scheme must themselves be official acts" so long as there is at least one official act or promise of an official act.  Opp. at 54.  As Mr. Hana explained in his moving brief, none of the allegations involving him concern a promise to undertake an "official act" under *McDonnell* to permit this Indictment to stand as against him.  Hana Br. at 11-19.  However, in making this argument, the Government revealed why it chose to impermissibly include multiple disparate schemes into one conspiracy count:  the Government knows that each alleged scheme involving Mr. Hana is lacking one or more essential elements of the crimes charged, but attempts to avoid that fundamental problem by wrongfully charging unrelated schemes together in the hopes that at least one of those disparate schemes satisfies the elements under § 201 and § 1343.  But as previously explained, and as is discussed in Section III, *supra*, such duplicitous charging violates Mr. Hana's constitutional rights and, on that basis alone, must be dismissed.  *See also* Hana Br. at 68-89 (explaining how the Indictment improperly combines multiple, distinct alleged conspiracies into a single count).

First, the Government simply fails to in any way address Mr. Hana's arguments that the Indictment does not allege an official act with respect to the alleged schemes to benefit Egypt. *See* Hana Br. 15-17 (arguing that the Indictment's allegations concerning Senator Menendez's alleged actions in (1) seeking non-public information about persons working in the United States Embassy in Cairo, (2) disclosing non-public information about the provision of military aid to Egypt, (3) drafting an anonymous letter regarding the release of military aid, (4) discussing military financing with Egyptian officials, (5) texting with Nadine Menendez about military aid, and (6) meeting with Egyptian officials and writing a letter to U.S. agencies about the Grand Ethiopian Dam do not constitute "official acts" under *McDonnell*). In its opposition, the Government only discusses the alleged schemes to benefit Egypt in responding to the Senator's arguments under the Speech or Debate Clause, arguments in which Mr. Hana cannot, because he is not a legislator, join. Opp. at 36-45. Their submission is focused entirely on disputing that the acts regarding Egypt are "legislative acts" (for which the Senator's conduct would be constitutionally protected) as opposed to "official acts" under *McDonnell*. Indeed, the closest the Government comes to discussing whether these are official acts is its statement that "because it is [] undisputed that a promise or agreement to place or not to place a hold on [foreign military sales] or [foreign military funding] is a promise or agreement to take or not take an official act, these promises or agreements, *standing alone,* warrant denial of Menendez's motion to dismiss." *Id.* at 44-45 (emphasis in original). But the Government does not address Mr. Hana's argument that these actions fail to state a bribery or honest services fraud offense because the Senator's mere discussion of foreign military sales and funding with Mr. Hana and others is not sufficient under *McDonnell* to establish the required decision or action element (or a promise to take a decision or action). Hana Br. 15-17; *see United States v. Jefferson*, 289 F. Supp. 3d 717, 736-37 (E.D. Va. 2017) (meeting with military officials

in an effort to gain approval of testing certain technology was not an official act). Because the Government fails to address Mr. Hana's arguments, the Court should consider them conceded. *See Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.").

Regarding Senator Menendez's alleged intervention with the USDA, the Government responds only to the Senator's arguments that (1) placing a single call to a high-ranking USDA official cannot be characterized as having advised or pressured that official, and (2) the "only ultimate exercise of governmental power" regarding the award of Mr. Hana's halal contract, was by Egypt alone, and did not involve U.S. agency action. Opp. at 56-57 (citing Menendez First Mot. 29-30). The Government then spends three pages distinguishing *Jefferson*, *supra*, where the court held in part that the official act in issue must be undertaken by a federal official. Opp. at 57-59. But Mr. Hana's argument is more nuanced; as explained in his moving brief, any action by Senator Menendez with respect to the USDA is not an "official act" under *McDonnell* because it fails to satisfy the question or matter element. Hana Br. 17-18. That is, IS EG Halal's status was not a matter pending before any public official or United States department or agency, as the Indictment alleges that "the Government of Egypt granted" the halal contract. Ind. ¶ 24. The Government does not respond to this argument at all, or explain how Mr. Hana's contract with a foreign nation constitutes a "question or matter" pending before a public official akin to "a lawsuit before a court, a determination before an agency, or a hearing before a committee," as required under *McDonnell*. 579 U.S. at 567. Further, to the extent that the Government argues "the USDA's formal requests that Egypt suspend or reverse course—including one that Official-1 personally signed [which is not alleged in the Indictment]—concerned a core aspect of the agency's federal authority and role, and represented the considered and official position of the

Executive Branch," Opp. at 58, under *McDonnell*, the "'question, matter, cause, suit, proceeding or controversy' must be more specific and focused than a broad policy objective," 579 U.S. at 578. Thus, the Indictment fails to allege the essential question or matter element with respect to Senator Menendez's alleged phone call to the USDA. Indeed, as Mr. Hana showed in his moving brief, merely contacting another government agency does not, as a matter of law, meet the decision or action element. *See United States v. Boyland*, 862 F.3d 279, 290 (2d Cir. 2017) (contacting another government agency does not constitute an official act).

Finally, regarding Senator Menendez's alleged attempts to interfere with a state criminal investigation and prosecution, the Government addresses only the Senator's argument that a public official cannot be prosecuted for federal bribery unless the official act in question is within the authority of the charged federal official as opposed to a state official. Opp. at 65-71 (citing Menendez First Mot. 19-20). But, again, this completely elides Mr. Hana's argument, *see* Hana Br. at 18-19 (discussing the alleged scheme to "disrupt" two New Jersey criminal matters), that the Indictment fails to sufficiently allege that the Senator took an official action or decision on the two criminal matters because it charges only that he contacted Official-2 in an attempt to advise and pressure him regarding that matter. *Id.* (citing Ind. ¶ 44(c)). The Government alleges nothing about the substance or context of the conversations and, under *McDonnell*, simply "[s]etting up a meeting" or "talking to another official" is not enough. 579 U.S at 567, 574.

Further, the Government does not address Mr. Hana's argument that "advice" as official action is best understood as occurring between superiors and subordinates, which is not the relationship between Senator Menendez and Official-2. *See* Hana Br. at 19 (citing *McDonnell*, 579 U.S. at 572 (noting that the Supreme Court in *United States v. Birdsall*, 233 U.S. 223, 234 (1914), found "official action on the part of subordinates where their superiors would necessarily

rely largely upon the reports and advice of subordinates . . . who were more directly acquainted with the facts and circumstances of particular cases")). Additionally, the factual allegations in the Indictment do not establish that the Senator "pressured" Official-2 because it alleges nothing about the substance of the conversation. *See* Hana Br. at 19 (citing *United States v. Silver*, 864 F.3d 102, 120-21 (2d Cir. 2017) ("*Silver I*") (noting that evidence of exerting pressure requires some action, such as threatening to withhold funding)); *cf. Lee*, 919 F.3d at 354 (finding indictment sufficiently alleged an attempt to pressure or advise another official to perform officials acts where the indictment included transcript of conversation between the defendant public official and prosecutor in which the defendant stated: "I'm not trying to influence you, you can't say I'm trying to influence you. I'm trying to make you think. That's all I'm trying to do; just trying to make you think."). The Government fails to meaningfully rebut these points.

In sum, the Indictment fails to allege an agreement for the Senator to undertake or promise to undertake an "official act" as to the schemes involving Mr. Hana, and the Government's opposition fails to argue otherwise.[4] Therefore, Counts 1 and 2 must be dismissed for failing to charge an offense as to Mr. Hana.

### C. The Indictment Does Not Allege The Essential *Quid Pro Quo* Element Of Counts 1 And 2, Which Is Required By The Controlling Precedent That The Government Asks This Court To Ignore.

After *McDonnell*, the law is clear that the *quid pro quo* element of federal bribery and honest services fraud—*i.e.*, the underlying offenses charged in Counts 1 and 2—requires that the Government (1) "identify" the "particular *question* or *matter*" that the official (here, Senator Menendez), allegedly promised to, or did, influence and (2) allege that the official agreed to influence that "particular question or matter" at the time he accepted, or agreed to accept, the

---

[4] The Government concedes that the Indictment does not allege an offense for breach of official duty. Opp. at 71.

purportedly corrupt payment or bribe. *United States v. Silver*, 948 F.3d 538, 553, 556 (2d Cir. 2020) ("*Silver II*") ("[A]t the time the bribe is made, the promised official act must relate to a properly defined question, matter, cause, suit, proceeding or controversy.") (emphasis in original).[5] The Indictment in this case alleges a number of supposedly corrupt payments or bribes to Senator Menendez by various individuals over the course of several years, and then alleges that during this same time period Senator Menendez supposedly promised to perform (or did perform) certain official acts. This is deficient, as a matter of law, because it is missing the critical element: an agreement between Mr. Hana and Senator Menendez to have Senator Menendez influence (or promise to influence) *particular* questions or matters at the time he allegedly accepted (or agreed to accept) the corrupt payments or bribes. *Id.* at 553 ("[T]he public official must, at minimum, promise to influence a 'focused and concrete' 'question or matter.'" (quoting *McDonnell*, 579 U.S. at 569-70)).

The Government does not—because it cannot—seriously dispute that the above *quid pro quo* element must be satisfied for Counts 1 and 2. Opp. at 72-74. Other than twice-quoting Mr. Hana's brief, *id.* at 72, in one hundred and ninety-six (196) pages of briefing, the Government completely ignores its burden—established by the case law—to "identify" the "particular question or matter" that Senator Menendez allegedly promised to, or did, influence; in essence, asking this Court to rule on Mr. Hana's motion to dismiss Counts 1 and 2 as if the *McDonnell* and *Silver* opinions did not exist. Consistent with the approach that this Court should just ignore *McDonnell* and *Silver*, the Government instead makes three arguments: (1) that despite the fact that it sought

---

[5] As explained in Mr. Hana's moving brief, and not disputed by the Government, this *quid pro quo* requirement applies equally where an indictment charges a conspiracy to commit federal bribery or a conspiracy to commit honest services fraud predicated upon a bribery theory, as in this case in Count 2. *See* Hana Br. at 22.

and obtained an Indictment that is 50 pages and 86 paragraphs, the motion to dismiss should be denied simply because Counts 1 and 2 track the statutory language of the statutes charged; (2) that a bribery scheme can involve multiple payments and official acts—a non-contested, but equally inconsequential position; and (3) that the Indictment supposedly charges a "single scheme"—a position that completely disregards the reality that the "as the opportunities arise" theory of prosecuting bribery—which appears to be the Government's theory here—is only permissible to the extent it comports with *McDonnell* and the recent Second Circuit cases directly addressing this theory post-*McDonnell*, which this Indictment does not. As a result, each of the Government's arguments fails for the reasons set forth in Mr. Hana's moving brief and further addressed below.

*First*, the Government's only response to the factual deficiencies in the Indictment is that it is not required to provide statements of essential facts to support the offenses charged. Opp. at 72-73. Instead, according to the Government, an indictment is sufficient if it merely tracks the language of the statute. *Id*. As discussed, *supra*, the Government is incorrect. Ample case law instructs that an indictment has two requirements: first, as the Government acknowledges, the indictment must state the elements of the offenses charged, but second, and the focus of Mr. Hana's argument, the indictment must inform the defendant and the court of the facts alleged in support of the offenses charged.

The Government simply ignores controlling authority on this subject which directly contradicts its position. In the Second Circuit, "[t]he statements of essential facts and statutory citation are separate requirements, and a deficiency in the factual allegations cannot be cured by a statutory citation in the same count." *United States v. Dupree*, 870 F.3d 62, 70 (2d Cir. 2017). The separate factual requirement promotes two significant purposes: "to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if

one should be had," *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010), and to enable the defendant to "make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause," *United States v. Seeger*, 303 F.2d 478, 482 (2d Cir. 1962).

The court should disregard the out-of-circuit cases cited by the Government to the extent those cases contradict the above binding Second Circuit authority.[6] Opp. at 33-34. In any event, the only Court of Appeals opinion cited does not actually support the Government's position. In *United States v. Lee*, the Sixth Circuit recognized that "the facts alleged [in the indictment], taken together, [must] support the elements of the charge." 919 F.3d at 353-54. As discussed above, the court considered the facts alleged in the indictment and concluded that the indictment "contain[ed] sufficient facts to notify Defendant of the charges against her and enable her to plead double jeopardy if charged for the same crime and facts in a future proceeding." *Id*. at 354-55. The standard applied by the Sixth Circuit is no different than the standard advocated for here.

The Government's reliance on *United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998), is similarly misplaced for two reasons. Opp. at 73. One, the Second Circuit emphasized in that case that "[t]o the extent that the district court looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial to satisfy the Hobbs Act's jurisdictional element . . . such an inquiry into the sufficiency of the evidence was premature." *Alfonso*, 143 F.3d at 776. Here, the Government has returned, in its own words, "a detailed, 50-page Indictment," Opp. at 13, and Mr. Hana is not asking the Court to look beyond

---

[6] The district court cases cited by the Government are not consistent with Second Circuit authority and, therefore, should not be relied upon. Opp. at 33-34 (citing *United States v. Keleher*, 505 F. Supp. 3d 41 (D.P.R. 2020); *United States v. Oaks*, 302 F. Supp. 3d 716 (D. Md. 2018); *United States v. Williams*, No. 16-cr-00003, 2017 WL 1030804 (N.D. Ga. Mar. 16, 2017)).

the face of that Indictment or to draw any inferences to reach the (correct) conclusion that the Indictment fails to allege the essential facts to support the offenses of bribery or honest services fraud. *See United States v. Benjamin*, No. 21-cr-706, 2022 WL 17417038, at *15-17 (S.D.N.Y. Dec. 5, 2022) (dismissing bribery and honest services fraud counts where the facts alleged in the 14-page speaking indictment did not constitute a crime). Two, the indictment in *Alfonso* alleged that the defendants conspired to commit a robbery in violation of the Hobbs Act and provided the specific time and place of the robbery that the defendants were alleged to have conspired to commit. 143 F.3d at 776. Although succinct, the Second Circuit concluded that the indictment was sufficiently specific to permit the defendants to prepare their defenses and to bar future prosecutions for the same offense. *Id*. at 776-77. That same specificity is entirely lacking from the Indictment here despite its length. Case law makes clear that "the relevant point in time in a *quid pro quo* bribery scheme is the *moment at which the public official accepts the payment*." *Silver II*, 948 F.3d at 556 (emphasis in original). At that time, the public official must have understood that he was expected, in exchange for the payment, to take official action on a "particular question or matter." *Id*. at 558. The Indictment here fails because it does not allege that at the time an alleged payment was accepted or promise was made, it was in order to influence a particular matter or question.

To be clear, Mr. Hana is not disputing (at this stage) the facts alleged in the Indictment. As argued throughout Mr. Hana's moving brief, the Indictment, on its face and even accepting all of the allegations as true, is legally insufficient to establish a criminal offense. *See, e.g.*, Hana Br. at 25, 30; *see Heicklen*, 858 F. Supp. 2d at 262 ("Because federal crimes are solely creatures of statute, a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute."). The Indictment intermingles several supposed corrupt

payments that were given at various times and several alleged promises by Senator Menendez to assert his influence over different matters. *See* Hana Br. at 25. But the Indictment includes absolutely no facts connecting the two—*i.e.*, supporting that, at the time those supposed bribes were given or promised, those alleged bribes were paid in order to influence a particular matter or question—the requirement that is necessary to satisfy the essential *quid pro quo* element of the offense. When compared to other similar indictments in this District, the deficiencies raised by Mr. Hana are glaring. *See* Hana Br. at 27-29 (discussing Superseding Indictment (ECF No. 32) Apr. 23, 2015, *United States v. Silver*, 15-cr-93 (S.D.N.Y.) and Superseding Indictment (ECF No. 321) Sept. 19, 2017, *United States v. Percoco*, 16-cr-776 (S.D.N.Y.)). Thus, "dismissal is required where [as here] the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute." *Aleynikov*, 737 F. Supp. 2d at 176-77; *see also Pirro*, 212 F.3d at 88, 91, 93 (affirming the district court's holding that the indictment, which alleged that the defendant "willfully and knowingly made and subscribed a false 1992 tax return for [p]roperties in violation of [26 U.S.C. §] 7206(1)," "failed to sufficiently allege the second element of a [§] 7206(1) violation, namely a material falsehood or an omission that amounted to a material falsehood," as "the indictment fail[ed] to allege the essential facts constituting the offense charged"); *Pacione*, 738 F.2d at 568-69, 572 (affirming district court's dismissal of the indictment charging the defendant "with violations of the extortionate credit transactions statute" where "the totality of facts asserted by the government to be provable against [the defendant did] not establish a violation of the statute," as the defendant was not alleged to have made "threats of any sort to anyone").

*Second*, the Government mischaracterizes Mr. Hana's position concerning the various payments and acts alleged in the Indictment. Opp. at 73. Mr. Hana does not dispute that a *quid*

*pro quo* may involve multiple corrupt payments and multiple official acts. *See id*. What Mr. Hana does argue, and the Government does not address at any point, is that an Indictment must allege that Senator Menendez agreed to accept those alleged corrupt payments specifically in order to influence a focused, concrete, and particular question or matter. Hana Br. at 25 (citing *Silver II*, 948 F.3d at 577). No such allegation is included here. Instead, the Indictment uses the same allegedly corrupt payments in different contexts and at different times throughout to allege that they were made to supposedly influence different questions or matters. For example, as discussed in the moving brief, the "low-or-no-show" job that Mr. Hana supposedly promised Mrs. Menendez seems to be alleged in connection with both the scheme to influence Senator Menendez to assist Egypt and to ask Senator Menendez to use his influence to protect Mr. Hana's business. Ind. ¶¶ 19, 26, 27-31, 34. Similarly, the $23,000 payment to Mrs. Menendez's mortgage company references both an alleged scheme to assist Egypt and to assist Mr. Hana. However, the Indictment does not allege that there was an agreement that at the time this payment was accepted, Senator Menendez understood that its purpose was to influence any particular matter or question. *Id.* ¶ 32. And with respect to the two exercise machines and air purifier that Mr. Hana allegedly gave to the Senator, the Indictment makes literally no attempt to identify any particular matter or question that Senator Menendez supposedly agreed to influence as a result. *Id.* ¶ 37. The Indictment's disconnected approach—which the Government reiterates in its brief—is, as a matter of law, insufficient to properly allege the *quid pro quo* that is an essential element of both Counts 1 and 2 after *McDonnell* and *Silver*. And it is certainly insufficient to give Mr. Hana notice of the charges he must defend at a trial.

*Third*, the Government relies to a great extent on the claim that the Indictment charges *one* single scheme and, with respect to this argument, appears to take the position that doing so excuses

it from having to charge the essential element of a *quid pro quo* required under *McDonnell* and *Silver*. Opp. at 74 ("But where the facts demonstrate there was a single scheme, a grand jury can—and here did—allege a single scheme."). Setting aside the fact that this argument of a single scheme is irreconcilable with the actual allegations of the Indictment, *see* Section III, *infra*, to the extent that it was viable pre-*McDonnell*, it is clearly no longer an accurate representation of the law or of what the government must allege to properly charge a conspiracy to commit bribery or honest services fraud.

As Mr. Hana's moving brief makes clear, the Second Circuit has unequivocally held that in light of *McDonnell*, where the government claims that payments were made to influence certain action—*i.e.*, when the government relies upon the "as the opportunities arise" theory—the government must allege that "at the time of the payment" or payments, the official (here, Senator Menendez) "understood that [he] was expected as a result of the payment to exercise particular kinds of influence . . . as specific opportunities arise." *United States v. Reichberg*, 5 F.4th 233, 247 (2d Cir. 2021); *see also Silver II*, 948 F.3d at 553 (explaining that the government has to allege that "the public official must, at minimum, promise to influence a 'focused and concrete' 'question or matter'" as the opportunity to do so arises (quoting *McDonnell*, 579 U.S. at 569-70)); *id.* at 557 ("[A] promise . . . to 'benefit the payor,' . . . is so lacking in definition or specificity that it amounts to no promise at all. And, absent a promise, there is no *quid pro quo*."). That is, "[w]hen the government proceeds under the 'as opportunities arise' theory of bribery, it must prove that a public official received a payment to which he was not entitled and that, at the time of the payment, the payor and the payee understood that [the payee] was expected as a result of the payment to exercise particular kinds of influence . . . as specific opportunities arise." *Reichberg*, 5 F.4th at 247. As a result of this clear and unequivocal guidance from the Second Circuit, the Government's

argument that it is sufficient to simply charge a single scheme in which allegedly corrupt payments were made and then that at some point (and in unconnected ways) official actions were supposedly promised or taken is not—as a matter of law—sufficient to properly charge a conspiracy to commit federal bribery or honest services fraud.

In sum, the Government ignores the basic requirements set forth in *McDonnell* and subsequent Second Circuit case law, and asks this Court to do the same. The Court should reject the Government's position because it has failed to identify the required *quid pro quo* element of the alleged scheme(s)—*i.e.*, that Senator Menendez agreed to influence a "particular question or matter" at the time he accepted, or agreed to accept, the purportedly corrupt payment or bribe. *Silver II*, 948 F.3d at 553; *Reichberg*, 5 F.4th at 247; *McDonnell*, 579 U.S. at 569-70. Counts 1 and 2 cannot, then, stand.

## II. COUNT 4 OF THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE TO CHARGE AN OFFENSE.

### A. Count 4 Of The Indictment Fails To Properly Charge A Conspiracy To Violate 18 U.S.C. § 219.

It is well settled that, as Mr. Hana has shown, Hana Br. at 49, "[a]n indictment is impermissibly defective if it fails to 'set out all of the essential elements of the offense charged,'" *United States v. Carrano*, 340 F. Supp. 3d 388, 395 (S.D.N.Y. 2018) (Stein, J.) (quoting *United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012)), and is, additionally, only sufficient if it "fairly informs a defendant of the charges against him," *United States v. Cornelson*, 609 F. Supp. 3d 258, 263 (S.D.N.Y. 2022). Here, Count 4 of the Indictment, which charges Mr. Hana with conspiring to "have" Senator Menendez act as an "agent of a foreign principal," fails to properly plead a violation of 18 U.S.C. § 371. *See* Hana Br. 47-54. Specifically, the Indictment does not allege that Mr. Hana conspired to form an agency relationship between Senator Menendez and a foreign principal—the essence of the underlying offense under § 219. That is because the

Indictment does not identify the "foreign principal" who purportedly sought to control or direct Senator Menendez's actions, let alone that Mr. Hana willfully and knowingly conspired to facilitate an agency relationship between that unidentified "foreign principal" and Senator Menendez. *Id.* at 53-54.

In response, the Government, though it summarizes the Indictment's allegations, Opp. at 2-4, does not even try to address Mr. Hana's argument that Count 4 of the Indictment "fails to set out all of the essential elements of" a conspiracy to violate § 219, as necessary to sustain the charge, *see* Hana Br. at 49-54. Indeed, rather than identifying the "foreign principal" who supposedly sought to control or direct Senator Menendez's actions—the essential element of the underlying § 219 violation, *see* Hana Br. at 51-54—the Government's opposition just redrafts its Count 4-related allegations to reference only benefits to "Egypt" and the "Government of Egypt." *See* Opp. at 2-4. But, that is not what the Indictment says: it alleges that five unnamed "Egyptian officials," along with unspecified Egyptian entities, attempted to direct Senator Menendez's actions. *See* Ind. ¶ 19 (Mr. Hana "arranged a series of meetings and dinners with MENENDEZ . . . at which Egyptian officials raised, among other things, requests related to foreign military sales and foreign military financing"); *id.* at ¶ 7 (Mr. Hana "maintained close connections with Egyptian officials" and "Egyptian military and intelligence officials" with whom he communicated via text message "pertaining to various topics, including MENENDEZ, and including requests and directives for HANA to act upon"); *id.* ¶ 16 ("HANA and NADINE MENENDEZ worked to introduce Egyptian intelligence and military officials to MENENDEZ for the purpose of establishing and solidifying a corrupt agreement . . . to benefit the Government of Egypt, HANA, and others"); *see also* Hana Br. at 52-53; n.19. However, to the extent the Indictment suggests that these "Egyptian officials" are the "foreign principals" directing the Senator's actions, *see, e.g.*, Ind. ¶ 6 (Mrs. Menendez

"received requests" and "conveyed information and requests" from "multiple Egyptian officials" to Senator Menendez), they do not in fact fall under FARA's definition of a "foreign principal." 22 U.S.C. § 611(b).[7]

Having failed to plead an essential element of a § 219 violation—identifying a "foreign principal," or indeed, *anyone*, who sought to direct Senator Menendez's actions—the Indictment *a fortiori* fails as a matter of law to plead that Mr. Hana willfully and knowingly entered into an agreement to violate § 219—*i.e.*, an agreement to facilitate an agency relationship between that unidentified "foreign principal" and Senator Menendez. *See* Hana Br. at 51-52 (citing *United States v. Martin*, 411 F. Supp. 2d 370, 372-75 (S.D.N.Y. 2006); *Carrano*, 340 F. Supp. 3d at 395). Again, the Government does not address these critical pleading deficiencies in its opposition, never going beyond its summary of the Indictment and recitation of the statutory language to oppose this motion. Opp. at 2-4. But for the reasons provided in Mr. Hana's moving brief and addressed further below, a bare recitation of § 219's statutory language, paired with nebulous allegations of arranged social outings, *see* Hana Br. at 50, is insufficient to support the conclusory charge that Mr. Hana conspired to violate § 219 by agreeing to have Senator Menendez act as an agent of a foreign principal. *Id*. at 53-54 (citing *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021) ("To satisfy the Fifth Amendment's Grand Jury Clause, an indictment must contain the elements

---

[7] Three provisions of FARA, under 22 U.S.C. § 611(b), define "foreign principal." The "Egyptian officials" described in the Indictment, however, do not fit under any of these categories. They are five separate individuals, not "a government of a foreign country" or a "foreign political party"; nor does the Government allege that they are a "combination of persons organized under the laws of or having its principal place of business in a foreign country" or even "outside of the United States" at the points in time ostensibly essential to the Indictment's Count 4 allegations, and they are definitely not "a citizen of and domiciled within the United States." Indeed, the interactions and instances underlined in the Indictment involve meetings between the "officials" and Senator Menendez within the United States. *See* Ind. ¶¶ 19-21. Thus, the Indictment simply does not allege the essential element of a foreign principal.

of the offense charged and fairly inform the defendant of the charge against which he must defend."); *United States v. Malka*, 602 F. Supp. 3d 510, 557 (S.D.N.Y. 2022) ("[T]he purpose of an indictment is to provide notice to the defendant of the charges against him which the Government must prove at trial beyond a reasonable doubt before a jury convicts him.")). Accordingly, the Indictment fails to state an offense under Count 4 as to Mr. Hana and should be dismissed.

> **B.      As Applied To Mr. Hana And Alleged In The Indictment, 18 U.S.C. § 219 Is Also Unconstitutionally Vague.**

It is undisputed that a penal statute must, under the void-for-vagueness doctrine, "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Opp. at 86 (quoting *United States v. Dawkins*, 999 F.3d 767, 787 (2d Cir. 2021)); Hana Br. at 55 (quoting *United States v. Requena*, 980 F.3d 30, 39 (2d Cir. 2020)).  Notwithstanding this standard, the Government does not meaningfully address it in its opposition.  *See* Hana Br. at 53-54, 56-59; Opp. at 86-88.  Specifically, the Government fails to address in any way how an "ordinary" person in Mr. Hana's position could conceivably have fair notice of *either* the possibility of being charged under § 219 despite being neither a "foreign principal," an "agent" thereof, nor a "public official," *or* how someone in Mr. Hana's position could possibly read the Government's allegations in the Indictment and, even taking each one as true, appreciate how those activities could render him liable under § 219.  Simply put, § 219, as applied to Mr. Hana, and as charged in the Indictment, fails to make it "reasonably clear at the relevant time that [Mr. Hana's] conduct was criminal," as is necessary to provide him fair and constitutionally adequate notice under the void-for-vagueness doctrine.  *See* Hana Br. at 56-59 (citing *United States v. Napout*, 963 F.3d 163, 181 (2d Cir. 2020) among other cases)).

Instead of addressing the merits of Mr. Hana's motion, the Government tries to avoid them by first arguing that Mr. Hana's as-applied challenge is premature until after trial. Opp. at 86 (citing *United States v. Raniere*, 384 F. Supp. 3d 282, 320 (E.D.N.Y. 2019)). But, courts can—and often do—address as-applied vagueness challenges at the motion to dismiss stage. *See*, *e.g.*, *United States v. Smith*, 985 F. Supp. 2d 547, 587, 592-93 (S.D.N.Y. 2014), *aff'd sub nom. United States v. Halloran*, 664 F. App'x 23 (2d Cir. 2016) (deciding a pre-trial motion presenting as-applied vagueness challenge, as such a motion "requires that a court address only the application of the challenged statute to the person challenging the statute based on the charged conduct"); *United States v. Nicolo*, 523 F. Supp. 2d 303, 307-11 (W.D.N.Y. 2007) (considering both facial and as-applied vagueness challenges before trial); *see also United States v. Martin-Escobar*, 622 F. Supp. 3d 1057, 1061-63 (N.D. Ok. 2022) (same); *United States v. DeFrance*, 577 F. Supp. 3d 1085, 1102 (D. Mont. 2021) (same).

Nor is there any reason to await a trial to decide this motion, as Mr. Hana does not dispute any of the factual contentions in the Indictment. Rather, Mr. Hana argues both that the conduct, as alleged, does not constitute a crime under § 219, *see* Section II.B., *supra*; Hana Br. at 47-54, and that if he were to be convicted on these exact facts (assumed to be true on this motion), his conviction would be unconstitutional because he would not have had fair warning of the illegality of his actions. *See* Hana Br. at 55-59 (citing, among other cases, *Rubin v. Garvin*, 544 F.3d 461, 468 (2d Cir. 2008) (agreeing with plaintiff's vagueness argument insofar as the "public charge regulation" under which plaintiff was charged "gave him no opportunity to know his conduct was prohibited")); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) (reiterating that "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed," and that "[s]uch restraint is

particularly appropriate [] where the act underlying the conviction—'persua[sion]'—is by itself innocuous."); *Kolender v. Lawson*, 461 U.S. 352, 361 (1983) (finding a statute void-for-vagueness as "it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute"); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1231 (2018) (Gorsuch, J., concurring in part and concurring in the judgment) (agreeing with the majority that the Immigration and Nationality Act's definition of "crime of violence" is void-for-vagueness, as it subjects both defendants and judges to impermissible guesswork as to what such a crime constitutes in the "ordinary case"). All of this can—and should—be addressed now.

The Government, however, contends that § 219, detached from any consideration of the Indictment's use of the statute, or its application to Mr. Hana, is sufficiently intelligible to defeat a vagueness challenge. Specifically, the Government argues that § 219, which incorporates terms of art defined under FARA *without* FARA's key registration requirement (as discussed in the moving brief, Hana Br. at 57-59), is in fact rendered "more straightforward, not less" by virtue of that omission. Opp. at 87. In support of that notion, the Government misleadingly quotes language in *United States v. Michel*, No. 19-cr-148-1, 2022 WL 4182342, at *5 (D.D.C. Sept. 13, 2022), stating that the "crime defined in [FARA's enforcement provision,] 22 U.S.C. § 618(a) . . . is, and has been since its inception, straightforward and sufficiently precise." *Id.* In fact, the court in *Michel* stated that "FARA's *registration requirement* . . . is, and has been since its inception, straightforward and sufficiently precise." *Michel*, 2022 WL 4182342, at *5 (emphasis added). But that does not address Mr. Hana's claim that the plain language of § 219, which—again—*precludes* registration under FARA while incorporating terms of art defined under FARA in a way that impermissibly allows for multiple interpretations, is unconstitutionally vague as applied to him and as charged in this Indictment.

The Government also suggests that the moving brief has "manufacture[d] confusion where none can reasonably exist" within § 219 as drafted, emphasizing only that FARA—a distinct statutory scheme under a different title of the United States Code, *see* Hana Br. at 57-59— "consistent[ly]" uses the term of art "agent of a foreign principal." Opp. at 87. But, the fact that FARA repeatedly invokes "agent of a foreign principal" simply does not provide clarity to § 219. Rather, in declaring that it applies to "[w]hoever, being a public official, is or acts as an agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938," § 219 leaves entirely unclear to an ordinary person whether the individual who is "required to register under FARA" is the "public official" who "is or acts as an agent of a foreign principal" and thus is "required to register" under FARA, on the one hand, or whether it is a violation of § 219 if the public official acts as the "agent of a foreign principal," which foreign principal is required to register on the other.[8] In any event, neither of the distinct and equally plausible readings of § 219

----

[8] Nor, as discussed in the moving brief, does the Indictment state for whom Senator Menendez acted as the agent, who himself was required to register, and the Government, in its brief, does nothing to address this obvious ambiguity. *See* Hana Br. at 51-54.

FARA's definitions of key terms of art used in § 219 confuse the issue even further: under 22 U.S.C. § 611, an individual could conceivably fall under both categories of "agent of a foreign principal" and "foreign principal." Specifically, a person may engage in activities bringing them under FARA's definition of "agent of a foreign principal," by virtue of acting "at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised . . . in whole or in major part by a foreign principal," *id.* at § 611(c)(1), such as "a government of a foreign country," *id.* § 611(b)(1). That same person thus may equally be a "foreign principal" under the Attorney General's regulations, which define that term to include "a person any of whose activities are directed or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal as that term is defined in section 1(b) of the Act." 28 C.F.R. § 5.100(a)(8).

The Government's suggestion that § 219's cross-reference to FARA "is obviously not a basis for invalidation," Opp. at 87 n.28, is unavailing. The Government cites to *United States v. Stokes*, 726 F.3d 880 (7th Cir. 2013), for that proposition despite the fact that the statutory cross-reference alleged to be unconstitutionally vague in that case bears no resemblance to § 219's muddled incorporation of FARA. Specifically, the Seventh Circuit held that 18 U.S.C. § 2423(b)'s (since

26

are negated (or, for that matter, supported) by reference to FARA and its associated regulations; that § 219 both mentions and precludes the possibility of registering under FARA further compounds the complete confusion that is this statute.[9]

Because § 219 is unconstitutionally vague, particularly as applied to Mr. Hana in the Indictment, Count 4 should be dismissed. *See* Hana Br. at 59 (citing *United States v. Miselis*, 972 F.3d 518, 529 (4th Cir. 2020)); *see generally Copeland v. Vance*, 893 F.3d 101, 110 (2d Cir. 2018) (stating that in the context of an "as applied" challenge, the question is whether a statute "cannot constitutionally be applied to the challenger's individual circumstances"). That said, as the Supreme Court held in *Johnson v. United States*, a vague statute cannot be saved "merely because there is some conduct that clearly falls within the provision's grasp." 576 U.S. 591, 602-03 (2015) (squarely rejecting the dissent's contention that "a statute is void for vagueness only if it is vague in all its applications"). Either way, Count 4 should be dismissed as against Mr. Hana on vagueness grounds, here and now.

---

amended) cross-reference to chapter 109A, 18 U.S.C. §§ 2241-2244, "though perhaps awkwardly phrased, does not introduce confusion[]" where the statutes read together criminalize a finite number of clearly circumscribed activities. *Stokes*, 726 F.3d at 895-96. By contrast, far beyond mere "awkward phrasing," § 219's cross-reference to a term of art defined in a different title of the United States Code, within a statutory scheme whose central purpose of creating a registration requirement is entirely irrelevant to § 219's function, further confuses the meaning of § 219, already opaque as it is.

[9] Indeed, rather than clarifying § 219's incorporation of FARA, the Indictment's references to FARA's registration requirement, Ind. ¶¶ 11-15, only confuse the allegations before the Court further and undermine the notice that indictments are meant to provide, by failing to explicitly state (1) that § 219 is not a disclosure statute and does not incorporate any registration requirement, and (2) that no named or unnamed co-conspirator has violated FARA, or falls under FARA's definitions of "foreign principal" or "agent" thereof. *See* Hana Br. at 54.

### C.    18 U.S.C. § 219 And FARA Do Not Permit Charging Mr. Hana With Conspiracy Liability.

In his moving brief, Mr. Hana demonstrated that he could not be charged with conspiring to violate 18 U.S.C. § 219 because the statute evinces an "affirmative legislative policy" that only public officials can be charged with such a violation, while FARA itself evidences a similar policy, *i.e.*, that only agents of a foreign principal can be punished under that statute.  Hana Br. at 39-46.  The Government responds that § 219 does not "contain[] an affirmative legislative exception of any scope."  Opp. at 84.  This argument is disloyal to both the facts and the law.[10]

As Mr. Hana's moving brief demonstrated, a number of indicia powerfully demonstrate that only public officials can violate § 219.  Not only does the statute's text indicate its circumscribed focus on public officials, and only public officials, but the definitions of the terms "public official" and "agent of a foreign principal" evidence careful line-drawing by Congress, which, in passing FARA, enacted not just a series of criminal penalties but an overall regulatory regime.  As Mr. Hana showed, allowing for vicarious criminal liability (via conspiracy or accomplice proscriptions) for persons other than "public officials" under § 219 would upset that meticulously drawn regulatory scheme, allowing prosecutors to sweep up allegedly bad actors whose conduct brings them close enough in prosecutors' eyes to those actually regulated by the statute, but who could not have known, to the extent that the Constitution requires, that it might be applied to them.  *See* Sections II.B-C, *infra*.

---

[10] The Government writes that the affirmative legislative policy exception is "rarely applied."  Opp. 83.  That is true, but only because it is only rarely raised, for good reason:  as Mr. Hana showed, the vast majority of federal criminal statutes target not specific classes of individuals (like the Mann Act, the kingpin statute, the FCPA, and § 219), but instead "whoever," "a person who," or "any person" who violates the statute.  Hana Br. 44-45.  In any event, the Government ignores at least six applications of the doctrine by courts that are cited in Mr. Hana's brief.  Of course, this is six more cases than there have been prosecutions under what the Government calls "the unlikely vessel of Section 219."  Opp. at 86.

Beyond the statutory text, the Government also ignores FARA's text and structure, which clearly demonstrate that only agents of foreign governments are regulated by its statutory scheme. That is, FARA creates a carefully organized set of penalties for specific individuals related to foreign governments, their corporate agents, and those who might otherwise be required to register as foreign agents, but under the statute do not. Hana Br. at 45. Allowing accomplice and conspiracy liability to overwrite FARA's careful balancing would transform the list of functions that qualify one as an "agent of a foreign principal" under 22 U.S.C. § 611(c) from a narrowly drawn means of regulating foreign agents into a much broader and less concrete set of activities about what it means to be an agent, leaving only a vague and uncertain sense of what it means to be an agent. *Cf. United States v. Shear*, 962 F.2d 488, 495-96 (5th Cir. 1992) ("We refuse to upset the careful balancing that Congress established . . . by judicially imposing aider and abettor liability. . . . It [] strikes us as unseemly and unwise for the courts and the Executive Branch to bring in through the back door a criminal liability so plainly and facially eschewed in the statute creating the offense."). In addition, the Government ignores the telling comparison between 18 U.S.C. § 201, which, in criminalizing bribery of "public officials," explicitly punishes both public officials taking bribes, and members of the public bribing those officials. As compared with § 201, § 219 is asymmetrical: it only targets public officials, leaving everyone else unpunished.

Finally, Mr. Hana noted the stark contrast in potential penalties for violations of § 219 and § 371 (the general federal conspiracy statute). Section 219 provides for a maximum sentence of two years, while § 371 provides for up to five years' imprisonment; this shows, as Mr. Hana demonstrated in his brief, that § 219 is focused on punishing public officials acting as foreign agents; it would, he argued, make little sense to punish non-public officials who conspired more than the public officials at whom the statute was aimed. Hana Br. at 46. The Government

misinterprets this reasoning as an argument that a defendant can never be convicted of conspiracy when the penalty for the underlying offense is less than that provided by the conspiracy statute. That, of course, is not Mr. Hana's position. Rather, Mr. Hana contends that this gap between the statutes' potential penalties is evidence of Congress's intent in rendering § 219 as narrow and targeted as possible, a position that is supported by common sense: while not dispositive, it would certainly be strange if Mr. Hana could be subject to a five-year sentence for conspiring to have Senator Menendez violate a statute that Mr. Hana could never himself violate, while Senator Menendez himself would only be subject a two-year sentence.[11] The absurdity of this position is, as always, relevant to the appropriate interpretation of § 219: if it does not make sense, then it is unlikely to be what Congress intended.[12] *Cf. SEC v. Rosenthal*, 650 F.3d 156, 162 (2d Cir. 2011) ("It is, to be sure, well-established that [a] statute should be interpreted in a way that avoids absurd results.").

The Government repeatedly implies that the affirmative legislative policy exception only applies in the "unusual circumstance" where "Congress . . . leave[s] some type of participant in a

---

[11] The Government states that "Congress has acted well within its rights in concluding that a conspiracy sometimes quite outweighs, in injury to the public, the mere commission of the contemplated crime," but does not explain how Senator Menendez conspiring to act on behalf of a foreign government would be more injurious to the public than him actually acting on their behalf. Opp. at 85.

[12] The Government cites to 26 U.S.C. § 7206, which provides for three years' imprisonment for subscribing to a fraudulent tax return, as an example of an offense where the potential sentence for committing the offense is lower than the potential sentence for conspiring to commit the offense. Opp. at 85. But, of course, § 7206 applies to "[a]ny person who . . . [w]illfully makes and subscribes any return." A § 7206 defendant would therefore have no argument that permitting a conspiracy prosecution would undermine Congress's intent to target a particular class of person through a narrowly drawn statute. Moreover, a conspiracy to violate § 7206 could also be charged under § 371's "conspiracy to defraud the United States" prong, indicating a Congressional intent (not present here) to permit broad conspiracy liability for persons who conspire to commit tax fraud. *See, e.g.*, *United States v. Notch*, 939 F.2d 895, 900-01 (10th Cir. 1991) (conspiracy to violate § 7206 can be prosecuted under § 371's "defraud" provision).

criminal transaction unpunished." Opp. at 83. This misreads *Hoskins*, which explicitly rejects the Government's arguments. There, the Government argued for a narrow reading of precedent, contending that the affirmative legislative policy exception only applies when "the defendant's conduct is inherent in the substantive offense" or when "a certain type of defendant's conduct is 'frequently, if not normally' involved in an offense." *Hoskins*, 902 F.3d at 81-82. The Second Circuit concluded that this understanding of the affirmative legislative policy exception was too narrow, and that courts must engage in a more holistic analysis of a statute's text and structure to determine whether the exception applies. Moreover, the Government is just wrong in stating that a finding that conspiracy liability does not apply here would be "the only such exemption for the general public." Opp. at 86. But *Hoskins* itself held that "Congress did not intend for persons outside of the [FCPA's] carefully delimited categories to be subject to conspiracy or complicity liability." 902 F.3d at 83-84. That, of course, is precisely what Mr. Hana asserts here.

The Government concludes by suggesting that § 219 is comparable to Hobbs Act extortion, discussed in *Ocasio v. United States*, 578 U.S. at 282, without ever actually quoting the Hobbs Act's text. Opp. at 85. The language of the Hobbs Act prohibits "extortion" committed by "obtaining of property from another, with his consent . . . under color of official right." 18 U.S.C. § 1951(b)(2). The petitioner in *Ocasio* argued that a willingly bribed party could not be "extorted," 578 U.S. at 293-95, but the Supreme Court held that despite the Hobbs Act's language, it "is best understood as [criminalizing] the 'rough equivalent of what we would now describe as taking a bribe.'" *Hoskins*, 902 F.3d at 82 (quoting *Ocasio*, 587 U.S. at 285). As the Second Circuit noted, because the statute criminalizes bribe-taking, the Supreme Court "was unwilling to indulge the defendant's argument that the text indicated an affirmative legislative policy to leave the 'extorted' party unpunished, or a desire to punish only the party taking property 'from another.'" *Id.* at 83.

*Ocasio*, therefore, was not a case in which the Supreme Court concluded that conspiracy liability enabled the Government to get around an apparent limitation in terms of who a statute allowed to be prosecuted; it instead concluded that the apparent limitation did not exist at all. As the Second Circuit recognized, "the unique features of Hobbs Act extortion limit *Ocasio*'s helpfulness to the government."[13] *Id.* But there is no similar interpretation of § 219: it plainly limits the class of possible defendants to public officials.

In sum, because Mr. Hana is neither a public official nor an agent, § 219 does not, by its terms, apply to him, and, under the caselaw, *Gebardi v. United States*, 287 U.S. 112, 123 (1932); *United States v. Amen*, 831 F.2d 373, 382 (2d Cir. 1987); *Hoskins*, 902 F.3d at 95, the Government should not be able to avoid that fact by charging him with conspiracy to violate the statute. Count 4 must be dismissed against him.

### D. The Court Should Strike From The Indictment Any Mention Of Mr. Hana In Paragraph 15.

The Government has not charged Mr. Hana with any substantive violation of FARA; that is, the Government has not alleged that Mr. Hana at any point was or acted as an "agent of a foreign principal" required to register under FARA. As a result, it is without question gratuitous, inflammatory, and prejudicial to insinuate in the Indictment that Mr. Hana did something wrong because he "ha[s] never registered as [a] foreign agent[] or lobbyist[]." Ind. ¶ 15; *see* Hana Br. at 59-61. Simply put, the Government should not be permitted to suggest that Mr. Hana violated

---

[13] The Government also attempts to narrow *Hoskins*' holding by suggesting that it is merely a case about extraterritorial application of the FCPA. Not so—the Second Circuit's holding that the statute demonstrated an affirmative legislative policy to leave certain parties unpunished was based on the statute's text and structure—not on the presumption against extraterritoriality. Only after examining text and structure did the Second Circuit conclude that "[e]ven if we were not persuaded that Congress had demonstrated an affirmative legislative policy in the FCPA to limit criminal liability to the enumerated categories of defendants, we would still rule for Hoskins because the government has not established a clearly expressed congressional intent to allow conspiracy and complicity liability to broaden the extraterritorial reach of the statute." *Hoskins*, 902 F.3d at 95.

FARA by not registering when, in fact, the Government is not alleging that he should have registered in the first place.

The Government does not dispute that it has not charged Mr. Hana with a violation of FARA or that it has not even alleged that he was required to register under FARA. Instead, the Government complains that the motion to strike the reference to Mr. Hana in Paragraph 15 of the Indictment is "premature" and (as it says about every motion filed by every defendant) "meritless." Opp. at 173. As to the first point, although it sometimes occurs that courts await trial before ruling on certain motions to strike, courts in this Circuit have not hesitated to strike language from an indictment that, on its face, includes irrelevant, prejudicial, and inflammatory surplusage. *See* Hana Br. at 60-61 (collecting cases); *see also United States v. Swinton*, No. 19-cv-65, 2020 WL 1940744, *4 (D. Conn. Apr. 22, 2020) (striking as surplusage allegations of the defendant's prior conviction, which were relevant only to sentencing and "not elements of the crime" charged); *United States v. Greebel*, No. 15-cr-637, 2017 WL 3610570, *2-3 (E.D.N.Y. Aug. 4, 2017) (striking as surplusage language suggestive of a defendant's participation in unlawful activity with which he was not charged); *United States v. Carey*, 152 F. Supp. 2d 415, 429-30 (S.D.N.Y. 2001) (striking as surplusage "inflammatory" and "unnecessary" components of otherwise relevant contextualizing paragraphs in the indictment). As in those cases, this Court should not delay striking from the Indictment a gratuitous allegation that it is "not relevant to the crime[s] charged and [is] inflammatory and prejudicial." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990). Furthermore, the Government's claim that Mr. Hana's FARA registration status is "relevant to his belief in the wrongfulness" of his alleged conduct, Opp. at 175, is nonsensical: in the absence of any charge or allegation that he was required to register—which is nowhere

alleged—it is extremely unfair to argue that it is relevant that Mr. Hana did not, in fact, register, or that any of the five referenced "Egyptian officials" violated FARA.[14]

Beyond mere irrelevance, Paragraph 15 further confuses the counterintuitive interplay between § 219 as charged in this Indictment, and FARA, discussed above. Setting aside its merit or lack thereof, Count 4 is predicated on the notion that Senator Menendez acted as a foreign agent. *See* Hana Br. at 57-59. Specifically, § 219 criminalizes conduct by a public official—acting as a foreign agent; FARA, on the other hand, merely proscribes the failure to disclose that conduct, but does not prohibit anyone from engaging in it—*i.e.*, FARA criminalizes only a failure to register in advance of engaging in the delineated political activities. In light of this, the Government's conclusory statement that Mr. Hana's FARA registration status is not "so different from what the jury will have to consider [with regard to the conspiracy to violate § 219] that this fact might somehow distract or confuse the jury," Opp. at 176, completely misses the mark. It ignores the reality that (1) Mr. Hana's failure to register (even assuming he was required to) can never, under any circumstance, constitute a violation of § 219; and (2) the alleged wrongdoing at the core of Count 4 is a public official supposedly acting as a foreign agent and not a failure to register under FARA (the latter only serves to define the purportedly wrongful conduct). Accordingly, because Mr. Hana's own FARA registration status is not probative of an agreement to violate § 219, referencing it can only serve to confuse the jury and prejudice him by impermissibly suggesting otherwise.

---

[14] Although it is not perfectly clear, the Government also seems to argue that Mr. Hana's "charged and uncharged co-conspirators" should also have registered. Opp. at 175. But this is particularly wrong-headed if it is meant to encompass the five referenced "Egyptian officials," as those officials purportedly worked for the Egyptian government, and at least twice met the Senator in his Senate office in Washington, D.C, *see* Ind. ¶¶ 19, 21; thus, under 22 U.S.C. § 613, they were explicitly exempted from FARA's registration requirement, which applies to certain broadly defined "[o]fficials of foreign government[s]," "[d]iplomatic or consular officers" and their "staff."

Finally, although the complete irrelevance of Mr. Hana's FARA registration status is sufficient to have its mention in Paragraph 15 stricken, *see* Hana Br. at 59-60 (quoting *United States v. Portillo*, No. 09-cr-1142, 2014 WL 97322, at *8 (S.D.N.Y. Jan. 8, 2014)), the Government's arguments that (1) Mr. Hana's FARA registration status is "plainly *less* serious and less likely to engender an emotional reaction" and not "so different" from the conspiracy to violate § 219 actually charged, and (2) that any "conceivable undue prejudice that might flow from the challenged allegation can be mitigated by an appropriate jury instruction," miss the mark.  Opp. at 176 (emphasis in original).  Allegations relating to Mr. Hana's FARA registration status, and insinuation that his status indicates wrongdoing, ought not be a part of this case, and the risk that they will infect any deliberations ought not be so blithely accepted as the Government would wish. *See* Hana Br. at 60-61.  As in *Greebel*, the FARA allegation suggests Mr. Hana's unlawful activity under a distinct statute not cited under Count 4, and with respect to a criminal statute (FARA) that he is not charged with violating.   *See* 2017 WL 3610570, *2.   Moreover, the Government's throwaway suggestion that all of this prejudice can be cured with a jury instruction ignores the reality that drafting an instruction that adequately and succinctly captures FARA and § 219's overlaps and distinctions, while at the same time clarifying that Mr. Hana is not alleged to fall under any of FARA's terms of art, is far from a straightforward task.  For these reasons, any mention of Mr. Hana should be stricken from Paragraph 15 of the Indictment.

## III.    THE INDICTMENT IS DUPLICITOUS, OR IN THE ALTERNATIVE, MULTIPLICITOUS, AND SHOULD BE DISMISSED.

In Mr. Hana's moving brief, he pointed out what is abundantly clear to any reader of the Indictment:  the Indictment alleges five fundamentally distinct schemes yet charges them together in each of several conspiracy counts.  Hana Br. at 66-81.  That is, Counts 1, 2 and 4, which all expressly incorporate the same factual allegations as are set forth in the initial introductory

paragraphs of the Indictment, encompass five entirely different schemes with varying goals and objectives: (1) a scheme involving payments to Senator and Mrs. Menendez to obtain assistance for Egypt and Egyptian officials; (2) a scheme regarding payments to protect IS EG Halal; (3) a scheme to disrupt New Jersey State criminal matters; (4) a scheme to disrupt Mr. Daibes's Federal prosecution; and (5) a scheme to take actions favorable to the Government of Qatar. *Id.* As Mr. Hana has explained, allowing the Government to continue to conceal multiple distinct conspiracies behind the veil of a single conspiracy count will severely prejudice Mr. Hana and preclude his right to a fair trial. *Id.* at 81-85.

In response, the Government attempts to argue that the Indictment's five individually labeled schemes somehow constitute a single overarching conspiracy. Opp. at 88-101. The Government claims that "because the Indictment has facially alleged a single conspiracy, and has further set forth a number of facts including all defendants' participation in, among other things, the same bribe payments," as well as interdependence among the different schemes, there "is no justification for dismissal or any pretrial relief as to duplicity." *Id.* at 101. Instead, the Government asks the Court to ignore both Federal Rule of Criminal Procedure 12(b) and Second Circuit precedent, and find that duplicity is no longer a pleading requirement but a question of fact for the jury. *Id.* at 92, 101. But the law is clear: where, as here, the Indictment sweeps multiple distinct schemes involving unrelated conduct into one conspiracy count, it is impermissibly duplicitous and must not only be raised by way of pretrial motion, but dismissed by this Court. *See United States v. Boffa*, 513 F. Supp. 444, 472 (D. Del. 1980) ("[W]here a single count of an indictment on its face charges multiple conspiracies, considerations of fairness and prudence require that the count be dismissed.").

## A.    The Indictment, On Its Face, Charges Multiple Conspiracies in a Singular Offense.

The Government's opposition makes its strategy manifest:  unable to allege an official act and the requisite *quid pro quo* for each of the five individual schemes at issue, the Government lumps these distinct conspiracies together in an effort to satisfy the elements of the Federal bribery and other statutes charged.  For the reasons set forth above, that effort fails.  *See* Section I, *supra*. But in so doing, the Government, as expected, points to Paragraphs 1, 2, 3, and 16 of the Indictment which allege that Mr. Hana participated in a single overarching conspiracy wherein Senator and Mrs. Menendez "agreed to and did accept hundreds of thousands of dollars in bribes" in exchange for certain actions taken by the Senator to "protect and enrich" Mr. Hana, Mr. Uribe and Mr. Daibes, and to benefit Egypt and the State of Qatar.  Opp. at 91.  However, as is discussed in Mr. Hana's moving brief, a broad, general goal of bribing Senator and Mrs. Menendez with the intent to influence the Senator to act in a manner beneficial to Mr. Hana, two of his co-defendants, and two different foreign countries, does not transform these independent schemes into a single conspiracy, especially where, as here, the remaining paragraphs in the Indictment so clearly demonstrate that what is really alleged is multiple schemes.[15]  *See United States v. Gabriel*, 920 F.

---

[15] The Government's claim that this broad goal "is at least as specific as that approved by the Second Circuit in *United States v. Dawkins*" rings hollow.  Opp. at 92 (citing *United States v. Dawkins*, 999 F.3d 767 (2d Cir. 2021)).  In *Dawkins*, the Second Circuit affirmed the district court's refusal to provide the jury with a multiple conspiracy instruction where the evidence at trial revealed that the object of the conspiracy at issue was "paying bribes or illegal gratuities to men's college basketball coaches intending to influence and reward those coaches in connection with the business of their respective universities."  999 F.3d at 797.  Not only is the procedural posture of Mr. Hana's case much different than that in *Dawkins—i.e.*, pre- versus post-trial, which utilize different remedies and therefore different standards of review, *see* Section II.B., *supra,  see also United States v. Keystone Biofuels*, 350 F. Supp. 3d 310, 320 (M.D. Pa. 2018) ("[W]hether a series of events constitutes a single conspiracy or separate and unrelated conspiracies . . . in the context of a post-trial sufficiency of the evidence analysis . . . cannot be dispositive of whether a defendant's pre-trial motion to dismiss based upon the purported duplicity of a conspiracy count

Supp. 498, 503 (S.D.N.Y. 1996), *aff'd*, 125 F.3d 89 (2d Cir. 1997) (finding that "the Indictment on its face effectively allege[d] two distinct conspiracies" where despite "broad, conclusory language . . . posit[ing] a unified conspiracy," the remaining allegations were "more consistent with an allegation of two conspiracies"); *see also United States v. Killeen*, No. 98-cr-143, 1998 WL 760237, at *3 (S.D.N.Y. Oct. 29, 1998) (to allege a common purpose, an indictment must identify a purpose that is not "unreasonably broad"); *United States v. Abdelaziz*, 68 F.4th 1, 48 (1st Cir. 2023) ("common goal" of advancing the success of a college admissions conspiracy was impermissibly general to constitute a common purpose shared by all charged participants in analyzing whether evidence at trial created a variance).

Indeed, the Indictment fails to allege a single fact indicating that the five alleged schemes were part of a collective venture, had a common goal, or were in any way mutually dependent on one another. The Government attempts to evade this problem by claiming that it "expects to prove at trial . . . interdependence among the requested acts," Opp. at 93, and tries to use Mr. Hana's purported promise to deliver payments from IS EG Halal as a common thread to connect the five conspiracies, *id*. at 93-95. But the Government's claim of what it intends to prove at trial has no bearing on whether the Indictment is impermissibly duplicitous on its face, an inquiry which looks to the four corners of the Indictment and not, as the Government does, to facts which it claims

---

in an indictment should be granted; particularly because, at the pretrial stage of a prosecution, this Court's standard of review requires us to accept as true all of the allegations in the Superseding Indictment.")—but the argument fails to acknowledge that, far from a series of bribes for the same purpose, the purported goal of the bribes here was to protect three different defendants for completely unrelated reasons and to benefit two different foreign countries, again for varying, unconnected purposes. The distinction is obvious, and, unlike in *Dawkins*, the Government here has not presented any "evidence" revealing the existence of a single conspiracy with a unified purpose. But the real point is that it cannot do so given that, as a straightforward review of the Indictment shows, the Government has alleged five distinct conspiracies with their own separate and unique objectives.

(without specificity) it will adduce at trial. *See Grady v. Artuz*, 931 F. Supp. 1048, 1072 (S.D.N.Y. 1996) ("a duplicity defect rooted in an indictment . . . cannot be cured by trial testimony establishing that each count encompassed a single act."); *see also United States v. Sturdivant*, 244 F.3d 71, 76 (2d Cir. 2001) (examining face of the indictment to determine duplicity).

Nor, in any event, does the Government's attempt to connect the schemes through alleged payments from IS EG Halal satisfy the "mutual dependence and assistance" requirement to which the Government points. As Mr. Hana has explained, "in order for the Government to charge a single conspiracy where there are purportedly varied illegal activities, it is required to allege 'mutual dependence and assistance among the defendants,'" Hana Br. at 74 (quoting *United States v. Aracri*, 968 F.2d 1512, 1521 (2d Cir. 1992)), which "can be found where the co-defendants benefit from each aspect of the putative conspiracy," *id*. (citing *United States v. Geibel*, 369 F.3d 682, 692 (2d Cir. 2004)). Here, the Government claims that the promise of a Mercedes-Benz Convertible made in connection with the scheme to disrupt New Jersey State criminal matters was "to sustain the corrupt relationship" with Senator Menendez and in this way was somehow related to Mr. Hana's promised payments to Senator and Mrs. Menendez in connection with the scheme to assist Egypt and Egyptian Officials from IS EG Halal. Opp. at 94, 95. It likewise asserts that "the federal prosecution and requested Qatar acts were intended to protect and enrich Daibes, at times a financial backer of IS EG Halal and an underwriter of the IS EG Halal bribe payments."[16]

---

[16] Following this logic, the Government appears to believe that if IS EG Halal had been able to deliver on the "promised payments" at the time of the alleged promises and related acts in the purported scheme to benefit Egypt and Egyptian Officials, then the other schemes would not have occurred as there would have been no need to "sustain the corrupt relationship during the time period when Menendez and Nadine Menendez were awaiting the promised payment through IS EG Halal for the Egyptian military aid acts," or to protect Mr. Daibes as the "underwriter" of the purported bribe payments from IS EG Halal. Opp. at 95. But this is pure speculation, bereft of any allegation in the Indictment, particularly given the independent and unique purpose of each scheme.

*Id*. at 95. Completely tenuous on their face, these contentions rely upon facts that do not appear anywhere in the Indictment, which does not allege that any financial ties between Mr. Daibes and IS EG Halal had anything to do with Qatar, let alone even suggests, that Mr. Hana promised to pay the alleged bribes through IS EG Halal in connection with any of the schemes to disrupt New Jersey state criminal matters, to disrupt Mr. Daibes's Federal prosecution, or to take actions favorable to the Government of Qatar, or that Mr. Hana could or would derive any benefit from these alleged schemes.[17] That is, there is nothing in the Indictment to support the Government's assumption that the promise of the Mercedes was to "sustain the corrupt relationship" with Senator and Mrs. Menendez before Mr. Hana was able to make the purported bribe payments from IS EG Halal or that Mr. Daibes made alleged bribe payments, as the financial backer of IS EG Halal, to protect Mr. Hana. To the contrary, the Indictment alleges that the Mercedes was provided in connection with the Senator's agreement to interfere in the New Jersey State prosecution and investigation of an associate and employee of Mr. Uribe, Ind. ¶ 39, and that Mr. Daibes provided the Senator with certain things of value in exchange for the Senator's attempt to influence his pending Federal prosecution and to take action to benefit the Government of Qatar, *id*. ¶ 45. Having failed to allege any relationship to the other aspects of the scheme, the Government's claim of "interdependence" simply cannot be sustained. *See, e.g., United States v. Greenberg*, No. 21-

---

[17] In fact, the Indictment does not even attempt to connect Mr. Hana or IS EG Halal to the scheme to intervene in Mr. Daibes's Federal prosecution or the scheme to benefit Qatar and only minimally attempts to connect him to the scheme to disrupt New Jersey state criminal matters through his purported friendships with the other alleged co-conspirators. But, as Mr. Hana has explained, "it is not sufficient simply to demonstrate that the alleged conspirators knew each other and committed the same or associated crimes." *United States v. Hughes*, 505 F.3d 578, 588 (6th Cir. 2007); *see* Hana Br. at 72-73. That is, the mere fact that "all co-defendants and unindicted conspirators knew or should have known that they were involved in a single conspiracy because they were all close friends and had socialized together" does not show "that there was any sort of agreement amongst all of those named [defendants]." *Id*.

cr-92, 2022 WL 827304, at *12 (S.D.N.Y. Mar. 9, 2022) (examining whether the alleged acts were "necessary steps toward [an] ultimate objective" in determining whether the Indictment sufficiently alleged a single conspiracy).

Beyond the lack of mutual dependence, the Indictment is entirely devoid of any allegation that the alleged participants knew anything about, much less "agreed to participate in what [they] knew to be a collective venture directed toward a common goal." *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990). The Government contends that because the defendants "all worked together toward specific common objectives" and participated in the same transfers of bribe money, that this standard is met. Opp. at 95-96. But the Government has never articulated, and does not do so now, how purportedly bribing Senator and Mrs. Menendez to take action to benefit Egypt and Egyptian officials relates to obtaining favorable resolutions in a New Jersey State prosecution and investigation involving Mr. Uribe's associate and employee, which relates to influencing the U.S. Attorney's Office in the District of New Jersey to act favorably in Mr. Daibes's Federal prosecution, which relates to obtaining a multimillion-dollar real estate investment from a fund with ties to the Government of Qatar, which relates to protecting a "monopoly" granted to IS EG Halal—all to support its claim that all five schemes shared a "specific common objective." Rather, as thoroughly described in Mr. Hana's moving brief, each individual scheme involved different co-conspirators with their own separate and unique objectives; there was no common goal at all. *See* Hana Br. at 71.

Nor do the allegations set forth in the Indictment indicate that Mr. Hana knew of or agreed to participate in an overarching scheme to bribe Senator and Mrs. Menendez. In *Kotteakos v. United States*, a seminal Supreme Court decision that the Government completely ignores, the Court held that "several, though similar, purposes of numerous separate adventures of like

character" did not justify a single conspiracy charge as "the pattern was 'that of separate spokes meeting at a common center' . . . without the rim of the wheel to enclose the spokes." 328 U.S. 750, 755, 769 (1946). In other words, "[t]he conspiracies . . . were distinct and disconnected, not parts of a larger general scheme. . . . There was no drawing of all together in a single, over-all, comprehensive plan." *Blumenthal v. United States*, 332 U.S. 539, 558 (1947). Similarly here, the Government has not alleged that Mr. Hana, Mr. Uribe, or Mr. Daibes (the purported spokes of the wheel) knew anything about the others' alleged criminal activities, much less agreed to participate in a collective venture with them. *See United States v. Chandler*, 388 F.3d 796, 807 (11th Cir. 2004) ("where the 'spokes' of a conspiracy have no knowledge of or connection with any other, dealing independently with the hub conspirator, there is not a single conspiracy, but rather as many conspiracies as there are spokes"). For example, the Indictment does not allege that Mr. Hana was ever aware of the alleged request to intervene in Mr. Daibes's Federal prosecution or to assist with obtaining an investment from a fund with ties to Qatar. Likewise, the mere allegation that Mr. Daibes provided financial support and backing to IS EG Halal, *see* Opp. 94-95; Ind. ¶ 22, does not mean that he knew of the purported scheme to assist Egypt and Egyptian Officials, to protect IS EG Halal, or to disrupt the New Jersey State criminal matters. Absent any allegation that Mr. Hana and his co-conspirators knew of and agreed to a "single, over-all, comprehensive plan" the Government's single conspiracy charges simply cannot stand. *See Kotteakos*, 328 U.S. at 755 ("Thieves who dispose of their loot to a single receiver—a single 'fence'—do not by that fact alone become confederates: they may, but it takes more than knowledge that he is a 'fence' to make them such."); *see also Geibel*, 369 F.3d at 692 (finding conspiracy charge involving insider trading to be duplicitous, because "defendants' vague awareness of [another's] role in the scheme does not render them co-conspirators"); *United States v. Duffey*, 456 F. App'x. 434, 440 (5th Cir. 2012)

(finding multiple conspiracies where eight bank robberies in the same city over the course of six months were carried out by the same three people but there was "no evidence . . . [of] an overarching plan connecting one robbery to another").

Finally, the Government's own description of the factual allegations in both the Indictment and its opposition further illustrate the individual nature of the five different schemes. As Mr. Hana previously explained, the purported existence of a single overarching conspiracy is entirely belied by the way in which the Indictment itself organizes the Government's allegations, neatly dividing the alleged conduct into individually labeled sections. *See* Ind. ¶¶ 2, 19, 22, 35, 39, 46, 55; Hana Br. at 77-80. Indeed, the Government continues to honor this framework in its opposition, again breaking the allegations into separate schemes when addressing them. For example, in the "Background" section of the Government's brief, the Government separates the factual allegations into three separate conspiracies, clearly demarcating each alleged scheme with a different heading. *See* Opp. at 3 ("Actions Related to Egypt); *id.* at 7 ("Actions Related to the New Jersey Attorney General's Office Criminal Matters"); *id*. at 8 ("Actions Related to Daibes's Federal Prosecution and Qatar"). The Government maintains this separation in the duplicity section of its brief, dividing the alleged conduct into four different schemes with their own individually labeled sub-heading.[18] *See id.* at 93 ("Military Aid to Egypt"); *id.* ("Pressure on the USDA"); *id.* at 94 ("Attempt to Disrupt State Criminal Cases"); *id*. ("Attempt to Disrupt Federal Prosecution and Request to Act to Benefit Qatar").

_____

[18] While the Government separates the conspiracies into three and then four conspiracies, the Indictment actually sets forth five distinct conspiracies. *See* Ind. ¶¶ 16-21, 35-38 (Egyptian officials); ¶¶ 22-34 (IS EG Halal); ¶¶ 39-44 (New Jersey State criminal matters); ¶¶ 46-54 (Mr. Daibes's Federal prosecution); ¶¶ 55-66 (Qatar).

Nevertheless, the Government pushes back against its own compartmentalization claiming that it should not be penalized "for attempting to impose organizational clarity on a necessarily complex and interrelated set of facts." *Id.* at 97. But however valiant the effort to "impose organizational clarity" on this sprawling Indictment, it does not allow the Government to circumvent the well-established rule against duplicity or excuse a duplicitous pleading. *See United States v. Munoz-Franco*, 986 F. Supp. 70, 71-72 (D.P.R. 1997) (dismissing duplicitous conspiracy count where "despite the government's representation that count 1 involve[d] a single conspiracy, the description of the overt acts [was] neatly divided between two distinct sets of co-conspirators"). Why then does the Government continue to separate these "complex" sets of facts into different schemes? The answer is clear: the facts set forth five different schemes involving entirely different conduct allegedly undertaken for entirely different purposes through entirely different means; breaking the allegations up is quite simply the only logical way for the Government to present them. But, had the Government properly plead Counts 1, 2, and 4, and alleged one single conspiracy in each individual count, the facts would certainly not be nearly as "complex," and there would be absolutely no need for the Government to worry about "impos[ing] organizational clarity." Based on the structure of the Indictment, leading the Government to separate the schemes, there is no question that multiple, distinct conspiracies are alleged. [19] *See United States v.*

---

[19] The Government claims that "[t]his case is nothing like *United States v. Munoz-Franco* . . . *United States v. Marlinga* . . . and *United States v. Hardy*," Opp. at 97-98, but its efforts to distinguish these cases are to no avail. As Mr. Hana demonstrated in his moving brief, all three of these cases were dismissed pre-trial because the allegations suffered from flaws strikingly similar to those here. *See* Hana Br. at 78-80. In *Munoz-Franco*, the court held that a conspiracy charge was duplicitous where it alleged two separate conspiracies to "defraud one same bank and . . . include[d] the same bank officers," but "neatly divided" the indictment's "description of the overt acts . . . between two distinct sets of co-conspirators," under different sub-titles in the indictment. 986 F. Supp. at 71-73. In *Marlinga*, the court rejected the government's attempt to charge, in a single conspiracy count, a conspiracy to defraud citizens of their right to honest services where the defendants allegedly offered to make and accept campaign contributions to a prosecutor running

*Marlinga*, No. 04-cr-80372, 2005 WL 513494, at *4 n.2 (E.D. Mich. Feb. 28, 2005) (finding two separate conspiracies where separate headings were given to each scheme in the indictment); *Munoz-Franco*, 986 F. Supp. at 71-72 (D.P.R. 1997) (conspiracy charge was duplicitous where the overt acts were neatly divided between two different sets of co-conspirators in separate sub-titles in the indictment).

**B.      The Court Should Grant Mr. Hana's Pre-Trial Motion And Dismiss The Duplicitous Charges.**

The Government misconstrues the law, confusing pre-trial duplicity directed at the face of an indictment with a duplicity challenge brought after the Government's evidence is presented at trial, when it contends that a jury and not the Court should determine the existence of multiple conspiracies.  While generally the issue of whether the Government's proof at trial established a single conspiracy or multiple independent schemes "is a question of fact for a properly instructed jury," *Aracri*, 968 F.2d at 1519; *see also United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988) ("Whether the evidence in a case establishes single or multiple conspiracies is a question of fact to be resolved by a properly instructed jury"), a court may also "conclude, as a matter of law, that the allegations in a single conspiracy count improperly charge multiple conspiracies" based on the face of an indictment prior to trial, *see United States v. Nachamie*, 101 F. Supp. 2d 134, 153 (S.D.N.Y. 2000).  Indeed, as the Government itself acknowledges, only "[i]f the Indictment on its face sufficiently alleges a single conspiracy" which, as explained above, it has failed to do here, is "the question of whether a single conspiracy or multiple conspiracies exists . . . a question of fact

---

for Congress, in exchange for certain prosecutorial acts in two pending criminal cases.  2005 WL 513494, at *4.  Finding the count to be duplicitous, the court explained that—as is the case here— separate headings given to each alleged scheme in the indictment evidenced the existence of two separate conspiracies.  *Id*. at *4 n.2.  Similarly in *Hardy*, the court dismissed an indictment as duplicitous prior to trial because it fail[ed] to allege any nexus whatsoever, chronological, substantive or otherwise" between the two alleged schemes.  762 F. Supp. 1403, 1408-10 (D. Haw. 1991).

for the jury." *United States v. Rajaratnam*, 736 F. Supp. 2d 683, 688 (S.D.N.Y. 2010); Opp. at 89 ("as long as 'the Indictment on its face sufficiently alleges a single conspiracy, the question of whether a single conspiracy or multiple conspiracies exists is a question of fact for the jury").

Indeed, Rule 12(b) of the Federal Rules of Criminal Procedure *mandates* that any objection to a defect in the indictment be brought in a pretrial motion. Specifically Rule 12(b)(3) authorizes a defendant to bring a pretrial motion alleging that a defect in the indictment exists based on duplicity or the joining of "two or more offenses in the same count." Fed. R. Crim. P. 12(b)(3)(B)(i). Consistent with this rule, the Second Circuit has long recognized that duplicity is a pleading requirement, not a question of fact for the jury. *See United States v. Moloney*, 287 F.3d 236, 240 (2d Cir. 2002) (duplicity "inherently addresses the form of an indictment"); *United States v. Droms*, 566 F.2d 361, 363 n.1 (2d Cir. 1977) (describing duplicity as a "pleading rule"); *United States v. Viserto*, 596 F.2d 531, 538 (2d Cir. 1979) ("Since the alleged duplicitous character of the counts appears on the face of the indictment, appellants could have moved before trial to dismiss the indictment."); *see also United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988) ("A duplicity objection can easily be made before trial because a duplicity claim is directed at the *face* of the indictment and not at the evidence presented at trial.") (emphasis in original). By contrast, if the Court were to accept the Government's proposition and find that it could not weed out duplicitous indictments, like the one here, "there would be no bar to improperly lumping numerous separate conspiracies into a single indictment and then obtaining all the benefits a single conspiracy prosecution enjoys up to the moment a trial sufficiency motion was determined." *People v. Luciano*, 951 N.Y.S.2d 88, 2012 WL 1473438, at *15 (N.Y. Sup. Ct. 2012); *cf. Davis v. United States*, 411 U.S. 233, 241 (1973) ("If defendants were allowed to flout [Rule 12's] time limitations . . . there would be little incentive to comply with its terms . . . [and] tactical

considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction"). "This would not only result in extreme prejudice to defendants but cause needless conviction reversals which could easily be avoided by a proper review at the outset." *Id.*; *see also United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) (reversing conviction "as a result of the variance between the single conspiracy charged in the indictment and the proof adduced at trial"); *United States v. Johansen*, 56 F.3d 347, 350-52 (2d Cir. 1995) (reversing conspiracy conviction where defendant was prejudiced by the government's proof of multiple conspiracies); *United States v. Prejean*, 429 F. Supp. 2d 782, 798 (E.D. La. 2006) ("If an indictment is duplicitous and the defendant is prejudiced as a result, a conviction obtained on the indictment may be subject to reversal."). Thus, the duplicitous Indictment can and should be addressed by this Court pretrial if only to give meaning to Rule 12(b)(3)(B)(i), which would otherwise be rendered a nullity.

Likewise, the Government's claim that the prejudice Mr. Hana will suffer as a result of the duplicitous nature of the Indictment "can and should be addressed by jury instructions, rather than dismissal of the Indictment" is simply not true. Opp. at 96. "While there are situations in which a jury instruction of unanimity is an appropriate remedy for a duplicitous indictment (e.g., when the indictment *appropriately alleges* a single conspiracy, but the proofs at trial suggest multiple conspiracies), this is not one of them." *Marlinga*, 2005 WL 513494, at *6 (emphasis in original). As explained in Mr. Hana's moving brief, "where, as here, the preservation of defendants' Fifth and Sixth Amendment rights hangs in the balance" it is better to dismiss a duplicitous count than "roll the dice and preserve the confusion of [the duplicitous count] until a jury instruction at the end of trial[.]" *United States v. Hardy*, 762 F. Supp. 1403, 1410 (D. Haw. 1991); *see also* Hana

Br. 86-89. "Hoping that a jury instructions will remedy a problem that can clearly be solved [prior to trial] makes no sense." *Marlinga*, 2005 WL 513494, at *6. Rather, in order to avoid the prejudice that Mr. Hana would suffer if tried on the current duplicitous Indictment, and to allow for a far more orderly and much fairer trial, Counts 1, 2, and 4 should be dismissed. *United States v. Rigas*, 605 F.3d 194, 210 (3d Cir. 2010) ("An impermissibly duplicitous indictment is subject to dismissal."); *see also Hardy*, 762 F. Supp. at 1410 (rejecting the government's insistence that a jury instruction would cure a duplicitous count, reasoning that "'an ounce of prevention is worth a pound of cure' . . . particularly . . . where, as here, the preservation of defendants' Fifth and Sixth Amendment rights hangs in the balance"); *United States v. Pleasant*, 125 F. Supp. 2d 173, 175-83 (E.D. Va. 2000) (dismissing duplicitous counts pretrial because of potential harm that could result by allowing the government to proceed on the indictment as charged); *United States v. Conley*, 826 F. Supp. 1536, 1544-48 (W.D. Pa. 1993) (dismissing duplicitous count pretrial where "potential prejudice abounds").

### C. Alternatively, The Indictment Is Multiplicitous And Must Be Dismissed.

In his moving brief, Mr. Hana showed that, if the Indictment is not duplicitous, as he contends it is, then it must charge the same conspiracy three times. And, in fact, after spending fourteen pages attempting to demonstrate that each count contains only a "single conspiracy," Opp. at 88-101, the Government turns around and complains that, nonetheless, Mr. Hana's multiplicity claim is both "premature and meritless." The Government's about-face demonstrates the serious pleading issues present in the Indictment, and is a basis for pretrial relief.

The Government's position on the number of conspiracies alleged in the Indictment is strikingly clear. Its opposition contends that "[e]ach count of the Indictment alleges a single scheme" that "relates to an overarching scheme." Opp. at 91. It states that the defendants were "engaged in a single conspiracy," *id.* at 92, and that "far from a series of separate schemes," the

Indictment "sets forth—and the Government expects to prove at trial—not just overlap in participants . . . and time periods, but interdependence among the requested acts," *id.* at 93. It states that "each of the alleged acts sought had close relationships of interdependence with at least one other set of alleged acts." *Id.* at 95. It highlights "[t]he significant overlap in participants, goals, and conduct, and [the] close interdependence among portions of the scheme." *Id.* And it argues that "there is ample basis for the jury to find a single conspiracy." *Id.* at 96. It concludes by emphasizing how the Indictment is organized to show "*interrelatedness.*" *Id.* at 97 (emphasis in original).

Whatever the merits of its position, the Government has, in essence, made Mr. Hana's argument for him. Assuming for purposes of this discussion that the Government is right and the Indictment is not duplicitous, then the Government has argued at length that the Indictment alleges the same scheme in each Count. And while the opposition ignores entirely the Second Circuit's test for analyzing multiplicitous conspiracies, the brief itself concedes at least six of the relevant factors: overlap in participants, overlap in time, similarity of operation, geographic location, common objectives, and the degree of interdependence.[20] *See United States v. Macchia*, 35 F.3d 662, 667 (2d Cir. 1994) (listing the so-called *Korfant* factors). Read together, Mr. Hana's moving brief and the Government's opposition make the case that Counts 1, 2, and 4 each allege the same conspiracy.

Apparently acknowledging that the positions it has taken in the Indictment and its briefing have committed it to bringing three charges that each allege the same conspiracy, the Government attempts to avoid the legally cognizable consequences of that by arguing that Mr. Hana's challenge

---

[20] The two other factors, addressed in Mr. Hana's moving brief, are the offenses charged in the Indictment and the commonality of overt acts. The moving brief demonstrated that both factors point toward a finding of multiplicity. Hana. Br. at 94-95, 98-99.

is premature, contending that the entire record must be reviewed before a defendant's multiplicity challenge can be heard. Opp. at 102. But this is the rare case where that is simply unnecessary, as the Government has, in its own papers, conceded the merit of Mr. Hana's multiplicity challenge. Indeed, it will be judicially estopped from arguing otherwise if and when the issue arises down the road. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase"). So however unusual it is, there really is no need to wait for a more "fully developed" record, Opp. at 104, and Mr. Hana's multiplicity challenge is readily assessed on the basis of the Government's current position.

Moreover, the Government acknowledges that district courts in the Second Circuit "retain[] discretion to direct the government to elect one of [the] multiplicitous charges to proceed on," *id*. at 104-05 n. 36 (quoting *United States v. Reed*, 639 F.2d 896, 904 n.6 (2d Cir. 1981)), usually when the charges raise the potential of prejudicing the defendant before the jury. Of course, such an exercise of discretion at the pretrial phase is entirely consistent with the requirement of Federal Rule of Criminal Procedure 12 that a multiplicity challenge "must be raised by pretrial motion," Fed. R. Crim. P. 12(b)(3)(B)(ii). And that course of action is certainly entirely appropriate here: as noted in Mr. Hana's moving brief, a multiplicitous indictment risks "prejudic[ing] the jury against the defendant by creating the impression of more criminal activity on his part than in fact may have been present." *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978); *see Reed*, 639 F.2d at 904 ("The vice in multiplicity of charges is that it may lead to multiple sentences for the same offense and may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes."); *see also* Hana Br. at 90-91.

In sum, the Indictment makes it seem as though Mr. Hana was engaged in three separate conspiracies.  But this impression is belied by the Government's position in its opposition, which makes clear that, in the Government's eyes, there was only one overarching conspiracy.  Because the Indictment will therefore "improperly prejudice [the] jury by suggesting that a defendant has committed not one but several crimes," *Reed*, 639 F.2d at 904, the Government should be required to elect one of the three conspiracies to prove at trial.

## IV.     THE INDICTMENT FAILS TO ADEQUATELY ALLEGE VENUE AS TO THE COUNTS AGAINST MR. HANA.

As is fully set forth in Mr. Hana's moving brief, a defendant's right to be tried by a jury of one's peers—including in the "district wherein the crime shall have been committed," *United States v. Cabrales*, 524 U.S. 1, 6 (1998)—is "unquestionably one of the most precious and sacred safeguards enshrined in the Bill of Rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 572 (1976) (Brennan, J. concurring).  Indeed, it was of such concern that the Constitution "twice safeguards the defendant's venue right," *Cabrales*, 524 U.S. at 6, and the Supreme Court has cautioned that "venue provisions . . . should not be so freely construed as to give the Government the choice of a tribunal favorable to it," *Travis v. United States*, 364 U.S. 631, 634 (1961).  Aware of these fundamental rights, but in an effort to avoid dismissal, the Government uses its brief to improperly embellish the allegations in the Indictment.  But, taking the Indictment as it was actually returned by the Grand Jury—as the law requires—it is clear that the charges actually returned do not to support the Government's bald assertion that venue is proper in the Southern District of New York.  Rather, on its face, the Indictment fails to establish venue over the Counts alleged against Mr. Hana and accordingly must be dismissed.

The Government repeatedly responds to Mr. Hana's arguments by stating that the Indictment's blanket assertion that the crimes occurred in the Southern District of New York is

sufficient to establishing venue for each of these counts, relying on *United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005), and *United States v. Stein*, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006). Opp. at 130-31 ("The Indictment expressly alleges that each of the crimes occurred in the Southern District of New York, which alone defeats [Mr. Hana's] motion."). But it is not the case that the Government can simply parrot "magic words" or a bald legal conclusion and thereby immunize itself from venue challenges. Indeed, even the cases upon which the Government relies for this proposition recognize that an indictment must contain "more than just the conclusory allegation of the existence of venue" and allege "specific acts occurring in the Southern District of New York."[21] *Peterson*, 357 F. Supp. 2d at 752; *see also Stein*, 429 F. Supp. 2d at 643 (explaining that, where an indictment properly alleges venue, "a pretrial motion to dismiss based on contrary allegations by the defendant must be denied"). And certainly, the Government cannot avoid a pretrial motion to dismiss for lack of venue by asserting that it will prove facts supporting venue—though not contained on the face of the Indictment; indeed, this follows from the specific requirement in Federal Rule of Criminal Procedure 12 that venue claims be raised pre-trial. *See* Fed. R. Crim. P. 12(b)(3)(A)(i) ("The following defenses . . . must be raised by pretrial motion . . . (A) a defect in instituting the prosecution, including: (i) improper venue"); *see also United States v. Holland*, No. 17-cr-00234, 2018 WL 8867811, at *2 (N.D. Ga. Aug. 6,

---

[21] This case demonstrates why Courts must engage in a meaningful venue inquiry that demands more than at conclusory statement and bare bones allegation. In Mr. Hana's moving brief, he challenged each of the five alleged "overt acts" purportedly occurring in this District, and showed that none of them are alleged to have been made in furtherance of the indicted conspiracies. Hana Br. at 107-10. This includes the Government's allegation that a financial transaction related to a Nadine Menendez car payment, ultimately attributed to Mr. Uribe, was an overt act in furtherance of the conspiracy. *Id*. at 108; Ind. ¶ 75(b). The Government's opposition completely ignores this fact, and provides no explanation for how it is an overt act in furtherance of the conspiracy alleged, particularly given that the Government has had information directly contrary, and no additional facts to support the allegation, as its own disclosures demonstrate. Hana Br. at 108.

2018), *report and recommendation adopted*, 396 F. Supp. 3d 1210 (N.D. Ga. 2019) (dismissal without prejudice based on a venue defect that was clear from the face of the indictment).

In the case of a conspiracy (the only allegations here), the Indictment must allege an overt act in furtherance of the conspiracy that was (i) performed by Mr. Hana or a co-conspirator and (ii) "undertaken for the purpose of accomplishing the objectives of the conspiracy." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018). A criminal defendant in this Circuit is afforded still greater protection where the Government relies upon a 'foreseeability' test to establish venue, as the Government does here. *See, e.g.*, Opp. at 142-143. That is, "the venue analysis does not end as to all defendants charged with a conspiracy when we find a single overt act performed in the district of prosecution[.]" *Yuk*, 885 F.3d at 69. This is because the Second Circuit has "interpreted the venue requirement to demand some sense of venue having been freely chosen by the defendant." *Id.*. That is, "it must have been 'reasonably foreseeable' to each defendant charged with the conspiracy that a qualifying overt act would occur in the district where the prosecution is brought." *Id.*

Here, the allegations contained in the Indictment—first and foremost—do not support the Government's broad claim that the offenses charged occurred in this District because they are not even alleged to be acts involved in or in furtherance of the alleged conspiracies. As such, the Indictment is facially defective and must be dismissed. *See Holland*, 2018 WL 8867811, at *2 (dismissal without prejudice based on a venue defect that was clear from the face of the indictment); *see generally United States v. Alcorta*, 145 F. Supp. 3d 357, 359 (M.D. Pa. 2015) ("A motion to dismiss the indictment may allege a defect in instituting the prosecution, including improper venue" (citing Fed. R. Crim. P. 12(b)(3)(B)).

In apparent recognition of this clear deficiency, the Government seeks to supplement the Indictment by attempting to add allegations not in its Indictment through its opposition brief. *See* Opp. at 137 ("while dining together in Manhattan [on June 30, 2018], Menendez, Nadine Menendez, and Hana arranged for the July 2018 meeting between Menendez and Egyptian Official-1"); *id.* at 139 ("after that meeting [*i.e.*, "the September 21, 2019 dinner attended by Menendez, Hana, Daibes, and another Egyptian official"], on or about January 2, 2020, Egyptian Official-3 texted Nadine Menendez that he had been instructed by his boss in Cairo to 'start talks' with Daibes 'regarding what was discussed in NY about Egyptian investments in USA'"); *id.* at 140 (in a September 5, 2019 text message that traveled through a cell tower in Manhattan, "Nadine Menendez told Uribe her address" in connection with an invite "to meet with her and Menendez that evening at their home in Englewood Cliffs, New Jersey, to discuss the September 6, 2019 scheduled meeting between Menendez and Official-2"); *id.* at 143 ("The Government expects the evidence at trial will establish that the jeweler told Nadine Menendez that he was going to sell the gold bars in Manhattan.").

But these additional facts—not found on the face of the indictment—cannot be used to satisfy the Government's burden of proving that venue is proper in this District, any more than such facts could support a challenge by the defense.[22] *See Alfonso,* 143 F.3d at 776 ("To the extent that the district court looked beyond the face of the indictment and drew inferences as to the proof

---

[22] It bears noting that the Government goes beyond using its opposition brief to add allegations to the Indictment in an effort to shore up its venue arguments. In a footnote, it apparently also seeks to amend the Indictment by advising Defendants for the first time that the Indictment incorrectly states that it was Egyptian Official-3 who attended the dinner on September 21, 2019 as presently stated in Paragraph 75(d), when in fact, it was Egyptian Official-4. Opp. at 139, n.43. Leaving aside that this is a shocking disclosure to make in a footnote without any other notice, especially less than ninety days prior to the scheduled trial of this matter, it (along with the seemingly false venue allegations about Mr. Uribe, *supra* n. 21), raises questions about the integrity of this Indictment.

that would be introduced by the Government at trial . . . we hold that, in the circumstances presented, such an inquiry into the sufficiency of the evidence was premature."); *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence. . . . The Court should not consider evidence not appearing on the face of the indictment."); *United States v. Aprahamian*, No. 20-cr-64, 2022 WL 221615, at *2 (E.D. Pa. Jan. 25, 2022) ("In analyzing a motion to dismiss for improper venue, a court may only consider the indictment and must take all allegations as true.").

But even if the Court were to consider these improper factual allegations, found nowhere in the Indictment, the Government cannot meet the foreseeability requirement as to Mr. Hana for at least the alleged new facts. For example, with respect to Mrs. Menendez's text message to Mr. Uribe inviting him to her home to meet with her and Senator Menendez, there is no suggestion even in the Government's brief that Mr. Hana was aware of Mrs. Menendez's text exchange, let alone the meeting. The same is true of Mrs. Menendez's conversation with a jeweler during the sale of gold bars that have nothing to do with Mr. Hana. It is not sufficient that the Court find an overt act performed in this District (and certainly not one found in the Government's brief rather than the Indictment). *Yuk*, 885 F.3d at 69. There must be "some sense of venue having been freely chosen by the defendant." *Id.* Moreover, given Mr. Hana's lack of involvement in the completely distinct alleged schemes involving the Senator and Mrs. Menendez with Mr. Uribe and Mr. Daibes, *see* Section III, *supra*; Hana Br. at 66-102, it would be truly unreasonable to consider it "foreseeable" to Mr. Hana that Mrs. Menendez would have gold bars, purportedly from Mr. Daibes, let alone that she would sell them to a jeweler in New Jersey who would then tell her that he was going to resell them in New York. That may make venue foreseeable as to defendant Mrs. Menendez, but the law in this District requires that it be foreseeable as to each individual

defendant. *Yuk*, 885 F.3d at 69. Likewise, while Mrs. Menendez may have arguably been able to foresee that her text messages would travel through a cell tower in Manhattan based upon her location—though where that location was is unknown—Mr. Hana is not alleged to have been with her on September 5, 2019, when that text was sent, nor to have been involved in any way with her invitation to Mr. Uribe to come to her residence.

To avoid an unconstitutional intrusion on Mr. Hana's right to be tried where the alleged crime occurred, the Court should dismiss Counts 1, 2, and 4 against him for lack of venue. The Indictment returned by the Grand Jury, which is what the Court must evaluate here, does not properly allege that the purported acts occurring in the Southern District of New York were in furtherance of the conspiracies charged or were foreseeable to Mr. Hana.

## V. THE COURT SHOULD ORDER A BILL OF PARTICULARS TO CLARIFY THE VAGUE ALLEGATIONS IN THE INDICTMENT THAT CANNOT BE CURED BY THE GOVERNMENT'S EXTENSIVE DISCOVERY.

In the event that Counts 1, 2, and 4 survive Mr. Hana's motions to dismiss, the Court should order the Government to provide Mr. Hana with a bill of particulars clarifying certain of the vague allegations in the Indictment. As it always does, the Government attempts to portray its Indictment as sufficiently pled and claims that together with the "extensive and electronically searchable discovery" and "additional information" provided by the Government thus far, Mr. Hana has "more than sufficient . . . notice of the nature and specifics of the crimes of which [he is] accused." Opp. at 162, 164. But as set forth above and in Mr. Hana's moving brief, however verbose the Indictment, and however extensive the discovery, the Government has not provided very specific, essential facts to the defense which are necessary to enable Mr. Hana to meaningfully prepare for trial. *See* Sections I and II, *supra*; Hana Br. at 34-38, 61-65.

More specifically, as set forth, in part, above, and more thoroughly in Mr. Hana's moving brief, the Indictment, discovery, and other submissions cited by the Government, Opp. at 158, do

not clarify which official acts Senator Menendez agreed to take in connection with the alleged schemes, do not connect the supposed bribes to the corresponding matters that they were allegedly intended to influence to support Counts 1 and 2, and do not identify the foreign principals as to which Mr. Hana allegedly conspired in connection with Count 4.  And, despite the Government's claim to the contrary, the identity of the unnamed "others" with whom Mr. Hana is alleged to have agreed and conspired and the places where many of the alleged acts occurred, including the locations encompassed by the term "elsewhere" remain undefined.  Because the lack of notice on these counts violates the fundamental requirements of Due Process under the Fifth Amendment, Counts 1, 2, and 4 should be dismissed.  *See Russell v. United States*, 369 U.S. 749, 763 (1962) (to be valid, an indictment must "sufficiently apprise[] the defendant of what he must be prepared to meet").

In the alternative, however, Mr. Hana has sought a very targeted bill of particulars that would provide him with precise information that could potentially address the legal, and indeed constitutional, deficiencies in the Indictment.  *See* Hana Br. at 34-38, 61-65.  As it always seems to do, the Government objects to providing any of this obviously significant information, and responds by accusing Mr. Hana of attempting to use a motion for a bill of particulars "to obtain a preview of the Government's case and legal theories and unduly restrict the evidence and arguments the Government may use at trial."  Opp. at 168.  But this boilerplate response refuses to recognize either the problems with this particular Indictment, which so clearly fails to provide adequate notice of the nature of the charges brought against Mr. Hana, or of the concreteness and specificity of the information requested in Mr. Hana's motion for a bill of particulars.

In fact, the crux of the Government's argument against a bill of particulars is merely that the Indictment is sufficiently detailed to advise Mr. Hana of the specific acts of which he is

accused, Opp. at 162-63, that "the detail in the Indictment dovetails with the extensive and electronically searchable discovery to facilitate [Mr. Hana's] review," *id.* at 164, and that the cases cited in Mr. Hana's moving brief are either "inapposite" or "readily distinguishable," *id.* at 165, 168, 170. But as is discussed above and in Mr. Hana's moving brief, the Indictment does not provide the very specific particulars that are constitutionally necessary in order to enable Mr. Hana to meaningfully prepare for trial. A bill of particulars is therefore necessary to (1) provide the necessary definition of certain very specific terms that the Government itself placed in the Indictment, *see* Hana Br. at 63-64 (requesting a bill of particulars identifying the "others" with whom Mr. Hana is alleged to have agreed and conspired with, as alleged in the Indictment), *id.* at 64-65 (requesting a bill of particulars identifying where, including the "elsewhere" alleged in the Indictment, where the alleged crimes occurred)[23]; (2) inform Mr. Hana of the official acts that Senator Menendez conspired to take in connection with the alleged schemes, *id.* at 34-36; (3) apprise Mr. Hana of the specific matters or questions Senator Menendez promised to influence at the time he accepted or agreed to accept the purported bribes (*i.e.*, the "*pro*' in the *quid pro quo* requirement), *id.* at 36-38; and (4) identify the foreign principals as to which Mr. Hana allegedly conspired for Senator Menendez to act as an agent,[24] *id.* at 61-63. Only with this information will

---

[23] The Government's claim that it "provided the defendants months ago with a glossary of the addresses of locations referenced in the Indictment" is not sufficient. Opp. at 171. The Indictment itself mentions additional locations, frequently encompassed by the term "elsewhere," where the charged offenses allegedly occurred. *See* Ind. ¶¶ 72, 75, 77, 82 (alleging that Counts 1, 2, and 4, occurred "in the Southern District of New York and elsewhere"). According to the Indictment itself, there are additional locations, beyond those identified by the Government, where the purportedly criminal acts occurred. *See, e.g., United States v. Hickey*, 16 F. Supp. 2d 223, 245 (E.D.N.Y. 1998) (directing the government to provide a bill of particulars regarding allegation that offense took place within the district and "elsewhere").

[24] In opposing Mr. Hana's request the Government states that "[t]he Indictment contains numerous detailed allegations regarding the Government of Egypt and Egyptian officials referenced in the Indictment, the names of whom the Government provided to Hana on October 20, 2023." Opp. at 169. While Mr. Hana does not dispute that the Government provided the names of the Egyptian

Mr. Hana be adequately informed of the charges against him such that he may "prepare a defense . . . prevent prejudicial surprise at trial" and invoke the double jeopardy clause when appropriate. *United States v. Bin Laden*, 92 F. Supp. 2d 225, 235 (S.D.N.Y. 2000) ("a bill of particulars is necessary . . . to permit the Defendants to prepare a defense and to prevent prejudicial surprise at trial"), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008); *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 301-02 (S.D.N.Y. 2018) ("The purpose of a bill of particulars is to supplement the allegations in the indictment when necessary to (1) enable the defendant to prepare his defense, (2) avoid unfair surprise to the defendant at trial, and (3) preclude a second prosecution of the same offense.").

The Government, however, argues that a bill of particulars is not necessary because it has provided Mr. Hana with "substantial and organized" discovery in this case. Opp. at 163-64. But, contrary to the Government's claim, the production of discovery does not relieve the Government of its duty to sufficiently apprise the defendant of "the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). Indeed, directly to the contrary, in precedent the Government does not substantively address, courts have routinely held that providing "mountains" of discovery is not a substitution for a bill of particulars; in fact, voluminous document productions in complex cases can actually *create* the need for a bill of particulars. *See Bin Laden*, 92 F. Supp. 2d at 234 (holding that "it is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates

---

Officials identified in the Indictment, the Indictment does not allege, nor does the Government confirm, that the Egyptian officials referenced in the Indictment are the foreign principals alleged in connection with Count 4.

a bill of particulars"); *United States v. Ramirez*, 609 F.3d 495, 503 (2d Cir. 2010) ("[B]ecause so much discovery was produced to the defendants," a bill of particulars was ordered to "significantly condense[] the voluminous discovery"); *Bortnovsky*, 820 F.2d at 575 ("providing mountains of documents to defense counsel . . . impermissibly shifted" the burden of proof to the defendants, necessitating a bill of particulars).  Indeed, convictions have been reversed on precisely this basis. *See*, *e.g.*, *United States v. Davidoff*, 845 F.2d 1151, 1152, 1155 (2d Cir. 1988) (reversing and remanding for a new trial, holding that it "was error not to grant the defendant's request for a bill of particulars," and that by producing 6,000 pages of discovery, the Government did not obviate the need for a bill of particulars in a complex prosecution); *Bortnovsky*, 820 F.2d at 575 (reversing and remanding for a new trial, holding that "the district court erred by failing to grant a bill of particulars which was vital to [defendants'] understanding of the charges pending and to the preparation of a defense," reasoning that "[t]he Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged").

Here, the voluminous discovery provided by the Government, currently consisting of over eleven million documents, some of which were produced as recently as February 8, 2024 (after the Court's deadline of December 4, 2023), does not provide the clarity that Mr. Hana seeks in his request for a bill of particulars, or he would not be spending his or the Court's time moving as he has.  According to the Government, it has produced "more than sufficient information [to allow Mr. Hana] to understand the charges against [him] and to prepare a defense," including "multiple search warrant affidavits; voluntary disclosures, including a glossary of certain individuals, entities, and locations referenced in the Indictment; and various pretrial filings."  Opp. at 158.  But

none of these categories of discovery serve to name who the Government purports to be an unindicted co-conspirator or identify where the events that form the core of the Government's allegations against Mr. Hana took place. Nor does the discovery shed light on the critical factual allegations that are missing from Counts 1, 2, and 4, including, as set forth above, the official acts that Senator Menendez agreed to take, the specific matters or questions Senator Menendez agreed to influence at the time he accepted or agreed to accept the alleged bribes, and the foreign principals as to which Mr. Hana allegedly conspired for Senator Menendez to act as an agent.[25] These materials do not, then, provide a basis for denying the very straightforward and carefully limited bill of particulars that is requested and should be granted in the interests of a fair, and efficient, trial.

The Government's remaining arguments seeking to distinguish selected case law cited in Mr. Hana's moving brief—such as *United States v. Nachamie,* 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000), because it "presented the quintessential needle in a haystack problem to defendants who were faced with sifting through thousands of legitimate transactions in an attempt to discover which transactions the government sought to prove were fraudulent," Opp. at 165-66, *United States v. Tuzman*, 301 F. Supp. 3d 430, 451 (S.D.N.Y. 2017), because it did not require "one-to-one mapping" of tainted requests for payments and alleged bribe payments, Opp. at 166, *United States v. Siddiqi*, No. 06-cr-377, 2007 WL 549420, at *3 (S.D.N.Y. Feb. 21, 2007), because "the

---

[25] Additionally, such discovery, disclosures, and filings do not fulfill the purpose of a bill of particulars which, once issued, becomes part of the pleadings and binds the government to prove what is alleged. *See United States v. Crosby*, No. 08-cr-186A, 2013 WL 3354422, at *4 (W.D.N.Y. July 3, 2013) ("the Bill of Particulars formally binds the Government to prove the particulars"); *United States v. Lounsberry*, No. 18-cr-49, 2018 WL 6517554, at *8 (W.D.N.Y. Oct. 1, 2018) ("the effect of a bill of particulars is to formally bind[ ] the Government to prove the particulars"); *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989) ("a bill of particulars confines the Government's proof to particulars furnished").

court was unable to determine whether the government's discovery adequately inform[ed] Defendants of the particulars of any *quid pro quo*," Opp. at 166, and *United States v. Aliperti*, 867 F. Supp. 142, 149 (E.D.N.Y. 1994), because the government failed to provide adequate information to allow the defendant to understand the nature of the charges against him leaving him "to guess which of the numerous transactions . . . conducted over a six-year period, are alleged by the government to have been improper," Opp. at 168 (citing *United States v. Savin*, No. 00-cr-45, 2001 WL 243533, at *3 (S.D.N.Y. Mar. 7, 2001))—are without merit.  Indeed, in contrast to the multi-defendant "complex" case at issue here, *Siddiqui* involved a single defendant alleged to have accepted bribes from a single contractor in relation to a single identified contract.  *Siddiqi*, No. 06-cr-377, ECF No. 13 ("The Grand Jury charges . . . the defendant, who was a Project Officer with the New York School Construction Authority ("SCA"), solicited, demanded, accepted and agreed to accept from an SCA contractor cash payments and goods, including computer and other electronic equipment, in return for approving requests for payment and change-order payments relating to an SCA contract having a value in excess of $5,000.").  The court in *Siddiqui* nevertheless ordered the government to produce a bill of particulars identifying the date, beneficiaries, and substance of the alleged official acts, "so that [the defendant] may focus his defense efforts on those specific instances"  2007 WL 549420, at *3.  Moreover, *Nachamie*, *Aliperti*, and *Savin* all make clear that a bill of particulars is appropriate where, as here, an indictment omits the "specifics" that are necessary "to apprise the defendant of the essential facts of a crime" which the production of an abundance of discovery may only compound.  *United States v. Ramirez*, 602 F. Supp. 783, 793 (S.D.N.Y. 1985).

In sum, for the reasons set forth above and in Mr. Hana's moving brief, Counts 1, 2, and 4 should be dismissed.  Alternatively, to provide Mr. Hana with the constitutionally required notice

to which he is entitled and in order to allow Mr. Hana and his counsel to prepare to meet the

charges against him, the Court should grant Mr. Hana's request for a bill of particulars and order

the Government to set forth the very specific, essential information identified above.


## **<u>CONCLUSION</u>**

For these reasons, Defendant Wael Hana respectfully requests that the Court enter an Order

dismissing Counts 1, 2, and 4 of the Indictment. Alternatively, the Court should enter an Order

(1) striking Paragraph 15 from the Indictment and (2) granting a bill of particulars. Mr. Hana also

joins in all applicable motions filed by his co-defendants and any arguments made in further

support of those motions by way of reply submissions.


Dated: February 12, 2024     Respectfully submitted,


         s/ Lawrence S. Lustberg
         Lawrence S. Lustberg
         Ricardo Solano, Jr.
         Anne M. Collart
         Andrew J. Marino
         Christina M. LaBruno
         Jessica L. Guarracino
         Elena M. Cicognani
         **GIBBONS P.C.**
         One Gateway Center
         Newark, New Jersey 07102
         (973) 596-4500
         llustberg@gibbonslaw.com