### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. 23-490 (SHS) |
| v. | *Document Electronically Filed* |
| ROBERT MENENDEZ, *et al.*, | |
| Defendants. | |

---

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
### WAEL HANA'S MOTION TO SUPPRESS

---

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.    MR. HANA IS ENTITLED TO A *FRANKS* HEARING. ..................................... 2

        A.    The Warrant Affidavits Contain False And Misleading Statements and Omissions That Were Material To The Findings Of Probable Cause. ....... 3

        B.    The Government Knowingly Or Recklessly Included False And Misleading Statements And Omissions In Its Warrant Affidavits............ 17

    II.    EVIDENCE DERIVED FROM THE EXECUTION OF CERTAIN SEARCH WARRANTS SHOULD BE SUPPRESSED BECAUSE THEY LACK PARTICULARITY AND ARE OVERBROAD. ................................................. 22

CONCLUSION .................................................................................................................. 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Franks v. Delaware*,
438 U.S. 154 (1978) .................................................................................... *passim*

*Illinois v. Gates*,
462 U.S. 213 (1983) ........................................................................................3, 12

*In re 650 Fifth Ave. & Related Properties*,
934 F.3d 147 (2d Cir. 2019) ................................................................................27

*Jackson v. Kijakazi*,
588 F. Supp. 3d 558 (S.D.N.Y. 2022) ...................................................................21

*Maryland v. Garrison*,
480 U.S. 79 (1987) ................................................................................................7

*Rivera v. United States*,
928 F.2d 592 (2d Cir. 1991) ................................................................................19

*United States v. Awadallah*,
349 F.3d 42 (2d Cir. 2003) ..............................................................................4, 17

*United States v. Baldeo*,
No. 13-cr-125, 2014 WL 351638 (S.D.N.Y. Jan. 31, 2014) ..........................25, 26

*United States v. Benjamin*,
No. 21-cr-706, 2022 WL 17417038 (S.D.N.Y. Dec. 5, 2022) ...............................8

*United States v. Broadnax*,
No. 19-cr-20352, 2022 WL 2079713 (E.D. Mich. June 9, 2022) .........................12

*United States v. Cioffi*,
668 F. Supp. 2d 385 (E.D.N.Y. 2009) .............................................23, 24, 25, 26

*United States v. Discala*,
No. 22-cr-675, 2023 WL 4118637 (2d Cir. June 22, 2023) ...................................4

*United States v. Eng*,
971 F.2d 854 (2d Cir. 1992) ..........................................................................26, 27

*United States v. Falso*,
544 F.3d 110 (2d Cir. 2008) ..................................................................................7

*United States v. Galpin*,
  720 F.3d 436 (2d Cir. 2013) ................................................................23, 24, 25

*United States v. Jackson*,
  371 F. Supp. 3d 257 (E.D. Va. 2019) ...............................................................8, 11

*United States v. Kiser*,
  716 F.2d 1268 (9th Cir. 1983) .........................................................................4

*United States v. Lahey*,
  967 F. Supp. 2d 698 (S.D.N.Y. 2013) ..............................................................18, 19

*United States v. Lambus*,
  897 F.3d 368 (2d Cir. 2018) ...........................................................................18

*United States v. Maglio*,
  21 F.4th 179 (1st Cir. 2021) .............................................................................4

*United States v. Mandell*,
  710 F. Supp. 2d 368 (S.D.N.Y. 2010) ................................................................5

*United States v. Mandell*,
  752 F.3d 544 (2d Cir. 2014) ...........................................................................22

*United States v. Marin–Buitrago*,
  734 F.2d 889 (2d Cir. 1984) .............................................................................5

*United States v. Martin*,
  615 F.2d 318 (5th Cir. 1980) ...........................................................................4

*United States v. Murray*,
  No. 18-cr-30018, 2020 WL 4904758 (D. Mass. Aug. 20, 2020) ...........................20

*United States v. Nejad*,
  436 F. Supp. 3d 707 (S.D.N.Y. 2020) ..................................................... *passim*

*United States v. Nelson*,
  No. 09-cr-40130, 2010 WL 2746400 (D.S.D. July 12, 2010) ..................................7

*United States v. Norris*,
  513 F. App'x 57 (2d Cir. 2013) .......................................................................25

*United States v. Perez*,
  247 F. Supp. 2d 459 (S.D.N.Y. 2003) ..............................................................19

*United States v. Rajaratnam*,
  No. 09-cr-1184, 2010 WL 4867402 (S.D.N.Y. Nov. 24, 2010) ..............................19

*United States v. Rajaratnam*,
   719 F.3d 139 (2d Cir. 2013).................................................................... *passim*

*United States v. Reinholz*,
   245 F.3d 765 (8th Cir. 2001) .......................................................................7

*United States v. Roman*,
   311 F. Supp. 3d 427 (D. Mass. 2018) .......................................................20

*United States v. Rosa*,
   626 F.3d 56 (2d Cir. 2010)...........................................................................7

*United States v. Rybicki*,
   287 F.3d 257 (2d Cir. 2002)......................................................................25

*United States v. Salameh*,
   152 F.3d 88 (2d Cir. 1998).....................................................................3, 6

*United States v. Sterling Centrecorp, Inc.*,
   No. 08-cv-02556, 2013 WL 3166585 (E.D. Cal. June 20, 2013), *aff'd*, 977
   F.3d 750 (9th Cir. 2020) ...........................................................................12

*United States v. Stewart*,
   337 F.3d 103 (1st Cir. 2003).....................................................................16

*United States v. Thomas*,
   788 F.3d 345 (2d Cir. 2015)......................................................................20

*United States v. Tyler*,
   238 F.3d 1036 (8th Cir. 2001) ....................................................................4

*United States v. Vigeant*,
   176 F.3d 565 (1st Cir. 1999).....................................................................20

*United States v. Voustianiouk*,
   685 F.3d 206 (2d Cir. 2012).......................................................................8

*United States v. White*,
   No. 07-cr-4, 2007 WL 2404995 (N.D. W. Va. Aug. 17, 2007)................12

*United States v. Zemlyansky*,
   945 F. Supp. 2d 438 (S.D.N.Y. 2013)......................................................23

*Whiteley v. Warden*,
   401 U.S. 560 (1971)....................................................................................8

*Wilson v. Russo*,
   212 F.3d 781 (3d Cir. 2000)......................................................................19

**Statutes**

18 U.S.C. § 201 ......................................................................................................24

18 U.S.C. § 371 ...........................................................................................11, 12, 24

18 U.S.C. § 951 ......................................................................................................24

18 U.S.C. § 1343 ....................................................................................................24

18 U.S.C. §1346 .....................................................................................................24

18 U.S.C. § 1349 ....................................................................................................24

18 U.S.C. § 1951 ....................................................................................................24

18 U.S.C. § 1956 ....................................................................................................24

18 U.S.C. § 1957 ....................................................................................................24

22 U.S.C. § 612 ......................................................................................................24

22 U.S.C. § 618(a)(1) .............................................................................................24

**Constitutional Provisions**

U.S. Const. amend. IV ....................................................................................... *passim*

## PRELIMINARY STATEMENT

The Government acknowledges its omissions of known information from affidavits based upon which it obtained search warrants for evidence seized from defendant Wael Hana in this case. Facing the suppression of that evidence, it seeks to justify its actions in ways that are at odds with established Fourth Amendment jurisprudence.  For example, it analyzes the evidence at issue piece-by-piece and in isolation, as opposed to as a whole and with the benefit of common sense, as the law requires.  It argues that the misstatements or omission in its submissions seeking warrants—which resulted in unlawful searches—were immaterial, or that the Court should find that the Government acted in good faith based upon other purportedly (though not actually) inculpatory evidence that was not included in the applicable affidavits; but the Government does not explain how it can possibly be appropriate for it, or the Court, to rely on evidence outside the four corners of the search warrant affidavits.  Likewise, the Government never explains how its omission of inculpatory evidence could logically ever justify the exclusion of evidence *negating* probable cause.  And the Government argues that its actions were not intentional or reckless, though this contention flies in the face of the many, repeated instances in which it omitted evidence that an issuing Magistrate Judge would certainly want to know in fully and fairly considering the question of whether probable cause for a Fourth Amendment search had been shown.  At times, it points to its actions in owning up to exculpatory facts as excusing its conduct in failing to reveal others, though its admissions against interests address different facts and are often hidden in footnotes far from the pertinent discussions in its affidavits.

The constitutional violations that flow from these unlawful searches, discussed in further detail in Mr. Hana's moving brief and below, warrant a full airing of the sort that the Supreme Court has mandated in *Franks v. Delaware*, 438 U.S. 154 (1978), in order to address controversies like this one.  Upon the conclusion of that hearing, Mr. Hana will ask that the subject evidence be

suppressed for these reasons and because the warrants ultimately issued were overbroad, at least in part, because the evidence seized was not limited by the criminal violations cited.  Once the Court has the benefit of a full record upon which to rule, it should grant Mr. Hana's motion, lest the Fourth Amendment protections to which he was entitled be rendered a dead letter.

## ARGUMENT[1]

### I.    MR. HANA IS ENTITLED TO A *FRANKS* HEARING.

As set forth in Mr. Hana's moving brief, the search warrant affidavits at issue here[2] contain numerous materially false and misleading statements and omissions that knowingly or recklessly misled the issuing magistrates to find probable cause, in violation of the Fourth Amendment to the Constitution.  In response, the Government argues that Mr. Hana has failed to show that the affiants acted with an "intent to mislead or reckless disregard for the truth" and generally asks the Court to ignore the false statements or omissions to and to find that there was probable cause in any event. ECF No. 190, Memorandum of Law of the United States in Opposition to the Defendants' Motion to Suppress ("Opp.") at 12-57.  Specifically, the Government, addressing each alleged misrepresentation and omission in isolation, argues that none is material to a finding of probable cause, *id*. at 34-51, and that even if the falsehoods were material, the Government's decision "to *omit* additional and often devastating inculpatory information, show that the defendants . . . do not meet or even closely approach the second threshold requirement for suppression or a hearing, namely that the alleged material omissions were left out of an affidavit intentionally or recklessly by the affiant," *id*. at 7 (emphasis in original).  But, as detailed in Mr. Hana's moving brief and

---

[1] Unless otherwise noted, all internal citations and quotation marks are omitted from citations.

[2] Unless otherwise noted, Mr. Hana's *Franks* challenge targets the December 20, 2022, January 17, 2023, February 14, 2023, and September 20, 2023 search warrants.  *See* ECF No. 141, Lustberg Declaration, Exhibits ("Ex.") E, D, F, and G respectively.

further explained below, these false and misleading statements and omissions are far from inconsequential blemishes, but rather are abundant throughout the affidavits and went to critical facts of the case, that were clearly essential to the Magistrate Judges' determinations of probable cause. That is, had the issuing magistrates been presented with the full truth, which the Government does not dispute it knew at the time, their view of these warrant applications would have been very different, and the warrants at issue would not have been approved. As such, the Court should order a hearing pursuant to *Franks v. Delaware*, to determine the sufficiency of the evidence used to support these warrants.

## A. The Warrant Affidavits Contain False And Misleading Statements and Omissions That Were Material To The Findings Of Probable Cause.

Under *Franks*, a defendant is entitled to a hearing to challenge the veracity of a search warrant affiant's statements when he makes a "substantial preliminary showing that (1) there were intentional misrepresentations or omissions in the warrant affidavit, or, in other words the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) those misrepresentations or omissions were material, or necessary to the issuing judge's probable cause finding." *United States v. Nejad*, 436 F. Supp. 3d 707, 725, 718-19 (S.D.N.Y. 2020) (emphasis omitted) (quoting *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013)). Addressing each prong in turn, the Government first contends that Mr. Hana's motion should be denied without a hearing because each separate falsehood was itself not material to the magistrates' findings of probable cause. But the Government's resolve to take its omissions one at a time, instead of considering them as a whole, is inconsistent with the law, which requires the Court to consider the "totality-of-the-circumstances." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Thus, just as "[i]n assessing the proof of probable cause, the government's affidavit in support of the search warrant must be read as a whole, and construed realistically," *United States*

*v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998); *see also United States v. Tyler*, 238 F.3d 1036, 1038 (8th Cir. 2001) ("In determining whether probable cause exists, we do not evaluate each piece of information independently; rather, we consider all of the facts for their cumulative meaning."), so is it the case that "[t]he effect of misrepresentations and omissions on the existence of probable cause is to be considered cumulatively," *United States v. Kiser*, 716 F.2d 1268, 1274 (9th Cir. 1983); *see also United States v. Discala*, No. 22-cr-675, 2023 WL 4118637, at *2 (2d Cir. June 22, 2023) (affirming district court denial of hearing after considering omissions individually and "collectively with the other challenged representations and omissions"); *United States v. Maglio*, 21 F.4th 179, 187 (1st Cir. 2021) (affirming district court denial of *Franks* hearing on basis that defendant had not established "materiality, either cumulatively or as to any particular alleged omission or false statement").

Thus, "[t]o determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material," a court must decide whether "putting aside erroneous information . . . there remains a residue of independent and lawful information sufficient to support probable cause." *United States v. Awadallah,* 349 F.3d 42, 66 (2d Cir. 2003) ("[A] court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant."). Or, in the case of material omissions, the issue is whether even in light the facts omitted from the challenged affidavits, there would still be probable cause. *Rajaratnam*, 719 F.3d at 146 (To determine materiality courts must ask "whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause" (quoting *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980)); *Nejad*, 436 F. Supp. 3d at 719 ("[T]o determine materiality, courts should disregard the allegedly false statements, insert the omitted truths, and determine whether there remains a residue of

independent and lawful information sufficient to support probable cause.").  And again, "[t]he omitted information and the information in the affidavit must be considered as a whole in determining if probable cause continues to exist."  *United States v. Mandell*, 710 F. Supp. 2d 368, 374 (S.D.N.Y. 2010) (quoting *United States v. Marin–Buitrago*, 734 F.2d 889, 895 (2d Cir. 1984)).

The Government, however, disregards this fundamental rule of law, focusing on one purported omission at a time rather than looking to all of them, as a whole, to determine their effect on probable cause.  Separating each identified omission into different individually labeled sections, *see* Opp. at 35 ("Official-2"), *id.* at 37 ("The State Department and SFRC Employees"), *id.* at 40 ("The New Jersey Defendant"), *id.* at 43 ("The Hana Associate"), *id.* at 45 ("The Laboratory Company CEO and the Health Official"), *id.* at 47 ("Associate-2, Associate-3, and the Insurance Client"), *id.* at 48 ("The Statements About Gold Were Not Necessary to Probable Cause"), the Government argues that it is "highly implausible" that the magistrates would have come to a different probable cause finding had they been aware of ███████ statement that he did not recall discussing a criminal investigation with Senator Menendez during their January 2019 phone call, *id.* at 35-36, and that the inclusion of "any" of the statements of the three current or former State Department or Senate Committee on Foreign Relations ("SFRC") employees "would not have defeated probable cause," *id.* at 39.  Indeed, the Government continues its individualized analysis of probable cause throughout its opposition, claiming that each alleged omission, in and of itself, "would not have disturbed probable cause."  *Id.* at 44 ("to the extent [information concerning ███████ landscaping services for the Menendezes] was not disclosed, it plainly would not have disturbed probable cause"); *id.* at 46 ("the alleged omission of the Laboratory Company's CEO's denial, in July 2022 . . . could not plausibly have affected the probable cause determination"), *id.* at 47 ("[t]hat three persons doing business with ███████

██████████ stated that they believed ████████ was the owner . . . would not have supported probable cause"), *id.* 48 ("omissions of certain statements concerning the gold bars . . . were immaterial to the warrants").  But this analysis simply fails to consider the cumulative effect that all of these omissions would have had on probable cause, which is what the law clearly requires.  *See Rajaratnam*, 719 F.3d at 146 ("[W]e [are] required to determine whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause"); *Salameh*, 152 F.3d at 113 ("In assessing the proof of probable cause, the government's affidavit in support of the search warrant must be read as a whole").  In addition to being, by its own terms, a deficient constitutional analysis, the Government's argument does not, as a matter of common sense, fairly evaluate the effect of what was misrepresented, or omitted:  for example, it demands reliance on unsupported speculation that Senator Menendez contacted then- ████████ ███████████████████ in January 2019 to secure a favorable resolution of the criminal prosecution against ████████; it requires looking the other way in the face of evidence that Senator Menendez's position on aid to Egypt remained consistent throughout the period of time that the alleged bribes occurred and thus was unaffected by those "bribes; and it requires that those who were determining whether to issue a warrant pretend that Senator Menendez had taken actions based upon the payment of bribes when there was specific omitted evidence that he had not, as is discussed further below.

But beyond the fundamental failure to consider all of the evidence together, the Government disregards the law in another, perhaps even more alarming way:  it repeatedly references "highly inculpatory information" that it claims "if included [in the search warrant affidavits], further supported probable cause."  Opp. at 13-14; *see also id.* at 7, 55, 56, 57.  The Government thus implores the Court to "look[] to the face of the original indictment returned in

this case" which it claims "reveals a number of damning inculpatory details that were not included in that warrant's affidavit." *Id*. at 55-56.  But this invitation, a cornerstone of the Government's argument, absolutely must be rejected, for contrary to the Government's contention, reference to facts outside of the four corners of the affidavits obviously cannot save the Government's unconstitutional warrants.  And that is because, as a matter of basic law, the factual information to support a probable cause finding "must be contained within the four corners of a written affidavit given under oath." *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008); *cf. United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) (the Government "may no longer rely on unincorporated, unattached supporting documents to cure an otherwise defective search warrant").  But by the Government's own admission the affidavits at issue here did *not* include any of the referenced "inculpatory information," and the Government does not explain, with citation to caselaw or otherwise, how allegations contained in an indictment returned *after* the warrants were issued could contribute to a probable cause finding.  Indeed, if subsequently obtained incriminating evidence or a later returned indictment could cure a search warrant unsupported by probable cause, then no motion to suppress would ever be allowed.  But this is obviously not the law.  *See Maryland v. Garrison*, 480 U.S. 79, 85 (1987) ("items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued"); *United States v. Reinholz*, 245 F.3d 765, 775 (8th Cir. 2001) ("[R]etroactively supplementing the affidavit with material omissions bolstering probable cause would undermine the deterrent purpose of the exclusionary rule."); *United States v. Nelson*, No. 09-cr-40130, 2010 WL 2746400, at *11 (D.S.D. July 12, 2010) ("[T]he case law suggests that such omitted information cannot save an affidavit that otherwise violates *Franks*.").  Indeed, the Government's reliance on evidence not before the Magistrate Judges who issued these warrants can only be viewed as an implicit admission that

what was before those judicial officers, as supplemented by what was omitted, would not have supported a probable cause determination.  *See United States v. Voustianiouk*, 685 F.3d 206, 214 (2d Cir. 2012) ("The Supreme Court, however, has made clear that the mere fact that officials were in possession of evidence that *would have* provided probable cause for the search that they ultimately conducted is irrelevant in determining whether a search violated the Fourth Amendment of the Constitution." (emphasis in original) (citing *Whiteley v. Warden*, 401 U.S. 560, 565 n. 8 (1971) ("[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate."))).

Indeed, the Government's attempt to rely upon evidence beyond the search warrant affidavits is even more misguided here, where the purportedly "inculpatory" evidence which attempts to show that Mr. Hana swindled Senator Menendez, Opp. at 15-22, is far from incriminating, but rather itself undermines probable cause to believe that Mr. Hana and Senator Menendez—whom Mr. Hana allegedly "swindled"—were co-conspirators who entered into an agreement or that there was a corrupt *quid pro quo*.  *See United States v. Jackson,* 371 F. Supp. 3d 257, 267 (E.D. Va. 2019) ("[C]onspiracy [to commit bribery] requires a mutual understanding among co-conspirators with respect to the object of the conspiracy as well as an overt act in furtherance of the conspiracy."); *United States v. Benjamin*, No. 21-cr-706, 2022 WL 17417038, at *12 (S.D.N.Y. Dec. 5, 2022) (concluding that there must be "a contemporaneous mutual understanding that a specific *quid* and a specific *quo* are conditioned upon each other" to establish criminal liability for bribery in the context of campaign contributions).  To the contrary, this evidence actually undermines the Government's theory of the case, the crux of which is that Mr. Hana, acting as an unregistered agent of the Government of Egypt, provided things of value to

Senator Menendez to get the Senator to act on Egypt's behalf.  If, as this information suggests, Mr. Hana actually "swindled" Senator Menendez, Opp. at 16, then Mr. Hana's actions run counter to the notion of any agreement at all, let alone one that purportedly sought to use Mr. Hana to curry favor with the Senator, directly contrary to the Government's theory of the case, as alleged in the affidavits.  *See* Ex. D ¶ 18, Ex. E ¶ 20, Ex. F ¶ 8, Ex. G ¶ 14 ("Will Hana is an individual who, as set forth in part below, is suspected of arranging a scheme to provide Arslanian and Menendez with things of value in exchange for official acts by Menendez").

In any event, that significant evidence was omitted from the Government's affidavits is not seriously disputed by the Government.  As explained in Mr. Hana's moving brief, the affidavits attempt to paint a portrait of a "suspected bribery scheme" wherein Mr. Hana, among others, provided Senator and Mrs. Menendez with certain things of value "in exchange for promised and completed official acts by Menendez, including . . . contacting . . . ████ in January 2019, to secure a favorable resolution of a New Jersey criminal prosecution that was pending against ████ . . . and [other] acts by Menendez to approve, or not interfere with, foreign military aid to Egypt," Ex. D ¶ 29, Ex. E ¶ 31, Ex. F ¶ 19, Ex. G ¶ 25, including, for example "sign[ing] off" on foreign military sales to Egypt, Ex. D ¶ 79(c), Ex. E ¶ 79(c), Ex. F ¶ 69(c), Ex. G ¶¶ 78(i), (n), and disclosing non-public information relating to foreign military sales and aid to Egyptian officials,[3] *see* Ex. G ¶ 78.  But conspicuously missing from the Government's one-sided narrative are numerous statements from multiple Government officials that directly negate any contention that Senator Menendez actually took the acts alleged as the result of a purported bribe.  For example, the affidavits do not include:  (1) ████ June 22, 2022 statement that he "did not remember

---

[3] With respect to Senator Menendez's purported disclosure of non-public information concerning foreign military aid to Egypt, Mr. Hana's challenge is limited to the September 20, 2023 Affidavit.

what was discussed on the January 20, 2019 phone call" with Senator Menendez and that "[t]he only time that ███████ remembers Menendez raising a criminal investigation with ███████ was during the September 6, 2019 meeting," December 28, 2023 Gov't Disclosure Letter at 6; or (2) the July 26, 2022 statement from ███████████████████████████████████████ that "[f]rom 2018 to the present, [she] has not seen an evolution in Menendez's position on aid to various Middle Eastern countries or Egypt in particular," *id.* at 5.  ECF No. 143, Memorandum of Law in Support of Defendant Wael Hana's Omnibus Pretrial Motions ("Hana Br.") at 122-23, 128.  Nor does the September 20, 2023 Affidavit mention: (1) ███████████ August 11, 2023 statement that "Menendez held up Egypt money for 'forever and a day.' . . . Menendez held up that money [for foreign military financing] for a long time," December 28, 2023 Gov't Disclosure Letter at 8; (2) ███████████ August 11, 2023 statement that "[t]here was no absolute prohibition on members sharing non-public [Senate Foreign Relation Committee ("SFRC")] information with third parties," *id.*; or (3) the then-███████████████████████████████████████████████████████████████ ███████████████████████████████████ June 16, 2023 comment that "[i]t would have been extraordinary for FMF funding that was on hold in September 2019 not to have been released by the end of the month regardless," *id.* at 10.  Hana Br. at 123-24.

Unable to substantively refute the clear omission of these statements from the warrant affidavits, the Government resorts to a claim that because "the bribery offenses under investigation did not require proof that Menendez actually engaged in any official act at all, only that there was a corrupt *quid pro quo*," Opp. at 34, and "none of these government officials was in any position to know whether Menendez . . . had actually agreed to engage in a corrupt *quid pro quo*, they were [therefore] not in any position to give any statement that might defeat probable cause," *id.* at 34-

35.  Specifically, the Government asserts that "[n]othing that Official-2 ▮▮▮▮ said about the content of the meetings could defeat probable cause because bribery does not require any official to *perform* any official act, as opposed to promise or agree to do so," *id*. at 35 (emphasis in original), and that the State Department and SFRC employees' statements merely "provided background and context information on military aid [that] in no way undermined probable cause that Menendez agreed to or did engage in a corrupt *quid pro quo*," *id.* at 37.  But the Government's argument misses the point.  While a public official need not actually undertake an official act to commit the crime of conspiracy to commit bribery under 18 U.S.C. § 371—so long as he has agreed to do so—whether or not the public official actually took the agreed upon official act is still highly probative of whether there was an agreement.  As courts have recognized, "the fact that [the public official] did not perform official acts clearly is strong evidence that [the alleged briber] did not make payments to [the public official] with the intent to influence official acts and did not conspire to do so. . . . ."  *Jackson*, 371 F. Supp. 3d at 269.  "Thus, the fact that [the public official] did not perform official acts demonstrates that [the alleged briber] did not give, offer, or promise anything of value to [the public official], or conspire to do so, with the intent to influence official acts."  *Id.*  Therefore, while the State Department and SFRC employees' statements may not be dispositive of "whether Menendez *actually* took certain acts," Opp. at 37 (emphasis in original), they are certainly probative, even if not dispositive, of whether there was any agreement for Senator Menendez to take action with respect to foreign military financing.  Similarly, though ▮▮▮▮ statements that he did not recall discussing a criminal matter with Senator Menendez during their January 20, 2019 phone call do not necessarily mean that the discussion did not occur, it is certainly probative of whether or not it did, which collectively with the other identified misstatements and omissions undermines any finding of probable cause that was made without

consideration of this evidence. *See United States v. Sterling Centrecorp, Inc.*, No. 08-cv-02556, 2013 WL 3166585, at \*58 (E.D. Cal. June 20, 2013), *aff'd*, 977 F.3d 750 (9th Cir. 2020) (witnesses "inability to remember certain duties or actions taken as officer and directors" was suggestive of "the fact that such duties did not exist and that such actions did not occur").

But, regardless of what the Government must show under 18 U.S.C. § 371—that is irrespective of whether the Government need only show a promise to take an official act, as opposed to the actual undertaking of such act—the affidavits here explicitly allege, in addition to promises, that Senator Menendez took and "completed official acts," Ex. G ¶ 25, *see also* Ex. D ¶ 29, Ex. E ¶ 31, Ex. F ¶ 19 (stating that Senator and Mrs. Menendez were provided with things of value "all in exchange for official acts by Menendez"), and thus, the conflicting information identified above should certainly have been presented to the issuing magistrates when assessing probable cause. *See United States v. Broadnax*, No. 19-cr-20352, 2022 WL 2079713, at \*2 (E.D. Mich. June 9, 2022) (defendant was entitled to a *Franks* hearing where he presented contradictory information to part of the search warrant affidavit); *United States v. White*, No. 07-cr-4, 2007 WL 2404995, at \*12 (N.D. W. Va. Aug. 17, 2007) (granting a *Franks* hearing when a police report contradicted the same officer's affidavit in support of the search warrant, showing that the affidavit contained misrepresentations and omissions). Indeed, had the magistrates been presented with this additional information, showing that Senator Menendez did not, in fact, take these acts, as a matter of the common sense that governs this inquiry, *see Gates*, 462 U.S. at 238 ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."), they might very well have reconsidered their probable cause determinations and come to a different conclusion. For example, had the

issuing magistrates known that "there was no absolute prohibition on members sharing non-public [SFRC] information with third-parties," December 28, 2023 Gov't Disclosure Letter at 8, the Government's insinuation that doing so was indicative of a bribe would have carried little to no weight in assessing probable cause.  Similarly, the fact that U.S. officials saw no change in Senator Menendez's stance on military aid toward Egypt after the purported bribes were made, would have disproved the Government's position that the Senator took "acts . . . to approve, or not interfere with, foreign military aid to Egypt."  Ex. D ¶ 29, Ex. E ¶ 31, Ex. F ¶ 19, Ex. G ¶ 25.  Probable cause would then have been lacking, and suppression required.

Nor, although the Government characterizes Mr. Hana's arguments as based entirely on omissions, Opp. at 12-13, is this correct; though these flagrant omissions certainly include critical information that could and would have made a difference to any conscientious reviewing judicial officer, the affidavits also *misstate* essential facts, further skewing the story presented to those issuing magistrates.  Thus, for example, the Government concedes that the December 20, 2022, January 17, 2023 and February 14, 2023 Affidavits misstate when Mr. Uribe stopped making payments on the Mercedes-Benz Convertible, but nonetheless claims that its failure to update this information in the warrants was "immaterial and plainly inadvertent."  *Id.* at 12-13, 50-51.  The Government similarly argues that the misrepresentation concerning Mr. Uribe's role in ███████ contained in the January 17, 2023, February 14, 2023 and September 20, 2023 Affidavits, and related claim that "███████ apparently ran ███████ as a nominee for Uribe," Ex. G ¶ 46(a), "would not have supported probable cause."  Opp. at 47.

But, it is near impossible to fathom how such information could be immaterial or irrelevant to probable cause:  the affidavits conspicuously allege that the Mercedes-Benz was provided to Senator and Mrs. Menendez in exchange for the Senator's assistance in resolving the pending

criminal prosecution against ███████ and criminal investigation against ███████, *see* Ex. D ¶¶ 29, 31(a), 54(x), Ex. E ¶¶ 31, 33(a), 55(x), Ex. F ¶¶ 19, 21(a), 44(x), Ex. G ¶¶ 25, 27(a), 52(x); thus the Government itself places these allegations at the heart of the alleged bribery scheme. Further, the Government heavily relies on allegations that Mr. Hana arranged for Mr. Uribe to provide Senator and Mrs. Menendez with the Mercedes-Benz as a purported bribe in exchange for the Senator's assistance in resolving the criminal charges against ███████, *see id*., and uses the fact that Mr. Uribe "set up automatic payments on the automotive loan for the Mercedes-Benz Automobile" Ex. D ¶ , Ex. E ¶ , Ex. F ¶ , Ex. G ¶ 59, to demonstrate that the vehicle was, in fact, a bribe.  Accordingly, evidence negating the fact that Mr. Uribe was making payments on the Mercedes-Benz would certainly undermine the Government's position that it was provided as a bribe payment, and thus certainly should have been presented to the issuing magistrates in determining probable cause.  Similarly, information explaining that Mr. Uribe merely "worked as a consultant for [███████]," December 28, 2023 Gov't Disclosure Letter at 8, and that "███████ is the owner of ███████," *id.* at 3, 8, directly negates the allegation, upon which probable cause was based, that "███████ apparently [ran] ███████ as a nominee for Uribe," Ex. G ¶ 46(a), and therefore, should have been provided to the issuing magistrates.

Beyond these indisputably omitted allegations and misrepresentations, the affidavits contain numerous other omissions—identified at length in Mr. Hana's moving brief, *see* Hana Br. at 129-30—that when collectively considered in connection with the affidavits' remaining allegations, fail to establish probable cause.  For example, the affidavits do not include:  (1) ███████ ███████ June 16, 2022 statement that "Nadine Menendez attempted to pay [him] twice for work he performed at Menendez's house," December 28, 2023 Gov't Disclosure Letter at 9, directly negating any inference that the home renovation services that ███████ allegedly performed

were "paid for by Hana" in exchange for the Senator's assistance with an immigration case involving ██████████ brother, as is alleged in the affidavits; or (2) ██████████ July 16, 2022 statement that "[w]hen asked if he talked to Nadine Menendez or Menendez to help him partner with municipalities, ██████████ said no.  When asked if Nadine Menendez told ████ to contact mayors, ██████ said yes," *id.* at 2, negating any belief that ████████ ever asked for the Senator's assistance.  Likewise, the September 20, 2023 Affidavit fails to include ████ ████ July 14, 2023 corroborating statement that "[i]n or about March 2022, Menendez told ████ to figure out how to list, on his financial disclosure form, an asset of gold bullion owned by Nadine Menendez.  Menendez told ████ that the gold bullion was gold that Nadine Menendez's had received from her deceased mother," *id.* at 11, and ██████████ September 19, 2023 statement discrediting the Government's narrative that Mr. Daibes provided gold to Senator and Mrs. Menendez in exchange for favorable acts, *id.*  Again, the Government does not deny the fact that these statements were omitted from the affidavits, arguing instead that the omissions "are immaterial because they were cumulative . . . of other facts that had already been disclosed," Opp. at 49, and "add[] little if anything" to the disclosures already contained in the warrant affidavits, *id.* at 46, *see also id.* at 44 ("the challenged affidavits disclose a remark . . . conveying substantially the same point").  But far from "conveying substantially the same point" these statements communicate an entirely different message than what was actually alleged.  Although the affidavits include, in a footnote, ██████████ statement that "when Menendez learned of the lawnmower [that he provided Mrs. Menendez] he became angry and told [Mrs. Menendez] she had to pay ████," Ex. D ¶ 66(i)(ii) n. 73, Ex. E ¶ 67(i)(ii) n. 75, Ex. F ¶ 56(i)(ii) n. 76, Ex. G ¶ 64(i)(ii) n. 85, this statement fails to convey the fact that Mrs. Menendez actually offered to pay ██████████ for his services, negating any belief that this was a bribe as alleged in the affidavits.  And while

15

Mr. Hana does not dispute that the affidavits disclose, again in a footnote, that ███████ "denied that Menendez had made calls on ███████ behalf," Ex. D ¶ 67(bb) n. 87, Ex. E ¶ 68(bb) n. 88, Ex. F ¶ 57(bb) n. 89, Ex. G ¶ 65(bb) n. 98, they do not state the even more powerful truth that ███ ███████ never even asked for the Senator's help in this regard, negating any inference that a bribe was ever paid or discussed.   The Government further claims that the September 20, 2023 Affidavit's inclusion of Mrs. Menendez's "statement to a jeweler . . . claiming that the gold had come from her deceased mother," Opp. at 49, Ex. G ¶ 81(g)(ii), and counsel for Mrs. Menendez's claim that she "received possession of seven one-ounce gold bars from Daibes to show a mutual acquaintance," Ex. G ¶ 85 n.126, sufficiently covered ███████ and ███████████ statements; but again this is not the case. ███████ and ███████ statements provide pertinent first-hand knowledge of how the Menendezes obtained possession of the gold, discrediting the Government's narrative that Mr. Daibes provided them with the gold in exchange for any official act.

Of course, it was not for the Government to unilaterally determine that it could conceal this information from the Magistrate Judges, especially whereas here, the facts bore directly on the existence of the alleged bribery scheme.  Rather, the issuing magistrates should have been told all of the facts so that they could make an informed decision after considering all of the relevant information as a whole.  *See United States v. Stewart*, 337 F.3d 103, 107 (1st Cir. 2003) ("Meticulous compliance [with the Fourth Amendment] involves more than an agent's own judgment as to the ultimate importance of a piece of information to a judgment of probable cause.").  Because this did not occur, a *Franks* hearing should be ordered and the evidence seized under the subject search warrants should, following that hearing, be suppressed.

As Mr. Hana has repeatedly conveyed, both in his moving brief and through his arguments above, the misrepresentations in and omissions from the affidavits based upon which the search warrants before the Court were issued, were undoubtedly "material, or necessary to the issuing judge's probable cause finding." *Nejad*, 436 F. Supp. 3d at 719. That is, when the false statements are excised from the affidavit, and the omitted allegations are fully considered in proper context, there "remains [no] residue of independent and lawful information sufficient to support probable cause. *Awadallah*, 349 F.3d at 65. Rather, what remains are allegations that Senator Menendez undertook various acts wholly apart from any purported bribe payment. In order words, stripped of the offending misrepresentations and contextualized by the crucial omissions, the affidavits demonstrate only that Senator Menendez was involved in certain military funding decisions regarding Egypt and that he spoke to a New Jersey state official, but they do not provide probable cause to believe he engaged in that conduct—or agreed to—as part of a *quid pro quo* bribery scheme. Under these circumstances, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

### B.     The Government Knowingly Or Recklessly Included False And Misleading Statements And Omissions In Its Warrant Affidavits.

The Government further argues that "[e]ven if any of the above-described information were material . . . a *Franks* hearing, much less suppression, would still be inappropriate because of the lack of any showing of intent to mislead or reckless disregard for the truth." Opp. at 51. But the Government's attempts at justifying its conduct fail. The Government does not—because it simply cannot—dispute that at the time it made its requests for and ultimately obtained the challenged warrants, it was in possession of the witness statements identified above, which, as Mr. Hana has explained, shed significant light and often directly contradict, the pertinent allegations included in

the affidavits upon which the issuing magistrates relied.  *See* Section I.A, *supra*; Hana Br. 122-130.  Aware of this material information, the Government nonetheless made the deliberate decision not to provide it to the judges who were considering the applications for these search warrants. That decision cannot, especially in a case of this magnitude and profile, have been an accident, or mere oversight.  Rather, it was a conscious, strategic decision that served to make a finding of probable cause more likely and was therefore certainly intentional, or at the very least, made with reckless disregard for the truth.

In arguing that Mr. Hana has failed to satisfy his burden under *Franks*, the Government misconstrues the law, confusing what the defendant must show to obtain a hearing under *Franks*, with what the defendant must ultimately prove at the *Franks* hearing to obtain suppression, when it contends that "the defendant must establish with 'credible and probative evidence' that the omission of information 'was designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.'"  Opp. at 51 (citing *Rajaratnam*, 719 F.3d at 154).  While a court must find "credible and probative evidence that the omission of information in a[n] . . . application was designed to mislead or was made in reckless disregard of whether [it] would mislead," to suppress the fruits of a challenged search warrant under *Franks*, *United States v. Lahey*, 967 F. Supp. 2d 698, 710 (S.D.N.Y. 2013) (explaining that in performing such inquiry the court must consider the full record—"especially the *Franks* hearing testimony regarding the states of mind of the government agents"); *United States v. Lambus*, 897 F.3d 368, 373 (2d Cir. 2018) (weighing the full record and testimony presented during two *Franks* hearings in reviewing the district court's suppression order, noting that "the reviewing court must be presented with credible and probative *evidence*" that suppression was warranted (emphasis in original)), in order to get a *Franks* hearing in the first place, a defendant need only make a "substantial preliminary showing that  . . . the

claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth, *Nejad*, 436 F. Supp. at 718-19. That is precisely what Mr. Hana has done. *See* Hana Br. at 122-27 (explaining how the misstated and omitted information was well-known to the affiants at the time their requests for the challenged search warrants were made).

In the Second Circuit, "the guideposts for determining recklessness are different when it comes to evaluating" misrepresentations, as opposed to omissions. *United States v. Rajaratnam*, No. 09-cr-1184, 2010 WL 4867402, at *9 (S.D.N.Y. Nov. 24, 2010). With respect to misrepresentations, the reckless disregard standard is met when the affiant: (1) made a false statement with knowledge that it was false; (2) had serious doubts as to the truth of the statement; or (3) had obvious reason to doubt the veracity of the statement. *Lahey*, 967 F. Supp. 2d at 709-10. With regard to omissions, a reckless disregard for the truth is shown when "any reasonable person would have known that this was the kind of thing the judge would wish to know." *United States v. Perez*, 247 F. Supp. 2d 459, 474 (S.D.N.Y. 2003) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). As the Government acknowledges, "[r]ecklessness may be inferred where the omitted information was 'clearly critical' to the probable cause determination." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991); Opp. at 11 ("To permit the inference that an affiant acted with reckless disregard for the truth, the omitted information must be 'clearly critical' to assessing the legality of the search."). And an inference of intentionality or recklessness is all the more appropriate where, as here, the challenged affidavits are replete with repeated omission after omission, as Mr. Hana has shown. For example, in *United States v. Lahey*, the court recognized that although each individual omission may not have established reckless disregard for the truth, "the cumulative effect of all the omissions was to eliminate nearly every indicator detracting from probable cause," leading inexorably to a finding of recklessness. 967 F. Supp. 2d

at 723 ("The relevant evidence . . . and the related, clearly critical nature of the . . . misrepresentation and [cumulative] omissions . . . leads the Court to find that recklessness is to be inferred.").  Similarly in *United States v. Murray*, the court concluded that "in light of the number of alleged material omissions and misrepresentations and their importance to the probable cause determination . . . [the] Defendant ha[d] raised a sufficient inference of recklessness."  No. 18-cr-30018, 2020 WL 4904758 (D. Mass. Aug. 20, 2020); *see also United States v. Vigeant,* 176 F.3d 565, 572 n.8 (1st Cir. 1999) (refusing to find that affiant did not act with reckless disregard for the truth where the court failed to consider the cumulative effect of multiple omissions in the affidavit); *United States v. Roman*, 311 F. Supp. 3d 427, 437 (D. Mass. 2018) (holding that multiple omissions in search warrant affidavit "had [the] cumulative effect of recklessness").

Unable to justify the affiants' calculated decisions to repeatedly exclude, and at times misstate, the highly relevant, and significant information identified above, the Government returns to its contention that it omitted "numerous devastating inculpatory facts" from the warrant affidavits, contending that this negates any inference of recklessness or intent to mislead.  Opp. at 52, 55-57.  But the fact that inculpatory information was excluded from a search warrant application does not excuse the failure to include information that would have negated probable cause.  In this regard, this case is readily distinguishable from those cited by the Government, *id.* at 55 (citing *United States v. Thomas*, 788 F.3d 345, 351 (2d Cir. 2015); *Rajaratnam*, 719 F.3d at 155 n.18), which stand for the common sense proposition that when the alleged *omission* would strengthen the probable cause determination, then it is difficult to infer that the Government intentionally or recklessly omitted the information.  *Thomas*, 788 F.3d at 351; *Rajaratnam*, 719 F.3d at 155 n.18.  Here, the Government attempts to dispel the insinuation that the affiants acted

20

intentionally or recklessly by identifying "inculpatory" but different allegations.  But, of course, that is not the case with regard to the kind of exculpatory information omitted here.

Finally, the Government seeks to justify its failure to include ███████ denial that he paid anyone to bring a favorable resolution to his case by saying that it did so elsewhere, in passing.  Opp. at 40.  But that disclosure not only failed to include the most significant statement that ███ ███ "never gave Hana or Uribe any money for their help with his case," December 28, 2023 Gov't Disclosure Letter at 10, a statement that would have further served to negate a finding of probable cause, but was tucked away in a footnote made in connection with completely unrelated allegations, pages and pages after the Government set forth the ███-related allegations.  *Compare* Ex. D ¶ 31(a)-(c), Ex. E ¶ 33(a)-(c), Ex. F ¶ 21(a)-(c), Ex. G ¶ 27(a)-(c) (setting forth ███-related allegations), *with* Ex. D ¶ 55 n.57, Ex. E ¶ 56 n.58, Ex. F ¶ 45 n.59, Ex. G ¶ 53 n.67 (disclosing footnote).[4]  Indeed, if anything, this sleight of hand also serves to further demonstrate the Government's knowing, or at least reckless, attempt to mislead the issuing magistrates.  Indeed, this method of concealment was the Government's *modus operandi*:  it also attempted to hide information relating to ███████████ statement that "[he] never provided Uribe with his email address to use to purchase or make payments on any vehicle," *id*. at 3, in a footnote separated from the pertinent corresponding allegations.  *See* Ex. D ¶ 61(h) n.65, Ex. E ¶ 62(h) n.66, Ex. F ¶ 51(h) n.67, Ex. G ¶ 59(h) n.76.  Aside from the fact that it is generally insufficient to raise consequential points in a footnote, *see Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 583 (S.D.N.Y. 2022) ("It is generally inappropriate to make substantive arguments in footnotes."), the rather sly

---

[4] *See* Ex. D ¶ 55 n.57, Ex. E ¶ 56 n.58, Ex. F ¶ 45 n.59, Ex. G ¶ 53 n.67 ("[O]n June 16, 2022 . . . ███ . . . stated in substance and part, that he spoke to Hana regarding his prosecution in the same way that he spoke to everyone about it, and that he did not pay anyone to bring a favorable resolution to his case.  When asked if Hana or Uribe had assisted him in resolving his case, he responded, 'What could they do?  They're not lawyers.'").

manner in which the Government conceals this information in footnotes here bespeaks the kind of a lack of good faith to neutrally present all relevant information to the reviewing magistrates that gives rise to relief under *Franks* and its progeny.

For the reasons set forth above as well as more fully in Mr. Hana's moving brief, a *Franks* hearing is warranted so that the Court can fully and fairly assess the falsities and omissions in the search warrant affidavits to which Mr. Hana has pointed, both with respect to the substance and materiality of those falsities and omissions and with regard to whether those statements or omissions were made either "knowingly and intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155.  Indeed, such a hearing—and not the inclusion of evidence beyond the affidavits at issue in briefs, as the Government has done here—is the way in which this kind of dispute is resolved, *see, e.g.*, *United States v. Mandell*, 752 F.3d 544, 551–52 (2d Cir. 2014) ("*Franks* permits a defendant to challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure.").

## II.   EVIDENCE DERIVED FROM THE EXECUTION OF CERTAIN SEARCH WARRANTS SHOULD BE SUPPRESSED BECAUSE THEY LACK PARTICULARITY AND ARE OVERBROAD.

In his moving brief, Mr. Hana set forth in detail why the December 23, 2020 Warrant,[5] November 24, 2021 Warrant,[6] and January 10, 2022 Warrant[7] sought documents and communications beyond the enumerated offenses identified therein and, as such, the searches and seizures pursuant to those warrants violated Mr. Hana's rights under the Fourth Amendment to the

---

[5] *See* Ex. A, December 23, 2020 Search Warrant and Supporting Affidavit at SDNY_R_00003416-00003422.

[6] *See* Ex. B, November 24, 2021 Search Warrant and Supporting Affidavit at SDNY_R_00003609-00003617.

[7] *See* Ex. C, January 10, 2022 Search Warrant and Supporting Affidavit at SDNY_R_00004159-00004165.

Constitution of the United States.  Hana Br. at 111-118.  To justify a search of electronically stored information, the Government must establish that there is probable cause to believe that a specific crime has occurred and that each item to be seized is evidence of that specified offense.  *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (A "warrant must specify the items to be seized by their relation to designated crimes.").  Thus, to protect against the "general rummaging in a person's belongings," *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009), the Fourth Amendment's Warrants Clause "requires particularity and forbids overbreadth," *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 450 (S.D.N.Y. 2013).  A warrant is sufficiently particular if it (1) identifies "the specific offense for which the police have established probable cause"; (2) describes "the place to be searched"; and (3) specifies "the items to be seized by their relation to the designated crimes."  *Galpin*, 720 F.3d at 445-46.  But a warrant is overbroad, and thus unconstitutional, if the description of the items to be searched and seized is "broader than can be justified by the probable cause upon which the warrant is based."  *Nejad*, 436 F. Supp. 3d at 725, 730 (cleaned up).  When a warrant lacks particularity or is overbroad, the search is invalid, and the resulting evidence should be suppressed.  *See Cioffi*, 668 F. Supp. 2d at 396.

The Government submits that the warrants in issue "identified the specified offenses for which probable cause was established."  Opp. at 60.  But that is just not so, as set forth in Mr. Hana's motion.  To the contrary, the December 23, 2020 Warrant, November 24, 2021 Warrant, and January 10, 2022 Warrant each contained requests for communications or documents concerning (1) the previously executed November 25, 2019 search warrant and criminal investigation; and (2) the use of "alternative methods of communications believed to be less easily

accessed or intercepted by law enforcement," whether or not they relate to the specified offenses listed in the warrant. [8]

Rather than explaining how those two categories of documents and communications related to the "designated crimes," *Galpin*, 720 F.3d at 445-46, the Government submits that the "subject matter is directly probative of [Mr.] Hana's consciousness of guilt" and "relevant to establishing whether [Mr.] Hana took any actions to conceal his activities from law enforcement."  Opp. at 67. Of course, to the extent that such evidence would relate to a charge of obstruction, that was not specified as an offense in the challenged warrants—though obstruction was identified in a later search warrant obtained on January 17, 2023, *see* Hana Br. at 116, n.41.  That is, because none of the Warrants enumerated obstruction as a specified offense, the items that relate to obstruction violate the particularity doctrine and are void as overbroad.  *See Galpin*, 720 F.3d at 448.  For example, in *Galpin*, the Second Circuit held that where a warrant specified only the offense of failing to register as a sex offender, the portions of the warrant authorizing a search for images of child sexual activity—a crime that was not specified—lacked particularity and was overbroad.  *Id.* Similarly, in *Cioffi*, the court held that a warrant to search the defendant's email account was unconstitutionally overbroad where it did not limit the items to be seized to evidence of the enumerated offenses.  668 F. Supp. 2d at 396.  Likewise, here, the portions of the warrants seeking

---

[8] The specified offenses are:  (1) 18 U.S.C. §§ 951 and 371 (acting and conspiring to act as an agent of a foreign government without prior notification to the Attorney General); (2) 22 U.S.C. §§ 612 and 618(a)(1) and 18 U.S.C. § 371 (acting and conspiring to act as an agent of a foreign principal without registering with the Attorney General as required by FARA); (3) 18 U.S.C. §§ 201 and 371 (bribing or offering to bribe or demanding or accepting a bribe, and conspiring to do the same, with respect to a United States Senator); (4) 18 U.S.C. §§ 1343, 1346, and 1349 (honest services wire fraud and conspiracy to commit the same); (5) 18 U.S.C. § 1951 (extortion under color of right and conspiring to do the same); (6) 18 U.S.C. §§ 1956 and 1957 (money laundering, engaging in financial transaction in criminally-derived property, and conspiracy to do the same). *See* Exs. A, B, C

evidence of obstruction, a crime that is not specified, are overbroad and void.  *See id.; Galpin*, 720 F.3d at 448.  But more to the point, the Government's opposition fails entirely to explain how documents regarding "alternative methods of communication" relate to the specified offenses of acting as an agent of a foreign government without prior notification to the Attorney General, acting as an agent of a foreign principal without registering with the Attorney General, bribery, honest services fraud, extortion, and money laundering.  *See* Opp. at 67-68.  That is, the search warrants do not make the point that the Government makes now—that the purpose of this evidence was for purposes of demonstrating consciousness of guilt, a purpose that the warrants attribute to the destruction of documents, but not to the categories of information at issue here, which are nowhere tied to the destruction of evidence.  *See* Ex. A at SDNY_R_00003295 (noting in an attachment to an unchallenged search warrant that account information may indicate the owner's "consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).").

Nor do the cases upon which the Government relies change the calculus, as none involve a motion to suppress evidence seized pursuant to a warrant that is overbroad because it is for a purpose not specified in the submissions supporting the warrant.  Opp. at 67-68 (citing *United States v. Norris*, 513 F. App'x 57, 60 (2d Cir. 2013); *United States v. Rybicki*, 287 F.3d 257, 264 (2d Cir. 2002); *United States v. Baldeo*, No. 13-cr-125, 2014 WL 351638, at *1 (S.D.N.Y. Jan. 31, 2014)).  Those cases all stand for the uncontroversial proposition that evidence of consciousness of guilt is admissible at trial, a contention which Mr. Hana does not and could not dispute.  *See Norris*, 513 F. App'x at 60 (holding evidence that defendant intended to "pump and dump" a stock in connection with sham sale, and that he tried to cover up the fraud, was admissible at bank fraud trial to show, *inter alia*, consciousness of guilt); *Rybicki*, 287 F.3d at 264 (holding that evidence

that defendants failed to record alleged bribes on their financial documentation was admissible as "indicative of consciousness of guilt"); *Baldeo*, 2014 WL 351638 at *1 (noting that evidence of consciousness of guilt is admissible at trial).  Thus, none of the cases upon which the Government relies demonstrate that a warrant may seek evidence of an unspecified crime if that evidence potentially demonstrates "consciousness of guilt" as to the offenses that are named, without specifying that as the basis for seizing the evidence, as is necessary to avoid an overbreadth challenge.

For the reasons expressed above and as set forth more fully in Mr. Hana's moving brief, the Court should suppress evidence seized pursuant to the December 23, 2020 Warrant, November 24, 2021 Warrant, and January 10, 2022 Warrant, at least with respect to communications and documents regarding (1) the November 25, 2019 search warrant and (2) use of "alternative methods of communication," as neither category of evidence was shown to relate to the specified offenses, rendering the warrant unconstitutionally overbroad and lacking in the necessary particularity.  *See Cioffi*, 668 F. Supp. 2d at 396 ("The remedy for an overbroad search and seizure is suppression of the resulting evidence.").[9]

---

[9] The Government submits that the "inevitable discovery" also bars suppression because "[l]aw enforcement issued grand jury subpoenas to both Menendez and IS EG Halal on the same date that the Government executed the search warrant of the Menendezes' home, seeking much of the same information (and subsequent subpoenas were issued seeking more information), and the subpoena recipients complied with these subpoenas through counsel."  Opp. at 69.  However, the inevitable discovery rule can only defeat suppression in this context "where the government can demonstrate a substantial and convincing basis for believing that the requisite information would have been obtained by subpoena," *United States v. Eng*, 971 F.2d 854, 860 (2d Cir. 1992), which the Government's opposition fails to do.  Indeed, the Government does not even explain what information was requested in the grand jury subpoenas and how that information overlaps with the items seized pursuant to the search warrant, other than stating in conclusory fashion that the subpoenas sought "much of the same information."  *See* Opp. at 69.

Without providing "a substantial and convincing basis" to believe the grand jury subpoenas obtained in this matter would have led to discovery of information seized pursuant to the unlawful search warrants, the "inevitable discovery exception" cannot be invoked; indeed, to apply it here

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Mr. Hana's moving brief, the Court should grant defendant Hana's motion, order a *Franks* hearing and suppress all evidence seized pursuant to the challenged search warrants.

Dated:  February 19, 2024                     Respectfully submitted,


                                              s/ Lawrence S. Lustberg
                                              Lawrence S. Lustberg
                                              Ricardo Solano, Jr.
                                              Anne M. Collart
                                              Andrew J. Marino
                                              Christina M. LaBruno
                                              Jessica L. Guarracino
                                              Elena M. Cicognani
                                              **GIBBONS P.C.**
                                              One Gateway Center
                                              Newark, New Jersey 07102
                                              (973) 596-4500
                                              llustberg@gibbonslaw.com

---

would "swallow[] up the exclusionary rule." *Eng*, 971 F.2d at 860. That is, "special care is required on the part of a district court when the government relies on the subpoena power," and "subpoenas must not serve as an after the fact 'insurance policy' to 'validate' an unlawful search under the inevitable discovery doctrine." *Id.* at 860-861. Because the Government does not even attempt to show, let alone to provide a "substantial and convincing basis," that the subpoenas would have led to any of the unlawfully seized information, the inevitable discovery rule cannot prevent suppression. *See id.*; *see also In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147, 165 (2d Cir. 2019) (holding that the district court erred in denying a motion to suppress defective search warrant pursuant to inevitable discovery doctrine where the district court made only "cursory findings" that the Government would have obtained unlawfully seized evidence through civil discovery and a protective order without specifically analyzing and explaining how the Government would have discovered each particular piece of evidence absent unlawful search).