# Exhibit I

AO 106 (SDNY Rev. 01/17)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

See Attachment A

)
)
)
)
)
)

Case No.

## 23 MAG 6481

## APPLICATION FOR A SEARCH AND SEIZURE WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the _____ Southern _____ District of _____ New York _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attached Affidavit and its Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section(s) | Offense Description(s) |
|---|---|
| 18 U.S.C. §§ 201, 219, 371, 641, 951, 1001, 1503, 1512, 1343, 1344, 1346, 1349, 1951, 1956, 1957; 22 U.S.C. §§ 612 and 618(a)(1) | Bribery, wire fraud, honest services fraud, extortion under color of official right, money laundering, false statements, obstruction of justice, public official acting as foreign agent, acting as agent of a foreign government without prior notification to the Attorney General, FARA, bank fraud, theft of government property, and conspiracy to do the above |

The application is based on these facts:

See Attached Affidavit and its Attachment A

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ryan Larkin
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/10/23  10:16 AM

_____
*Judge's signature*

City and state:  New York, NY

The Honorable Jennifer E. Willis
*Printed name and title*

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Application of the United
States of America for a Search and Seizure
Warrant for the Following Electronic Devices in
the Custody of the Federal Bureau of
Investigation in New York:

**TO BE FILED UNDER SEAL**

**Agent Affidavit in Support of
Application for Search and Seizure
Warrant**



2

2017.08.02

SDNY_R03_00000002



Media Containing Content and Other
Information Associated with the Email Account
▆▆▆▆▆▆▆▆▆▆ Obtained
Pursuant to Search Warrant No. 22 Mag. 748
(S.D.N.Y.) (the "Menendez Email Account-1
Media");

3

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000003

Media Containing Content and Other
Information Associated with the iCloud Account
ID ███████████ and Registration Email Address
████████████ Obtained Pursuant
to Search Warrant No. 22 Mag. 748 (S.D.N.Y.)
(the "January 2022 Menendez iCloud Account
Media");



The Cellphone Assigned Call Number █
███ Seized Pursuant to Search Warrant Nos. 22-
sw-173 and 22-sw-174 (D.D.C.) (the "Seized
Menendez Cellphone");

4

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                                        SDNY_R03_00000004



5

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000005



Media Containing Content and Other
Information Associated with the iCloud Account
with ID ▮▮▮▮▮ and Registration Email
Address ▮▮▮▮▮▮▮▮▮ Obtained
Pursuant to Search Warrant No. 22 Mag. 5801
(S.D.N.Y.) (the "July 2022 Menendez iCloud
Account Media");



6

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                    SDNY_R03_00000006



7

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY SDNY_R03_00000007



2017.08.02

8

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000008

USAO Reference No. 2020R00816



9

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                    SDNY_R03_00000009



10

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



l.  Media containing content and other information associated with the email account ("Menendez Email Account-1") obtained pursuant to Search Warrant No. 22 Mag. 748 (S.D.N.Y.) (the "Menendez Email Account-1 Media");

m. Media containing content and other information associated with the iCloud account ID _____ and registration email _____ (the "Menendez iCloud Account") obtained pursuant to Search Warrant No. 22 Mag. 748 (S.D.N.Y.) (the "January 2022 Menendez iCloud Account Media");



11

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000011

s. The cellphone assigned call number ███████████ seized pursuant to Search Warrant Nos. 22-sw-173 and 22-sw-174 (D.D.C.) (the "Seized Menendez Cellphone");



cc. Media containing content and other information associated with the email account ███████████ ("Menendez Email Account-2") obtained pursuant to Search Warrant No. 22 Mag. 5801 (S.D.N.Y.) (the "Menendez Email Account-2 Media");

12

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000012



13

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



4

14

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000014



2017.08.02

15

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000015



16

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



17

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



18

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



18. ▮▮▮▮▮▮▮▮▮▮▮▮▮ is an apparent relative and business associate of Uribe.

▮▮▮▮▮ (along with Uribe) apparently helped to provide insurance to ▮▮▮▮▮▮▮▮▮▮ and

the ▮▮▮▮ Trucking Company and was investigated, during the relevant time period, by a New

---

[3] Although Nadine Arslanian is believed to know ▮▮▮▮▮▮▮▮▮, they are not related. Due to the similarity of their last names, ▮▮▮▮▮▮▮▮ full name is used herein.

19

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000019

Jersey detective who was involved in the investigation and prosecution of ▮▮▮ ▮▮▮▮ was represented by ▮▮▮▮▮▮ in connection with that investigation.

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000020



21

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



22

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000022

27.     Based on my conversations with other law enforcement personnel and my review of law enforcement reports, I have learned that in or about August 2019, *i.e.*, shortly after the plea and sentencing described above,[6] the CS met with ████████ and the following conversation, which was consensually recorded by the CS at the direction of law enforcement,[7] occurred, in substance and in part:

        a.     ████████ told the CS that Hana arranged for Arslanian to receive a ring and a Mercedes-Benz automobile in exchange for Menendez's assistance in resolving criminal charges for insurance fraud pending against an American male.[8]

        b.     ████████ discussed how the criminal case "needed a push," and "without" the push the man "would have gotten three years imprisonment," but the "push made the man avoid the three years."

---

[6] It appears, based on the investigation, that ████████ and Hana had a financial dispute prior to this conversation.

23

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY        SDNY_R03_00000023

c.        ████ further told the CS that the American male gave Hana $150,000 and that Hana then purchased the engagement ring for Menendez's girlfriend, along with a car, and kept the remaining money for himself. As detailed further below, I understand that the "American male" is a reference to ████ and the reference to Menendez's girlfriend is a reference to Arslanian.[10]



[10] Based on my conversations with other law enforcement personnel and my review of interview notes and an FBI report, I am aware that ████ was interviewed by the FBI on June 16, 2022, and claimed, among other things, not to be aware of Hana having provided a ring or car to Arslanian, and not to be aware of Hana attempting to assist ████ with his criminal case. As noted in footnote 61, below, Arslanian sent text messages indicating that Menendez planned to exchange an engagement ring Menendez owned for a new engagement ring to give to Arslanian, and a jeweler who provided an engagement ring to Arslanian stated that he did so in exchange for an engagement ring.

24

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



25

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                    SDNY_R03_00000025





2017.08.02

26

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000027



28

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000028



29

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



2017.08.02

30

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



31

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000031



32

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                    SDNY_R03_00000032



33

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



34

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



35

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



36

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000036



37

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000037



messages between him and Urist in which Urist forwarded intermedia

---

[19] From reviewing a report of a law enforcement interview, I know that on or about January 24, 2023, ███████ was interviewed by the investigative team and denied discussing ████ s case with Hana.

38

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                    SDNY_R03_00000038



39

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



40

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY


42

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



43

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



44

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



45

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



46

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000046



47

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



48

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



49

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



50

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



51

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000051



50.     From my conversations with other law enforcement personnel and review of a law enforcement report, I know that on or about June 22, 2022,         poke to law enforcement personnel and prosecutors, and stated, among other things, in substance and in part:

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                    SDNY_R03_00000052



2017.08.02

33

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



54

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000054



2017.08.02

55

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000055



56

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



58

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



61

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

x. On May 1, 2019—*i.e.*, two days after ████ s guilty plea—Uribe texted Arslanian, in part, "please send me the invoice." Later that day, Arslanian texted Uribe a photograph of the first monthly invoice for the automotive loan on the Mercedes-Benz Automobile (the "Arslanian Invoice Photo"). Arslanian texted Uribe, "By Saturday can I pick up the info on part two unless you want to text it to me." Later that day, Uribe wrote, "I send you later". I believe based on the context and my participation in the investigation that "part two" refers to the investigation of ████ with the prosecution of ████ about which Menendez had already spoken to ████ representing part one.[56]

[black box]

[56] On September 18, 2023, I participated in an interview of ████ which was conducted under a grant of use and derivative use immunity, and in that interview ████ stated, in sum and substance, the following. Hana—with whom ████ had no prior relationship—approached him during the pendency of his criminal prosecution and offered to help, claiming that Hana had contacts with the U.S. and Egyptian governments and mentioning at various times his knowledge of Senator Menendez's whereabouts. In or about the spring of 2019, Hana advised him that his case would be favorably resolved, and then subsequently ████ lawyer advised ████ of a new and nonincarceratory plea offer. Following the plea offer, but before the plea, Hana asked ████ for $200,000. After negotiations with Hana, ████ and ████ agreed to pay Hana $150,000 in cash, and delivered the cash to Hana at his home. During the negotiations, ████ was informed by ████ that Uribe was purchasing a car for Arslanian.

[57] Based on my conversations with other law enforcement personnel and my review of an FBI report, I am aware that ████ was interviewed by the FBI on December 1, 2022, pursuant to a

62

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY SDNY_R03_00000062



proffer agreement, and claimed, among other things, that although he made certain car payments for Uribe, he was not aware of, at the time he made the payments, the ultimate beneficiaries of the payments.

63

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                      SDNY_R03_00000063



64

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



     i. From reviewing photographs of the search of Menendez and Arslanian's residence on June 16, 2022 pursuant to the Menendez Residence Warrant, I know that agents executing the search found in the residence a certificate entitled "Appraisal" from ▇▇▇▇▇ (*i.e.,* ▇▇▇▇ jewelry store), listing an appraisal of a ring described as an engagement ring with a diamond for a total appraised value of $88,000. The appraisal listed the ring as the property of "NADINE ARSLENIAN" and was dated May 26, 2019.[61]



---

[61] From speaking to other law enforcement personnel and reviewing FBI reports, I have learned the following. ▇▇▇ was interviewed by telephone on June 16, 2022 and stated that he did not recall Menendez, Arslanian, or Hana ever purchasing a ring, and did not recall Menendez visiting his store in the company of Hana. On July 14, 2022 (subsequent to the issuance of the warrants described in paragraph 40, above), ▇▇▇ was interviewed by FBI agents and prosecutors and stated that Arslanian visited him several times, in the company of Hana or Hana and Menendez, and ultimately purchased an engagement ring, paying for it by trading in another engagement ring, though ▇▇▇ did not know who owned the prior engagement ring being traded in. The Arslanian Cellphone contains a series of text messages in November of 2018 in which Arslanian states to her son that Menendez gave her an old engagement ring of his in order to exchange for an engagement ring for Arslanian. Although these messages describe Menendez having asked Arslanian for this ring back (during an apparent lull in the romantic relationship between Menendez and Arslanian), subsequent messages between Arslanian and Menendez on the Arslanian Cellphone indicate that Arslanian and Menendez later reconciled.

65

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



66

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                    SDNY_R03_00000066



67

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



68

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



---

[67] I am aware from my conversations with other law enforcement personnel and my review of a law enforcement report that on June 16, 2022, ███ spoke to law enforcement officers and stated, in substance and in part, that he spoke to Hana regarding his prosecution in the same way that he spoke to everyone about it, and that he did not pay anyone to bring a favorable resolution to his case. When asked if Hana or Uribe had assisted him in resolving his case, he responded, "What could they do? They're not lawyers."

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY          SDNY_R03_00000069



70

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000070



71

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



72

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000072



73

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



74

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



      k.     On September 4, 2019, at approximately 1:26 p.m., the Menendez

Cellphone called the      Cellphone. The call lasted approximately 1 minute and 43 seconds.

> i.  This call was the first telephone contact reflected in the available records between a known Menendez phone and a known      phone since the January 29, 2019 call described in paragraph 49.o, above, and thus the second known telephone contact between a Menendez phone and a      phone.[72]



---

[72] In his June 22, 2022 interview,      only recalled engaging in one telephone call with Menendez.

75

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY      SDNY_R03_00000075



---

[73] From reviewing a law enforcement report of an interview, I know that ▇▇▇▇ was interviewed by the investigative team on February 2, 2023 and denied knowing what these text messages meant.

76

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000076



77

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



78

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



---

[76] From speaking to other law enforcement personnel and reviewing an FBI report, I know that on June 16, 2022, ▮▮▮▮▮ was interviewed by telephone and denied providing Uribe with his email address to use to purchase or make payments on any vehicle.

79

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY SDNY_R03_00000079



80

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                                    SDNY_R03_00000081



[redacted]

[78] From speaking to other law enforcement personnel, I know that on June 30, 2022, [redacted] was interviewed by the FBI and prosecutors from the Southern District of New York, and stated, in substance and among other things, that [redacted] requested assistance from Menendez, through Arslanian, to enable his brother to travel abroad to visit their ailing mother, and this was the only favor [redacted] asked Arslanian or Menendez for. At a subsequent interview, [redacted] stated that he also asked Menendez for assistance or advice with a prospective marijuana business license.

[redacted]

83

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



84

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



2017.08.02

85

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



86

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                          SDNY_R03_00000086



87

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



88

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



[85] From speaking to other law enforcement personnel and reviewing an FBI report, I have learned that on June 16, 2022, ▮▮▮▮▮ was interviewed by the FBI and claimed that he had provided Arslanian, among other things, a lawnmower, and that when Menendez learned of the lawnmower, he became angry and told Arslanian she had to pay ▮▮▮▮

89

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000089



90

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY





2017.08.02

91

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY





92

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



93

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



94

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



2017.08.02

95

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000095



96

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



---

[96] From speaking with other law enforcement personnel and reviewing an FBI report, I have learned that the Director of Health and Social Services for the City of Plainfield, New Jersey (the "Director of Health") was interviewed on June 16, 2022, and stated, in substance and in part, that, although he coordinated the physical spaces where COVID-19 testing sites were located, companies that wanted to conduct COVID-19 testing were not required to go through the city, and could just come into Plainfield and start testing. He also stated that while the Plainfield Mayor recommended Fusion to the Director of Health, and did not recommend any other testing companies, the Director of Health did not personally feel any pressure to use Fusion. On August 24, 2022, the Director of Health was interviewed again and stated, in substance and in part, that the city's health officer (who was the Director of Health's subordinate) had the authority to bar companies from conducting COVID-19 testing, but as a practical matter, during the relevant time periods, the City of Plainfield wanted more testing providers and was not turning testing providers away.

[98] Based on my conversations with law enforcement personnel and my review of interview notes and an FBI report, I have learned that (a) ▮ was interviewed by FBI agents on June 16, 2022 and claimed that neither he nor ▮ ever asked Menendez to help ▮ that he asked Arslanian to help; and that Arslanian asked ▮ o tell various officials that Menendez had sent them, and (b) ▮ was interviewed by FBI agents on June 16, 2022 and denied that Menendez had made calls on ▮ behalf.

97

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY     SDNY_R03_00000097



---

[99] Based on my conversations with law enforcement personnel and my review of interview notes and an FBI report, I have learned that ▮▮▮▮▮▮▮▮▮▮ were interviewed by FBI agents on June 16, 2022 and both claimed that Arslanian performed some work for ▮▮▮▮▮▮

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000098



99

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



2017.08.02

100

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



101

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



102

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



103

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



104

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                                        SDNY_R03_00000104



2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000105



2017.08.02

106

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



107

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



108

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



2017.08.02

109

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



110

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



111

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



112

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



113

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000113



114

2017.08.02



Ahmed.

[116] I have not yet been able to determine if a version of the Egyptian Ghostwritten Letter was received by Senator-2 or the SFRC.



115

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                    SDNY_R03_00000115



116

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



117

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



118

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



119

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



120

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



---

[120] I have been informed that counsel for Menendez has advised the Government that Menendez allegedly has a longstanding practice of periodically withdrawing cash from one or more of his bank accounts and saving it as cash. Bank records obtained pursuant to grand jury subpoenas indicate multiple withdrawals of cash, typically in amounts of approximately $400, over an extended period of time, amounting to tens of thousands of dollars over a multiyear period. However, as noted in paragraph 81.e, above, some of the envelopes of cash bear latent fingerprints preliminarily identified as matching Daibes's fingerprints or bear Daibes's DNA, and some of the cash found in the execution of the Menendez Residence Warrant was contained in stacks of $10,000 wrapped with money bands from ▮▮▮▮▮▮▮ where the investigative team has been unable to locate a bank account for either Menendez or Arslanian. Accordingly, I believe that at least a portion of the cash found during the execution of the Menendez Residence Warrant came from bank accounts not of Menendez or Arslanian.

2017.08.02

121

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

2017.08.02

122

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



2017.08.02

123

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000123



124

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY



85.     Menendez's financial disclosure form for calendar year 2022, which was filed in

June 2023, listed four sales of gold bullion as transactions, but did not list the receipt of any gold

bars as income.[126]

---

[125] I have been informed by other law enforcement personnel that attorneys for the U.S. Senate do not consider cash maintained outside of a bank account to be generally required to be reported as an asset, at least provided that it has been properly reported as income upon receipt.

[126] I have been informed by other law enforcement personnel that counsel for Menendez, counsel for Arslanian, and counsel for Uribe have each spoken to prosecutors on the investigative team in the summer of 2023 and have each generally denied criminal intent. Among other things, counsel for Menendez has denied that Menendez performed official acts for, or received cash from, Uribe, Daibes, or Hana, has denied that Menendez was aware of Arslanian's receipt of gold bars from Daibes contemporaneously, and has denied that Menendez personally received gold bars from Daibes. Counsel for Menendez has claimed that Menendez had a preexisting friendship with Daibes, and that Menendez has on occasion given gifts to Daibes, although generally of lesser value than the gifts Menendez received from Daibes, and has claimed that Menendez's relationship with Uribe and Hana was entirely derivative of his relationship with Arslanian. Counsel for Menendez has denied being aware that Uribe paid for the Mercedes-Benz Automobile until after the June 2022 searches. Counsel for Arslanian, among other things, has claimed that Arslanian received one kilogram of gold from Daibes as a gift celebrating her engagement to Menendez; one kilogram of gold in order to secure a right of first refusal for Daibes to purchase her residence; and received possession of seven one-ounce gold bars from Daibes to show to a mutual acquaintance to see if that acquaintance wished to purchase them from Daibes. Counsel for Arslanian also claimed that Arslanian performed some unskilled administrative work for             and others, and was compensated through the Arslanian Company for that work. Counsel for Arslanian also claimed that Uribe provided financial assistance with the periodic payments for the Mercedes-Benz Automobile as a loan, which was always intended to be repaid. Counsel for Arslanian claimed that Arslanian had been friends with Hana and Uribe for years. Counsel for Uribe claimed that he provided funds for Arslanian's purchase of the Mercedes-Benz Automobile as a loan and did not believe Menendez was aware of those payments.

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY                    SDNY_R03_00000125



126

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

b.      As noted in paragraph 40, the Menendez Email Account-2 Media contains content from Menendez Email Account-2 obtained pursuant to the July 2022 Email and iCloud Warrants.

88.      **The January 2022 Menendez iCloud Account Media and the July 2022 Menendez iCloud Account Media:** Based on information provided by Apple, I have learned that the subscriber name for the Menendez iCloud Account is "Robert Menendez." The subscriber address for the Menendez iCloud Account is 41 Jane Drive, Englewood Cliffs, NJ (*i.e.*, Arslanian's address). The phone number listed for the Menendez iCloud Account (as the "Day Phone," the "FaceTime/iMessage Phone," and the "Two-Factor Authentication Phone") is the Menendez Cellphone. Among the additional email addresses associated with the Menendez iCloud Account is "njfirst@menendez.senate.gov," which is listed as "Verified." The following iCloud features were listed as active for the Menendez iCloud Account as of an October 2021 production of documents from Apple: Calendars, iCloud Photos, Contacts, Find My Friends, and iCloud Drive.

a.      I know from a review of the July 2022 Menendez iCloud Account Media that the Menendez iCloud Account contains backup copies of data from the Menendez Cellphone, including voice messages and text messages, and including text messages Menendez sent and received during the course of the scheme such as described above (*see, e.g.*, paragraphs 52.k, 54.c).

b.      As noted in paragraph 35, the January 2022 Menendez iCloud Account Media contains content from the Menendez iCloud Account obtained pursuant to the Menendez Email and iCloud Warrants. As noted in paragraph 40, the July 2022 Menendez iCloud Account Media contains content from the Menendez iCloud Account obtained pursuant to the July 2022 Email and iCloud Warrants.

2017.08.02

SUBJECT TO PROTECTIVE ORDER, ATTORNEY'S EYES ONLY

SDNY_R03_00000127