**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

v.

ROBERT MENENDEZ, et al.

    Defendants.

Case No. 23-cr-00490 (SHS)

---

## MEMORANDUM OF LAW IN SUPPORT OF MEDIA COALITION'S MOTION TO INTERVENE AND UNSEAL DEFENDANT SENATOR ROBERT MENENDEZ'S SEVERANCE MOTION

Pursuant to Federal Rule of Criminal Procedure 47, NBCUniversal Media LLC d/b/a NBCUniversal News Group; Cable News Network, Inc.; American Broadcasting Companies, Inc. d/b/a ABC News; Gannett Satellite Information Network, LLC d/b/a Bergen Record; Politico, LLC; Fox News Network, LLC; New Jersey Globe; WP Company LLC d/b/a The Washington Post; CBS Broadcasting Inc. d/b/a CBS News; The E.W. Scripps Company o/b/o CourtTV and Scripps News; and NYP Holdings, Inc. d/b/a New York Post; The Associated Press; Bloomberg L.P. (together, the "Media Coalition") respectfully submit this memorandum of law in support of their Motion to Intervene and Unseal Defendant Senator Robert Menendez's Severance Motion, ECF Nos. 136, 137, 251-1.  Specifically, the Media Coalition requests that the Court deny Senator Menedez's Letter Motion Seeking Leave to Maintain Redacted Portions Under Seal, ECF No. 251 (the "Sealing Letter"), and order that an unredacted version of the Severance Motion be filed on the public docket.

### INTRODUCTION

This prosecution is of immense public interest. For the second time in less than a decade, Defendant Robert Menendez – a sitting United States Senator – has been indicted on allegations of corruption and bribery. When the initial indictment of Senator Menendez in this matter was unveiled in September of 2023, it was the lead story in virtually every major news outlet in the country, including the members of the Media Coalition.[1] Unsurprisingly, press and public

---

[1] *See, e.g.*, Rebecca Shabad, Jonathan Dienst, Tom Winter & Dareh Gregorian, *Sen. Bob Menendez and his wife, Nadine, indicted on bribery charges*, NBC News (Sept. 22, 2023), https://www.nbcnews.com/politics/congress/sen-bob-menendez-indicted-federal-charges-rcna111447; Kara Scannell & Katelyn Polantz, *Sen. Bob Menendez and wife indicted on bribery charges; DOJ seizes gold bars and $500,000*, CNN (Sept. 22, 2023), https://www.cnn.com/2023/09/22/politics/bob-menendez-charges/index.html; Aaron Katersky, *Sen. Bob Menendez indicted again for corruption, allegedly had cash stuffed in coat, gold bars*, ABC News (Sept. 22, 2023), https://abcnews.go.com/Politics/sen-bob-menendez-indicted-gifts-gold-bars-car/story?id=103407936; Erica Orden & Matt Friedman, *Sen. Bob Menendez charged with taking bribes to help business cronies, Egyptian government*, Politico (Sept. 22, 2023), https://www.politico.com/news/2023/09/22/authorities-to-charge-u-s-sen-bob-menendez-and-wife-today-00117590; Chris Pandolfo, *Democratic Sen. Bob Menendez facing indictment on bribery charges*, Fox News (Sept. 22, 2023), https://www.foxnews.com/politics/democratic-sen-bob-menendez-facing-indictment-bribery-charges; Perry Stein, Devlin Barrett & Isaac Stanley-Becker, *Sen. Bob Menendez of New Jersey indicted on federal bribery charges*, The Washington Post (Sept. 22, 2023), https://www.washingtonpost.com/national-security/2023/09/22/menendez-indictment/; Scott Fallon & Katie Sobko, *Sen. Menendez and his wife indicted on corruption charges*, Bergen Record (Sept. 22, 2023), https://www.northjersey.com/story/news/new-jersey/2023/09/22/bob-menendez-indictment-wife-nadine-arslanian-menendez-corruption-charges/70929820007/; Joey Fox & David Wildstein, *Menendez indicted on federal bribery charges*, New Jersey Globe (Sept. 22, 2023), https://newjerseyglobe.com/congress/menendez-set-to-be-indicted-on-federal-bribery-charges/; Melissa Quinn, *New Jersey Sen. Robert Menendez and wife indicted on federal bribery charges*, CBS News (Sept. 22, 2023), https://www.cbsnews.com/news/robert-menendez-indicted-bribery/; *Sen. Bob Menendez and his wife indicted on bribery charges*, Scripps News (Sept. 22, 2023), https://scrippsnews.com/stories/sen-bob-menendez-and-his-wife-indicted-on-bribery-charges/; Kyle Schnitzer, Priscilla DeGregory, & Ben Kochman, *NJ Sen. Bob Menendez hit with federal corruption charges for second time; allegedly took bribes – including $150K in gold bars*, New York Post (Sept. 22, 2023), https://nypost.com/2023/09/22/nj-sen-menendez-and-wife-are-indicted-on-bribery-charges/; Jake Offenhartz, Alanna Durkin Richer, & Eric Tucker, *Gold bars, cash-stuffed envelopes: New indictment of Sen. Menendez alleges vast corruption*, AP News (Sept. 22, 2023), https://apnews.com/article/senator-menendez-indicted-729db45fcf21c42ba707c9d0139349e9; David Voreacos, Patricia Hurtado, & Chris Dolmetsch, *Senator Menendez Charged With Taking Bribes of Gold Bars, Cash*, Bloomberg (Sept. 22,

interest in these proceedings remains extremely high.  Indeed, this Court has already had occasion to order that a number of documents originally filed under seal be unsealed pursuant to requests from the news media.  *See* ECF No. 170.

The instant motion concerns another such unsealing issue.  This time, Senator Menendez has asked the Court to maintain under seal an unredacted version of his Severance Motion, arguing that public dissemination of the contents behind his redactions will "reveal defense trial strategy which, if made public, threatens to bias the jury pool."  Sealing Letter at 1.  The Government opposes Senator Menendez's request.  *Id*.

It is well-established that both the First Amendment and the common law each provide the public a presumptive right of access to documents filed in judicial proceedings, and that a litigant must meet a high burden to overcome those presumptions.  Senator Menendez has not and cannot do so here—indeed, his Sealing Letter fails to even attempt to grapple with either standard.  His reliance on the specter of "pre-trial publicity" tainting the jury pool or requiring elaborate *voir dire* proceedings rings hollow in light of the fact that the corruption trial of a U.S. Senator is going to command extreme publicity and a complex *voir dire* process regardless of whether the unredacted Severance Motion is publicly disseminated.  And his attempt to argue that revealing some aspect of his trial strategy—one which his opponent, the government, is clearly already aware of—might "bias the jury" makes little sense.  Presumably, Senator Menendez will need to reveal his trial strategy to the jury in order for them to understand his theory of the case; yet, nothing in the Sealing Letter explains why it would be prejudicial to reveal now what he will inevitably have to reveal later.

---

2023), https://www.bloomberg.com/news/articles/2023-09-22/nj-senator-robert-menendez-indicted-by-federal-prosecutors.

For these and the other reasons explained below, the Court should permit the Media Coalition to intervene in this matter for the limited purpose of opposing Senator Menendez's improper sealing request, and further reject Senator Menendez's request and order that an unredacted version of the Severance Motion be posted on the public docket immediately.

## PROCEDURAL HISTORY

The Severance Motion was originally filed under seal on January 15, 2024.  *See* ECF Nos. 136, 137.  The publicly filed version that appeared on the docket contained extensive redactions.  Several weeks later, in response to requests from the media to unseal other materials filed under seal, the Court issued an order setting forth a process for the parties and Court to deal with materials filed under seal.  *See* ECF. No. 169 (the "Sealing Procedures Order").  The Sealing Procedures Order directs the parties to: (1) provide any documents they believe should be filed under seal to the Court via email; (2) within five days, confer with counsel for the other parties to try to reach agreement on a redacted version of the document to be filed publicly; and (3) send a letter to the Court setting forth the basis for the redactions.  *Id*.  Subsequently, on February 28, 2024, the Court issued a follow-up order noting that "[i]t has come to the Court's attention that the parties have not been following the [Sealing Procedures] Order" and reminding the parties of their obligations thereunder.  ECF No. 216.

On March 10, 2024, Senator Menendez submitted a letter to the Court pursuant to the Sealing Procedures Order, which the Court then filed on the public docket on March 13, 2024.  *See* ECF No. 251 (the "Sealing Letter").  The Sealing Letter sought the Court's approval to maintain an unredacted version of his Severance Motion under seal, arguing that the public dissemination of the content behind the redactions would "reveal defense trial strategy" to such degree that it "threatens to bias the jury pool."  Sealing Letter at 1.  The Sealing Letter

acknowledged that the parties had conferred pursuant to the Sealing Procedures Order, and that they had agreed to modify or remove a number of the redactions contained in the original filing of the Severance Motion, but that the Government did not agree to some of the redactions Senator Menendez wished to maintain.  *Id*. at 2.  As articulated in the Sealing Letter, the Government's position is that it does "not believe [Senator Menendez] has articulated a basis for redaction sufficient to overcome the common-law or First Amendment right of access" as to those parts of unredacted Severance Motion on pages 28 and 31.  *Id*.

The Sealing Letter attached Senator Menendez's proposed redacted version of the Severance Motion.  *See* ECF No. 251-1.  While most of the redactions in the originally filed version of the Severance motion have been removed, *compare* ECF No. 137 at 13, 14, 16, 28, 29-30, 30-31, 36 *with* ECF No. 251-1 at the same pages, it is clear from the surrounding context that those portions that remain redacted on pages 28 and 31 are critical to the Court's consideration of the Severance Motion.  ECF No. 251-1 at 28, 31.

On March 28, 2024, NBC New York reporter Jonathan Dienst submitted a letter to the Court, asking that it deny the relief requested in the Sealing Letter and post an unredacted copy of the Severance Motion on the public docket.  Mr. Dienst's letter was itself publicly filed on April 1, 2024.  ECF No. 268.  That same day, the Court issued an order stating that "[i]f Mr. Dienst intends to move to seek an unsealing order he should have an attorney do so pursuant to Fed. R. Crim. P. 47 on or before April 5, 2024."  ECF No. 269.  This Motion follows.

## **ARGUMENT**

### I.  **THE MEDIA COALITION HAS THE RIGHT TO INTERVENE TO OPPOSE SENATOR MENENDEZ'S REQUEST TO MAINTAIN PORTIONS OF HIS FILING SEALED FROM PUBLIC ACCESS**

Both the Supreme Court and the Second Circuit have recognized the right of the press and public to intervene in criminal proceedings to assert their rights of access to judicial records.

Specifically, the Supreme Court has said that "representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion,'" *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982)[2] (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 401 (1979) (Powell, J. concurring)), and this Circuit has expressly recognized a similar right for motions seeking the "unsealing of documents filed in a court proceeding," *Trump v. Deutsche Bank AG*, 940 F.3d 146, 150 (2d Cir. 2019) (granting news organizations' motion to intervene to unseal unredacted filing). The Court should therefore grant the Media Coalition's request to intervene for the purpose of opposing Senator Menendez's unfounded attempt to maintain under seal the unredacted version of his Severance Motion. *See* ECF Nos. 251, 251-1.

## II. THE PRESUMPTION OF OPENNESS UNDER BOTH THE FIRST AMENDMENT AND THE COMMON LAW APPLIES TO THE SENATOR'S SEVERANCE MOTION

There is no question that the sealing of documents filed with the Court implicates the First Amendment and common law rights of access to such documents. *See Trump*, 940 F.3d at 150. This is so because "the courts of this country" have long "recognize[d] a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978). Here, Senator Menendez comes nowhere close to meeting the heavy burdens a litigant must shoulder to overcome these related yet distinct presumptions of public access.

### A. Senator Menendez's Severance Motion Qualifies As A Judicial Document

Where a court is faced with a request to unseal, it first determines whether the document in question is indeed a "judicial document" to which the presumption of access applies. *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"); *Lugosch v. Pyramid Co. of*

---

[2] Unless otherwise indicated, all citations omit internal citations and have been "cleaned up."

*Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).  The unredacted version of the Severance Motion undoubtedly qualifies as a judicial document.

Judicial documents are those items filed with the court that are "relevant to the performance of the judicial function and useful in the judicial process."  *Amodeo*, 44 F.3d at 145. Documents filed in relation to a motion—such as a supporting memorandum of law—"are judicial documents to which a presumption of immediate public access attached under both the common law and the First Amendment."  *Lugosch*, 435 F.3d at 126.  In other words, "[i]t is sufficient that [a] document was submitted to the Court for purposes of seeking or opposing an adjudication" to render it a judicial document.  *United States v. Sattar*, 471 F. Supp. 2d 380, 385 (S.D.N.Y. 2006).  Senator Menendez's Severance Motion fits squarely within this definition.

Even if the Court were to consider only whether the redacted information is relevant to the performance of a judicial function, the answer is still, unequivocally, yes.  It appears the redacted information is the *central* basis for the Senator's request to sever his case from that of his co-defendant and spouse, Nadine Menendez.  According to the Senator, he "intends to present a defense arguing (in part) that he lacked the requisite knowledge of much of the conduct and statements of his wife, Nadine, and thus . . . did not agree to join any of the charged conspiracies."  *See* ECF No. 251-1 at 27.  This defense is put in peril "[i]f, for instance, Nadine asserts the marital privilege in a joint trial to prevent Senator Menendez from testifying to marital communications that *exculpate*" him.  *Id*. at 28; *see id*. at 31.  "This is not a mere hypothetical," the Senator says, because of the redacted information on pages 28 and 31 of his papers.  *Id*. at 28.  In other words, it is on *this* (redacted) basis that Senator Menendez moves to

sever his trial from that of his spouse.  The Court thus cannot properly render its decision on the

Senator's Severance Motion without considering that information.[3]

Accordingly, the Severance Motion, including the information redacted from pages 28

and 31, constitutes a "judicial document" to which the presumptions of public access attach.

**B.**     **Both the First Amendment and the Common Law Provide A Presumption of Access to Judicial Documents, Such As the One Here**

Because Senator Menendez's Severance Motion is a judicial document, it triggers a

presumption that the public holds an affirmative, enforceable right of access to it under both the

First Amendment and the common law.  *See Bernstein v. Bernstein Litowitz Berger &*

*Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (acknowledging that the "presumption of

[public] access to judicial records is secured by two independent sources").

The Second Circuit has held that the "First Amendment right of access to criminal trials

extends to the pretrial motion papers" filed under seal, "whether or not a hearing on the motion is

held."  *In re N.Y. Times Co.*, 828 F.2d 110, 113-14 (2d Cir. 1987); *United States v. Gerena*, 869

F.2d 82, 85 (2d Cir. 1989) (expressly extending the First Amendment right to "briefs and

memoranda . . . submitted in support of pretrial motions").  Thus, once this constitutional

presumption attaches, as it does here, it "may be overcome only by an overriding interest based

on findings that [sealing] is essential to preserve higher values and is narrowly tailored to serve

that interest."  *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 9 (1986); *Under Seal v. Under Seal*,

273 F. Supp. 3d 460, 468 (S.D.N.Y. 2017) ("Once properly invoked, the public's right of access

to judicial documents under the First Amendment must be given strong weight.").  And it

---

[3] Should the Senator dispute that the redacted information is central to his Severance Motion, then it belies his contention that unsealing these portions of the brief would reveal some critical piece of his trial strategy.

requires articulation of "specific, on the record findings" such that "a reviewing court can determine whether the [sealing] order was properly entered." 478 U.S. at 9-10, 13. Senator Menendez fails on all accounts, not least of all because his Sealing Letter does not even acknowledge the applicable legal standards.

The weight to be given the presumption of access under the common law is a distinct question, which considers "(1) the role of the material at issue in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts, balanced against competing considerations such as the privacy interests of those resisting disclosure." *Bernstein*, 814 F.3d at 142. "[W]here documents directly affect an adjudication, or are used to determine litigants' substantive legal rights, the presumption of access is at its zenith, and thus can be overcome only by extraordinary circumstances. The locus of the inquiry is . . . whether the document is presented to the court to invoke its powers or affect its decisions." *Id.*

For the same reasons that Senator Menendez's Severance Motion is a judicial document, "the presumption of access" to it under the common law "is at its zenith" here. *Id.* Clearly, the Senator's request for his trial to be severed from his co-defendants' implicates his substantive legal rights. He says as much in his papers: according to Senator Menendez, forcing him to proceed through a joint trial risks his constitutional rights to a fair trial and to testify in his own defense, and would even infringe his spousal privileges. *See, e.g.*, ECF No. 251-1 at 26, 28. He includes the redacted information in his Severance Motion precisely because he believes it will and should affect the Court's decision on his severance request. As such, the common law right of access attaches here, and can be overcome only by a showing of extraordinary circumstances. None exist here.

III.   **THE UNREDACTED VERSION OF SENATOR MENENDEZ'S SEVERANCE MOTION SHOULD BE IMMEDIATELY UNSEALED AND MADE ACCESSIBLE TO THE PUBLIC**

Because the First Amendment and common law rights of access apply to the Severance Motion, the burden rests entirely with Senator Menendez to show that there are sufficiently compelling interests to justify the continued sealing of the unredacted version of his memorandum.  He has not, and cannot do so.  As a threshold matter, it is difficult to see how Senator Menendez could have met either standard, given that his letter seeking to maintain the unredacted Severance Motion under seal does not acknowledge the burden he must shoulder. *See generally* ECF No. 251 at 1-3.  That is reason enough for the Court to deny his request.

Notwithstanding his failure to address the appropriate legal standard, Senator Menendez's stated rationale for his sealing request – that releasing the unredacted memorandum would "reveal defense trial strategy which . . . threatens to bias the jury pool" and would "needlessly complicate *voir dire*" – is plainly insufficient.  *See* ECF No. 251 at 1.

*First*, Senator Menendez's request to maintain the unredacted Severance Motion under seal to avoid "pre-trial disclosure of the defense trial strategy[,]" *id*. at 2, is questionable at best. To the extent his concern is revealing his trial strategy to potential jurors, he will, one way or another, have to reveal that strategy to the ultimately-empaneled jury.  It thus defies logic to suggest that the jury pool could somehow be "tainted" by information it is necessarily going to receive anyway.[4]

---

[4] The Senator's argument that the press and the public suffer no harm by sealing this document because "the public will eventually gain access to Senator Menendez's trial strategy" does not alleviate any concern.  *Richmond Newspapers v. Virginia*, 448 U.S. 555, 592 (1980) (Brennan, J. concurring) (noting importance of "contemporaneous review in the forum of public opinion"); *ABC v. Stewart*, 360 F.3d 90, 99 (2d Cir. 2004) (contemporaneous access "is a vital component of the First Amendment right of access—not . . . an incremental benefit"); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) (delaying access to court filings, even for "as little as a day," "delays access to news, and delay burdens the First Amendment"); *Associated Press v.*

The cases to which the Senator cites for support are plainly inapposite.  Both *United States v. Akhavan* and *United States v. Weissman* involve *ex parte* requests for subpoenas under Rule 17 of the Federal Rules of Criminal Procedure to avoid prematurely disclosing the defense's trial strategy *to counsel for the government.  See Akhavan*, No. 20-cr-188-2 (JSR), 2021 WL 1251893, at *1-2 (S.D.N.Y. Apr. 2, 2021); *Weissman*, No. 01 CR 529 (BSJ), 2002 WL 1467845, at *1 (S.D.N.Y. July 8, 2002).  This concern makes sense as a rationale for sealed, *ex parte* submissions.  Here, however, nothing about the information behind the redactions is *ex parte* or unknown by opposing counsel – to the contrary, the Government is well aware of the content behind the redactions, given that Senator Menendez sought counsel's agreement to maintain the information under seal before filing his memorandum, and the Government refused. *See* ECF No. 251 at 1, 2.

Senator Menendez's true concern appears to be over the amount of pretrial publicity his case has and continues to receive.  But the existence of pretrial publicity does not, *ipso facto*, mean such publicity is prejudicial.  As the Supreme Court explained in the high-profile prosecution of Jeffrey Skilling, former president and chief operating officer of Enron,

> Our decisions cannot be made to stand for the proposition that juror exposure to news accounts of the crime alone presumptively deprives the defendant of due process.  Prominence does not necessarily produce prejudice, and juror *impartiality*, we have reiterated, does not require *ignorance*.  Jurors are not required to be totally ignorant of the facts and issues involved.

---

*U.S. Dist. Ct.*, 705 F.2d 1143, 1147 (9th Cir. 1983) ("It is irrelevant that some of these pretrial documents might only be under seal for, at a minimum, 48 hours . . . . The effect of the order is a total restraint on the public's first amendment right of access even though the restraint is limited in time.").  Notably, Senator Menendez does not claim that the unredacted version of the Severance Motion itself should *ever* be unsealed, but just that the contents behind the redactions will eventually become known during trial.

*Skilling v. United States*, 561 U.S. 358, 380-81 (2010); *id.* at 380 (rejecting that it was the pretrial media coverage in *Sheppard v. Maxwell*, 384 U.S. 333 (1966), that resulted in the overturned conviction, but instead the "carnival atmosphere [that] pervaded the trial"); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976) ("pre-trial publicity – even pervasive, adverse publicity – does not inevitably lead to an unfair trial"); *see Associated Press*, 705 F.2d at 1146 ("Although the prosecution . . . has attracted a great deal of publicity, there are many other cases that generate significant public interest. Yet documents in these other cases are routinely opened to the public without jeopardizing the fair trial guarantee.").

Moreover, courts considering similar issues regularly recognize that there are ample tools at the court's disposal to minimize or mitigate any speculative risk of prejudice, including *voir dire*, admonitions, curative instructions, among others.  *See, e.g.*, *Press-Enter.*, 478 U.S. at 15; *United States v. Martoma*, No. S1 12 CR 973 (PGG), 2014 WL 164181, at *7 (S.D.N.Y. Jan. 9, 2014) (collecting cases); *NBC Subsidiary (KNBC-TV), Inc. v. Super. Ct.*, 20 Cal. 4th 1178, 1223-25 (1999) (listing additional alternatives).[5]  And it is presumed that jurors follow the Court's instruction.  *United States v. Pforzheimer*, 826 F.2d 200, 205 (2d Cir. 1987).  The fact is that this case has attracted substantial public interest and attention, and will continue to do so.  Both the Court and the parties will have to contend with this fact regardless of whether the Senator's Severance Motion is granted.  But the public has a right to know the bases for the Court's decision on that motion, even if that generates one more news cycle among the many that have been and will be dedicated to this case.

---

[5] Nor does the Senator address how these measures do not constitute adequate, less restrictive alternatives.  He thereby fails to meet the narrow tailoring requirement of the First Amendment analysis, yet another reason to deny his sealing request.

*Second*, and relatedly, Senator Menendez claims that unsealing his unredacted Severance Motion will somehow "mak[e] *voir dire* a much more cumbersome process" because it will require "additional questioning on juror's interactions with such publicity."  ECF No. 251 at 2. He simultaneously acknowledges, however, that "media interest [in this case] has been enormous," *id.*, such that, presumably, the parties already intend to conduct *voir dire* into the extent potential jurors have seen, read, or heard about this case in the news (as is typical in most high profile criminal cases).  *Id.* at 3 (claiming *voir dire* "will already be challenging given the high-profile nature of th[is] case").  Adding a question or two on a venire member's knowledge of the redacted information in particular hardly seems to "complicate" the *voir dire* process in any meaningful way.  Regardless, such a complaint does not overcome the First Amendment and common law rights of public access.  *Press-Enter.*, 478 U.S. at 15 ("Through *voir dire*, *cumbersome as it is in some circumstances*, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict." (emphasis added)).[6]

*Finally*, Senator Menendez attempts to improperly flip the burden onto the press and public to justify the reasons for their interest in this document.  He argues that "the traditional rationale for permitting public access to judicial documents"—public accountability and confidence in the judicial system—is absent here.  *See* ECF No. 251 at 3.  Such argument

---

[6] Senator Menendez's concerns are also entirely speculative and, as such, need not be given much weight.  *See* ECF No. 251 at 2 ("The substance of the Redacted Sentences, if made public, will surely garner significant media attention, which likely would reach potential jurors."); *Valley Broad. Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1296 n.13 (9th Cir. 1986) ("we believe that any additional possibility of juror taint in an upcoming proceeding caused by granting the press access to judicial records can be overcome by using the screening device of voir dire," but that "the district court should not make too much of the hypothetical future-arising need to resort to [any] extreme curative devices").

inviting the Court to inquire into the motives of the press and the public has been considered and repeatedly rejected by the Second Circuit:

> Defendants argue that the weight of the presumption of public access is not great because the Newspapers' true motive is not to monitor the judicial process or promote public confidence in the judicial system[.] . . . But, as already explained by this Circuit, consideration of the Newspapers' ultimate interest in the case should not affect the weight of the presumption[.] . . . "[W]e believe motive generally to be irrelevant to defining the weight accorded the presumption of access."

*Lugosch*, 435 F.3d at 123 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("*Amodeo II*")).

In any event, he is incorrect. The press and the public have a distinct interest in understanding the bases for whatever decision the Court makes on Senator Menendez's Severance Motion—the resolution of which will have a substantial impact on the course of this case. This, the Supreme Court has recognized, is precisely the rationale underpinning the presumptions of public access: "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572; *see also DePasquale*, 443 U.S. at 429 (Blackmun, J. concurring in part and dissenting in part) ("Public confidence cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.").

## **CONCLUSION**

For the foregoing reasons, the Media Coalition respectfully requests that the Court grant its request to intervene, deny Senator Menendez's request to maintain the Severance Motion under seal, and order that the unredacted version of the Severance Motion be immediately unsealed and made publicly accessible.

Dated:  April 5, 2024                                  Respectfully submitted,

                                                       BALLARD SPAHR LLP

                                                       /s/ *Joseph Slaughter*
                                                       Joseph Slaughter
                                                       Jacquelyn Schell
                                                       Isabella Salomão Nascimento
                                                       Anna Kaul
                                                       1675 Broadway, 19th Floor
                                                       New York, NY 10019
                                                       slaughterj@ballardspahr.com
                                                       schellj@ballardspahr.com
                                                       salmanascimentoi@ballarspahr.com
                                                       kaula@ballardsphr.com

                                                       *Counsel for the Media Coalition*