UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

ROBERT MENENDEZ et al.,

    Defendants.

Case No. 23-cr-490 (SHS)

**ORAL ARGUMENT REQUESTED**

**SENATOR ROBERT MENENDEZ'S MOTION *IN LIMINE* TO EXCLUDE
SPECULATIVE EVIDENCE AND TESTIMONY**

**PAUL HASTINGS LLP**

Adam Fee
Avi Weitzman
Robert D. Luskin
200 Park Avenue
New York, N.Y. 10166
(212) 318-6000

**JONES DAY**

Yaakov M. Roth (*pro hac vice*)
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939

*Attorneys for Defendant Robert Menendez*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

    I.     THE GOVERNMENT SHOULD BE PRECLUDED FROM ELICITING SPECULATIVE TESTIMONY REGARDING ITEMS OF VALUE ALLEGEDLY SEIZED FROM THE MENENDEZ HOME (AND FROM PRESENTING SUCH ITEMS TO THE JURY). .................................................. 2

    II.    THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE REGARDING HIGH END WATCHES.............. 5

    III.   SPECULATIVE TESTIMONY REGARDING THE REASONS QATARI INVESTMENT COMPANY-1 INVESTED IN REAL ESTATE PROJECTS OWNED BY FRED DAIBES SHOULD BE PRECLUDED. .......... 7

    IV.   SPECULATIVE TESTIMONY REGARDING THE REASONS WHY IS EG HALAL RECEIVED CONTRACTS FROM THE EGYPTIAN GOVERNMENT SHOULD LIKEWISE BE PRECLUDED. ............................... 7

CONCLUSION ................................................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*D.R. by Rodriguez v. Santos Bakery, Inc.*,
  No. 20-cv-3628 (KHP), 2023 WL 3736441 (S.D.N.Y. May 31, 2023) ...................................8

*Folio Impressions, Inc. v. Byer California*,
  937 F.2d 759 (2nd Cir. 1991)...............................................................................................1

*Huddleston v. United States*,
  485 U.S. 681 (1988)..............................................................................................................2

*Kinsey v. Cendant Corp.*,
  588 F. Supp. 2d 516 (S.D.N.Y. 2008)...................................................................................7

*Old Chief v. United States*,
  519 U.S. 172 (1997)..............................................................................................................7

*United States v. $7,877.61 U.S. Currency*,
  No. 09-cv-6306 (MWP), 2015 WL 5719811 (W.D.N.Y. Sept. 30, 2015)..............................4

*United States v. Avila*,
  No. 22-933, 2024 WL 413408 (2d Cir. Feb. 5, 2024) ...........................................................4

*United States v. Cepeda*,
  768 F.2d 1515 (2d Cir. 1985)................................................................................................4

*United States v. Durham*,
  464 F.3d 976 (9th Cir. 2006) ................................................................................................1

*United States v. Garcia*,
  413 F.3d 201 (2nd Cir. 2005)............................................................................................1, 7

*United States v. Kaplan*,
  490 F.3d 110 (2nd Cir. 2007)................................................................................................1

*United States v. Ravich*,
  421 F.2d 1196 (2d Cir. 1970) (Friendly, J.).........................................................................2

*United States v. Stahl*,
  616 F.2d 30 (2d Cir. 1980)....................................................................................................4

*United States v. U.S. Currency in Sum of One Hundred Eighty-Five Thousand Dollars ($185,000)*,
  455 F. Supp. 2d 145 (E.D.N.Y. 2006) ...........................................................................2, 3, 4

**Other Authorities**

Fed. R. Evid.

    402 ............................................................................................................................. 1, 2
    403 ......................................................................................................................... 1, 2, 8
    602 ..................................................................................................................... 1, 2, 6, 8
    701 ..................................................................................................................... 1, 2, 6, 8
    701(a) ............................................................................................................................ 1
    802 ............................................................................................................................. 1, 8
    805 ................................................................................................................................. 8

4 Jack B. Weinstein, Weinstein's Federal Evidence § 701.03 (2d. ed. 1997) .................................. 1

**INTRODUCTION**

Sensationalized innuendo might play well in the media, but it has no place in the courtroom.  Senator Menendez respectfully moves for an order *in limine* excluding under Federal Rules of Evidence 402, 403, 602, 701, and 802 certain highly prejudicial speculative evidence we believe the Government may seek to offer at trial.

**ARGUMENT**

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  The test "is whether a reasonable trier of fact could believe the witness had personal knowledge." *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 764 (2nd Cir. 1991) (citations omitted).

Rule 701 does not absolve the government of its obligation to lay a proper foundation demonstrating personal knowledge.  Rather, Rule 701 "simply recognizes lay opinion as an acceptable 'shorthand' for the 'rendition of facts that the witness *personally perceived*.'" *United States v. Garcia*, 413 F.3d 201, 211 (2nd Cir. 2005) (emphasis added) (citing 4 Weinstein's Federal Evidence § 701.03).  "[T]o ensure that lay opinion testimony is reliable and does not usurp the jury's role as fact-finder, [Federal Rule of Evidence] 701 imposes certain foundation requirements that must be satisfied if such testimony is to be admitted." *United States v. Kaplan*, 490 F.3d 110, 118 (2nd Cir. 2007).  "Rule 701(a) requires that lay opinion testimony be both (a) based on the witness's first-hand perceptions and (b) rationally derived from those first-hand perceptions." *Id.* at 119.  "[O]pinion testimony of lay witnesses must be predicated upon concrete facts within their own observation and recollection—that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts." *Id*. (citing *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006) (internal quotation marks omitted)).

As detailed below, the Fourth Superseding Indictment ("S4") repeatedly attempts—but fails—to string together a "chain of inferences necessary to connect the evidence with the ultimate fact to be proved." *United States v. Ravich*, 421 F.2d 1196, 1204 n. 10 (2d Cir. 1970) (Friendly, J.). It does so by relying on rank speculation, including, prominently, that cash seized from Senator Menendez's home must be the fruit of some illicit conspiracy, despite the government having no evidence connecting the overwhelming majority of the cash to any co-conspirator or alleged scheme. Even if such testimony and evidence were admissible under Rules 602 and 701—and, as discussed below, it is not—the attenuated nature of the inferences "necessarily lessens the probative value of the evidence, and may therefore render it more susceptible to exclusion as unduly confusing, prejudicial, or time-consuming." *Id*.[1] Because the "probative value [of the evidence] is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time," Fed. R. Evid. 403, the Court should exclude the speculative evidence detailed below.

I. **The Government Should be Precluded From Eliciting Speculative Testimony Regarding Items of Value Allegedly Seized from the Menendez Home (and from Presenting Such Items to the Jury).**

The presence of items of value in a private home is not—on its own—evidence of a crime. *United States v. U.S. Currency in Sum of One Hundred Eighty-Five Thousand Dollars ($185,000)*, 455 F. Supp. 2d 145, 154 (E.D.N.Y. 2006) ("the mere possession of a large amount of cash is not illegal and should not be treated as such"). Nonetheless, the Indictment features four large images of U.S. currency and gold bars, which the government speculates are "the fruits" of a bribery scheme involving Senator Menendez and his wife. S4 ¶ 4. Based on this

---

[1] "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

2

central billing in the Indictment, as well as the government's public statements and motion practice to date, there is every reason to expect that the government will seek to inundate the jury with references to cash, gold bars, jewelry, and other items of value purportedly seized from the Menendez home, and likewise to present such items as "evidence" of bribes at trial. But, with rare exception, the government does not even claim to have evidence linking these items of value to any charged conduct. Thus, showing these items to the jury and eliciting related testimony would be highly prejudicial and not the least bit probative of criminality. The government should not be permitted to try to sway the jury with dramatic presentation of valuable items bearing only a speculative connection to any charged offense.

To be sure, Senator Menendez does not seek in this motion to preclude the government from presenting evidence concerning items of value that the government claims were provided by an alleged co-conspirator based on actual evidence from which an inference of wrongdoing, however faulty, may be drawn. For example, Senator Menendez does not here seek to preclude the government from presenting items of value purportedly bearing Fred Daibes' fingerprints (*see* S4 ¶ 4 (alleging that "some of the envelopes [containing seized cash] contained the fingerprints and/or DNA of DAIBES")) or seized gold bars that the government alleges originated from Daibes (see *id.* (alleging that "DAIBES provided" gold bars)). Nor does Senator Menendez seek in this motion to preclude evidence regarding home furnishings and equipment which the government alleges were provided either by Daibes or with funds from IS EG Halal. *Id.* ¶¶ 37(c), 53(a). But other than a single envelope with some cash in it that purportedly bears Daibes' fingerprint, there is no evidence linking any of the other cash, jewelry, or valuables seized from the Senator's home to any alleged co-conspirator.

3

The Second Circuit has made clear that the government may present evidence of a defendant's alleged possession of cash or luxury items only where the government has linked such items to alleged crimes. *See United States v. Avila*, No. 22-933, 2024 WL 413408, at *2 (2d Cir. Feb. 5, 2024) (affirming admission of an Instagram image of a defendant holding a large amount of cash where the caption on the image made reference to "[t]rappin'" and the defendant's alleged fellow gang member testified that "trappin' means selling drugs"). Here, by contrast, the government has not linked—and cannot link—many of the items allegedly seized from the Menendez home, including the cash found in the basement, to any particular offense. Presenting that evidence to the jury has no probative value at all, and would only serve to bias jurors against Senator Menendez on account of his alleged wealth, which, it is well-established, is "improper and ha[s] no place in a court room." *United States v. Stahl*, 616 F.2d 30, 33 (2d Cir. 1980).

Nor do the items seized constitute "unexplained wealth" from which the jury could infer criminal conduct. Indeed, the law is clear that such an inference is permissible only where there is a "great disparity" between supposedly unexplained wealth and its holder's legitimate income. *See United States v. $7,877.61 U.S. Currency*, No. 09-cv-6306 (MWP), 2015 WL 5719811, at *9 (W.D.N.Y. Sept. 30, 2015) ("Although a great disparity between the amount of cash seized and [the claimant's] legitimate income creates an inference of illegal activity," an amount that is "not so substantial" does not "standing alone . . . justif[y] a suspicion of illegal activity"); *U.S. Currency in Sum of One Hundred Eighty-Five Thousand Dollars ($185,000)*, 455 F. Supp. 2d at 155 ("A great disparity between the amount of cash seized and its carrier's legitimate income creates an inference of illegal activity") (emphasis added); *see also United States v. Cepeda,* 768 F.2d 1515, 1518 (2d Cir.

4

1985) (a relatively small amount of wealth found in a home is not "indicative of very much" especially where "accompanied by an explanation").

While roughly $500,000 in cash (the amount allegedly seized from the Menendez home, S4 ¶ 119(c), (d)) is certainly a significant sum, there is not—in light of the facts and circumstances—a "great disparity" between this sum and Senator Menendez and Nadine's legitimate income and wealth, as required to permit a factfinder to infer illegal activity. Instead, the cash and items of value seized can be explained by Nadine's family's wealth as well as Senator Menendez's decades-long practice of making regular, small cash withdrawals and storing such cash in his home. For example, if the Senator had withdrawn only $480 a week for the past two decades, that (i) would be well within the means of a member of Congress given the salaries they earn; and (ii) would account for the entirety of the seized cash. There is thus no basis to permit the government to assert that these valuable items are "unexplained" nor to invite the jury to infer that the seized cash and gold is of criminal origin.

## II. The Government Should be Precluded from Introducing Evidence Regarding High End Watches.

The S4 Indictment alleges that Daibes sent Senator Menendez "via an encrypted messaging application, photographs of a computer monitor depicting luxury wristwatches with prices ranging from $9,990 to $23,990, and asked [Senator Menendez], 'How about one of these.'" ¶ 58.

5



Tellingly, the government does not allege that Daibes bought any of the watches in the pictures he shared with Senator Menendez, or offered these watches—or any other watch—to Senator Menendez in or around September 2021. The government does not allege that the Senator even responded to the message from Daibes. The sum total of the government's allegations regarding the relevance of this text message is that it occurred in proximity to certain other events.

Senator Menendez moves to preclude any and all evidence regarding this text message from Daibes to Senator Menendez cited in S4 ¶ 58. Without laying an adequate foundation that Senator Menendez received one of these watches (he did not), or introducing testimony from one of the participants in the text thread (the government likely will not), all the government can offer is speculation. Under Rules 602 and 701, such speculative testimony is inadmissible.

Moreover, without admissible evidence that the text message and photograph are some sort of *quid* for the Senator's *quo*, any probative value of this evidence is vastly outweighed by the unfair prejudice of presenting the jury with irrelevant photographs of expensive watches. Prejudice is unfair when evidence may "lure the factfinder into declaring

6

guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Pictures of expensive watches untethered to any testimony that the watches were given or offered to Senator Menendez carries precisely such a risk. *Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) ("The parties are not permitted to argue to the fact finder's potential economic sympathies or prejudices.").

**III.     Speculative Testimony Regarding the Reasons Qatari Investment Company-1 Invested in Real Estate Projects Owned by Fred Daibes Should be Precluded.**

The Government implies—but does not actually allege—that Qatari Investment Company-1 invested in a real estate project owned by Daibes because it sought certain actions from Senator Menendez purportedly favorable to the Government of Qatar. S4 ¶¶ 55, 57, 60, 64, 66. To "prove" this baseless allegation, we believe the Government intends to offer testimony speculating as to the motivation for Qatari Investment Company-1's decision to invest in the project (a high-rise development on the Hudson River across from Manhattan). The Court should preclude the Government from eliciting testimony from witnesses who lack personal knowledge of the reasons for Qatari Investment Company-1's investment..

**IV.     Speculative Testimony Regarding the Reasons Why IS EG Halal Received Contracts from the Egyptian Government Should Likewise be Precluded.**

The Court should also preclude the Government from eliciting testimony or evidence regarding the reason(s) why IS EG Halal Certified, Inc. ("IS EG Halal") was selected as a Halal certification company by the Government of Egypt unless such testimony is offered by a witness with personal knowledge of decisions made by the Government of Egypt. Employees of the United States Department of Agriculture ("USDA") or other federal agencies could not possibly have personally perceived why the Government of Egypt granted IS EG Halal a license to certify foods to be sold in Egypt. *See Garcia*, 413 F.2d at 211–213 (holding that opinions offered by a DEA Agent, which were based on the "totality of information gathered by various persons," were

7

not admissible because the opinions were not based on information the agent personally perceived). Such testimony is inadmissible under Rules 602 and 701.

At best, USDA officials would be repeating unreliable hearsay and *innuendo* they purportedly learned from often-undisclosed sources in Egypt. Fed. R. Evid. 802; *D.R. by Rodriguez v. Santos Bakery, Inc.*, No. 20-cv-3628 (KHP), 2023 WL 3736441, at *2 (S.D.N.Y. May 31, 2023) ("[T]he rule against hearsay is fundamentally designed to ensure that only reliable evidence goes in front of the jury") (citations and internal quotations omitted). More likely, such testimony would be hearsay within hearsay: USDA officials recounting what they heard from sources in Egypt who themselves purportedly heard the information from someone else. *D.R. Rodriguez*, 2023 WL 3736441, at *2 ("When one out-of-court statement relays another out-of-court statement, this is hearsay within hearsay. In such a situation, the statement is only admissible if each part falls within an exception or exclusion to the hearsay rule.") (citations and internal quotations omitted). Whether one or multiple layers of hearsay, testimony by USDA officials concerning out of court statements by sources in Egypt are inadmissible under Rules 802 and 805.

Even if evidence from the USDA or another federal agency was admissible under Rules 602 and 701—and it is not—the Court should preclude such evidence under Rule 403. The probative value of speculative testimony about a foreign government's contracting process is far outweighed by the unfair prejudice and confusion inherent in federal employees testifying about decisions they have no personal knowledge of regarding the inner workings of the Egyptian government. There is a significant risk that the jury would give improper weight to this testimony due to confusion regarding, for example, the USDA's role in Egyptian agricultural

contracting (the USDA has none), and in any event, it would bog the trial down in unnecessary minutiae regarding the Egyptian political system and government.

## CONCLUSION

Senator Menendez respectfully requests that the Court enter an order *in limine* precluding the Government from seeking to admit the speculative evidence and elicit the speculative testimony detailed above.

*s/ Adam Fee*

**PAUL HASTINGS LLP**

Adam Fee
Avi Weitzman
Robert D. Luskin
200 Park Avenue
New York, N.Y. 10166
(212) 318-6000

**JONES DAY**

Yaakov M. Roth (*pro hac vice*)
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939

*Attorneys for Defendant Robert Menendez*