```
O4N3MENC
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

            v.                          23 CR 490 (SHS)

ROBERT MENENDEZ, WAEL HANA,
and FRED DAIBES,

            Defendants.

------------------------------x
                                        New York, N.Y.
                                        April 23, 2024
                                        2:30 p.m.

Before:

                HON. SIDNEY H. STEIN,

                                        District Judge


                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
ELI J. MARK
DANIEL C. RICHENTHAL
     Assistant United States Attorneys
          -and-
CHRISTINA A. CLARK, National Security Division


PAUL HASTINGS, LLP
     Attorneys for Defendant Menendez
ADAM FEE

GIBBONS, PC
     Attorneys for Defendant Hana
LAWRENCE S. LUSTBERG
ANNE M. COLLART
CHRISTINA LaBRUNO

CESAR de CASTRO
     Attorney for Defendant Daibes
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   THE COURT: Counsel, why don't you make your
2   appearances, please.
3   MR. MARK: Good afternoon, your Honor. Eli Mark on
4   behalf of the government. With me at counsel table is
5   Christina Clark of the National Security Division, and Daniel
6   Richenthal of my office.
7   MR. FEE: For Senator Menendez, Adam Fee.
8   MR. LUSTBERG: Larry Lustberg with Anne Collart and
9   Christina LaBruno on behalf of Mr. Hana.
10  MR. DE CASTRO: Cesar de Castro for Mr. Daibes.
11  THE COURT: This was to be our Section 6 conference,
12  and I understand the parties are talking to each other and they
13  want a brief adjournment of this conference, which is fine with
14  me.
15  Have you talked amongst yourselves? What is the
16  proposal for the adjourned date and time?
17  MR. MARK: Yes, your Honor. We've been conferring and
18  have conferred a number of times. We anticipate that we might
19  be able to moot some of the issues on the classified
20  information that was noticed. There are five items. I think
21  we might be able to moot some, but not necessarily all. I
22  understand the defense would like an opportunity to put in a
23  submission by Thursday, so two days from today.
24  THE COURT: What type of submission?
25  MR. LUSTBERG: Sure.

O4N3MENC

1       THE COURT: This is a supplemental Section 5?
2       MR. LUSTBERG: Yes, your Honor. So, we got the
3   government's 48-page submission in the SCIF earlier today. It
4   was just filed, as I think you know, late Friday, which was the
5   same day as we got all of our 3500 material.
6       We would like to file a short letter responding with
7   respect to some of the evidence issues that are raised, and
8   particularly the hearsay issues that are raised there. And
9   again, it would be a joint submission on behalf of all the
10  defendants, so it wouldn't tax the Court more than it needs to
11  be. I do anticipate it will be short, a few pages.
12      And we've talked to the government about timing, and
13  the idea is we would get it -- I think we discussed getting it
14  to the government on Thursday. So we are just looking for two
15  days to do that.
16      MR. MARK: And over that period of time, your Honor,
17  as in our submission, there is one item of information that we
18  proposed we might be able to work around with a stipulation.
19  The parties have already talked about what the form of that
20  stipulation might do, which could potentially moot the notice
21  that's to summary substitution no. 2. And we understand that
22  defense is going to -- we're going to work on that stipulation
23  and see if that's something we will be able to present to your
24  Honor and that can moot that one item of information that's
25  noticed.

O4N3MENC

        We also said that the government is open to considering stipulations as towards -- that could moot issues as to the other information, where there might be other unclassified information that normally we would be able to raise certain hearsay objections to, whether we might be able to work around that as to other issues.

        So I think parties will take that time, not just for the defense to put in a submission, but also see whether we can work around the issues as to other classified information.

        The government would then anticipate we would probably come before your Honor for a hearing.  We talked about whether the Court would be willing for Friday to have a hearing on whatever remaining issues that might exist, for the Court to determine whether the remaining noticed information is actually admissible.

        If the Court were to make such a determination at that point in time, then the government would needed to go back to the stakeholders, because we would be dealing with classified information, we would need time to confer with the stakeholders and determine what sort of proposal we would make in a Section 6(c).

        THE COURT:  I'm not here Thursday afternoon or Friday, so that's not a possibility.

        I want any evidentiary submission, that is a submission arguing the evidentiary points, to me by -- let's

O4N3MENC

1   make it 4 p.m. tomorrow, Tuesday. 5 p.m. Tuesday.
2           MR. FEE: Wednesday, your Honor.
3           THE COURT: Wednesday, thank you. Have that to me by
4   5 p.m. on Wednesday.
5           Mr. Rucker, that's going to be sealed so you'll get
6   that to me?
7           MR. RUCKER: Yes, your Honor, I will.
8           THE COURT: I want to give the parties the time they
9   need to talk this through. By the same token, I'd rather have
10  the conference on Thursday. Can we do it Thursday morning?
11  Something like 11 a.m.? Will that, again, I want the parties
12  to have time to try to reduce the core issues before me. If
13  not, we'll do it Monday morning.
14          MR. LUSTBERG: I'm concerned, I actually think that --
15  well, that will be enough time for us to get you our objections
16  and to talk about those. I'm a little more concerned about
17  getting to a stipulation that quickly.
18          THE COURT: Monday early afternoon.
19          MR. MARK: I think that's right. And right now we've
20  proposed a stipulation that might moot concerns as to one item
21  of noticed information. We're open to the defense if there are
22  other ways to moot certain information, we'll also consider
23  that as well.
24          So I think Monday, we understand -- the one thing we
25  want to flag for your Honor is that it obviously, to the extent

O4N3MENC

1  we do go to 6(c), that obviously will take time with the
2  relevant stakeholders.
3          THE COURT:  I understand.
4          MR. MARK:  I think Monday will give us enough time for
5  the trial date of May 13.
6          THE COURT:  Defense will get me the evidentiary
7  submission by tomorrow at 5.  We will have Section 6, not ex
8  parte but sealed conference at 3 p.m. Monday, April 29.  I have
9  some other matters on just before that, but I should be clear
10 at or around 3 p.m.
11         Let's move the final pretrial conference to Thursday
12 morning, 11 a.m.  Can the parties does that.
13         MR. LUSTBERG:  So, your Honor, one of the great things
14 about the extension of the trial date that you granted was that
15 I have a daughter who is getting married the next day in
16 California.  So I'm out Wednesday, Thursday and Friday of next
17 week.  If it was done in some remote fashion, I could make that
18 happen.  But, I was actually going to ask if the Court would
19 just push the pretrial conference a few -- or an hour later for
20 other reasons, but that's going to be difficult for me.  There
21 are other people on my team that could handle it I suppose.
22         THE COURT:  Well, first things first.  I want you to
23 handle your daughter's marriage, obviously.
24         MR. LUSTBERG:  I'm having a hard time with that too.
25         THE COURT:  You do have a solid trial team behind you.

O4N3MENC

1  And if we do it Wednesday, what does the wedding schedule look
2  like on Wednesday?
3           MR. LUSTBERG:  I'm flying out there, it's in
4  California, on Wednesday.  So really the rest, from then on.
5           THE COURT:  When do you fly out?
6           MR. LUSTBERG:  9 a.m. flight on Wednesday.  But again,
7  I'm happy to -- for the pretrial to have someone else cover it.
8  I mean, I wonder, since the trial date has been put off, can we
9  potentially could do it, consistent with what we were going to
10 do before, even Monday?
11          THE COURT:  We could do it May 6.  I don't see that as
12 a major event, the final pretrial conference.  I do want to fit
13 in -- I do want to fit in time for discussion with the parties
14 of the in limines.  I've gone through them, I feel I have a
15 good grasp of them, but I would like to be able to talk with
16 the parties about it.  I'm a little reluctant to do it.  But
17 Monday, May 6.
18          MR. MARK:  That works for the government.
19          MR. LUSTBERG:  Thank you.
20          MR. FEE:  Makes sense, your Honor.
21          THE COURT:  Monday, May 6, 11 a.m. final pretrial
22 conference.
23          Government, you were going to get me that stip that
24 the parties agreed to.  I wanted to have it to take a look at
25 it.

O4N3MENC

1    MR. MARK: Your Honor, we submitted a copy by e-mail
2  to the Court's deputy. We submitted in that fashion because it
3  references a number of third parties.
4    THE COURT: I didn't realize that had happened.
5    MR. MARK: We can resend that.
6    THE COURT: Just a moment. It's already been filed.
7    MR. MARK: Excellent.
8    THE COURT: I have a very efficient deputy.
9    Final pretrial conference Monday, May 6, 11 a.m.
10  Section 6 conference 3 p.m. Monday, April 29.
11    Mr. Lustberg, I want to retain the ability to talk
12  about those in limines on Wednesday, Thursday, or Friday. I'll
13  try to avoid that, but if need be, you have a team and I'm sure
14  you've gone over those issues.
15    MR. LUSTBERG: Sure, Judge. I would love to be
16  present, but if you need to do it those days, I understand.
17    THE COURT: Okay. I think that's it.
18    MR. MARK: And the government will be available then
19  if that's the Court's preference. We just wanted to make the
20  Court aware that in addition to the motions in limine that were
21  filed, we received notice for certain defense experts. At
22  present, the government's intending to file some sort of
23  response with the Court.
24    THE COURT: I want the notice and I want the response.
25    MR. MARK: And we would intend do that next week, your

O4N3MENC

1  Honor.
2          THE COURT:  Do it as soon as you can.
3          MR. MARK:  We will, your Honor.
4          THE COURT:  Who are the experts who have been noticed?
5  What experts?
6          MR. FEE:  Your Honor, we've noticed a financial
7  analyst who assesses the senator's spending habits, given that
8  they've been made an issue here.  That's one.  And the second
9  is a psychiatrist, your Honor, who has examined Senator
10 Menendez.
11         THE COURT:  What's the theory of the mental state?
12         MR. FEE:  Your Honor, it goes to the habit of storing
13 cash in his home.
14         THE COURT:  He can testify to that, right?
15         MR. FEE:  Yes, your Honor.  And this will be the
16 subject I expect of the debate with the Court.  There are -- as
17 the psychiatrist would put it, not my words -- traumatic
18 experiences in his past associated with cash and finances that,
19 in her opinion, inform a condition that has led to this habit.
20         THE COURT:  Government?
21         MR. MARK:  I think Mr. Richenthal is the attorney who
22 is going to be dealing with these motions, if I may give it to
23 him.
24         MR. RICHENTHAL:  The motions aren't drafted yet.  With
25 those grains of salt, I am happy to explain our concern with

O4N3MENC

both those experts.  Mr. Hana has also noticed an expert who we have concerns about as well.

MR. LUSTBERG:  Two.  One is in case there are differences in translations from the Arabic.  So we don't have -- some of the transcripts we've gotten very recently and there may be differences.  And as we said in our notice, only if there are differences will we need an expert to testify as to the different translations.  The other is --

THE COURT:  I don't think I'd have an issue with that, but go ahead.

MR. LUSTBERG:  The other is Mr. Hana, there has been an issue has been made as to how Mr. Hana has been able to get the halal business he did.  And part of that is rooted in Egyptian history, and in particular in the way that the current Egyptian administration has rejected the Muslim Brotherhood which was the -- which previously had the halal contract.  So we have an expert who will be prepared to testify as to that arc of Egyptian history, and the fact that this current administration has rejected the prior reliance on Muslim Brotherhood based businesses.  So it is a historical expert.

THE COURT:  Why do I need an expert on that opposed to somebody who can talk about it?

MR. LUSTBERG:  Perhaps somebody can talk about it. But we didn't see anybody on the witness list who could.  And it is a historian who can lay this out.  Because this is, seems

O4N3MENC

1   to me --
2           THE COURT: Why is that -- again, I am just thinking
3   this off the top. But why is that an expert?
4           MR. LUSTBERG: Because somebody who understands
5   Egyptian history, and can apply it. It is not even applying.
6   It is just to lay out the Egyptian history, to lay out the
7   context for -- that's what it is.
8           MR. RICHENTHAL: I'm happy to respond with a preview
9   of our concerns or your Honor can wait for the papers.
10          THE COURT: No, I'd like it.
11          MR. RICHENTHAL: Taking them I think in the order that
12  Mr. Fee and Mr. Lustberg set forth.
13          So first as to the financial person that Mr. Menendez
14  has noticed, our concern is not that someone can't testify to
15  review of financial records. Indeed, we may have the same
16  thing. Summary witnesses are not uncommon. I think probably
17  in this case it is probably an efficient use of the party and
18  the jury's time.
19          Our concern is no such expert on either side should
20  purport to have an opinion about other facts. A person can say
21  I reviewed a bank statement and a statement shows X and Y and Z
22  and a person could aggregate sums. But to then say from there,
23  what it means, what was found in the home, things like that, is
24  not in our judgment appropriate for expert testimony at all.
25  There are numerous lay witnesses who could or could not testify

1  to those facts.
2  　　　　So as to that person, our objection isn't to that
3  human being taking the stand. It is to the scope of what
4  should be permitted, and whether the person should be qualified
5  as an expert or simply presented as a summary witness.
6  　　　　THE COURT: I take it each of your expert notices set
7  forth the opinions.
8  　　　　MR. FEE: That's right, your Honor.
9  　　　　MR. LUSTBERG: Just summaries, of course, yes,
10 consistent with the rule.
11 　　　　MR. RICHENTHAL: I would add, as to the person I just
12 talked about and as to the forensic psychologist, who I'll talk
13 about in a moment, we also have concerns about the adequacy of
14 the notice. And I'm flagging that because your Honor just
15 talked about the notice. In particular, it appears that both
16 individuals, not just the psychologist, spoke with
17 Mr. Menendez. And yet the nature of those conversations, the
18 extent of those conversations and whatnot are not, in our
19 judgment, sufficiently provided in the notice.
20 　　　　In addition, at least one of the two notices of
21 Mr. Menendez is not signed by the alleged expert which is
22 required under Rule 16. The exhibits or lack thereof that were
23 reviewed, for example, bank records, that's the financial
24 person, were not noted in the notice. And as to the forensic
25 psychologist --

1          THE COURT:  I believe they have to be.
2          MR. RICHENTHAL:  That's our view.  We've advised the
3  defense over the weekend we thought the notice was
4  insufficient.  They said they'll circle back with us.  I expect
5  they'll do that, but I can't respond to something I haven't yet
6  seen.
7          As to the forensic psychologist, irrespective of the
8  adequacy of the notice, there are two issues.  One, while the
9  defense has couched this as a Rule 16 expert, we have some real
10 concern that what this really is is a Rule 12.1 or 12.2 expert.
11 In other words --
12         THE COURT:  That's what I was thinking.
13         MR. RICHENTHAL:  Mental disease or defect.  Under the
14 rules, as I'm sure the Court knows, we would be entitled with
15 the Court's authorization to examine Mr. Menendez.  We've asked
16 for that opportunity.  The defense has not responded yet.  I
17 assume, again, they'll respond in good faith.  But, that's an
18 issue.
19         But putting aside the procedures, and they're
20 important, notice is important, examination is important, but
21 just tabling all of that, our view at the core is this is just
22 wildly inappropriate as expert testimony.
23         The senator, his wife, potentially others, could talk
24 about a history of hoarding cash, if there is such a history.
25 They could talk about how they store cash or other items,

O4N3MENC

1  assuming there is some habit, or other appropriate testimony to
2  be given on those matters. It is not beyond the ken of the
3  average juror; indeed, it strikes me as classic fact testimony.
4      So we do have very serious concerns about the adequacy
5  of the notice and whether we'll be sufficiently able, in light
6  of the trial date, to examine the senator. We have core
7  concerns it is inadmissible on its face.
8      That's the quick version. I'm happy to talk about
9  those two or I can --
10      MR. FEE: Can I respond to those briefly?
11      THE COURT: This is just a preview. I want to be able
12  to get your submissions.
13      You can respond.
14      MR. FEE: Just briefly, we'll address with the
15  government the procedures and notice issues, and we have more
16  information to give.
17      Starting with the analyst, I think we could have
18  discussions with the government to try to narrow the scope of
19  the dispute. We're not going to have -- we're not going to put
20  somebody on to comment on other -- to make conclusions about
21  conduct. The analyst would only be looking at financial
22  spending history. And this is a reaction to the government
23  making clear in its own motions in limine that they are going
24  to make this a component of their argument. Essentially, the
25  senator was living beyond his means, had fancy tastes, and

1  that's why he needed to take bribes. It is a motive argument
2  that the government has introduced into the case. But I think
3  we can engage with them and perhaps address some of their
4  concerns.
5       On the psychiatrist, your Honor. You are going to
6  hear all this, I won't waste time. Mr. Richenthal just used
7  the word "hoarding." That is a characterization, and this is
8  exactly what renders this doctor appropriate for the jury to
9  understand what it means for someone to engage in a behavior
10 that many folks would use a word like hoarding to describe.
11 It's weird, I don't get it, it must indicate something
12 suspicious, when it is in fact actually a component of the DSM
13 that psychiatrists can describe based on an examination of a
14 person.
15       I don't want to go into the personal details, you'll
16 see it in the notices, your Honor. But there is a really
17 tragic personal history with the senator and his family that I
18 think the Court -- the Court should keep an open mind when it
19 hears the basis for the psychiatrist's opinion.
20       THE COURT: All right.
21       MR. RICHENTHAL: I will respond only briefly because I
22 don't want to turn this into ping pong, and it sounds like the
23 parties will be resting on the papers.
24       I am not trying to disparage a choice one might make
25 to keep cash. The question for the jury, in our judgment, the

O4N3MENC

1  only question on this point for the jury, is was the cash from
2  bribes or something else.  That's a fact question.  Not an
3  expert question.  There are plenty of ways for Mr. Menendez to
4  put forth it's from something else, if he so wishes.
5       Our concern, to put a very fine point on it, is what
6  has happened is a psychologist has been retained to speak with
7  the senator, the senator's told a psychologist things, the
8  psychologist is now going to say those things, without our able
9  to cross-examine the senator.  That's a problem.  It is a very
10 serious problem.  Even if the notices were sufficient -- and
11 let me also notice Mr. Fee has correctly, in my judgment,
12 referenced the Diagnostic Statistical Manual, the DSM.  That's
13 mental disease or defect.  There are notice obligations
14 triggered by the defense when they do that, including our
15 ability to examine Mr. Menendez.
16      Trial is looming.  And this is a serious problem.
17      So again, there is a notice or procedural issue, and
18 there is a substantive issue.  On the substance, I think the
19 parties are more than free to fight about where the money came
20 from  The question is, is essentially an expert allowed to get
21 on the stand and say I've talked to Mr. Menendez, who we have
22 no right to call as a witness, he told me X, and I conclude
23 it's not from bribes.  We have very serious concerns about the
24 admissibility of such testimony, even properly noticed.
25      Now as to the final expert to which I alluded, it is

O4N3MENC

1    Mr. Hana's historian.  We obviously have no concern with the
2    proffered expert as to Arabic translations.  My hope, my
3    expectation is it won't be necessary, that the parties will
4    agree on translations, and that is why I referred to one expert
5    of Mr. Hana we have concern about, not two.
6         As to the historian, there's two problems here in our
7    judgment.  One, we are not alleging that Senator Menendez
8    caused Egypt to give the monopoly to Mr. Hana.  We are alleging
9    that Senator Menendez took actions to stop the United States
10   Department of Agriculture from helping to get Egypt to remove
11   the monopoly, which is a separate point.  I understand there is
12   a relationship in general between those two things, but they're
13   not the same thing.
14        But even if we were alleging that the monopoly were
15   obtained literally as a result of bribes, which we have never
16   alleged and do not intend to try to prove, it's again not
17   expert testimony.  There were numerous people, in fact we are
18   going to call one, who was involved in this whole story about
19   why is there a monopoly, where the USDA think there shouldn't
20   be a monopoly, what has Egypt said about the monopoly.  It's
21   classic fact testimony.  What happened.
22        For an expert to talk about the history of Egypt, the
23   history of the Muslim Brotherhood, and for the expert to opine,
24   as a result this particular event must have occurred for
25   particular reasons, is improper.  It's not even a historian's

O4N3MENC

1   role. A historian's role is past. This is not that far past.
2        We don't think it belongs in front of the jury. We
3   think it will result in a mini trial about the Muslim
4   Brotherhood in Egypt, which the Court may be aware is an
5   incredibly complicated subject. That organization is not even
6   recognized as a terrorist organization by the United States.
7   And it is going to turn the trial into something the trial need
8   not and should not be about.
9        THE COURT: When am I going to get these papers?
10       MR. RICHENTHAL: Our hope was to prepare and file them
11  by as soon as Monday. I don't know realistically we can do it
12  sooner. We can try, but our hope was to do it on or before
13  Monday.
14       I will say one reason I am saying that is we would
15  like to have a complete notice before we respond. We can
16  obviously respond in part. I'm referring now to both the
17  psychologist and the financial person.
18       THE COURT: No. We'll handle the notice first. All
19  right. Monday. Do it by Monday if you can.
20       MR. RICHENTHAL: We will do our best. We asked the
21  defense to revise the notice yesterday. We really hope we get
22  revised notices sooner rather than later.
23       THE COURT: That brings up something else. The
24  purpose of this conference was going to be a Section 6
25  conference. It's devolved into a unclassified discussion. It

O4N3MENC

1   seems to me this transcript should be released to the public.
2   I don't think we have said anything that's classified.
3              Can I turn to our CISO. I don't know whether you want
4   to go on the record, sir.
5              MR. RUCKER: I believe it's unclassified.
6              THE COURT: All right.
7              MR. MARK: Your Honor, we would just ask just for the
8   opportunity, since all this happened very quickly, to just have
9   the ability to just review that before there is a determination
10  on that, because there might have been some stray references.
11  I'm not saying there are. Out of prudence, the ability to
12  quickly review that, and we can request the transcript as
13  quickly as the court reporter is able to provide it.
14             THE COURT: All right. Thank you. You'll get it to
15  me by the end of the day.
16             Anything else?
17             MR. LUSTBERG: No, your Honor. Thank you.
18             (Adjourned)