UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    -against-<br><br>ROBERT MENENDEZ et al.,<br><br>    Defendants. | Case No. S4 23 Cr. 490 (SHS) |

# SENATOR ROBERT MENENDEZ'S MEMORANDUM OF LAW
# IN SUPPORT OF HIS MOTION FOR RULE 15 DEPOSITIONS

PAUL HASTINGS LLP

Adam Fee
Avi Weitzman
Robert D. Luskin
200 Park Avenue
New York, N.Y. 10166
(212) 318-6000

*Attorneys for Defendant Robert Menendez*

Senator Robert Menendez respectfully submits this memorandum of law in support of his motion to take pretrial depositions of (i) "Qatari Investor," the principal of the entity described in the Indictment as the "Qatari Investment Company;" (ii) the Chief Operating Officer of the Qatari Investment Company (the "COO"); and (iii) the General Counsel of the Qatari Investment Company (the "GC") (together, the "Deponents") in the United Kingdom, pursuant to Federal Rule of Criminal Procedure 15. The Deponents are not willing to travel to the United States for testimony or to appear voluntarily for a deposition in the United Kingdom. Declaration of Avi Weitzman, dated April 26, 2024 ("Weitzman Decl.") at ¶¶ 5-6. Accordingly, a proposed letter rogatory is attached as Exhibit 4 to the Weitzman Declaration.

## RELEVANT FACTS

The Indictment alleges that Senator Menendez, in exchange for bribes, introduced Defendant Fred Daibes to an investor associated with "an investment company with ties to the Government of Qatar" (the "Qatari Investment Company") that would later invest in a real estate development project in Edgewater, New Jersey owned by Daibes (the "Edgewater Development Project"). S4 Indict. ¶¶ 55-56. Specifically, the Indictment alleges that following a meeting involving Senator Menendez, Daibes, and representatives of the government of Qatar and the Qatari Investment Company, the Qatari Investment Company ultimately "enter[ed] into a joint venture with a company controlled by FRED DAIBES [*i.e.*, the Edgewater Development Project]" and "invested tens of millions of dollars into the project." *Id.* ¶ 66.

Put simply, the government alleges that Senator Menendez played a role in causing the Qatari Investment Company to enter into a joint venture with Daibes, and that he did so in exchange for bribes. *See id.* ¶ 45 ("when he accepted . . . things of value from DAIBES, MENENDEZ knew that DAIBES also expected MENENDEZ in exchange to take action to

benefit the Government of Qatar, and thereby benefit DAIBES, who was seeking millions of dollars in investment from a fund with ties to the Government of Qatar."); ¶¶ 100-101 (charging Senator Menendez with a substantive bribery offense for taking "Actions to Benefit Daibes and Qatar").

But all three Deponents say that the government's allegations are false. Most significantly, on December 15, 2023, the government interviewed the COO, and he contradicted the government's allegations, stating:

1. The Qatari Investment Company opted to invest in the Edgewater Development Project because it was an attractive investment opportunity, and for no other reason. The COO said that the Edgewater Development Project was a "trophy project" because it "overlooked Manhattan" from New Jersey. According to the COO, the Qatari Investor "always wanted to do a property deal in Manhattan" and so a "New Jersey deal" overlooking Manhattan, was "the next best thing." Weitzman Decl. Ex. 1 at 3-4.

2. The Edgewater Development Project was also an attractive opportunity because its owner, Fred Daibes, was "unbankable" (*i.e.*, his unrelated criminal prosecution made it difficult for him to obtain loans from commercial banks) and so the Qatari Investment Company was able to invest on favorable terms. *Id.* at 8.

3. Senator Menendez had no connection to the Edgewater Development Project, the Qatari Investment Company, or the Qatari Investor. Indeed, the COO never discussed Senator Menendez with the Qatari Investor or with Daibes, either in connection with the Project or otherwise. *Id.* at 6.

4. The money managed by the Qatari Investment Company belongs to the Qatari Investor, not the government of Qatar; nor does the government of Qatar have any connection or control over the Qatari Investment Company (making the Indictment's use of the label "Qatari Investment Company" a misnomer). *Id.* at 2. In fact, the COO has no knowledge that anyone in the government of Qatar even *knows about* the Edgewater Development Project. *Id.* at 15. Put simply, the COO rejected the notion that Senator Menendez taking action favorable to the *government* of Qatar would somehow influence the Qatari Investment Company's decision to invest in the Edgewater Development Project.

Furthermore, in attorney proffers in September and November 2023, counsel for the Qatari Investor and the GC largely confirmed the substance of the COO's statements, including that Senator Menendez had no involvement in the consideration of the Edgewater Development

Project, and that the decision to invest in the Edgewater Development Project had nothing to do with Senator Menendez or the government of Qatar. Weitzman Decl. Ex. 2, 3.

Even though the above-mentioned statements were made to the government in late 2023, and even though such statements plainly undermine the Indictment's allegations against Senator Menendez, the government did not disclose these exculpatory statements to Senator Menendez until April 19, 2024. Even then, these exculpatory statements were not identified as *Brady* and were buried in thousands of pages of 3500 disclosures relating to testifying and non-testifying witnesses. When asked to explain why the government did not previously disclose this critical evidence, the government claimed, without explanation, that these statements are not *Brady* and that it suffices for the government to have produced them a mere three weeks before trial. *See* Weitzman Decl. Ex. 5. The government did, however, acknowledge that, if the witnesses are unavailable for trial (as they are), "assuming proper procedures are followed, we [the prosecutors] are amenable to working with you with respect to a Rule 15 deposition or testimony by video." *Id.*

In any event, the government's belated disclosure of this *Brady* material is the reason Senator Menendez must now seek this relief, to avoid the loss of critical, exculpatory testimony at trial.

## ARGUMENT

Federal Rule of Criminal Procedure 15 permits a party to take a pretrial deposition of a witness where "(1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001). All three conditions are met.

3

*First*, the Deponents all reside in the United Kingdom – beyond this Court's subpoena power – and are not willing to travel to the United States to testify at Senator Menendez's trial. *See* Weitzman Decl. ¶¶ 5-6.  They are therefore "unavailable." *United States v. Vilar*, 568 F. Supp. 2d 429, 439 (S.D.N.Y. 2008) (finding that United Kingdom resident witnesses are unavailable for trial because they are beyond the court's subpoena power and unwilling to travel to the United States to testify); *see also United States v. Little*, No. 12 CR 647 ALC, 2014 WL 1744824, at *2 (S.D.N.Y. Apr. 23, 2014) (same).

*Second*, the Deponents' testimony is material.  To establish materiality under Rule 15, a defendant need not show that the proposed deponent's testimony "will surely acquit him," but only that the testimony is "highly relevant to a central issue in the case" or, put another way, that it "would challenge central aspects of the government's allegations." *United States v. Grossman*, No. S2 03 CR. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005) (Stein, J.) (granting motion for Rule 15 deposition).

The Deponents' testimony will rebut the government's allegation that Senator Menendez corruptly secured or influenced the Qatar Investment Company's decision to invest in the Edgewater Project.  Indeed, the Deponents' testimony would affirm the opposite conclusion: Senator Menendez had no involvement whatsoever in the Qatari Investment Company's decision to invest in the Edgewater Development Project.  That testimony, developed through depositions, may well "acquit" Senator Menendez of charges associated with this investment scheme.  It would surely "challenge central aspects of the government's allegations." *Grossman* at *3; *see also United States v. Alexandre*, No. 22 CR. 326 (JPC), 2022 WL 9843495, at *4 (S.D.N.Y. Oct. 17, 2022) (testimony is material for Rule 15 purposes where it "would tend to disprove the Government's assertion that Defendant violated the law" through particular conduct).

4

*Third*, the Deponents' testimony is "necessary to prevent a failure of justice." Courts "presume[] that the testimony is necessary to prevent a failure of justice 'so long as there are no substantial countervailing factors militating against the taking of the deposition[]." *Alexandre* at *4 (quoting *United States v. Fargesen*, No. 21 CR 602 (LAP), 2022 WL 4110303, at *5 (S.D.N.Y. Sept. 8, 2022)). The government bears the burden of demonstrating such countervailing factors, which may include "undue expense to the non-moving party and significant delays in trying the matter." *Id.* at *3 (quoting *United States v. Al Kassar*, No. S307CR354(JSR), 2008 WL 4735269, at *2 (S.D.N.Y. Oct. 27, 2008)).

Given the government's failure to produce these critical statements to the defense earlier, it should not be heard to complain that there is insufficient time for these Rule 15 depositions or that they would impose a burden on the parties. Indeed, the expense of the proposed depositions will be modest: at most, it would involve travel by government lawyers to London for 24-48 hours; more likely, the parties will agree to conduct the depositions by videoconference, reducing the expense to virtually nil. Nor will the proposed depositions cause "significant delays in trying the matter." Senator Menendez has moved expeditiously to pursue this remedy, and – in the undersigned's experience – depositions in the United Kingdom (even of unwilling witnesses) can be arranged in a matter of weeks.

And given that the government was able to secure an interview of at least the COO without any formal process over him, surely the government can assist in expediting depositions of the Deponents. *See* Weitzman Decl. Ex. 5. Moreover, and importantly, the trial of this matter (which is projected to last approximately six weeks) can begin *prior* to the proposed depositions, with the depositions occurring mid-trial. This provides a roughly 7-9 week window in which to secure this critical testimony. *See Al Kassar,* 2008 WL 4735269, at *2 (S.D.N.Y. Oct. 27, 2008)

(authorizing a Rule 15 deposition so long as it occurs "no later than a week before <u>the end of the trial</u> of the instant case . . . [predicted] to last around three to four weeks") (emphasis added). Thus, at maximum, any delay in connection with the proposed depositions (if it occurs mid-trial) will be limited to a single day, in which all three depositions on relatively discrete subjects can be completed.

## CONCLUSION

For the reasons stated herein, Senator Menendez respectfully requests that this Court authorize depositions of the Deponents, pursuant to Rule 15, and execute the attached proposed letter rogatory.

Dated: April 26, 2024

Respectfully submitted,

/s/ *Adam Fee*

**PAUL HASTINGS LLP**

Adam Fee
Avi Weitzman
Robert D. Luskin
200 Park Avenue
New York, N.Y. 10166
(212) 318-6000

*Attorneys for Defendant Robert Menendez*