# Exhibit A

```
X04THMen1                    SEALED                                      1

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   UNITED STATES OF AMERICA,
 4              v.                              23 Cr. 490 (SHS)
 5   ROBERT MENENDEZ, NADINE
     MENENDEZ, and WAEL HANA,
 6
                Defendants.
 7
     ------------------------------x
 8
                                                New York, N.Y.
 9                                              April 29, 2014
                                                3:05 p.m.
10
11   Before:
12                     HON. SIDNEY H. STEIN,
13                                              District Judge
14
                              APPEARANCES
15
     DAMIAN WILLIAMS
16        United States Attorney for the
          Southern District of New York
17   ELI MARK
     DANIEL C. RICHENTHAL
18   CHRISTINA A. CLARK
          Assistant United States Attorneys
19
     PAUL HASTINGS
20        Attorneys for Defendant
     ADAM FEE
21
     GIBBONS, P.C. (NJ)
22         Attorneys for Defendant Hana
     LAWRENCE S. LUSTBERG
23   CHRISTINA LaBRUNO
     ANNE M. COLLART
24
     THE LAW FIRM OF CESAR DE CASTRO, P.C.
25        Attorney for the Defendant Nadine Menendez
     CESAR DE CASTRO
```

```
 1                    (Case called)
 2              MR. MARK:   Good afternoon, your Honor.  Eli Mark on
 3   behalf of the government.  With me at counsel table is
 4   Christina Clark from the National Security Division and Daniel
 5   Richenthal from the U.S. Attorney's Office.
 6              THE COURT:   Good afternoon.
 7              MR. FEE:   Good afternoon, your Honor.  Adam Fee for
 8   Senator Menendez.
 9              THE COURT:   Good afternoon.
10              MR. LUSTBERG:   Good afternoon.
11              THE COURT:   Let's see if we can get the microphone on.
12   I don't know.  Maybe we don't know how.
13              Go ahead.
14              MR. LUSTBERG:   Lawrence S. Lustberg from Gibbons P.C.
15   With me are Anne M. Collart and Christina LaBruno.
16              MR. FEE:   She ran out to get the book.
17              MR. LUSTBERG:   On behalf of Mr. Hana.
18              THE COURT:   Good afternoon.
19              MR. DE CASTRO:   For Mr. Daibes, Cesar De Castro.  Good
20   afternoon, Judge.
21              THE COURT:   Good afternoon.  Good afternoon.  Please
22   be seated.
23              When am I going to get the government's response to
24   the Rule 15 deposition request?
25              MR. RICHENTHAL:   I thought the Court might ask that
```

1   question.  Given other work and filings, if we could have till
2   early next week, we would appreciate it.
3              THE COURT:  No. No.
4              MR. RICHENTHAL:  OK. I always try my second best if I
5   can't get my first best. How about Friday? I will candidly
6   tell the Court earlier would be substantially difficult given,
7   among other things, the expert preclusion motion that we're
8   working on.
9              I can see the Court is still not thrilled. Can I get
10  Thursday?
11             THE COURT:  Basically, do you know what the response
12  is going to be?
13             MR. RICHENTHAL:  It's not written. The response is
14  going to be opposition. I'm happy to explain in sum and
15  substance why, if the Court would like.
16             THE COURT:  Go ahead.
17             MR. RICHENTHAL:  So the issue here I would frame as
18  follows: Irrespective of whether the pertinent fund, that is,
19  Heritage, either was or was not connected to the government of
20  Qatar, there's no evidence whatsoever -- I'm not aware that the
21  defense is even taking a contrary position -- that either
22  Mr. Menendez or Mr. Daibes were aware of the connection or lack
23  thereof.
24             To put a finer point on it, the issue for trial as to
25  this piece of the scheme is whether, at the time Mr. Daibes

            provided certain things of value to Mr. Menendez, Mr. Daibes
            expected Mr. Menendez to take official action to benefit the
            government of Qatar and Mr. Menendez knew he had that
            expectation. Whether in fact the fund was connected or not
            connected, or how connected it was, was not, to our knowledge,
            contemporaneously known to either man, and therefore, it's
            missing an important link to the events of this case. For that
            reason, we don't think it meets the very high standard for a
            Rule 15 deposition.
                    THE COURT:  Get that to me as soon as you can.
            Thursday at the latest.
                    MR. RICHENTHAL:  OK.
                    THE COURT:  All right.
                    In the submission, Mr. Fee, you said the three
            deponents are unwilling to appear voluntarily. Did that mean
            that what they want is a letter rogatory and will appear, or
            does that mean that they don't want to appear?
                    MR. FEE:  The latter, your Honor.
                    THE COURT:  That they would fight any appearance?
                    MR. FEE:  That's right, your Honor.
                    THE COURT:  All right. Thank you.
                    The government's -- I'm sorry, the defense's request
            in regard to exhibits, the government submission, which I just
            read this morning, says they told you what was for ID, that is,
            the AFs were for identification. They told you what parts of

XO4THMen1                    SEALED

1   the exhibits they intend to introduce as opposed to what
2   exhibits were solely for identification. You said otherwise.
3           MR. FEE:    That's right, your Honor. It's not accurate
4   that they've told us. What they have --
5           THE COURT:    The government's lying to you?
6           MR. FEE:    Well, I think they're saying two things in
7   that letter, your Honor. What they say later on is it's a
8   rolling process.
9           THE COURT:    No, I --
10          MR. FEE:    That is true. But, first, that they told us
11  is not true.
12          MR. RICHENTHAL:    I don't have my phone with me, for
13  obvious reasons, and I want to go back and look at the
14  correspondence to get granular, but to my knowledge, and I
15  haven't been the lead on this, we did tell the defense that,
16  and that letter was vetted by the whole team before it was
17  filed.
18          THE COURT:    I can't decide that, as to who
19  misrepresented to whom. I don't like preemptive motions by the
20  defense because that depends upon whether or not you were told.
21  Let's make sure that it's clear, government, that you've let
22  them know what's for identification and what's going to be
23  introduced as exhibits.
24          I understand there's a lot of time pressure on
25  everybody's part here, including the Court. The Court feels

1    the time pressure. Get those summary charts to the defense as
2    quickly as you can. It's not unusual that things will be done
3    on a rolling basis, but let's get them out.
4            All right. Understood?
5            MR. RICHENTHAL:  Understood. And, in fact, multiple
6    were sent over the weekend.
7            THE COURT:  I saw you that. That's in the submission.
8    That's why I thought it made sense for me to talk to the group,
9    because it looks like the speed's picking up and things came
10   through over the weekend.
11           I take it, Mr. Fee, to that extent you'll agree with
12   the government?
13           MR. FEE:  Absolutely, your Honor. We're happy with
14   the pace since our filing.
15           THE COURT:  Well, fine. Glad to hear that.
16           Now, let's turn to the matter at hand. The question
17   is why the five documents at issue are relevant and admissible.
18   It's an evidentiary determination by me. The defendant has the
19   burden on these evidentiary issues.
20           The parties know by now that I'm always looking
21   forward to the parties working together and agreeing to what
22   they can and stipulating to what they can. So my first
23   question is there was much talk about stipulations. What, if
24   anything, has been arrived at?
25           MR. MARK:  So --

XO4THMen1                    SEALED

1           THE COURT:   Also, just like I want cooperation and I
2    understand a certain amount of contretemps is understandable.
3    I don't want unnecessary contention, and I also don't want to
4    decide things that don't need deciding.  So if there are
5    stipulations here that obviate evidentiary rulings, I'm taking
6    it.
7           Sir.
8           MR. MARK:   Your Honor, we've taken all of your
9    comments previously in the case to heart.
10          THE COURT:   Everybody does.  It doesn't lead to any
11   results.  Go ahead.
12          MR. MARK:   Well, in this case --
13          THE COURT:   Sometimes it does.
14          MR. MARK:   In this case, I'm pleased to say I do think
15   it's leading to results.  There are five items that are the
16   subject of the defendants' notice.  The government has been
17   engaging on two particular items, stipulations that would
18   obviate the Court needing to rule on summary substitution 2 and
19   5.  We've received draft stipulations for both 2 and 5 from the
20   defense.  We have given feedback and comments to the first one
21   we received, which was summary substitution two.  And we
22   understand from the defense that we're very close to an
23   agreement, which I hope that we can reach very soon.
24          So I think, given the nature of those discussions,
25   both parties believe that it's unnecessary for the Court to

1    rule on summary substitution 2 to begin with.
2            THE COURT:  And 5?
3            MR. MARK:  And as to 5, we've received a draft
4    stipulation. We have reviewed that. We think, based on the
5    ability for us to negotiate summary substitution 2, that also
6    we do not think the Court needs to rule on summary substitution
7    5, and we anticipate the parties are going to be able to reach
8    agreement and will be able to reach agreement soon on those.
9            So for today's purposes, we believe that we can take
10   off, from what the Court needs to decide, summary substitution
11   2 and summary substitution 5, and we would just ask the Court
12   to rule on the other three items that the defendant has
13   noticed, which are ███████████████████████
14           THE COURT:  I appreciate that. Right now I'm not
15   going to do summary substitution 2, summary substitution 5.
16   I'm going to assume they will be dealt with by stipulation. If
17   they're not, let me know sooner rather than later.
18           I gather, Mr. Richenthal, from what you started out
19   with that I'll be getting a motion to preclude certain of the
20   noticed experts from the defense?
21           MR. RICHENTHAL:  Yes, three of them, your Honor.
22           THE COURT:  When will that be?
23           MR. RICHENTHAL:  If I could have till Wednesday, I'd
24   appreciate it, but --
25           THE COURT:  Of this week?

XO4THMen1                        SEALED

1            MR. RICHENTHAL:  Yes.
2            THE COURT:  Yes.
3            MR. RICHENTHAL:  Great.
4            THE COURT:  Yes.  Obviously, I haven't seen -- I don't
5    believe I've seen the expert notice itself, so make sure that's
6    included.
7            MR. RICHENTHAL:  We would be sure to include that.
8            Can I flag something on that just because the Court
9    said it?
10           THE COURT:  Sure.
11           MR. RICHENTHAL:  And it actually may be more
12   efficient.  The defense, in providing us those notices -- and
13   I'm referring to Mr. Menendez, not Mr. Hana -- indicated it
14   believes they're subject to the protective order in this case
15   and therefore cannot be filed publicly.  We don't think --
16           THE COURT:  What cannot be filed publicly?
17           MR. RICHENTHAL:  I don't want to speak for the
18   defense, but Mr. Menendez's defense team advised us it is
19   taking the position that the expert notices it provided to us
20   are covered by the protective order and, accordingly, cannot be
21   publicly filed.  We don't think that's accurate, and we think
22   they're going to become judicial documents subject to the First
23   Amendment and common law rights of access.
24           So we propose to file them publicly.  Obviously, we
25   would redact any personal information, the expert's phone

XO4THMen1                    SEALED

1    number, for example. But otherwise we could, of course,
2    provide the notices to the Court, and we think they should be
3    provided publicly, that is, ECF filed along with our document.
4              MR. FEE:  Your Honor, it's terribly sensitive
5    information relating to mental examinations of a public figure.
6    Whether it's covered by the protective order, I would think --
7    I would submit there is ample ground for it to be not filed
8    publicly for that reason. If we're redacting phone numbers --
9              THE COURT:  I don't see that. That's going to be part
10   of your defense. Is that going to be part of your defense?
11             MR. FEE:  It may be part of the defense, your Honor.
12   The idea here is they're trying to keep it out of the case. I
13   don't think we need to file this publicly and expose that
14   information if the Court may end up saying, I'm not going to
15   permit this testimony.
16             It's a matter of privacy, your Honor. If we are
17   compelled and permitted to put this on, of course it will all
18   be public, but if this is an exercise that ends -- and,
19   obviously, we don't want it to -- ends with the Court saying
20   this is not going to be presented to a jury, then I don't think
21   there's any reason to, today, expose that information to the
22   public, given that he is a public figure.
23             THE COURT:  What's your response?
24             MR. RICHENTHAL:  My understanding of the case law and
25   the First Amendment common law rights of access to judicial

XO4THMen1                SEALED

1    documents is it does not matter whether the motion is to
2    preclude or to admit. If the court's being asked to decide a
3    matter in a criminal case, it must be public absent very
4    targeted redactions for specific things. I'm not aware of any
5    motion to preclude an expert that could be litigated entirely
6    under seal. We do not think that's appropriate.
7              MR. FEE:   Well, that's not true, your Honor. You can
8    certainly redact from the public record particular items
9    appended to motions that reveal confidential mental health
10   information. We're not saying the entire matter should be
11   submitted under seal. The notice itself references the
12   findings of a psychiatrist with regard to the defendant. I
13   think it's perfectly reasonable, if the application by the
14   government is that this should never be put in a public
15   courtroom, to redact certain aspects of the notice.
16             THE COURT:   Well, I would understand -- is there a
17   diagnosis that you're presenting in court in these papers?
18             MR. FEE:   Yes, that is exactly what is referenced in
19   the papers.
20             THE COURT:   All right. You can redact the diagnosis
21   itself. Everything else is publicly filed.
22             MR. RICHENTHAL:   I'm sorry, your Honor. This may be
23   difficult to do without the document in front of you. There's
24   no diagnosis. It asserts a purported --
25             THE COURT:   Do you have the document?

XO4THMen1                    SEALED

1               MR. FEE:   I don't have it with me, your Honor. I
2     apologize. I was not prepared to argue this today.
3               May I suggest that we have a back and forth with the
4     government, and then if we need to, as a last-ditch effort, we
5     could come to the Court with a letter?
6               THE COURT:   All right. If need be. But by the same
7     token, it seems to me that what we're doing here, at least up
8     until the next sentence or two, is not part of the Section 6
9     CIPA hearing.
10              MR. FEE:   I agree, your Honor.
11              THE COURT:   So what we're doing up to now should be
12    part of the public record.
13              MR. FEE:   I agree, your Honor.
14              MR. RICHENTHAL:   We also agree.
15              THE COURT:   It presents a problem in and of itself
16    because the press did not have notice of this discussion. But
17    I take it, just as happened last week, the purpose of the
18    hearing was a CIPA hearing, which would be sealed. So I'm
19    going to direct that up until this moment the transcript be --
20    a transcript be made and filed on the public record.
21              Does the reporter understand?
22              From now on it will be part of the CIPA Section 6
23    sealed hearing.
24              MR. MARK:   So, your Honor, if I just may, with one
25    caveat, I believe in our prior discussion we referenced by name

```
XO4THMen1                    SEALED
```

1  the different items that were noticed in the Section 5. So we
2  would ask that, just to the extent that there's references to
3  particular items that were referenced, ███████
4  ████████████ in particular, that those be redacted but
5  only that.
6            THE COURT:  Yes, that makes sense.
7            Pass the transcript by the government and the defense,
8  but that's correct, to the extent we're talking about ██
9  ████████████ the summary substitutions, that's sealed.
10 But the government will and the defense will direct you as to
11 what has to be redacted.
12           Government, that includes my beginning when I'm
13 talking about information that is relevant and admissible.
14           MR. MARK:  And we'll endeavor to review that as
15 quickly as possible, just like last time.
16           THE COURT:  OK.
17                              o0o