O4H1MENC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA,
3
            v.                          23 Cr. 490 (SHS)
4
    ROBERT MENENDEZ, WAEL HANA,
5   and FRED DAIBES,

6               Defendants.            Conference
    ------------------------------x
7                                      New York, N.Y.
                                       April 17, 2024
8                                      10:08 a.m.

9   Before:
                    HON. SIDNEY H. STEIN,
10                                     District Judge

11
                         APPEARANCES
12
    DAMIAN WILLIAMS
13       United States Attorney for the
         Southern District of New York
14  BY:  PAUL M. MONTELEONI, ESQ.
         ELI J. MARK, ESQ.
15       DANIEL C. RICHENTHAL, ESQ.
         Assistant United States Attorneys
16
    PAUL HASTINGS LLP
17       Attorneys for Defendant Robert Menendez
    BY:  ADAM FEE, ESQ.
18       AVI WEITZMAN, ESQ.

19  GIBBONS, PC
         Attorneys for Defendant Wael Hana
20  BY:  LAWRENCE S. LUSTBERG, ESQ.
         ANNE M. COLLART, ESQ.
21
    THE LAW FIRM OF CESAR DE CASTRO, P.C.
22       Attorneys for Defendant Fred Daibes
    BY:  CESAR DE CASTRO, ESQ.
23       SETH H. AGATA, ESQ.
         SHANNON M. McMANUS, ESQ.
24
    GOTLIB LAW, PLLC
25       Attorneys for Defendant Fred Daibes
    BY:  VALERIE A GOTLIB, ESQ.

O4H1MENC

| 1 | (Case called)

2       THE DEPUTY CLERK:  Counsel, please state your names

3  for the record.

4       MR. MONTELEONI:  Good morning, your Honor.  Pall

5  Monteleoni for the government.  With me at counsel table are my

6  colleagues Eli Mark and Daniel Richenthal.

7       THE COURT:  Good morning.

8       MR. FEE:  Good morning, your Honor.  For Senator

9  Menendez, Adam Fee.  With me is my colleague Avi Weitzman.

10       THE COURT:  Good morning.

11       MR. FEE:  Your Honor, we have spoken with our client,

12  and he has agreed to waive his presence at today's proceeding.

13       THE COURT:  All right.  Thank you.

14       MR. LUSTBERG:  Good morning.  Lawrence S. Lustberg

15  from Gibbons, PC, on behalf of Mr. Hana.  Mr. Hana is present

16  with me to my left.

17       THE COURT:  Good morning, sir.

18       MR. LUSTBERG:  And with me is my partner Anne Collart.

19       THE COURT:  Good morning to all of you.

20       MR. DE CASTRO:  Good morning, Cesar de Castro, Seth

21  Agata, and Shannon McManus for Mr. Daibes.  We've spoken to

22  Mr. Daibes, and he has agreed to waive his appearance today.

23       THE COURT:  All right.  Thank you.  I accept those

24  waivers.

25       We have somebody on the phone as well, I think from

O4H1MENC

1    Mr. de Castro's firm.

2              MR. DE CASTRO:  Oh, yes.  My apologies.  Valerie

3    Gotlib is also on the line.  Thank you.

4              THE COURT:  All right.  The last missive I have is an

5    email of April 16th at 1:42 p.m. from Mr. Weitzman.

6    Mr. Weitzman, file this.  There should not be substantive

7    emails with the Court that are not publicly filed.  File it.

8    And I assume you want the attachment that is the draft

9    stipulation under seal.

10             MR. WEITZMAN:  That's correct, your Honor.  That's why

11   I emailed it.  But apologies.  We'll have it filed.

12             THE COURT:  But those are two separate things.

13             MR. WEITZMAN:  Yes, your Honor.

14             THE COURT:  So file the email.

15             And at your request, I'll put the attachment under

16   seal.

17             What progress has been made?  Or let me put it this

18   way:  Describe the progress that has been made since that

19   email, Mr. Monteleoni.

20             MR. MONTELEONI:  Your Honor, there has been no further

21   progress because one thing that I think didn't come across in

22   the email is really how far apart the parties are, and because

23   I think the——what the Court was presented with——

24             THE COURT:  I have a quite different view, based on

25   the submissions.  But go ahead.

O4H1MENC

1            MR. MONTELEONI:  Yes, your Honor.

2            THE COURT:  I don't think the parties are far apart at

3    all, and I don't really know what's keeping them from signing.

4    Certainly the proposed draft attached to Mr. Weitzman's email

5    with the deletions that I take it were sought by the defense is

6    certainly a document from which reasonable men and women can

7    accommodate each other.  Remember, we're just talking the

8    necessary facts.  We're talking things that are facts, not

9    parties' positions.  And the government should realize, as I

10   assume it does, in several of these items——and I don't think

11   it's appropriate for me, at this point, at least, to go

12   paragraph by paragraph——that there are means of obtaining those

13   facts through other witnesses, or documents.  And I think

14   there's too much the parties have gotten their backs up about

15   here.

16           Now there is something that's of a different ilk, and

17   that's Mr. de Castro's position, apparent position, that he

18   wants the ability to cross-examine Mr. Lustberg at any point he

19   wishes in the trial.  I have to say, that's sort of in the air

20   of these emails, and near as I can tell, at least in writing,

21   Mr. de Castro has never specifically said that.  There's talk

22   he wants to consider it, he's thinking about it and so forth.

23   It seems to me if he is adamant in that position, then

24   certainly the senator isn't going to get his trial on May 6.

25   And I don't think any of the parties would be willing to agree

O4H1MENC

| | |
|---|---|
| 1 | to that in a stipulation.  If I'm wrong, tell me.  I am not |
| 2 | going to have a trial where, in the middle of the government's |
| 3 | case, suddenly one of the lawyers is going to be |
| 4 | cross-examined, leading to a mistrial after all of that work. |
| 5 | It makes absolutely no sense, in my view, for the parties to |
| 6 | arrive at a stipulation of the necessary facts and then find |
| 7 | themselves with one of the lawyers being disqualified after the |
| 8 | government has put on its case and while the defense is putting |
| 9 | on its case, or at any point in the trial, and the Court has to |
| 10 | declare a mistrial and we have to start all over again.  Not |
| 11 | going to happen.  Again, I haven't seen Mr. de Castro say that |
| 12 | is in fact his position.  My goal, and that I think makes sense |
| 13 | for everybody, is to have the parties stipulate to the |
| 14 | necessary facts, I think on the basis of this stipulation that |
| 15 | was attached to the Weitzman email.  I'm not saying word for |
| 16 | word.  That's what negotiations are all about.  But it strikes |
| 17 | me as a basis.  It also seems to me, if Mr. Weitzman was |
| 18 | correct, the government and the defendants had already signed |
| 19 | off on it but for those changes, those deletions that it looks |
| 20 | like the defendants were asking for.  My goal is to have a |
| 21 | stipulation which would avoid the necessity of my knocking out |
| 22 | Mr. Lustberg and our starting all over again and the necessity |
| 23 | of somebody calling Mr. Lustberg as a witness.  Again, the |
| 24 | necessary facts, it seems to me, can be readily, easily, with |
| 25 | some effort, stipulated to, so that Mr. Lustberg doesn't have |

O4H1MENC

1    to be called and the issue of his disqualification doesn't

2    arise.

3            Now I've seen the submissions from Mr. Lustberg

4    positing that even if he had to be called, under the

5    professional rules of conduct, he wouldn't have to be

6    disqualified.  A quick review of what he cites tells me that

7    that's a very, very high mountain to climb, especially in a

8    conspiracy case.  But I'm not faced with that.  I don't want to

9    be faced with that.  I'll deal with it if I am.  But again, the

10   object of the Court, and I think the parties, should be to

11   stipulate to the necessary facts, to have the trial go forward

12   on May 6th.  That's certainly what the senator has indicated he

13   wants.  And Mr. Fee has been rather adamant, or at least that's

14   his most recent position, and not coincidentally, the

15   defendants would get the 3500 material, the witness lists, and

16   the exhibits lists.  That's not going to happen until we all

17   can decide we have confidence that we have a trial going

18   forward on May 6th.  I'm not going to have the government turn

19   over 3500 material right now, and the result being a

20   several-month adjournment.  That makes absolutely no sense.  So

21   it's win-win; Fee gets a May 6th trial, they get the 3500

22   material, the government has a trial as well, and the

23   government has confidence that Mr. Lustberg is not going to

24   have to be disqualified or be asked to testify.

25           MR. MONTELEONI:  Your Honor, may I be heard on

O4H1MENC

1    something that I think——

2            THE COURT:  That's where the Court stands.

3            Speak to me, sir.

4            MR. MONTELEONI:  I apologize, your Honor.

5            There's a substantive issue here that's really

6    different from these facts that there can be questions about

7    the scope of it, are they really necessary.  There's actually

8    one portion of it that contains only a few words, but they are

9    extremely critical, and they greatly change the character of

10   the stipulation.  This is something that, candidly, was not

11   apparent to the government when we entered into the

12   negotiations, but over the course of it, what we have learned

13   is that these are not the type of facts——these are not the type

14   of witness testimony that actually is typically subject to a

15   stipulation because the witness's statements have evolved

16   during the course of the negotiations and the witness is no

17   longer willing to say——to agree that he would testify

18   consistent with what was previously said to us in August of

19   last year and to what he previously said he would agree to as

20   recently as last week.

21           THE COURT:  You're talking about a government witness.

22           MR. MONTELEONI:  Sorry.  Mr. Lustberg, the witness;

23   Mr. Lustberg.

24           THE COURT:  Oh, I'm sorry.  I'm sorry.  You're talking

25   about Mr. Lustberg.

O4H1MENC

1          MR. MONTELEONI:  Yes.

2          THE COURT:  With that in mind, speak.  Go ahead.

3          MR. MONTELEONI:  I apologize.  So one of the critical

4   facts that is absolutely necessary is a phone call from

5   Menendez and Daibes to Mr. Lustberg that is cited in the

6   indictment, and in this phone call, Mr. Lustberg told us, in an

7   interview last year, before the charges, before, you know, it

8   was public what we were investigating, told us that Menendez

9   yelled at him and told him he should be aggressive in

10  dismissing the case, in seeking to dismiss the case pending

11  against Daibes.

12         THE COURT:  Just a moment, because that indeed is part

13  of the stip, and I want to look at it.  And indeed it's part of

14  the indictment.  I don't have the indictment with me, but I

15  certainly remember the paragraph.  I think it's 53; is that

16  correct?

17         MR. MONTELEONI:  I believe that's right, your Honor.

18         THE COURT:  Okay.  Let me take a look.

19         Are you talking about paragraph O?

20         MR. MONTELEONI:  That's correct, your Honor.  Now if

21  you read that, especially if you read the defense version, but

22  honestly even the government version, because we were trying so

23  hard to bend over backwards in the stipulation——

24         THE COURT:  All right.  Just slow down.

25         MR. MONTELEONI:  Okay.

O4H1MENC

| | |
|---|---|
| 1 | THE COURT:  The government version is without the |
| 2 | strikeouts; is that correct? |
| 3 | MR. MONTELEONI:  Is without the strike-throughs and |
| 4 | especially without the insertion. |
| 5 | THE COURT:  Go ahead, sir. |
| 6 | MR. MONTELEONI:  All right.  So this——certainly the |
| 7 | defense version conveys the idea of a type of a legal strategy |
| 8 | session.  It's really worlds away from "yelled at me, told me |
| 9 | to be aggressive in getting the case dismissed." |
| 10 | THE COURT:  Just a moment. |
| 11 | Now I see why that earlier draft had that adjective in |
| 12 | it.  Yes, sir. |
| 13 | MR. MONTELEONI:  All right.  Now there's actually——if |
| 14 | this case went to trial with Mr. Lustberg as a witness on the |
| 15 | witness stand, the testimony would be presented in an entirely |
| 16 | different way than the defense version, and, frankly, even in |
| 17 | the government version, because we were trying so hard to reach |
| 18 | a stipulation, because even if he says now the defense version, |
| 19 | the jury would be entitled to hear that he previously told the |
| 20 | FBI that Menendez yelled at him and told him to be aggressive |
| 21 | in getting the case dismissed, that last week he proposed the |
| 22 | word "berated" for him, that after the senator's counsel—— |
| 23 | THE COURT:  Wait, wait, wait, wait. |
| 24 | MR. MONTELEONI:  Sorry. |
| 25 | THE COURT:  Last week he? |

O4H1MENC

1        MR. MONTELEONI:  Last week Mr. Lustberg, through

2   counsel——so there was a series of drafts back and forth.  And

3   the defense version——

4        THE COURT:  Well, that's the adjective that I was

5   referring to.  Maybe an adverb.  I don't know.  Go ahead.

6        MR. MONTELEONI:  Sorry.  So defense counsel proposed

7   what, frankly, seems a euphemistic version of it in an earlier

8   draft saying that Menendez suggested something.  I'd been

9   speaking at length to counsel for Mr. Lustberg, had very

10  productive conversations with her about factual accuracy, and

11  she ultimately, after consulting with Mr. Lustberg, proposed

12  that Menendez berated Mr. Lustberg, and in fact, if you

13  remember, last week, when Mr. Lustberg stood up in court and

14  said, we have a stipulation, we just need the other defendants

15  to sign, that was when he had proposed "berated," and that's

16  what we then proposed to defense counsel.  We thought we had

17  that stipulation, and we thought we were waiting for defense to

18  sign.  But it turned out other defendants objected——they——the

19  senator's counsel objected to the word "berated."  And then on

20  Monday, when we tried to confer pursuant to the Court's order,

21  we learned that Mr. Lustberg now didn't want to use the word

22  "berated," allegedly because he thinks it conveys raising his

23  voice, but he also didn't want to use the word "berated" but

24  add in that he didn't raise his voice.  This is just an

25  evolution of the witness's statements.  And I'm not, obviously,

O4H1MENC

1   saying anything about Mr. Lustberg's intent or anything.  This

2   happens with witnesses.  But it happens with witnesses who

3   testify at trial.  It doesn't happen with witnesses whose

4   testimony is the subject of stipulations.  The jury is going to

5   be entitled to assess on the stand Mr. Lustberg's demeanor,

6   assess his certainty, assess the evolution of his statements

7   and what happened before, and this is just something that we

8   believe is actually a critical moment, and this stipulation is

9   entirely divorced of that context.  And we have absolutely

10  taken to heart, your Honor, the goal of reaching a stipulation,

11  avoiding disqualification.  This is something that we attempted

12  to do, not because we would prefer to but to avoid this issue.

13  We bent over as far backwards as we can go, or, candidly,

14  perhaps even more than we should have, but we can't go any

15  farther.  So if this is the defense's view, that's going to be

16  another issue in addition to the idea of the proviso carving

17  out whether there is even a stipulation at all.  There's also a

18  conversation——

19          THE COURT:  By "proviso," you mean the de Castro

20  point.  That's a nonstarter.

21          MR. MONTELEONI:  Yes.  Exactly.

22          THE COURT:  Or should be a nonstarter for everyone.

23  Go ahead.

24          MR. MONTELEONI:  Absolutely, your Honor.

25          On the scope issues, I think that there is actually a

O4H1MENC

1    very strong reason why they should be included there, but I

2    will say——

3        THE COURT:  Why what should be included where?

4        MR. MONTELEONI:  Why the portions that you said could

5    be deleted from the stipulation, the other parts of the scope

6    of the plea negotiations——

7        THE COURT:  I'm sorry.  I may have overspoken.  I was

8    not trying to say the government should accept these deletions

9    and additions.  Not at all.  What I was saying is, reasonable

10    men and women should be able to compromise what I saw as not

11    critical points; actually, by a fair margin, not critical.

12        Go ahead.

13        MR. MONTELEONI:  Well, yes, your Honor.  They're

14    perhaps more critical than they would appear, because the

15    timing of the plea negotiations, which is not readily

16    available, actually aligns with the timing of the delivery of

17    bribes and the actions of Menendez in a way that's going to be

18    very important.

19        THE COURT:  You're talking about plea negotiations.

20    You're going too fast.  You're talking about plea negotiations

21    in the Daibes prosecution?

22        MR. MONTELEONI:  Yes.

23        THE COURT:  Go ahead.

24        MR. MONTELEONI:  So what offers Daibes received, what

25    his position was on those offers, over time, and the fact that

O4H1MENC

1    he ultimately reached a resolution he was agreeable with.  That

2    actually lines up with other evidence that the government

3    intends to present about Menendez's actions and about the

4    delivery of bribes, and it's actually crucial evidence of

5    Daibes's motive when he was getting favorable action in the New

6    Jersey plea negotiations and when he was getting unfavorable

7    action, so that actually is quite important and would be quite

8    difficult to prove without Mr. Lustberg or putting in the

9    stipulation because the documents would have to be redacted

10   'cause his name is all over them, and these negotiations were

11   conducted between lawyers and——

12       THE COURT:  But wait, wait.  The redactions, of

13   course, would redact Lustberg's name.  That's not a difficulty

14   and not an issue.

15       MR. MONTELEONI:  Well, yes, but if the facts aren't in

16   the stipulation, it would actually really prejudice our case to

17   present the jury with a bunch of redacted documents and ask

18   them to infer just from the documents, with no witness, what

19   they mean, when the documents have redactions.  So it would

20   be——

21       THE COURT:  The redactions would be of Mr. Lustberg's

22   name.

23       MR. MONTELEONI:  Yes.  I think that——this is an issue

24   that——I will agree.  This is the only sticking point.  We could

25   work out something.  But this is——when we were putting this in,

O4H1MENC

1    this wasn't some type of poison pill that we put in.  We took

2    out plenty of things.  We left this in because we think it's

3    very important.

4              THE COURT:  Okay.  I appreciate that.  That puts a

5    different light on it, especially the timing.  I wasn't attuned

6    to the issue of timing from the standpoint of the government.

7    And again, I did not mean to suggest that the revised

8    stipulation as annexed to the Weitzman email should be

9    acceptable to the government.  What I did mean to suggest and

10   do mean to suggest is there should be grounds for the parties

11   to reach an agreement here.

12             Mr. Lustberg, I take it you're quite familiar with the

13   government's position as they stated it.  I would think there

14   should be room for some leeway here by you as to have a winsome

15   adjective or two put in.  It seems to me the stakes for you and

16   the senator——that is, your client——are high here.  I perhaps

17   spoke too much by saying I thought your position that you

18   didn't have to be disqualified was a weak one because I hadn't

19   seen papers all around.  I've seen your position.  I've seen

20   the research my clerks have done and presented to me.  And it

21   is a tough road for you not to be disqualified.  So the stakes

22   are high for you.  You've told me it's in your client's

23   interest to have you as the lawyer here, that you've been the

24   lawyer on this matter since I think 2019, and you've put a lot

25   of time into it and you want to see it through.  It seems to

O4H1MENC

me, assuming that's true of your client's view——I have no

reason to doubt it——you should be able to compromise here.

Certainly Mr. Menendez is going to lose the May 6th trial if a

stipulation can't be arrived at, and the parties aren't going

to get the 3500 material and the witness lists and trial

exhibits.  So assuming we're dealing in good faith here, and

assuming, for example, Mr. Menendez really wants a May 6th

trial, there's much to be lost if the parties don't

compromise——again, I can't evaluate it, but from what the

government says, issues of timing and issues of adjectives.  If

your side suggested "berate," seems to me it's appropriate to

add in "berate," but at this point I'm not going to get into

the nitty gritty of it, yelling or berating.  If that's what

happened, if those are the facts, let the facts be stipulated

to.

            What do you wish to say, if anything?

            MR. LUSTBERG:  Yes.  Just briefly, your Honor.  My

understanding of the process between Ms. Collart, who was

representing me, and Mr. Monteleoni, was that it was a

back-and-forth, good-faith process to come up with a

stipulation that reflected the truth.  We——I disagree with

Mr. Monteleoni that my story has changed.  It hasn't in any

respect.  What's here in the stipulation is true.  And I——and

the changes in the stipulation are not my changes.  Those were

changes that were proposed by other defendants.  I——we had a

O4H1MENC

1    discussion—

2           THE COURT:  Well, for these purposes, it's the same

3    brush.

4           MR. LUSTBERG:  I understand.  But all I'm telling you

5    is that we've—Mr. Monteleoni asked various questions along the

6    way that were along the lines of, is this stipulation true, and

7    we agreed that they were true.  We—I was concerned the word

8    "yell" sounded like a raising of the voice, and that's not what

9    happened.  I'm just telling you, you know—

10          THE COURT:  Well, you don't strike me as a yeller.

11          MR. LUSTBERG:  It wasn't me.  The question was whether

12   Senator Menendez—

13          THE COURT:  I'm sorry.  That's correct.  I know

14   nothing about Senator Menendez's voice.  Go ahead.

15          MR. LUSTBERG:  I was on that call, and he didn't.  And

16   so—but I used the colloquialism in my interview that he yelled

17   as like—as sort of telling me what to do.

18          I will say that, your Honor, the way this is worded

19   now, which the government proposed, you know, even without the

20   strike-throughs—and I would leave it to my colleagues how they

21   feel about those because they proposed those—is fine with me.

22   I proposed—I had proposed yesterday one other change, which we

23   can negotiate, and you don't necessarily have to be involved in

24   the midst of that.

25          THE COURT:  You can see I'm trying to stay away from

O4H1MENC

1    the textual negotiations.

2              MR. LUSTBERG:  Yeah.  But I don't think that there's

3    any question whatsoever that we can come to an agreement.  In

4    fact, we did come to an agreement with the government and

5    we're——and we'll stand by it.  But, you know, now, I thought

6    about——

7              THE COURT:  No.  You did, the defendants did, but with

8    these changes.

9              MR. LUSTBERG:  Right.  So I'm not talking about the

10   changes.  With respect to that paragraph, I think the paragraph

11   is true as it was sent to me by the government.  I think it's

12   true as it was, as it's been amended by the defendants.  Either

13   way, it's true.  And my job is to come up with a stipulation

14   that's true and I'm satisfied that that's true and would do the

15   trick.

16             THE COURT:  A stipulation that's true, that helps meet

17   the goals of the parties while still being true, and that has a

18   trial starting on May 6th.

19             MR. LUSTBERG:  Correct.  And——

20             THE COURT:  And that gets you the 3500 material.

21             MR. LUSTBERG:  I'm not even thinking about that right

22   now.  What I'm thinking——listen, we absolutely want to start

23   this trial on May 6th.  We do.  I told you, your Honor, that

24   last time.  It's what we want to do.  Mr. Hana, who's here

25   today, the only defendant who's here, he's here because——in

O4H1MENC

1    case your Honor wanted to hear from him with regard to both the

2    trial date and his desire to have me as his counsel, which he

3    has——I know it can be overridden, but he has——

4            THE COURT:  Mr. Hana, you want Mr. Lustberg to stay as

5    your counsel, correct?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  His firm to stay as your counsel.

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  All right.  Thank you.  I assumed that.

10    That's not at issue.  And as Mr. Lustberg said, under certain

11    circumstances, perhaps as those here, if a stipulation can't be

12    reached, that can be overridden under the law.

13            MR. LUSTBERG:  I'm not going to address that now

14    because I don't understand that your Honor wants to hear about

15    that——

16            THE COURT:  No.

17            MR. LUSTBERG:  ——right now.

18            THE COURT:  No.  Do you have partners on this case who

19    are trial lawyers?

20            MR. LUSTBERG:  I do.  Not——yes, yes, your Honor.

21            THE COURT:  Who can take over if need be?

22            MR. LUSTBERG:  I mean, not——yes, yes.  I mean,

23    Mr. Hana said what he has to say about that.  I've been

24    involved with this longer and——

25            THE COURT:  You're his lawyer.

O4H1MENC

```
1          MR. LUSTBERG:  Yes.  But yes, your Honor, and if
2   that's what's necessary to go forward, that's what's necessary
3   to go forward.  But, you know, the——I'm disturbed by
4   Mr. Monteleoni's characterization of my position having changed
5   when what he's talking about is changing during negotiations
6   that we were having about trying to reach a stipulation.  We
7   were trying to come to an agreement.  At the end of the day,
8   the government proposed language that we can accept.  Now
9   whether, you know——as far as my co-defendants, I can't
10  necessarily speak for them.  But I will tell you that the last
11  version——and whether Mr. Monteleoni had to bend over backwards
12  to get it, that's the nature of negotiations, or not.  I get
13  it.  But we——we're satisfied with that language.  We proposed a
14  word change that, as I understand, the government rejected.
15  Fine.  We can deal with that.
16          THE COURT:  Well, you're satisfied with that language,
17  and perhaps you'll be satisfied with other language as well.
18          MR. LUSTBERG:  Pardon me?
19          THE COURT:  Perhaps you'll be satisfied with other
20  language as well.
21          MR. LUSTBERG:  But this——the language, what's here in
22  the version that your Honor has before you, was the
23  government's last offer.  There is a strike-through, or there
24  is some——there are some strike-throughs that were proposed by
25  my colleagues.  I'm just——
```

O4H1MENC

| | |
|---|---|
| 1 | THE COURT:  There are changes.  The government had a |
| 2 | draft, and you people have changed it. |
| 3 | MR. LUSTBERG:  Not my people. |
| 4 | THE COURT:  The defense have changed it.  And to use |
| 5 | your phrase, that's the nature of negotiations. |
| 6 | MR. LUSTBERG:  Right. |
| 7 | THE COURT:  But you can't say this is agreed upon |
| 8 | because it's not. |
| 9 | MR. LUSTBERG:  It was agreed upon by us. |
| 10 | THE COURT:  Okay.  Fine. |
| 11 | MR. LUSTBERG:  I mean, that's——I mean, I had—— |
| 12 | THE COURT:  There are two sides here.  I mean, some of |
| 13 | these negotiations, there's more than two sides. |
| 14 | MR. LUSTBERG:  I want to endorse the Court's view, |
| 15 | which is, there's no doubt in my mind that we can come to an |
| 16 | agreement with regard to this, and an agreement that reflects |
| 17 | what actually happened as I recall it.  We're talking about a |
| 18 | several-moment conversation three and a half years ago.  But, |
| 19 | you know, as I recall it, the, you know, I—— |
| 20 | THE COURT:  Presumably a conversation where a United |
| 21 | States senator joins the call and participates is one that |
| 22 | you'll remember. |
| 23 | MR. LUSTBERG:  But I don't remember it word for word. |
| 24 | And so that's the reason——if I had a transcript, or I |
| 25 | remembered it word for word, it would be so much easier.  I |

O4H1MENC

1    don't.  And so this is an effort on all parts, on everybody's

2    side, to try to characterize it in a way that's accurate and

3    serves the parties' interests.  And that's what we've all tried

4    to do.  And I agree with the Court that it's something that we

5    can still do.  You know, for the record, I'm not sure I agree

6    with your Honor's view, just going in, that it's such a steep

7    hill to climb, particularly in a situation such as this, where

8    this issue was raised by us and by the government, and by the

9    Court, months and months ago, and meanwhile——

10           THE COURT:  Well, that's actually another subject.  I

11   was a little concerned that, yes, it looks like serious

12   negotiations just started on March 22.

13           MR. LUSTBERG:  That's correct.

14           THE COURT:  But that's behind us.  That's behind us.

15   We are where we are now.  And the parties are at grave risk of

16   losing the May 6th trial.  And to the extent the defendants

17   want the May 6th trial, it's in their interest, to that extent,

18   to resolve this in a way that's acceptable to everybody.

19           MR. LUSTBERG:  And that's exactly what we want,

20   period.  We agree with your Honor——

21           THE COURT:  It's going to take some flexibility.  It

22   looks like you're the key person here.

23           MR. LUSTBERG:  Well, I mean, there's all these other

24   parties, and but my——but the text that the government offered

25   yesterday is acceptable to us.

O4H1MENC

```
 1              MR. MONTELEONI:  Your Honor——
 2              THE COURT:  Just a second.  How can you say that when
 3    you have all these changes in it?
 4              MR. FEE:  I'll make it easier, your Honor.
 5              THE COURT:  No, no.  How can you say that when the
 6    defense has all these changes?
 7              MR. LUSTBERG:  They're not my changes, your Honor.  My
 8    job——
 9              THE COURT:  From the standpoint of the government,
10    they're defense changes.  I understand what you're saying, sir.
11              MR. LUSTBERG:  They're not mine.
12              MR. FEE:  I'll make it easier, your Honor.  The
13    government's proposal in paragraph O, commenting
14    negatively——I'm sorry, your Honor.  I think it's page 6 of the
15    version that Mr. Weitzman sent via email.
16              THE COURT:  Yes.
17              MR. FEE:  I agree, we don't need to be here today,
18    your Honor.  We're close.  Commenting negatively on the
19    prosecution——
20              THE COURT:  We don't need to be here today, your
21    Honor, what?
22              MR. FEE:  We're close.  We don't need to take up your
23    time, your Honor, but it's good to see you.
24              THE COURT:  Please.
25              MR. FEE:  Saying counsel was not being aggressive
```

O4H1MENC

1    enough, we'll take it.  We'll take it, your Honor.  That was

2    the government's proposal on Tuesday morning.  We'll take it.

3              MR. MONTELEONI:  Your Honor, we made that

4    proposal——and perhaps this was a misunderstanding in my

5    communications with counsel for Mr. Lustberg——on the grounds

6    that Mr. Lustberg actually would not say factually that he

7    would testify that he was berated, but it sounds from what I'm

8    hearing here that he would testify that he was berated, so

9    we're not in a position to maintain this language if it was

10   based on the fact that actually the witness would say it wasn't

11   accurate.  He said in court last week, less than a week ago,

12   that we had an agreement involving the word "berated."  We

13   recently got a representation on Monday, as we have been trying

14   to negotiate this, from his counsel that he would not say that

15   he agreed with the word "berated" now.  This was the change.

16   And it was our understanding that based on that representation,

17   we did not want to offer a stipulation that a witness would say

18   something that his counsel is saying he would not say.  But if

19   in fact he does agree that he would use the word "berated,"

20   then we're not in a position to use this watered-down language

21   of "criticized," which is worlds apart from what he

22   originally——

23             MR. LUSTBERG:  This was their proposal.

24             THE COURT:  Yes.  If I understand——

25             MR. LUSTBERG:  Your Honor, that was——

O4H1MENC

1        THE COURT:  Just a moment.

2        MR. LUSTBERG:  Sorry.

3        THE COURT:  If I understand what Mr. Monteleoni is

4   saying, he's saying originally, or earlier on, everyone had

5   agreed to "berated," but Mr. Lustberg changed in the course of

6   negotiations and felt he couldn't say that.  Nothing should be

7   in this stipulation that somebody can't testify to, because it

8   says this is what the person would testify to.  And you now

9   have said once again that you could use the word "berated."  I

10  don't know, but it sounds like "berated" was at one point

11  acceptable to you and now is acceptable to you, but perhaps not

12  to your co-defendants.

13       MR. LUSTBERG:  No, no, your Honor.  That's not

14  correct.

15       THE COURT:  Okay.

16       MR. LUSTBERG:  Let me be clear.  What we're doing is

17  trying to use a verb to characterize a conversation that

18  occurred three and a half years ago.  The word "berated" was

19  not used in that conversation.  During the course of our

20  negotiations——

21       THE COURT:  No, no, of course not.  The man wouldn't

22  say:  I am berating you.

23       MR. LUSTBERG:  No.

24       THE COURT:  You are the berated.

25       MR. LUSTBERG:  Exactly.  So, but upon reflection,

O4H1MENC

1    my—I felt that that overstated what happened.  And I was—and

2    we proposed, we said to Mr. Monteleoni we're uncomfortable now

3    with the word "berated," and he offered the language that now

4    Senator Menendez's counsel has said is acceptable, and it's

5    acceptable to us, that is in the stipulation.  So I feel like

6    this is like a one-way ratchet, because at one point we agreed

7    to a certain word—we, just us unilaterally—that they want to

8    stick us with it.  But now they proposed this language.  Why

9    shouldn't they—

10            THE COURT:  I got it.

11            MR. LUSTBERG:  Yeah.

12            THE COURT:  Go ahead, Mr. Fee.

13            MR. FEE:  Your Honor, just two quick points.  We're

14    not scared of any of this.  You know, if the fix is in—

15            THE COURT:  That's not the issue.  Come on.  Stick to

16    what we're trying to do here.

17            MR. FEE:  My point is this, your Honor.  We'll take

18    whatever words make sense.  I think you just heard it's been

19    like trying to grab ahold of water.  We're ready to accept the

20    proposal they made.  If they want to make another proposal,

21    that's fine.  The only request we had had from day one, your

22    Honor, if you heard a witness on the stand say, *What happened*

23    *next, sir?  He berated me*, you or the lawyer would be inclined

24    to say, *What do you mean?  What happened?*  That's all we mean.

25    If they want to end up using "berated" and it's less clear to

O4H1MENC

1    the jury, that's fine.  We'll take it, your Honor.  We want to

2    get past this.

3          THE COURT:  All right.  Mr. Monteleoni?

4          MR. MONTELEONI:  Yes, your Honor.  Look, we will

5    propose a revision that more tracks the agreement that we had

6    last week and we can add in that no voice was raised, using the

7    word "berated."  I don't think most people would think berating

8    is using a raised voice.  But that clarification we can totally

9    add in.  We can move there if people want to get to yes.

10          THE COURT:  Okay.  I think that's a good place to end.

11          MR. MONTELEONI:  Yes.  That, candidly, has not been

12    the impression that I've gotten in this negotiation, and

13    there's still the issue of will all defendants actually sign

14    the stipulation without this proviso that would allow a

15    mid-trial disqualification.

16          THE COURT:  I couldn't be more clear.  That's not

17    going to happen.  I take it that's not going to happen from the

18    standpoint of the parties.  That's certainly the view of the

19    Court.  I'm not going to have a trial with a stipulation of

20    evidence on the part of Mr. Lustberg, have the trial go

21    forward, weeks of effort on the part of everybody, and have a

22    defendant exercise the right to cross-examine Mr. Lustberg,

23    leading inevitably to a mistrial.  Not going to happen.

24          MR. MONTELEONI:  Yes.

25          THE COURT:  I don't think that's really an issue.  I

O4H1MENC

1 think I've made it clear, at least from my reading, that

2 Mr. Daibes's lawyer was sort of keeping that as an option but

3 never saying it was going to happen.

4     MR. MONTELEONI:  So he did say it in an email

5 yesterday that he would sign only on this condition.  The

6 proposal that we got, it's not in the redline, but in the

7 transmittal email, had that condition to it.  There has never

8 been an offer from the defense of this language without that

9 condition in it.  And for us to sink more time into this

10 negotiation a few weeks before trial, we need to understand, is

11 this going to be signed.

12     THE COURT:  Well, Mr. de Castro, what do you wish to

13 say?

14     MR. DE CASTRO:  So——

15     THE COURT:  I was not putting you to the test because,

16 as I saw the discussion, including the fact that this was never

17 in any of the language that was provided to me, that it really

18 was a nonissue; it was just sort of lurking there, but not an

19 active bogeyman.

20     Sir.

21     MR. DE CASTRO:  Understood, Judge.  I hadn't been

22 commenting only because I knew the Court wanted to direct

23 this——

24     THE COURT:  Yes.

25     MR. DE CASTRO:  So one, you don't see it in the

O4H1MENC

1    stipulation, Judge, because it wouldn't be in the stipulation,

2    number one, because the jury wouldn't read that someone has the

3    right to haul Mr. Lustberg or seek——

4              THE COURT:  Fair enough.  Fair enough.

5              MR. DE CASTRO:  So I think that's one thing.  And it

6    hasn't been something that we have hidden.  It's something that

7    we talked to the government about a couple of times.  As I

8    think I indicated in my letter, or——yeah, in my letter to the

9    Court on April——whichever day it was, in the last few days, was

10   that, you know, we had indicated to the Court——to the

11   government and had conversations, good-faith conversations, and

12   certainly fine, pleasant conversations, about a threshold

13   matter, and about the issue of forgoing a live witness.  And

14   for Mr. Daibes, it's very different.  This stipulation mostly

15   relates to him and his prior——and the prosecution that is still

16   open in the District of New Jersey.  That——

17             THE COURT:  And you participated in the negotiation of

18   the stipulation.

19             MR. DE CASTRO:  Yes.

20             THE COURT:  Okay.  Fine.

21             MR. DE CASTRO:  And in that negotiation, I've made it

22   clear that there could be an issue in that we are forgoing the

23   right to cross-examine what the government has described——and

24   I'm doing this a bit blind, I don't have 3500, I don't know how

25   their proof is going to come in, but——that they have indicated

is extraordinarily crucial to their case.  And in my review of
the other stipulation that the Court does not have, we went
another direction, which was a stipulation that was very
lengthy and had a lot of detail in it.  What I had said to the
government is, if Mr. Daibes was willing to forgo the right to
cross-examine and provide further context to Mr. Lustberg's
testimony, it would have to be a pretty fulsome──I might want
to add facts to that stipulation.  But I can't really do it
without seeing the government's case and their 3500 to get a
better sense of bigger picture as to what their witnesses are
as it relates to the District of New Jersey prosecution and
their claim that Senator Menendez in some way influenced that
or tried to influence the resolution of that case through
bribes from my client.  And so without looking at that
information and to say, okay, fine, we won't cross-examine
Mr. Lustberg, when I believed that Mr. Lustberg can provide
important context and in fact potentially exculpatory evidence
for Mr. Daibes on that point.  And so to forgo that and to be
sitting in the middle of trial and say, ugh, we shouldn't have
signed that stipulation, Mr. Daibes is not willing to take that
risk right now.

          And I want to say one thing that the negotiations did.
Now obviously we came into the case in February, but as
Mr. Lustberg points out, this is──

          THE COURT:  I thought you were on as a second law firm

O4H1MENC

1    to Daibes.  No?

2                    MR. DE CASTRO:  No.

3                    THE COURT:  Okay.  February is plenty of time.  Go

4    ahead.

5                    MR. DE CASTRO:  No, I'm not complaining about that

6    issue.  What I'm saying is, this issue didn't even come up on

7    my radar, necessarily, until, as I think the Court pointed out,

8    I think March 21st.  And so at that point fulsome——I had

9    fulsome conversations with co-counsel, with co-defendants'

10   counsel, with the government, and so that barebones

11   stipulation, that ended up doubling in size, and the reason for

12   that is because, you know, as the conversation developed, we

13   realized that additional information——we may seek additional

14   information from Mr. Lustberg that would be crucial to

15   Mr. Daibes's defense, depending on the government's proof.  And

16   so that's why I inserted——and I didn't hide it.  I didn't lay

17   in the weeds or anything like that.  I said it straight up to

18   the government when we spoke, that this threshold matter is a

19   problem for us, but maybe we should work out a stip right now

20   that the government is comfortable with, which we are

21   comfortable with, as long as we have the ability to present

22   additional context in the form of either a stipulation,

23   additional stipulation, or Mr. Lustberg's testimony.  And

24   so——and then——and so that's why I wrote the letter saying,

25   look, there is a solution to this, which is, there is another

O4H1MENC

1    trial scheduled in this matter.  We are happy to go during that

2    time where Lustberg——

3              THE COURT:  Not going to happen.  Not going to happen.

4              Now here's what we're going to do.  The parties are

5    going to attempt to work out the stipulation.  That is the

6    first thing.  Let's get that behind us.  I'm not quite sure

7    where the word "berate" lies at this point.  Do either of the

8    parties want to tell me where the word "berate" lies?

9              MS. COLLART:  Your Honor, I'm happy to——oh, I'm sorry.

10    Your Honor, I think that this process, as Mr. Monteleoni said,

11    has been a series of back-and-forths primarily between us

12    trying to get——

13              THE COURT:  Yeah.  I want to bring this to a close

14    because it's necessary to bring it to a close.

15              MS. COLLART:  I understand.

16              THE COURT:  What I want is the parties to go into the

17    jury deliberation room and attempt to work out the language.  I

18    want to get a sense of where "berate" lies.  Hammer out that

19    stipulation, assuming you can, and I think everybody seems to

20    think it's close.  At least I certainly do.

21              MS. COLLART:  I agree, your Honor.

22              THE COURT:  And then the defendants can talk to

23    Mr. de Castro.  Because there's not going to be a trial here on

24    May 6th if one of the parties is insisting on the right to

25    cross-examine Mr. Lustberg in the face of a stipulation.  If

1    this stipulation could be worked out, great; that's the way to

2    go.  But I'm not going to have a mistrial in the middle of this

3    trial, or toward the end of this trial, because somebody wants

4    to cross-examine Mr. Lustberg.

5          Nothing I can do, Mr. de Castro, that you don't have

6    the 3500 material, but you're going to have to deal with the

7    evidence you have, and then it's going to be up to your client,

8    I take it, whether or not the trial goes forward on May 6th.

9          Ms. Collart, I didn't mean to cut you off.

10         MS. COLLART:  That's all right, your Honor.  I think

11   that's fine.  I only wanted to convey that this discussion with

12   Mr. Monteleoni, to some degree maybe it's been overlawyering,

13   but it has been an effort to find the right word that actually

14   conveys the truth, and I think that the government proposed

15   some alternative language to us.  This was a back-and-forth

16   effort to try and find language to capture the truth.  I think

17   that we can continue to engage in that process and get there,

18   you know, in the jury room, if necessary.

19         THE COURT:  Is the word "berate" still at play?

20         MR. MONTELEONI:  Yes, your Honor.

21         THE COURT:  Okay.  I have some 50-odd synonyms for

22   "berate" from a thesaurus in front of me.  My clerks just

23   pulled it up.  I think you all should be able to do it on your

24   own.  If you want this, let me know.

25         MS. COLLART:  Thank you, your Honor.

1          MR. LUSTBERG:  We'll take it.

2          MS. COLLART:  We appreciate the assistance.

3          THE COURT:  All right.  I can't speak to its——it

4     doesn't say where it's from.  Oh, it says dictionary thesaurus.

5          MS. COLLART:  Dictionary.com?

6          THE COURT:  I don't know.  I'm sorry.  The parties are

7     to go into my jury deliberation room.  Ms. Blakely will stay

8     here.  Stay as long as you want.  I have a Board of Judges

9     meeting from 1 to 2, but I'll be available, and Ms. Blakely can

10    call me there.  Or you can take a break for lunch.  I think it

11    should not take that long.  I think we should end on the note

12    that everybody is very close, and the first job is the

13    stipulation.  Then people can talk to Mr. de Castro.

14          Thank you.

15          ALL COUNSEL:  Thank you, your Honor.

16          THE DEPUTY CLERK:  All rise.

17          (Recess)

18          THE COURT:  All right.  Are all counsel present?  We

19    don't have Mr. Hana.

20          MR. LUSTBERG:  He waives his appearance for this.

21          THE COURT:  It's 1:00 now.  Please be seated in the

22    courtroom.

23          I understand the parties want to talk to me.

24          MR. MONTELEONI:  Yes, your Honor.

25          THE COURT:  I appreciate the fact that the discussions

O4H1MENC

1   have been proceeding since 11:00.  What can I do for you,

2   Mr. Monteleoni?

3       MR. MONTELEONI:  Yes, your Honor.  We can report that

4   the discussions we have been engaged in have been productive

5   and that the parties have agreed on language for a stipulation,

6   but we understand that counsel for Daibes indicates that his

7   client will not authorize him to sign.

8       THE COURT:  Okay.  Mr. De Castro.

9       MR. DE CASTRO:  That's right, Judge.  I mean, if you

10  want, I can give you some context on it if the Court wants,

11  but, you know, we—the language—

12      THE COURT:  Well, it's not a stip if all of the

13  parties don't agree.  I assume you agree with that.

14      MR. DE CASTRO:  That's correct.  I mean, our position,

15  as I think we've indicated before, is we could stipulate to

16  these facts—and I know the Court has already indicated that,

17  just for the record—with a reservation of rights to be able to

18  call Mr. Lustberg or seek an additional stipulation during

19  trial.

20      THE COURT:  Okay.  And I take it that's not acceptable

21  to the parties.

22      MR. MONTELEONI:  Certainly no objection to reservation

23  of seeking additional stipulation, but absolutely not with

24  calling Mr. Lustberg.

25      THE COURT:  And the position of the other defendants?

O4H1MENC

1    Mr. Fee?

2              MR. FEE:  Your Honor, I just want to clarify.  Is he

3    reserving the right to make an application to the Court to call

4    Mr. Lustberg based on events that unfold at trial or is it

5    some——I'm just trying to understand how rigid the reservation

6    may be, because obviously we want to get the stip done and get

7    to trial.

8              THE COURT:  Well, it may be worthwhile, rather than

9    concluding something now, that the lawyers and the parties talk

10   to each other about this.  I take it you haven't had a full

11   opportunity to do that.

12             MR. FEE:  We've discussed it.  I don't know if

13   Mr. de Castro wants to clarify what he means by reserve rights.

14   Perhaps that's the question.

15             MR. DE CASTRO:  Look, I want to be able to call

16   Mr. Lustberg if I think it makes sense.

17             THE COURT:  Okay.  That's the sticking point.

18             Mr. Fee, what's your position?

19             MR. FEE:  Your Honor, we're ready to sign the stip.  I

20   can't speak for Mr. de Castro.  If he's ready to sign the stip

21   and just may make an application to the Court at some point, I

22   think there are many instances during a trial where the Court

23   has to consider an application to call a witness.  I'm not sure

24   this reservation has much teeth to it if that's all it is, your

25   Honor.  That——

O4H1MENC

| | |
|---|---|
| 1 | THE COURT:  Well, I think it's got a lot of teeth to |
| 2 | it.  He's saying he's reserving the right to call Mr. Lustberg. |
| 3 | Correct, sir? |
| 4 | MR. DE CASTRO:  Yes. |
| 5 | THE COURT:  That's teeth. |
| 6 | All right.  Thank you. |
| 7 | Mr. Lustberg. |
| 8 | MR. LUSTBERG:  Your Honor, as you know from our |
| 9 | earlier colloquy, we do not believe, even with that, that |
| 10 | disqualification is warranted at this stage.  That is, |
| 11 | especially given what we're talking about here, is a risk that |
| 12 | I'll be called as opposed to a certainty.  And I understand the |
| 13 | Court's concern about a mistrial down the road, but I |
| 14 | think——and we've looked at this, and I know you said your |
| 15 | clerks had looked at it as well.  There are cases where—— |
| 16 | THE COURT:  I haven't reached a conclusion. |
| 17 | MR. LUSTBERG:  I understand.  And I appreciate that, |
| 18 | your Honor.  But just for example, I think that there are jury |
| 19 | instructions that could address this issue.  I think there are |
| 20 | a number of ways——and so as a result of this position that |
| 21 | Mr. de Castro is taking, if the government wishes to move to |
| 22 | disqualify me, we would like the opportunity to oppose that |
| 23 | motion and show the Court why it would not be warranted under |
| 24 | the circumstances, under all of these circumstances.  I do hear |
| 25 | the Court loud and clear that you don't want to run the risk of |

O4H1MENC

1    a mistrial.  I think that it's far from a certainty that what

2    Mr. de Castro is saying will take place, or that——let alone

3    that a mistrial would be required under those circumstances.  I

4    won't go into the law right at this moment.  But we would

5    just——just to be 100 percent clear, we've now

6    agreed——Mr. Monteleoni is correct, and the language was run by

7    me——on the language of a stipulation.  We think that that goes

8    a long way towards addressing the problem here.  And I think

9    that the rest of this can be addressed at some later time,

10   including that the Court can rule, if and when events take

11   place——

12            THE COURT:  No, but it has to be addressed now.  The

13   parties, it seems to me, need the certainty of the May 6th

14   trial in order to have the 3500 material turned over and this

15   trial to get moving, as Mr. Fee has constantly said that that's

16   what his client wants.

17            MR. LUSTBERG:  As does ours, your Honor, and we're

18   willing to do whatever it takes to make that happen.

19   Including, though we would, you know——if the government wants

20   to file a motion to disqualify, we'll respond promptly.

21            THE COURT:  I think that's the procedural way to do

22   it.

23            Government, what's your position here?

24            MR. MONTELEONI:  Yes, your Honor.  We certainly do

25   believe that in these circumstances, disqualification is called

O4H1MENC

1    for.  Under the *United States v. Cain* case, the Second Circuit

2    case from 2012, the risk that counsel would be disqualified

3    even when they're not a central witness in the case—or, sorry,

4    the risk that a counsel would be called as a witness is

5    sufficient to warrant disqualification.

6         We will submit a motion to disqualify Mr. Lustberg by

7    tomorrow.

8         THE COURT:  When?  Tomorrow?

9         MR. MONTELEONI:  Yes.

10         THE COURT:  That's Thursday.

11         Mr. Lustberg, you've already done preliminary

12    research.  When can you respond?  We're talking Sunday, or

13    earlier.

14         MR. LUSTBERG:  Unless there's something very new, we

15    should be able to respond by the close of business, or by

16    midnight, whenever it is, on Friday.

17         THE COURT:  On Friday.

18         MR. LUSTBERG:  Yes.

19         THE COURT:  Excellent.  All right.  And then I will

20    rule on that.

21         It really would be a shame for this trial not to go

22    forward on May 6th; it really would be.  Otherwise, I think

23    what we're talking about is a disqualification and adjournment

24    of the trial to July, when, assuming Mrs. Menendez is able, the

25    trial would go forward with everybody.  And if not, it might

1    shift a little bit, depending upon her health situation.  It

2    would also require new counsel to come on if the

3    disqualification is granted.  I'd rather not see that happen

4    from the standpoint of the case going forward.  I do urge the

5    parties and the lawyers——that is, the lawyers and the

6    parties——to talk to each other about this, about whether it all

7    makes sense.

8            MR. DE CASTRO:  Judge, if I could——I'm sorry.  I know

9    you——this is why I think my proposal for severance makes the

10   most sense.  I don't know what the government's position is on

11   it.  I proposed it to them.  I don't know what might——

12           THE COURT:  You mean have a further severance here.

13           MR. DE CASTRO:  Correct.

14           THE COURT:  Which means——just a moment——

15           MR. DE CASTRO:  I'm sorry.

16           THE COURT:  ——either three trials or your client is

17   tried with Mrs. Menendez.

18           MR. DE CASTRO:  Correct.  Not the third trial, but we

19   would be fine being tried with Mrs. Menendez.  We haven't made

20   a motion to sever that is outstanding with Mrs. Menendez, so

21   that——

22           THE COURT:  Government?

23           MR. MONTELEONI:  Your Honor, the government opposes

24   for the reasons we previously put in our letter.

25           THE COURT:  Put it on the record.

O4H1MENC

1          MR. MONTELEONI:  Okay.  So as the Court indicated in

2     granting the severance of Nadine Menendez, as opposed to

3     adjourning the trial as to all defendants to July initially,

4     the parties needed certainty.  Her medical condition made a

5     certainty that she could go forward on July 8th not high

6     enough, and therefore, the trial got adjourned——she was severed

7     and the trial adjourned just as to her because it was uncertain

8     whether that trial date would stick as to her.  So in order to

9     grant the severance for Daibes, that would either be

10    guaranteeing a third trial or else be uncertain when his trial

11    date was.  That is grossly disproportionate to the impact of a

12    several-month adjournment, which would still result in the case

13    being tried within less than one year, which is the fastest

14    trial that I, frankly, have participated in of any sort.  It is

15    simply not in the interest of justice to proliferate this

16    extremely complex, document-intensive and witness-intensive

17    month-plus trial.

18          THE COURT:  No.  I agree with that.

19          Mr. Fee?

20          MR. FEE:  Your Honor, I disagree.  I think putting

21    Daibes with Mrs. Menendez makes total sense.

22          THE COURT:  I would think you would, yes, sir.

23          MR. FEE:  Well, but the reason why, your Honor, is,

24    there will be a second trial, or not, of Ms. Menendez.  I don't

25    see the material distinction between severing one versus

O4H1MENC

1    severing two.

2          And the other part of that, your Honor, is it does

3    solve the problem immediately for Mr. Hana and Senator

4    Menendez.  We would have certainty today, we would get 3500 and

5    exhibits today, and we would have May 6th locked in and ready

6    to go and avoid all the other prejudices arising from having

7    Senator Menendez and Mr. Hana, who want that trial, being

8    pushed off.  I think you get certainty from severing

9    Mr. Daibes.

10          THE COURT:  All right.  Government, you've spoken.

11          MR. MONTELEONI:  Your Honor, that is grossly

12    disproportionate burdens on the parties, on the Court, on the

13    witnesses.  It's not in the interest of justice.  It is truly

14    guaranteeing a proliferation of proceedings, and it's not—it's

15    not justified.

16          THE COURT:  All right.  I've heard enough.  As I say,

17    the parties and the lawyers should talk about this to see if it

18    can be obviated in any case.  In other words, if Mr. de Castro

19    agrees to sign the stip, then there's no issue and we go

20    forward on May 6th.  Or, assuming Mr. de Castro is prepared to

21    sign the stip, I would want your clients to indicate that they

22    agree to the stip, they understand it, they've talked with

23    their lawyers, they agree to waive the right to call

24    Mr. Lustberg at trial or on cross-examination, as well as in

25    any appellate proceedings or any habeas proceedings.  That

O4H1MENC

 1   seems to me the cleanest way to move forward with this trial.

 2   If the parties and their lawyers can't agree to that, the

 3   government will file its motion to disqualify Mr. Lustberg,

 4   will file by Friday, and I'll get the decision out as soon as I

 5   can.

 6         In the meantime, given the uncertainty of the trial

 7   date, unfortunately, at this point, there's no need to turn

 8   over the 3500 material, trial exhibits, and witness lists.

 9   Thank you.

10         MR. MONTELEONI:  Thank you, your Honor.

11         May I just confirm for the record that the other

12   court-ordered deadlines will remain in effect regarding—

13         THE COURT:  Yes.  CIPA.  We have CIPA proceedings

14   scheduled, and anything else, absolutely.

15         MR. FEE:  Your Honor, if I may just flag one more

16   thing.  I am not making an application now, but obviously the

17   time that the defense has the 3500 and the exhibits is

18   shrinking every day.

19         THE COURT:  Yes.  I'm trying to avoid that, sir.

20         MR. FEE:  Yes, your Honor.

21         THE COURT:  Thank you.

22         MR. FEE:  Thank you.

23         THE DEPUTY CLERK:  All rise.

24                              o0o

25