

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 20, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.*,
             S4 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in the above-captioned matter to identify for the Court and seek the resolution of objections raised by the defendants to a number of exhibits the Government intends to present in connection with the testimony of its first summary witness, Special Agent Michael Coughlin of the Federal Bureau of Investigation ("FBI"), and to respond to Menendez's letter seeking preclusion of this testimony and charts (Dkt. 406).[1]  As set forth below, the proposed exhibits and summary charts that the Government intends to offer in connection with his testimony are admissible and supported by a long line of precedent holding that such charts are useful to the jury, save time, and are permitted by Federal Rule of Evidence 1006.

      **I.**    **Special Agent Coughlin's Expected Testimony and Summary Charts**

      Special Agent Coughlin is expected to provide summary testimony regarding, principally, a voluminous number of documents setting forth a detailed chronology of the aspects of the scheme related to Robert Menendez's promised, agreed, and/or undertaken acts to benefit Wael Hana and Egypt.  The Government intends to present this large volume of evidence in an efficient and comprehensible fashion, including the use of two summary charts, one (Government Exhibit 1305) attributing certain phone numbers and electronic accounts to certain individuals, and the other (Government Exhibit 1302) assembling voluminous email, text message, phone record, and other documentary evidence in an integrated and chronological manner that will aid juror comprehension and allow for an efficient presentation of evidence.  The Government expects

---

[1] Although the Government previously expected to call Special Agent Coughlin to testify as early as today (Monday, May 20, 2024), the Government believes that given the progress of trial to date and the early conclusion of trial on Monday, Special Agent Coughlin's testimony is likely to begin on Tuesday instead.

Honorable Sidney H. Stein
May 20, 2024
Page 2

Special Agent Coughlin principally to explain the methods by which he verified the summary charts and to read from or summarize portions of the summary charts and certain of the underlying documents cited in them, as well as a small number of other exhibits not cited in the charts.

The Government has engaged with defense counsel for several weeks in an effort to facilitate the efficient and uninterrupted presentation of Special Agent Coughlin's testimony, and thereby to respect the jury's time. The Government produced a first draft of Government Exhibit 1302 to the defendants three weeks ago, on April 28, 2024, and a revised draft on May 15, 2024. The Government has solicited and received objections from the defendants regarding the summary charts and the exhibits the Government intends to introduce in connection with Special Agent Coughlin's testimony (both those cited in the charts and several other exhibits not cited in the charts), and is in the process of moderately amending both summary charts in response to specific factual corrections and suggestions received from the defendants. Similarly, the Government has provided or re-produced a small number of exhibits or revised exhibits to address defendants' asserted concerns that certain citations in the chart were not supported by exhibits they had received. The Government thus does not believe that there will be outstanding issues regarding the accuracy of the summary chart itself, as distinct from the admissibility of the documents it summarizes or its form or the mode of its presentation to the jury.

Menendez's attempt to dictate the order of the Government's case by delaying Special Agent Coughlin's testimony is wholly unwarranted and would impair the jury's ability to understand the evidence. (*See* Dkt. 406 at 4.) This testimony will provide substantial context for other evidence the jury is expected to hear regarding the portion of the scheme involving Egypt, and juror comprehension will suffer if the Government is forced to call witnesses out of order, particularly given that a substantially complete draft of the challenged summary chart was disclosed to the defense three weeks ago.

Instead of delaying Special Agent Coughlin's testimony, the Court can readily resolve the objections the defendants have noted. The Government attaches hereto as Exhibit A an annotated version of Government Exhibit 1302, including those defense objections the Government believes are still outstanding, and the basis for the Government's responses.[2] For the reasons set forth below, these objections are all without merit and can be disposed of prior to Special Agent Coughlin's testimony on Tuesday.

II.   **Objections to the Form of the Summary Charts or the Mode of Their Presentation to the Jury**

In his letter to the Court and in correspondence with the Government, Menendez claims that Government Exhibit 1302 is inappropriate either because it does not summarize every document or enough documents, or because the Government does not propose to read or display

---

[2] Because Exhibit A identifies, among other things, a number of third parties and potential witnesses, the Government respectfully submits it pursuant to the procedures set forth in the Court's order governing sealed filings and requests that it be filed under seal in the first instance. (Dkt. 169).

literally every entry in the chart to the jury.³ These objections are contradicted by the law of this Circuit.

The use of summary charts, like Government Exhibit 1302, to organize and present various types of evidence into timelines has repeatedly been recognized by the Second Circuit as useful to the jury and permitted by Rule 1006. *See, e.g.*, *United States v. Ho*, 984 F.3d 191, 209-10 (2d Cir. 2020) (hundreds of pages of text messages, emails, and other documents "merited the use of summary charts in a complex fraud trial"); *United States v. Miller*, 954 F.2d 551, 565 (2d Cir. 2020) (affirming admission of summary chart of "hundreds of calls and text messages" and explaining that "this information would have been difficult for the jury to synthesize and evaluate without the aid of a summary"); *United States v. Blackwood*, 366 F. App'x 207, 212 (2d Cir. 2010) (affirming admission of "government's summary charts set forth detailed information concerning well over 100 telephone calls spanning three days between four individuals"); *see also United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003) (stating that the Second Circuit has "regularly affirmed" the use of summary charts "to draw the jurors' attention to particular evidence culled from a voluminous set of records").⁴ The challenged summary chart summarizes a series of relevant events from December 13, 2017 through January 29, 2022, drawn from phone records, bank records, text messages, emails, contractual documents, photographs, and other documents. There is no requirement for jurors to themselves locate these data points from the totality of the admitted evidence, pull out the relevant pieces, then line them up chronologically so that they can understand such a sequence of events. Rather, that kind of laborious, time-consuming task is exactly why Federal Rule of Evidence 1006, allowing the admission of summary charts, exists. If the Government is not permitted to use such summary charts, the Government expects that it will have to call more witnesses and present more testimony to walk through hundreds of separate exhibits to convey the same information contained in Government Exhibit 1302. That process would materially lengthen the trial and create more work for the jury. Such a laborious organizational task is precisely what Rule 1006 is designed to avoid.

Menendez's counsel, citing Fifth Circuit law, argues that the Court "should not permit the use of summary charts that give the government *carte blanche* to put in their summation before the conclusion of the case." (Dkt. 406 at 2.) But the Government's summary charts in this case are not a summation, and the Fifth Circuit's case law is not the law of this Circuit. *See, e.g.*, *Ho*, 984 F.3d at 209-10 (rejecting argument that timeline of selected exhibits could not be introduced under Rule 1006 because it was allegedly "created for the purpose of generating a narrative supporting the prosecution's theory of the case"). Indeed, the use of summary charts of exactly

---

³ The Government does not understand the defendants to be objecting to Government Exhibit 1305, a compilation of names, phone numbers, and account identifiers intended to facilitate the jury's attribution of relevant communications.

⁴ Although not required by the text of Rule 1006, the Government has no objection to a limiting instruction, as was given and affirmed in *Ho*, that "the charts themselves d[o] not constitute independent evidence and that it [i]s the jury's duty to first determine that they accurately reflected the evidence on which they [a]re based." 984 F.3d at 210; *see also id.* ("This court has long approved the use of charts in complex trials, and has allowed the jury to have the charts in the jury room during its deliberations, so long as the judge properly instructs the jury, as the judge did here, that it is not to consider the charts as evidence." (internal quotation marks omitted)); *see also Yousef*, 327 F.3d at 158 ("any possible prejudice" "was cured" by similar instruction).

Honorable Sidney H. Stein
May 20, 2024
Page 4

this form is so patently proper that they have routinely been admitted over objection without even requiring written decision. *See, e.g.*, *United States v. Skelos*, No. 15 Cr. 317 (KMW), Tr. 2252-57, 2262 (S.D.N.Y. 2015) (rejecting defense argument that timeline charts were "argument presented through an FBI agent" and "in effect summation," and finding that "it is precisely the type of information that has been allowed to be used in charts"); *United States v. Calk*, No. 19 Cr. 366 (LGS), Tr. 2-3 (S.D.N.Y. June 22, 2021) (admitting similar timeline charts over objection); *United States v. Gatto*, No. 17 Cr. 686 (LAK), Tr. 1443-1448 (S.D.N.Y. Oct. 16, 2018) (rejecting reliance on Fifth Circuit precedent regarding Rule 1006 in admitting summary chart that defense claimed should be used in "closing" instead). The challenged chart here (Government Exhibit 1302) is virtually identical in form to charts approved in *Skelos* and *Calk* (attached hereto as Exhibits B and C), and should similarly be admitted.[5]

Menendez's complaint that the summary chart somehow does not summarize *enough* information is simply foreclosed by Second Circuit law. In *Ho*, for example, the defendant complained that the charts synthesized "only" 669 pages of documents. 984 F.3d at 209. The Circuit disagreed, explaining that "while it is true that summary charts are sometimes used to synthesize even larger volumes of documentary evidence than was the case here, it was clearly not an abuse of discretion for the district court to conclude that hundreds of pages of evidence merited the use of summary charts." *Id.* at 210 (citation omitted). Here, the charts summarize the information from 5840 pages of documents, even without counting the much lengthier phone records—meaning significantly more information than sufficed to satisfy Rule 1006 in a published Second Circuit opinion. *Id.*.

Menendez's counsel has also objected, in correspondence with the Government, to the inclusion of *any* entries in the summary chart that are not themselves read or published to the jury during Special Agent Coughlin's direct testimony. Although the Government is willing to publish and ask the witness to read every line of each page of this 97-page document to the jury if the Court so directs, the Government does not believe this procedure is remotely necessary, and the Government is unaware of a legal basis for a party to demand that another party present, line-by-line, every entry in a valid and accurate summary chart. Indeed, Rule 611(a) empowers the Court to "exercise reasonable control over the mode of . . . presenting evidence so as to: (1) make those procedures effective for determining the truth; [and] (2) avoid wasting time." And nothing in Rule 1006 requires such an approach. Nor would it respect the jury's time.

The Government expects to use its summary charts in an efficient fashion, by reading or summarizing certain line items directly, by briefly using line items to situate in time underlying source documents that Special Agent Coughlin will then read to the jury, or in some instances by placing into evidence a comprehensible and digestible summary that can be referenced by other witnesses, or inspected by the jury should it wish to do so. Nothing in the Federal Rules of Evidence requires a procedure where every page—and every line—of an exhibit be read or displayed through a witness, much less every line in a summary chart. Indeed, such a laborious

---

[5] As the Government raised in its motions *in limine*, Menendez should not be permitted to argue, as he did in his District of New Jersey case, that there is anything improper or unfair about summary witness testimony or summary charts the Court allows into evidence. (*See* Gov't MIL (Dkt. No. 291) at 12-13 (quoting arguments from Menendez's counsel during the District of New Jersey trial, including asking jurors to "be mad" about the Government's use of a summary witness and calling such a witness an "invented" witness).)

procedure appears contrary to the self-evident purpose of the Rule 1006, which is aimed at facilitating the efficient presentation of voluminous evidence, so that the jury can determine the facts, including by referring to the chart during deliberations should it wish to do so.

### III. Objections To the Substance of the Chart and Associated Exhibits

The defendants have also raised a number of objections to the substance of the exhibits summarized by Government Exhibit 1302, as well as certain other exhibits the Government intends to use in connection with Special Agent Coughlin's testimony. These objections principally concern the Speech or Debate Clause, hearsay, or relevance. All should be overruled.

#### A. *Objections Based on the Speech or Debate Clause*

Menendez makes a number of objections based upon the Speech or Debate Clause that are contradicted by settled case law and this Court's published ruling on his pretrial motions, which constitutes the law of the case. *See Fed. Treas. Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, No. 14 Civ. 712 (SHS), 2020 WL 4349840, at *3 (S.D.N.Y. July 29, 2020) (The law-of-the-case doctrine "commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." (quoting *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 146-47 (2d Cir. 2020))); *see also, e.g.*, *Sulehria v. City of New York*, 670 F. Supp. 2d 288, 303 n.6 (S.D.N.Y. 2009) (Stein, J.) (noting that prior rulings in the litigation were "law of the case"). Menendez's objections should be swiftly rejected as a belated and meritless attempt at re-consideration. Specifically, Menendez seeks to characterize as protected legislative acts a wide range of conduct that the Court has previously held to be unprotected or that plainly does not amount to a legislative act, summarized below:

- Menendez's promises to the Egyptian government, through his coconspirators, that he would not place a hold on, had not placed a hold on, or had signed off on, foreign military sales or foreign military financing. (*See* Ex. A lines 320-28, 1030, 1040, 1058, 1060, 1070, 1263-72.)[6] These are not protected under the Court's ruling. *United States v. Menendez*, No. 23 Cr 490 (SHS), --- F. Supp. 3d ----, 2024 WL 1120182, at *6 (S.D.N.Y. Mar. 14, 2024) ("[T]o the extent that the indictment alleges that a corrupt agreement was formed in whigch Menendez agreed—or promised—to use his power to influence foreign military sales or foreign military financing to Egypt, or to the extent Menendez says he will place a hold or sign off on foreign military sales or foreign military financing, the Speech or Debate Clause does not apply.").

- The provision of information to Egyptian officials concerning policy matters such as U.S. military aid to Egypt. (*See* Ex. A lines 69, 83, 95-97, 102, 104-08, 166, 170, 178-80, 186, 189, 191, 340-41.) These are also squarely not protected under the Court's ruling. *See Menendez*, 2024 WL 1120182, at *7 ("Nor can the Speech or Debate Clause

---

[6] The Government understands objections noted on the summary chart, cited herein to the numbered lines on Exhibit A, to encompass objections to the chart and the underlying documents. The lines on Exhibit A identify the objecting defendant, the basis of the objection, and the basis of the Government's response. Objections to exhibits that are not cited in the chart are referenced herein by Government Exhibit number and objecting defendant, rather than by line number.

be construed to protect information that Menendez, Nadine, or Hana provided Egyptian officials."); *id.* ("[T]he provision of information to[] Egyptian officials in relation to a corrupt bribery scheme must be viewed as occurring outside of the legislative process."). As part of this provision of information, the chart summarizes, and the defendants have objected to, evidence of news reporting and staff summaries of holds placed by Senator Leahy, all of which Menendez transmitted to the Egyptian government through his coconspirators as part of the charged offense. (*See* Ex. A lines 83, 107.) As an initial matter, this evidence is not of acts of Menendez, and thus he has no standing to raise a Speech or Debate Clause objection. *See Gravel v. United States*, 408 U.S. 606, 622 (1972) (the Speech or Debate Clause is "invocable only by the Senator or by the aide on the Senator's behalf"). In any event, this evidence is not offered to prove whether Senator Leahy in fact took the pertinent actions—that is, that holds in fact occurred—but rather to prove what information Menendez conveyed to his coconspirators and Egyptian officials. The specific information Menendez conveyed, including in the form of new stories and staff summaries, provide context for the beliefs of Menendez and his coconspirators and Menendez's unprotected actions in providing information to Egyptian officials. Plainly, Menendez's unprotected sharing of information to Egyptian officials does not suddenly become *immunized* because what he was sharing may have concerned another Senator's legislative acts. And finally, this sort of background information about the context in which Menendez acted, which context was shaped by the actions of other legislators, has already been held by this Court not to violate the Speech or Debate Clause. (*Compare* S2 Indictment ¶ 18 (describing resistance to provision of U.S. military aid to Egypt, including objections raised by "multiple U.S. Senators" to such aid), *with Menendez*, 2024 WL 1120182, at *7 ("[N]one of the allegations in paragraphs 16 through 38 of the S2 Indictment that concern the Egyptian Aid Scheme are protected by the Speech or Debate Clause.").)

- Meetings with Egyptian government officials that Menendez attended, which were arranged and attended by his coconspirators, in furtherance of the scheme. (*See* Ex. A lines 65-75, 241-43, 247-49, 259, 268, 274, 279-80, 299-301, 309-19, 332-37, 573-75, 1088, 1130, 1137-41, 1143-53, 1162-68, 1170-74, 1199, 1202-03, 1206-07, 1224, 1228-47, 1258-60.) The Court held that these too are not protected by the Speech or Debate Clause. *See Menendez*, 2024 WL 1120182, at *6 ("[T]he alleged meetings with Egyptian officials are not legislative acts, but rather constitute the 'violation of an otherwise valid criminal law in preparing for or implementing legislative acts,' and the Speech or Debate Clause does not protect them." (quoting *United States v. Renzi*, 651 F.3d 1012, 1026 (9th Cir. 2011)).

- Evidence of matters that were pending before Menendez, without any evidence that Menendez acted upon or did not act upon those matters. (*See* Ex. A line 238.) These are not evidence of acts *at all*, and are admissible to prove the context and nature of the corrupt promises Menendez made. *See, e.g.*, *United States v. Myers*, 635 F.2d 932, 937 (2d Cir. 1980) ("Legislative actions are referred to in the indictment only for the entirely permissible purpose of detailing the nature of the corrupt promise allegedly made."); *United States v. Brewster*, 408 U.S. 501, 527 (1972) (bribery charge rested on payment in exchange for the official's "action, vote and decision on postage rate legislation which had been pending before him in his official capacity").

- Menendez's advocacy either for Egypt or regarding Egypt, including a public letter by Menendez to the executive branch regarding an upcoming visit from Egypt's president, advocacy to the Executive Branch regarding Egypt's foreign policy priorities, and Menendez's secret writing of a letter on behalf of Egypt responding to his own fellow Senators' human rights concerns. (*See* Ex. A lines 186, 189, 191, 340-41, 526, 1137-41.) These are patently not protected legislative acts. *See, e.g.*, *Gravel*, 408 U.S. at 625 ("That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature. Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity."); *McSurely v. McClellan*, 553 F.2d 1277, 1285-86 (D.C. Cir. 1976) ("Even though Members of Congress or their aides frequently intercede on behalf of constituents with agencies of the Executive Branch or disseminate to the public beyond the legitimate legislative needs of Congress documents introduced at committee hearings, such conduct falls outside of legislative immunity." (internal quotation marks and footnotes omitted)); *Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979) ("[T]he transmittal of . . . information [about their activities] by individual Members in order to inform the public and other Members is not a part of the legislative function or the deliberations that make up the legislative process."). In any event, Menendez squarely put such public statements at issue in his opening statement last week. (*See* Tr. 93 (Mr. Weitzman: "You will learn that Senator Menendez in public statements said that Egypt is an important strategic partner to the United States in the United States's fight against terrorism, but Egypt needs to do better on human rights.").)

- Menendez's attempt to pressure Official-1 to acquiesce to the Egyptian government's grant of a monopoly to IS EG Halal. (*See* Ex. A line 743). This plainly is not a legislative act. *See, e.g.*, *Gravel*, 408 U.S. at 625; *see also, e.g.*, *United States v. Johnson*, 383 U.S. 169, 178 (1966) ("No argument is made, nor do we think that it could be successfully contended, that the Speech or Debate Clause reaches conduct, such as was involved in the attempt to influence the Department of Justice, that is in no w[ay] related to the due functioning of the legislative process."). Indeed, Menendez did not previously argue it to be so in his motion to dismiss (Dkt. 176 at 29-30), and Menendez described this conduct in his opening statement (Tr. 97-98).

Because none of Menendez's objections based on the Speech or Debate Clause (even if timely) are consistent with the Court's ruling or well-established law, including that the Government cited in its opposition to his pretrial motions (Dkt. 139, at 20-29), they should be overruled.

B.   *Objections Based on Hearsay*

The defendants also make several objections based on hearsay. These objections, summarized below, are without merit:

- Statements made by coconspirators during the course of and in furtherance of the conspiracy. (*See* Ex. A lines 28-30, 534, 541-45; GX A101-4 (Hana objection).) These

are plainly admissible, whether made entirely between coconspirators or to third parties in ways designed to further the conspiracy, and should be admitted, either unconditionally or conditionally. *See United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994) (statements "communicating with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the conspiracy's goals" further the conspiracy and are admissible under Rule 801(d)(2)(E)); *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993) ("[S]tatements proffered as co-conspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" establishing that a conspiracy involving the defendant existed (citing *United States v. Geaney*, 417 F.2d 116, 1120 (2d Cir. 1969))).

- Statements made by Menendez's agents, including his staff on the Senate Foreign Relations Committee, during the course of their agency relationship. (*See* Ex. A line 75.) *See, e.g.*, *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992) ("liberal treatment [of] proof" of agency "is accorded" under Rule 801(d)(2)(D)); *see also, e.g.*, *In re Reserve Fund Secs. & Derivs. Litig.*, No. 09 Civ. 4346 (PGG), 2012 WL 12354233, at *7 (S.D.N.Y. Oct. 3, 2012) ("Where an individual defendant controls the entity that employs the declarant, and is the declarant's ultimate supervisor, the employee is an agent of the defendant for purposes of F.R.E. 801(d)(2)(D), and his statements are admissible against that individual defendant." (citing *United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996))).[7]

- Statements that are offered not for their truth but as a predicate for and to explain other admissible statements, such as statements by Menendez's agents. (*See* Ex. A lines 74, 178.) *See, e.g.*, *United States v. Guzman*, 754 F.2d 482, 487 (2d Cir. 1985) ("[The declarant's] questions were introduced, not for the truth of what he asserted, but to render [the defendant's] answers intelligible."); *Ho*, 984 F.3d at 208 (citing *id.*, holding, "[The defendant's] response—however it was meant—would have made little sense to the jury without the admission of [the declarant's] statement and reaction.").

- Statements that are offered not for the truth of any matter asserted but as verbal acts and statements of future intent such as offers to engage in contractual negotiations or actual concluded contracts. (*See* Ex. A lines 243, 247, 1201.) These are properly admitted, not to prove the truth of any factual claim asserted in the course of the offer or recited in the contract, but to prove the fact that such offers were made, contracts

---

[7] In his letter, Menendez takes issue with a statement by one of Menendez's agents, an SFRC staffer, relating that she had been informed that one of the meetings in the course of the scheme was "not policy focused." (Dkt. 406 at 3.) This statement was made by one of Menendez's agents during the course of her duties, and is thus an agency statement. (See Ex. A line 75.) To the extent the objection is to the embedded statement that this staffer was *told* the meeting was "not policy-focused," it is entirely wrongheaded—this statement is not offered for the truth of the matter asserted, as the meeting did in fact involve a policy discussion, as a subsequent message from Nadine Menendez makes clear (*see* Ex. A line 80). Rather, this statement is offered to show that Menendez's own staff was not kept informed of the content of the meeting, an indication of its irregularity.

were concluded, or other acts were undertaken. *See, e.g., United States v. Cardascia*, 951 F.2d 474, 486-87 (2d Cir. 1991) ("Statements not considered hearsay are typically verbal acts that give rise to legal consequences."); *United States v. Best*, 219 F.3d 192, 198 (2d Cir. 2000) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds.").

- Statements that are offered not for the truth but to show state of mind or explain the context and understanding with which certain acts are performed, such as a coconspirator's description of the reasons the Government of Egypt might benefit from a business venture with Fred Daibes. (*See* Ex. A line 180, 243, 247, 535.) These are admissible not for their truth—in that example, whether or not such a business proposition would have benefited the Government of Egypt or been a poor investment is besides the point—but as background to explain the actions and motive of Daibes and his coconspirators. *See, e.g., Ho*, 984 F.3d at 208 ("'When statements by an out of court declarant are admitted as background, they are properly so admitted not as proof of the truth of the matters asserted but rather to show the circumstances surrounding the events, providing explanation for such matters as the understanding or intent with which certain acts were performed.'" (quoting *United States v. Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984)); *United States v. Salameh*, 152 F.3d 88, 112 (2d. Cir. 1998) ("'Where . . . the statement is offered as circumstantial evidence of [a defendant's] state of mind, it does not fall within the definition given by Rule 801(c); because it was not offered to prove the truth of the matter asserted.'" (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988))).

C. *Objections Based on Relevance or Rule 403*

Finally, the defendants make arguments based on relevance. These arguments are particularly inapposite to a summary chronology that is intended to provide an integrated picture of a complex scheme. *See, e.g., United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("so long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry" (citing *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, J.))). In any event, all fall into the following categories, which are not grounds for exclusion, and the relevance of each of which is patent:

- Evidence of the relationships between coconspirators. (*See* Ex. A lines 1-2, 157, 243, 303-04, 362-81, 727, 919-21, 991-92, 1118-21.)

- Evidence of the motives or intent of the defendants. (*See* Ex. A lines 157, 243, 303-04, 329-31, 428, 1262.)

- Evidence of meetings between coconspirators or other acts in furtherance of the conspiracy. (*See* Ex. A lines 717-18, 1255-57; GX 10H-7 (Hana objection).)

- Evidence of steps Menendez or his coconspirators took to conceal Menendez's involvement in providing information to Egypt. (*See* Ex. A lines 108, 130.)

- Contextual evidence such as describing that a file attachment in a chat lacks recoverable content, to allow the jury to understand the content of the evidence without opening every file. (*See* Ex. A lines 108, 130, 1072.)

- Evidence of IS EG Halal's relationship with the Government of Egypt. (*See* Ex. A line 1122.)

- Evidence of Menendez's close monitoring of the activities of his wife, contradicting Menendez's arguments in his opening statement that she concealed relevant facts from him. (*See* Ex. A lines 196-97, 382-94, 499-503, 828-29, 1133-34; *cf.* Tr. .79-80 (Menendez counsel claiming that Nadine Menendez "kept things" from Menendez).)

- Evidence relevant to identifying certain of the individuals whose communications are featured in the summary chart. (*See* GX 205 (Daibes and Hana objection).)

- A reference photograph of one of the defendants. (*See* GX 2A-3 (Hana objection).)

The relevance of each of these categories is self-evident, and none presents any risk of unfair prejudice, such as by describing conduct that is somehow more inflammatory than the charged conduct. *See, e.g.*, *United States v. Jimenez*, 789 F.2d 167, 171 (2d Cir. 1986) ("To be sure, all evidence incriminating a defendant is, in one sense of the term, 'prejudicial' to him: that is, it does harm to him. In that sense, the more pertinent evidence is, the more prejudicial it is. What 'prejudice' as used in Rule 403 means is that the admission is, as the rule itself literally requires, 'unfair' rather than 'harmful.'"). Indeed, as the Court can readily determine from the chart itself, presentation of evidence on each of these points, whether through the chart or through

Honorable Sidney H. Stein
May 20, 2024
Page 11

the documents underlying those challenged lines, would be highly efficient and enhance the jury's understanding.

          Respectfully submitted,

          DAMIAN WILLIAMS
          United States Attorney

By:    <u>s/ Paul M. Monteleoni</u>
       Eli J. Mark
       Daniel C. Richenthal
       Paul M. Monteleoni
       Lara Pomerantz
       Catherine E. Ghosh
       Assistant United States Attorneys
       (212) 637-2431/2109/2219/2343/1114
       Christina A. Clark
       Special Assistant United States Attorney
       (202) 307-5191

Enclosures

cc:    (by ECF)

       Counsel of Record