UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                                                :

UNITED STATES OF AMERICA               :
                                                                                 :     Case No. 1:23-cr-490 (SHS)

      v.

ROBERT MENENDEZ,
WAEL HANA,
and FRED DAIBES.

      Defendants.

------------------------------------------------------------ x

**KASOWITZ BENSON TORRES' AND KRIEGER LEWIN'S
JOINT REPLY TO DEFENDANT ROBERT MENENDEZ'S
LETTER IN OPPOSITION TO THE MOTION TO QUASH
RULE 17(c) SUBPOENAS AND TRIAL SUBPOENA FOR JOSE URIBE**

Kasowitz Benson Torres LLP ("Kasowitz") and Krieger Lewin LLP ("Krieger Lewin") respectfully submit this reply to Robert Menendez's May 15, 2024 letter (the "Menendez Letter") in opposition to Kasowitz's and Krieger Lewin's Joint Motion to Quash Defendant Robert Menendez's ("Menendez") Rule 17(c) Subpoenas & Subpoena for Trial Testimony of Jose Uribe ("Motion to Quash").

## INTRODUCTION

The Menendez Letter opposing the Motion to Quash fails to address—much less explain—how the Menendez Subpoenas[1] satisfy the requirements this Court enunciated in *United States v. Shah ("Shah I")*, No. 19 Cr. 833 (SHS), 2022 WL 1284550 (S.D.N.Y. Apr. 29, 2022) (Stein, J.) and *United States v. Shah ("Shah II")*, No. 19 Cr. 833 (SHS), 2022 WL 1422252 (S.D.N.Y. May 5, 2022) (Stein, J.). To survive a motion to quash:

> "the materials requested [must be] relevant, specifically identified, admissible, and not otherwise procurable by due diligence." *United States v. Barnes*, 560 F. App'x 36, 39-40 (2d Cir. 2014); *see also United States v. Nixon*, 418 U.S. 683, 700 (1974) (the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity"). Importantly, a Rule 17 subpoena "is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700.

*Shah II*, 2022 WL 1422252, at *3. Tellingly, Menendez cites no Federal Rule of Criminal Procedure 17 authority, wholly ignores this Court's controlling precedent in its *Shah* decisions highlighted in the Motion to Quash, and does not—because he cannot—even attempt to explain how he satisfies any of the stringent requirements set forth in Federal Rule of Criminal Procedure 17 and *United States v. Nixon*. Read in context, the Menendez Letter: (1) admits Menendez is on an impermissible fishing expedition for documents and communications that he sought—but did

---

[1] Capitalized terms not otherwise defined herein have the same meaning ascribed to them as in the Motion to Quash. References to "Ex.__" refer to the exhibits attached to the Declaration of Daniel J. Fetterman, dated May 12, 2024 (Dkt. No. 395), submitted in support of the Motion to Quash.

1

not receive—from the government pursuant to Federal Rule of Criminal Procedure 16; (2) suggests Menendez's belief that he should have received them pursuant to Federal Rule of Criminal Procedure 16; and (3) establishes that Menendez has no knowledge what, if any, documents and communications Kasowitz, Krieger Lewin, or Uribe has.  *See* Menendez Letter, at p. 2.  In reality, the Menendez Letter highlights Menendez's abject inability to satisfy the strict *Nixon* requirements and further ***supports*** the Motion to Quash.

### THE MENENDEZ SUBPOENAS VIOLATE FEDERAL RULE OF CRIMINAL PROCEDURE 17, THE STRICT *UNITED STATES V. NIXON* STANDARDS, AND THIS COURT'S CONTROLLING PRECEDENT IN *UNITED STATES V. SHAH* AND SHOULD BE QUASHED IN THEIR ENTIRETY

Menendez falsely and disingenuously asserts that he has subpoenaed "two narrowly tailored categories of documents: (1) documents and communications concerning an attorney proffer by Krieger Lewin (Uribe's former counsel); and (2) Kasowitz's correspondence with law enforcement, including the United States Attorney's Office for the Southern District of New York ("USAO")."  Menendez Letter, at p. 1.  In truth, as described in detail below, Menendez served three subpoenas broadly seeking "*[a]ny and all documents and communications*" between the Kasowitz firm, the Krieger Lewin firm and Uribe **with any government agency** and any employee of any government agency regarding, among other things, all of the defendants and two other individuals; the substance of meetings and proffers; the substance of any plea allocation; documents or presentations made to the USAO or other law enforcement agency; and any materials provided to any law enforcement agency, which could include the entirety of Uribe's grand jury production(s) in this case.  *See generally* Ex. A, Rider A; Ex. B, Rider A; and Ex. C, Rider A.

Citing to no relevant legal authority—and making not the slightest effort to demonstrate how these broad subpoenas could satisfy even one of the requirements this Court has held in its *Shah I* and *Shah II* decisions that Menendez must satisfy to survive a motion to quash—Menendez

2

nevertheless asks this Court to deny the Motion to Quash. For the reasons set forth below, Menendez's arguments are frivolous, and the Menendez Subpoenas should be quashed in their entirety.

### A. Menendez Is Improperly Fishing For "Any And All Documents And Communications" With Any Government Agency Regarding A Broad Range Of Subjects

Contrary to Menendez's false claims in the Menendez Letter (Menendez Letter, at p. 1), the Menendez Subpoenas *all* seek, among other requests: *"[a]ny and all documents and communications . . . with . . . any . . . law enforcement agency . . . regarding [an extremely broad range of topics]."* See Ex. A, Rider A; Ex. B, Rider A, Request (1); and Ex. C, Rider A. Moreover, Menendez issued three separate subpoenas for many of the same unspecified, unidentified documents and communications that, by definition, are in the possession of the USAO or the investigating agencies involved in this case. *See generally* Exs. A, B and C.

The Menendez Letter does not even begin to address—much less explain—how the Menendez Subpoena requesting "[a]ny and all documents and communications" with any government agency regarding a vast array of subjects satisfies the specificity, relevancy, admissibility, and otherwise procurable requirements under *Nixon* and the *Shah* decisions. Menendez effectively concedes in his letter that he does not even know if the requested documents and communications exist and is simply speculating that it is likely they do.[2] Menendez Letter, at p. 2. Indeed, the Menendez Letter says the silent part out loud by admitting that Menendez is

---

[2] Menendez states that he will withdraw the subpoenas if Uribe's counsel represents that the requested documents do not exist—which further acknowledges that he has no independent information, other than his speculation, that it is likely that documents exist. Menendez Letter, at p. 2. More significantly, Menendez proffers no specificity concerning what is in the documents he speculates exist, nor how that information would be relevant, nor the basis for their admissibility.

3

seeking documents and communications that he speculatively believes exist and that he should have received (but did not) as part of his Federal Rule of Criminal Procedure Rule 16 discovery in this case, to wit:

> Senator Menendez subpoenaed documents and communications between Uribe or his counsel and law enforcement agencies . . . after exhausting Rule 16 discovery. […] In light of recent discoveries in other cases regarding withheld communications by the government, and the likelihood that defense counsel for Uribe had written correspondence with the government during the relevant period, the subpoena to Kasowitz should not be quashed.

Menendez Letter, at p. 2. What documents Menendez should have received (if any), but did not from the government pursuant to Federal Rule of Criminal Procedure 16, or as part of the government's statutory disclosure obligations, is between Menendez and the government. Menendez should seek to remedy any of his purported and speculative government production deficiencies directly with the Court and not through three improper subpoenas to a cooperating witness and his counsel.

Putting aside that Menendez's argument is not even close to a correct statement of the law on surviving a motion to quash, Menendez does not—because he cannot—"'reasonably specify the information . . . believed to be contained in the documents sought' rather than 'merely hop[e] that something useful will turn up.'" *Shah I*, 2022 WL 1284550, at *1 (citations omitted). Rather, Menendez argues that because he has exhausted his Federal Rule of Criminal Procedure 16 discovery with the government and did not receive everything he had hoped for from the government, he is permitted to now fish off of the piers of Uribe and his current and former counsel for the same materials, in the hopes that that he might discover something helpful if he receives this broad array of unknown and unspecified documents and communications from Kasowitz, Krieger Lewin, and Uribe. *See* Menendez Letter, at p. 2. As this Court knows well, this is precisely the conduct that *Nixon* prohibits.

4

Rather than undermine the Motion to Quash, Menendez's arguments lend further support that the Menendez Subpoenas are precisely the kind of fishing expedition that, as this Court held in *Shah II*, *Nixon* prohibits, especially where, as here, they are admittedly being used as an end-run around Federal Rule of Criminal Procedure 16.  As this Court stated in *Shah II*:

> the subpoena[s] here constitute[] a 'general fishing expedition.' And, '[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*.'  Indeed, none of the [] categories of documents [Menendez] seeks 'reasonably specif[ies] the information . . . believed to be contained in the documents sought,' and instead show that [he] 'merely hopes that something useful will turn up' through their disclosure.  [The Menendez Subpoenas are] exactly the kind of 'fishing expedition' *Nixon's* strict standard is designed to prevent. . . . Next, [Menendez] may not use [the subpoenas] to make an end-run around the discovery rules set forth in Fed. R. Crim. P. 16. […] To the extent that any of the subpoenaed material is related to a government witness's testimony, the information will be subject to the government's obligations under [§3500, *Brady* and *Giglio*.]. **The Rule 17 subpoena is not 'not intended to provide a means of discovery for criminal cases.'**

*Shah II*, 2022 WL 1422252, at *3 (citations omitted) (emphasis supplied).  Unlike in *Shah II,* the Court need not rely on inferences in this case given Menendez's damning admissions in the Menendez Letter.[3]

Finally, Menendez fails to demonstrate—as he must—how the requested speculative and unspecified documents and communications would be either relevant or admissible at his trial.

---

[3] Moreover, given the Menendez Letter's absolute silence on this issue, it is now unrefuted that Menendez "insidiously issued [a Rule 17(c) subpoena] under the guise of a subpoena *ad testificandum* for Uribe" and "Menendez's service of a subpoena for trial testimony using Form AO 89 to demand the production of documents and information . . . is an obvious and improper attempt to circumvent the Rule 17(c) limitations[.]" Motion to Quash, at p. 1-2.

5

    **B.    The Request Seeking "Any And All Internal Memoranda, Notes, Documents And Communications, As Well As Any Correspondence And Documents From, To, Or With Jose Uribe," Regarding An Attorney Proffer By Krieger Lewin Should Be Quashed**

As demonstrated in the Motion to Quash, Menendez's request to Krieger Lewin for "[a]ny and all internal memoranda, notes, documents and communications, as well as any correspondence and documents from, to, or with Jose Uribe, regarding" an attorney proffer his former counsel at Krieger Lewin made to the USAO that "Nadine Menendez would pay Jose Uribe back for the car payments he made on her behalf" also fails to satisfy the strict requirements of Federal Rule of Criminal Procedure 17 and *Nixon*, and should be quashed. *See* Motion to Quash, at p. 8; Ex. B, Rider A, Request (2).

As a threshold matter, Menendez's argument that this Court should sustain that request relies solely on his claim of waiver and ████████████, if applicable, and entirely misses the point. *See* Menendez Letter, at p. 1-2. Before the Court can and should consider the waiver issue, it is incumbent on Menendez to satisfy the threshold requirements of Federal Rule of Criminal Procedure 17 and *Nixon*, which, for the unopposed reasons discussed in the Motion to Quash (Motion to Quash, at p. 8), he cannot and does not do.

But even if the Court were to reach the waiver issue, Uribe did not intentionally waive his attorney-client privilege or work product protections under these circumstances beyond the *specific* disclosures made to the government. If necessary, the Court should so order under Federal Rules of Evidence 502(a) and 502(d). Moreover, while we do not believe ████████ ████ applies to the materials sought or requires any further disclosure, we respectfully defer to the Court to determine whether ████████████████████████ would justify further disclosure of an extremely narrow subset of requested information. To do so, we

6

respectfully submit that Uribe would have to provide that extremely narrow information to the Court for an *in camera* review and determination.

### 1. Uribe Has Not Waived His Attorney Client Privilege And Work Product Protections Under Federal Rule Of Evidence 502

Federal Rule of Evidence 502 recognizes both the attorney-client privilege as to "confidential attorney-client communications," and the work product doctrine as to material "prepared in anticipation of litigation or for trial." Fed. R. Evid. 502(g)(1)-(2). Federal Rule of Evidence 502(a) provides in pertinent part that a disclosure made to a federal office (like the USAO) only operates as a waiver if: "(1) *the waiver is intentional*; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) *they ought in fairness to be considered together*." Fed. R. Evid. 502(a) (emphasis supplied). Any waiver is "generally limited to the *precise communication or information disclosed to the governmental agency*." *Pearlstein v. Blackberry Ltd.*, No. 13-CV-07060, 2019 WL 1259382, at *8 (S.D.N.Y. Mar. 19, 2019) (citing Fed. R. Evid. 502(a) & Fed. R. Evid. 502 Advisory Committee's Note) (emphasis supplied).

Here, Uribe's reporting of a crime was not intended as a waiver of any privileged communications[4] nor does fairness require the disclosure of privileged and work product notes, memoranda and communications between Uribe and his then counsel. First, the disclosure to the government regarding Uribe's instructions to his attorneys that underpin Count Five of his Superseding Information was intended to be extremely narrow and not to effect any broad waiver of Uribe's attorneys' work product or the privileged character of his communications with them. Second, we respectfully submit that providing a cooperator's and potential government witness's

---

[4] As discussed below, communications made ███████████████████████████████████████████████████████████████████████████████.

private communications with his lawyers, and his lawyers' work product concerning those communications, to a defendant is not the kind of "fairness" contemplated by Rule 502(a).

Nevertheless, to the extent the Court deems Uribe's disclosure to the government to constitute a waiver, the waiver should extend only to the extremely narrow substance of the statement made by Krieger Lewin in its proffer that the car payments by Uribe were a loan. The Advisory Committee's Note to Rule 502(a) explains that "a subject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." "Thus, even when a disclosure is intentional, the scope of any subject matter waiver ordinarily is quite '*narrow*.'" *Swift Spindrift Ltd. v. Alvada*, No. 09-CV-9342, 2013 WL 381597, at *5 (S.D.N.Y. July 24, 2013) (citing Fed. R. Evid. 502(a) Advisory Committee's Note) (citations omitted) (emphasis supplied).

2. ▮▮▮▮▮▮▮▮▮▮ **Does Not Apply To Any Of Krieger Lewin's Undisclosed Privileged Communications Or Work Product**

Menendez argues that "[a]ny and all internal memoranda, notes, documents and communications, as well as any correspondence and documents from, to, or with Jose Uribe," regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Menendez Letter, at 1; Ex. B, Rider A, Request (2). Menendez is wrong.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, 316 (S.D.N.Y 2021) (quoting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, 40 (2d Cir. 1995)). "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8

███████████████████████████████████████████████

███████████████████████████████████████████████

█████, at *9.  Here, just as Menendez failed to identify what specific, relevant documents he is seeking to secure through the Menendez Subpoenas consistent with *Nixon*, he also fails to identify, or even make any attempt to *specify*, what documents exist that he contends Krieger Lewin possesses, or to even speculate how those documents were used ████████████████████ ████.

To the extent that this Court believes that Menendez has satisfied Federal Rule of Criminal Procedure 17, *Nixon*, and *Shah II*, which we respectfully submit he has not, and is considering reaching the issue of whether any references to the statement by Krieger Lewin in its attorney proffer that the █████████████████████████████████████████ ██████████, Uribe respectfully submits that only the Court should review them *in camera* before making that determination and ruling.  If directed by the Court to do so, Uribe of course would be willing to submit any such portions of potentially responsive documents to the Court for an *in camera* review.  However, Uribe does not believe that such an unreasonable process, and the burden on the Court, Kasowitz, Krieger Lewin, and Uribe associated therewith, is necessary or appropriate based on the arguments discussed above.

## CONCLUSION

The record overwhelmingly demonstrates that the Menendez Subpoenas are prohibited fishing expeditions and improper attempts to end-run around the discovery limitations of Federal Rules of Criminal Procedure 16 and 17.  Just as this Court rejected the improper Rule 17(c) subpoenas in *United States v. Shah*, it should quash the Menendez Subpoenas in their entirety.

Dated: May 20, 2024

        KASOWITZ BENSON TORRES LLP

By: */s/ Daniel J. Fetterman*
    Marc E. Kasowitz
    Daniel J. Fetterman
    Fria R. Kermani
    1633 Broadway
    New York, NY 10019
    Tel: (212) 506-1700
    Fax: (212) 506-1800
    mkasowitz@kasowitz.com
    dfetterman@kasowitz.com
    fkermani@kasowitz.com

    Ann M. St. Peter-Griffith
    1441 Brickell Avenue, Suite 1420
    Miami, Florida 33131
    Tel: (786) 587-1054
    Fax: (305) 377-1664
    astpetergriffith@kasowitz.com

    *Counsel for Jose Uribe*

KRIEGER LEWIN LLP

    Nicholas J. Lewin
    350 Fifth Avenue, 77th Floor
    New York, NY
    Tel: (212) 390-9559
    Nick.Lewin@KriegerLewin.com

    *Former Counsel for Jose Uribe*