

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 2, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    ***United States v. Robert Menendez, et al.*,**
                **S4 23 Cr. 490 (SHS)**

Dear Judge Stein:

      The Government respectfully writes in the above-captioned matter to identify for the Court and to seek the resolution of objections raised by defendant Robert Menendez to a small number of exhibits the Government intends to present in a summary chart in connection with the direct testimony of its second summary witness, Special Agent Rachel Graves of the Federal Bureau of Investigation ("FBI").

I.      **Special Agent Graves's Expected Testimony and Summary Charts**

      Special Agent Graves is expected to provide summary testimony regarding, principally, a voluminous number of documents setting forth a detailed chronology of the aspects of the scheme related to Menendez's promised, agreed, and/or undertaken acts in connection with an effort to disrupt an investigation and prosecution by the New Jersey Attorney General's Office that related to associates of Jose Uribe. As with the other summary chart the Government recently presented, *see* Government Exhibit 1302, the Government intends to present a large volume of evidence, including information obtained from text messages, emails, phone records, and other documentary evidence in a chronological manner that will aid juror comprehension and allow for an efficient presentation of evidence. And as was the case with Special Agent Coughlin, who recently testified, the Government expects Special Agent Graves nearly exclusively to explain the methods by which she verified the summary chart and to read from or summarize portions of the summary charts and certain of the underlying documents cited in it. Special Agent Graves will authenticate several different summary charts of modest volume, as well as one chronological summary chart,

Honorable Sidney H. Stein
June 2, 2024
Page 2

Government Exhibit 1303, that is approximately two-thirds the length, by page count, of the chronological summary chart used in connection with Special Agent Coughlin's testimony.[1]

In an effort to resolve any objections pertaining to the testimony of Special Agent Graves sufficiently in advance of her testimony, the Government shared a first draft of Government Exhibit 1303 with the defendants on April 28, 2024. On or about May 27, 2024, the Government received objections from counsel for both Menendez and Wael Hana regarding Government Exhibit 1303 and the underlying exhibits the Government intends to introduce in connection with Special Agent Graves's testimony.[2] The Government conferred with counsel for both Menendez and Hana regarding their objections, and based on those conversations and considering their specific objections, the Government made multiple amendments to the summary chart, including removing or modifying multiple entries in response to the defendants' concerns.[3] In light of these amendments, the Government understands that Hana and Fred Daibes do not have any objections to the current version of Government Exhibit 1303. However, the Government understands that Menendez continues to object to several entries on the summary chart and/or the underlying exhibits that the Government intends to offer in connection with Special Agent Graves's testimony.

## II.     Objections to the Substance of the Chart and Associated Exhibits

Menendez's objections, which are discussed in greater detail below and are reflected in the attached version of the summary chart, principally concern hearsay or relevance. None of them pertain to the Speech or Debate Clause. All of them should be overruled.

### A.     The Indictment

As alleged in the Indictment, in or about 2019, Wael Hana and Jose Uribe offered and then helped to buy a new Mercedes-Benz C-300 convertible (referred to in the Indictment as the "Mercedes-Benz Convertible") worth more than $60,000 for Nadine Menendez and Robert Menendez. In exchange, Menendez agreed and sought to interfere in a New Jersey state criminal prosecution of an associate of Uribe (referred to in the Indictment as the "New Jersey Defendant") and a state criminal investigation involving an employee of Uribe (referred to in the indictment as the "New Jersey Investigative Subject"). In connection with these efforts, Menendez contacted a senior state prosecutor in the New Jersey Attorney General's Office (referred to in the Indictment as "Official-2") who supervised the prosecution of the New Jersey Defendant and the investigation involving the New Jersey Investigative Subject in an attempt, through advice and pressure, to cause

---

[1] The Government presently expects her direct testimony to be of roughly commensurate length, *i.e.*, approximately two-thirds the length of Special Agent Coughlin's testimony, though the Government continues to refine aspects of her testimony in an effort to further streamline its presentation.

[2] Counsel for Fred Daibes indicated Daibes did not have any objections.

[3] The defendants also suggested factual corrections to the chart, which the Government accepted to the extent it believes they are accurate.

Honorable Sidney H. Stein
June 2, 2024
Page 3

Official-2 to resolve these matters favorably to the New Jersey Defendant and the New Jersey Investigative Subject.  (Indictment ¶¶ 39-44.)

      **B.**      **Objections Based on Hearsay**

          1.   *Communications Between Attorney-1 and Detective-1*

Menendez has indicated that he objects to summary chart entries and the underlying exhibits that pertain to communications between an attorney who is an unindicted co-conspirator ("Attorney-1") and was a lawyer for the New Jersey Investigative Subject, and a New Jersey detective who led the investigation of the New Jersey Defendant and the New Jersey Investigative Subject ("Detective-1").  (*See* Ex. A lines 2, 3, 4, 37, 47, 74, 102, 901, 937.)  All of these communications are relevant and admissible.

The Government intends to introduce several communications between Attorney-1 and Detective-1 regarding Detective-1's efforts to meet and interview the New Jersey Investigative Subject.  In those communications, the New Jersey Investigative Subject retains Attorney-1, Attorney-1 advises Detective-1 that he will not make the New Jersey Investigative Subject available for an interview outside Attorney-1's presence, Detective-1 repeatedly attempts to schedule an interview, and Attorney-1 repeatedly declines to confirm a date for an interview.

These communications are plainly relevant, as it was this investigation that Uribe bribed Menendez to seek to disrupt.  The communications between Detective-1 and Attorney-1 are necessary to demonstrate key contextual events, including when state investigators were reaching out to interview the New Jersey Investigative Subject (which the evidence will show was a cause for Uribe to bribe Menendez), and that Attorney-1 knew about these events (which the evidence will show were later communicated by him to Hana and Uribe).

None of these communications is offered for the truth of a matter asserted, and they do not depend on the truth of the underlying matter.  Rather, these communications are offered for the fact they were said, and therefore are not hearsay.  As the Second Circuit has repeatedly held, "'[w]hen statements by an out of court declarant are admitted as background, they are properly so admitted not as proof of the truth of the matters asserted but rather to show the circumstances surrounding the events, providing explanation for such matters as the understanding or intent with which certain acts were performed.'"  *United States v. Ho*, 984 F.3d 191, 208 (2d Cir. 2020) (quoting *United States v. Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984)); *United States v. Gehl*, 93 Cr. 300, 1995 WL 54401, at *17 (N.D.N.Y. Feb. 2, 1995) (permitting testimony on "predicate information, which caused an investigation to be launched" because it was offered only to show why certain subsequent actions were taken in connection with the investigation).  Indeed, very few of these communications contain factual assertions at all, as opposed to (a) requests for interviews, *see United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999) ("Statements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay."); *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990) ("An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement." (internal quotation marks omitted)), or (b) statements of intent or verbal acts with independent legal significance (such as an attorney declining to make his client available for an interview outside his

Honorable Sidney H. Stein
June 2, 2024
Page 4

presence), *see, e.g.*, *United States v. Cardascia*, 951 F.2d 474, 486-87 (2d Cir. 1991) ("Statements not considered hearsay are typically verbal acts that give rise to legal consequences."); *see also Liani v. Baker*, No. 09 Civ. 2651, 2010 WL 2653392, at *6 n.11 (E.D.N.Y. June 28, 2010) ("[L]egally operative statements are not hearsay under Rule 801."); Fed. R. Evid. 801(c) advisory committee's note ("the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights" is not hearsay when offered for that purpose).

   2.   *Associate-2 Text Messages*

Menendez has indicated that he intends to object to multiple text messages between Uribe and an associate of his (referred to in the Indictment as "Associate-2," *see, e.g.*, Indictment ¶ 43(f)), who made payments for the Mercedes Benz Convertible at Uribe's direction.  (*See* Ex. A lines 760, 815, 816, 844, 845, 846, 895, 998, 1004, 1005, 1006, 1010, 1011, 1100.)  These communications are plainly relevant and admissible.  All of them are either non-hearsay or are subject to a hearsay exception.

As an initial matter, these messages relate to the payment for the Mercedes Benz Convertible and are admissible under the co-conspirator hearsay exception.  Uribe has pled guilty to participating in the conspiracy, and the text messages and Associate-2's subsequent actions support, by at least a preponderance of the evidence, a finding that he was a co-conspirator.  *United States v. Pinto*, 850 F.2d 927, 937 (2d Cir. 1988) ("Co-conspirator hearsay is admissible upon a showing of 'a likelihood of an illicit association between the declarant and the defendant.'" quoting *United States v. Alvarez-Parras*, 643 F.2d 54, 57 (2d Cir. 1981)).  To admit a statement under Rule 801(d)(2)(E), the Court must find only by a preponderance of the evidence "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy."  *United States v. Coppola*, 671 F.3d 220, 246 (2d Cir. 2012).  To be in furtherance of a conspiracy, the statement must in some way have been designed to promote or facilitate achievement of a goal of the ongoing conspiracy.  Thus, statements are in furtherance of the conspiracy if they (1) inform or provide an update as to the status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990); (3) "seek to induce a coconspirator's assistance," *Desena*, 260 F.3d at 158 (internal quotations omitted); (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id.*; (6) "facilitate and protect" the conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a co-conspirator of "the identity and activities of his co-conspirators," *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989).  A narrative description of a past event is admissible as long as it serves "some current purpose in the conspiracy."  *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994).  Under Rule 104 of the Federal Rules of Evidence, the Court may consider a statement itself in assessing the existence of a conspiracy and whether the defendant and the declarant were members therein. *See* Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 180-81 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999); *United States v. Cota*, 953 F.2d 753, 758 (2d Cir. 1992).   In addition, while "there must be some independent corroborating evidence of the

Honorable Sidney H. Stein
June 2, 2024
Page 5

defendant's participation in the conspiracy," *Gigante*, 166 F.3d at 82, that independent evidence need not itself be admissible, *see* Fed. R. Evid. 104(a); *Bourjaily*, 483 U.S. at 178.

The evidence easily supports a finding that Associate-2 is a co-conspirator. Although Associate-2 denied to the Government, after the fact, that he was aware of the purpose of the car payment for Nadine Menendez, the contemporaneous communications with Uribe and Nadine Menendez and his actions indicate otherwise. Associate-2, upon receiving from Uribe a text with a photograph of the invoice for the automotive loan addressed to Nadine Arslanian, immediately remarked "that's called power" (*see* Ex. A line 760), a telling indication of his awareness of the corrupt understanding.[4] Of course, a car bill unconnected to a corrupt exchange is plainly not "power," and this remark alone strongly supports a finding of Associate-2's awareness.[5] This finding is compounded both by Uribe's subsequent request for Associate-2 to make the payment using Associate-2's account (a request in which Uribe remarked to Associate-2 "I don't want to use anything with my name on it"), and by Associate-2's actions making the several monthly car payments at Uribe's request, both from Associate-2's business account and from an account of a business connected to Uribe.[6] And even if Associate-2 were not a co-conspirator, he is undoubtedly Uribe's agent in connection with the making of these payments, which the messages reveal was performed entirely at Uribe's direction. *See, e.g.*, *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992) ("liberal treatment [of] proof" of agency "is accorded" under Rule 801(d)(2)(D)).

Second, even if he were not a co-conspirator or an agent of a co-conspirator, Associate-2's messages to Uribe are also admissible for multiple non-hearsay purposes. They provide context for and ender comprehensible Uribe's subsequent acts and other acts in furtherance of the conspiracy, including Menendez's meeting with Official-2 regarding the investigation concerning the New Jersey Investigative Subject. *See, e.g.*, *Ho*, 984 F.3d at 208. And they are also admissible to render intelligible Uribe's own admissible statements in furtherance of the conspiracy. *See, e.g.*, *United States v. Guzman*, 754 F.2d 482, 487 (2d Cir. 1985) ("[The declarant's] questions were introduced, not for the truth of what he asserted, but to render [the defendant's] answers intelligible."); *Ho*, 984 F.3d at 208 (citing *id.*, holding, "[The defendant's] response—however it was meant—would have made little sense to the jury without the admission of [the declarant's] statement and reaction."). Similarly, they are admissible to show the effect on the listener—in other words, Uribe's state of mind or belief that the payments had been made, which in turn was highly relevant in informing Uribe's subsequent dealings with Menendez and Nadine Menendez, including his request that Menendez intervene with Official-2. *See United States v. Dupree*, 706

---

[4] The referenced messages between Uribe and Associate-2 were exchanged in Spanish, and the Government quotes herein from the translations.

[5] Indeed, Menendez's objection to this line on hearsay grounds is puzzling; the Government is obviously not offering it to prove that an automotive bill is literally power. (See Ex. A line 760.)

[6] Uribe reported that he told Associate-2 that he was buying a car for the girlfriend of Menendez, but does not recall if he explicitly told Associate-2 why he was doing so. This account is entirely consistent with the natural inference from the messages that Associate-2, whether or not he was explicitly told, nevertheless apprehended, or was at a minimum willfully blind to, the corrupt purpose of the clandestine payments.

Honorable Sidney H. Stein
June 2, 2024
Page 6

F.3d 131, 136 (2d Cir. 2013) ("[A] statement offered to show its effect on the listener is not hearsay."); *Davis v. City of New York*, 959 F. Supp. 2d 427, 436 n.37 (S.D.N.Y. 2013). Indeed, given that the Government will be proving that the payments were made through the financial records, Associate-2's reports that he had done so are not even being offered to prove that fact.

Further, other remarks by Associate-2 are questions that are not assertions of fact and are therefore not hearsay (*see* Ex. A line 844.) *See United States v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012) ("as a matter of law, questions are not 'assertions' within the meaning of Rule 801"); *Oguns*, 921 F.2d at 449 ("An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement." (internal quotation marks omitted)).

For each of these reasons, Menendez's objections to the communications between Associate-2 and Uribe should be overruled.

### C.    Objections Based on Relevance or Rule 403

#### 1.    *April 2019 Text Messages Between Nadine Menendez and Robert Menendez*

Menendez objects to two entries reflecting text messages that Nadine Menendez and Menendez exchanged while she was waiting at the dealership for the purchase of the Mercedes Benz Convertible to be completed. In the first message, Menendez wrote, "Congrats!!! On your cleaning up your emails!!" (Ex. A row 646.) Approximately thirty minutes later, Nadine Menendez responds, "Under 5900 emails now. I'm still here" (*Id.* row 647).

The Government is offering these messages for multiple reasons: (1) to show Menendez's awareness of Nadine's purchase of the car at the time the purchase was completed (*i.e.*, that Nadine texted Menendez "I'm still here," while she was at the dealership, reflecting that she understood that Menendez knew where she was); and (2) to provide further evidence of the granularity of the communications between Menendez and Nadine and his awareness of even her most banal activities. (*Cf.* Tr. 78-79 (Menendez opening statement arguing that Menendez and Nadine Menendez lived "separate lives").) To be relevant, evidence need not constitute conclusive proof of a fact in issue, but only must have "any tendency to make the existence of *any fact that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence." *McCoy v. North Carolina*, 494 U.S. 433, 440 (1990) (internal quotation marks and citation omitted) (emphasis added). Where, as here, "the proffered submission affects the mix of material information"—namely, the purchase, using funds from Uribe, of a significant item in the bribery scheme—"the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) (citing *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, J.)).

Menendez has claimed that the evidence described above presents the risk of unfair prejudice because it leads to the inference that Nadine Menendez is deleting emails in a manner that suggests consciousness of guilt. This is not necessarily a natural inference from the nature of the communications, but to the extent that inference is plausible based on the communications, it is not unfairly prejudicial. Indeed, the evidence will reflect that Nadine did delete email communications to hide incriminating communications with Hana, with whom both she and Menendez are alleged to have conspired. Thus, any prejudice from that inference (whether that

Honorable Sidney H. Stein
June 2, 2024
Page 7

did or did not occur while she was waiting for her car) plainly does not "substantially" outweigh the relevance of the messages to the overall scheme. *See* Fed. R. Evid. 403.

Moreover, to justify exclusion under Rule 403, any prejudice must also be "unfair," rather than simply "harmful." *United States v. Jimenez*, 789 F.2d 167, 171 (2d Cir. 1986); *see also, e.g.*, *Oregon v. Kennedy*, 456 U.S. 667, 674 (1982) ("Every act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt."). Here, the two contested entries demonstrate (1) that when the purchase of the car was completed, Menendez was aware of that timing, and (2) that Menendez was also aware of even the most mundane activities of his then-girlfriend—here, cleaning up her inbox. The contested messages are therefore highly relevant, particularly where Menendez has disputed his knowledge of Nadine's actions, and that relevance is not outweighed at all—much less substantially outweighed—due to any purportedly unfair prejudice. Accordingly, there is no basis to exclude the evidence discussed above pursuant to Rules 401 and 403.

> ## 2. *New Jersey Defendant Court Filings*

Menendez also objects to multiple entries regarding specific events in the court case against the New Jersey Defendant. (*See* Ex. A lines 10, 78, 88.) The entries and exhibits regarding the case are plainly relevant. They provide critical context to the fact that there was a pending criminal case against the New Jersey Defendant, identify the participants in the case and investigation, and demonstrate highly significant timing regarding events in the case, including setting a trial date. Moreover, many of the facts in these documents were communicated by Hana to Nadine Menendez with the expectation that she would provide the information to Menendez and that Menendez would take official action in response. The entries and exhibits to which Menendez has objected are therefore highly relevant to matters directly at issue in the Government's case, particularly given the conspiracy charges.

Moreover, none of the evidence cited above presents any risk of unfair prejudice, such as by describing conduct that is somehow more inflammatory than the charged conduct, or by confusing the issues. *See, e.g.*, *Jimenez*, 789 F.2d at 171 ("To be sure, *all* evidence incriminating a defendant is, in one sense of the term, 'prejudicial' to him: that is, it does harm to him. In that sense, the more pertinent evidence is, the more prejudicial it is. What 'prejudice' as used in Rule 403 means is that the admission is, as the rule itself literally requires, 'unfair' rather than 'harmful.'") (emphasis in original). To warrant exclusion of evidence under Rule 403, a defendant must be able to identify "'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). Here, other than the fact that the evidence in the summary chart sets out a compelling timeline of developments in the New Jersey Defendant's case, that is, a timeline that tends to prove the defendants' guilt, Hana's communications of those developments to Nadine Menendez, and her subsequent communications to Menendez, Menendez can identify no unfairly adverse effect from the admission of the evidence.

In an effort to exclude plainly relevant evidence that is unhelpful to Menendez, Menendez has offered to enter into a factual stipulation regarding the dates of various activities in the New

Honorable Sidney H. Stein
June 2, 2024
Page 8

Jersey Defendant's case.  However, it is an "accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away," *Old Chief v. United States*, 519 U.S. 172, 189 (1997).  That is because the prosecution should be permitted to maintain "the natural sequence of narrative evidence" in presenting its case to ameliorate the concern that "[p]eople who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters."  *Id.*; *see also United States v. Cottman*, 116 F.3d 466, 1997 WL 340344, at *3-4 (2d Cir. June 20, 1997) (summary order) ("[T]his Court has made clear that a party is not obliged to accept an adversary's 'judicial admission' in lieu of proving the fact, . . . particularly in the context of a criminal prosecution where the accused seeks to stipulate to an element of the crime charged.") (quoting *United States v. Gantzer*, 810 F.2d 349, 351 (2d Cir. 1987) (internal quotation marks omitted).  Here, the Court filings to which Menendez objects relate to a third-party, and other than apparently desiring to interrupt the flow of evidence with a "second best" alternative of his choice, *Old Chief*, 519 U.S. at 189, Menendez can demonstrate no unfair prejudice or cost judicial economy from the use of the Government's proposed exhibits rather than a stipulation.  Accordingly, the Government should be permitted to use the evidence of its choice.

Because the evidence described above relating to the New Jersey Defendant's case is relevant and not unfairly prejudicial, the evidence is admissible, and Menendez's objection should be overruled.

### 3.  *Nadine Menendez's Insurance Claim File*

Menendez also objects to the insurance claim file showing the car accident that caused Nadine Menendez to have need of a car.  (*See* Ex. A line 90.)  This evidence is highly relevant to prove Menendez's motive to accept a bribe in the form of a car for Nadine Menendez.  The Government has made various redactions to the claim file to remove reference to the fact that the car accident involved Nadine Menendez striking a pedestrian, and, certainly as redacted, it does not pose any Rule 403 issues.  Given the nature of the allegations in the case, a car accident is simply not more inflammatory than the nature of the conduct the defendants are charged with, and there is no basis to preclude this highly relevant evidence.

### 4.  *Text Messages Between Nadine Menendez and a Hana Romantic Partner*

Menendez seeks to preclude certain text messages not summarized in Government Exhibit 1303 but contained within one of the underlying source exhibits.  During a brief chat chain with a romantic partner of Hana (the "Hana Romantic Partner"), Nadine Menendez expresses anger at Hana for not taking her to the car dealership to obtain the Mercedes-Benz Convertible.  (Ex. A line 551.)  Additional messages in this chat chain, not excerpted in Government Exhibit 1303, show that Nadine Menendez was also angry at Hana for not delivering her a promised job (GX B215). As such, these additional messages—which have been redacted at Hana's request to remove non-germane derogatory statements about Hana—are further evidence of one of the core facts of the conspiracy, namely, that Hana promised Nadine Menendez a job in furtherance of the scheme.  As redacted, they do not contain anything that carries any more prejudicial effect than other evidence of Nadine Menendez's dissatisfaction with Hana's failure to pay her, and they should be admitted.

8

Honorable Sidney H. Stein
June 2, 2024
Page 9

    5.  *Message Between Nadine Menendez and Hana*

        Menendez also objects on relevance grounds to a text message from Nadine Menendez to Hana in which she asked Hana to pick her up from a nail salon and described her intention to call Menendez, at a time period shortly after having been briefed by Hana on the New Jersey Defendant's case and the day before Menendez called Official-2 (Ex. A line 335). This is plainly relevant conduct between co-conspirators that shows their relationship, a meeting during the course of the conspiracy, and the communications at critical points in the conspiracy. Moreover, these communications are not remotely inflammatory or unfairly prejudicial, and thus should be admitted.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

By:    s/ Paul M. Monteleoni
        Eli J. Mark
        Daniel C. Richenthal
        Paul M. Monteleoni
        Lara Pomerantz
        Catherine E. Ghosh
        Assistant United States Attorneys
        (212) 637-2431/2109/2219/2343/1114
        Christina A. Clark
        Special Assistant United States Attorney
        (202) 307-5191

Enclosure

cc:    (by ECF)

    Counsel of Record