

Lawrence S. Lustberg

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731 Fax: +1 973-639-6285
llustberg@gibbonslaw.com

June 4, 2024

**VIA ECF**

Honorable Sidney H. Stein
United Stated District Judge
Southern District of New York
500 Pearl Street, Courtroom 23A
New York, New York 10007

      Re:    Re:    **United States of America v. Menendez, et al.,
                          Dkt. No. 23-cr-490-SHS**

Dear Judge Stein:

      Please accept this letter in lieu of a more formal filing on behalf of defendant Wael Hana regarding the Government's use of F.R.E. 1006 summary charts and related testimony, including the summary chart that the Government intends to offer in connection with testimony from Special Agent Rachel Graves of the Federal Bureau of Investigation ("FBI") (GX 1303). In particular, Mr. Hana writes to address the appropriate scope of cross-examination with regard to that exhibit, in order to avoid the unfairness that plagued cross-examination with regard to a prior summary chart, GX 1302.[1]

      More specifically, for what will be the second, but not the final, time this trial—the Government has also marked and intends to engage in a similar process with regard to GX 1304—the Government, rather than simply introducing documents that have been admitted into evidence and then arguing from them in summation, has expressed its intent to call a Special Agent with no knowledge of the facts of this case, in order to "read from or summarize portions of the summary charts and certain of the underlying documents cited in it." ECF No. 433 at 1. The Court will well recall that, on May 28, 29, 30, and 31, 2024, the jury heard testimony from Special Agent Michael Coughlin, the crux of which consisted of verbatim readings, rather than excerpts, of carefully selected text messages, emails and voicemails contained in GX 1302, a summary chart drafted by,

---

[1] On June 2, 2024, the Government filed a letter asking the Court to resolve objections raised by counsel for Senator Menendez regarding certain exhibits cited in GX 1303, in anticipation of Special Agent Graves's upcoming testimony. *See* ECF No. 433. The Government and Mr. Hana have resolved Mr. Hana's individual objections to certain exhibits cited in GX 1303; as discussed herein, this motion is addressed exclusively to the larger issues raised by the Government's use of the summary chart and a summary witness in this manner.

GIBBONS P.C.

June 4, 2024
Page 2

in Special Agent Coughlin's own words, "the government -- the United States Attorney's Office."[2] May 28, 2024 Tr. at 1173:1-2. As Special Agent Coughlin explained, though he engaged in "a lengthy process" of review, which included "review[ing] the entirety of the document" and "the underlying government exhibits that the document is based on," *id.* at 1173:4-6, he did not review all of the documents in this case; instead, the prosecutors made that selection, *see id.* at 1174:9-14 ("Q. Do you believe that you reviewed all of the documents in this case? A. No. Q. Who made the decision what exhibits would be referred to in the summary document? A. The U.S. Attorney's Office.").

As discussed below, while presenting voluminous records to the jury through the use of a summary witness may be permissible under Rule 1006, the practice that the Government is employing here is, at the very least, deeply problematic. Thus, for example, where the Government calls an FBI agent who has no substantive knowledge of the facts of the case, to read verbatim select messages from a summary chart (that will be admitted into evidence and provided to the jury for its consideration), the result is that the Court allows the Government to unfairly emphasize the content of this sweeping exhibit, or at least those parts of it that the Government wishes to emphasize right in the middle of the trial, but in a way that does not provide the defense with a meaningful opportunity to cross-examine the witness serving as the mouthpiece for the Government's evidence, let alone the person with pertinent personal knowledge of how the chart was developed, including choosing what was in it and what was not. And, most respectfully, the unfairness of this process was exacerbated by, with respect to the prior exhibit (GX 1302) the Government's incessant objections to cross-examination, as a result of which the defense was precluded from meaningfully testing both what was excluded from the report and even—though this is exactly what the Government did—emphasizing those aspects of if that are actually exculpatory. Moreover, this is a particularly problematic process with respect to GX 1303, given the anticipated testimony of the Government's cooperating witness Jose Uribe, as it will risk not

---

[2] Mr. Hana acknowledges that the Court, after receiving briefing from Senator Menendez's counsel and the Government, ruled with respect to GX 1302 that "[t]he format of the summary chart seems to me quite appropriate, and there is nothing unusual about it. The items are certainly voluminous, and it seems to me, under 1006, that the chart can be admitted." May 21, 2024 Tr. at 1012:19-22. At the time of the Court's ruling, however, the parties did not and simply could not properly anticipate and address the manner of the summary chart's preparation and Special Agent Coughlin's anticipated testimony, or the significant constraints that would be placed on the defendants' ability to cross-examine the summary witness about this exhibit. In light of Special Agent Coughlin's testimony and the Government's expressed intent to elicit the same type of testimony from Special Agent Graves, *see* ECF No. 433 at 1 ("And as was the case with Special Agent Coughlin, who recently testified, the Government expects Special Agent Graves nearly exclusively to explain the methods by which she verified the summary chart and to read from or summarize portions of the summary charts and certain of the underlying documents cited in it."), Mr. Hana respectfully submits that this issue warrants the Court's intervention at this time or at least in advance of cross-examination of Agent Graves.

GIBBONS P.C.

June 4, 2024
Page 3

only the presentation of a deeply biased summary, but also needlessly cumulative evidence. At the end of the day, this extraordinary process is not only an unfair process, but also risks an inaccurate and unjust result. For these reasons, Mr. Hana respectfully requests that the Court permit cross-examination of Special Agent Graves and any other summary witness on documents outside of the summary chart, as well as such cross-examination as will allow the defense to emphasize—as the Government will have done—those aspects of the chart that support the defense case. Alternatively, the Court should strike Special Agent Coughlin's testimony regarding GX 1302, and preclude the Government from offering GX 1303 and GX 1304 into evidence.

### I.  Federal Rule of Evidence 1006

Rule 1006 provides in relevant part that a witness "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006; *see, e.g., United States Sec. & Exch. Comm'n v. Qin*, No. 20-CV-10849, 2024 WL 1342803, at *7 (S.D.N.Y. Mar. 29, 2024). As emphasized in the 2024 amendments to Rule 1006, the Rule "draws a distinction between summaries of voluminous admissible information offered to prove a fact," which fall under Rule 1006, and "illustrations offered solely to assist the trier of fact in understanding the evidence," otherwise called "illustrative aids," which are instead regulated by Rule 107. Fed. R. Evid. 1006, Advisory Committee Notes on 2024 Amendments.

As with any piece of admissible evidence, Rule 1006 summary charts are subject to the Rule 403 balancing test; "[f]or example, if the summary does not accurately reflect the underlying voluminous evidence, or if it is argumentative, its probative value may be substantially outweighed by the risk of unfair prejudice or confusion." Fed. R. Evid. 1006, Advisory Committee Notes on 2024 Amendments. "Where, as here, the government introduces summary charts, 'the court must ascertain with certainty that they are based upon and fairly represent competent evidence already before the jury.'" *United States v. Blackwood*, 366 F. App'x 207, 212 (2d Cir. 2010) (quoting *United States v. Conlin*, 551 F.2d 534, 538 (2d Cir.1977)). The party seeking to admit summary evidence must "establish that the summary is accurate and nonprejudicial," *UPS Store, Inc. v. Hagan*, No. 14-CV-1210, 2017 WL 3309721, at *5 (S.D.N.Y. Aug. 2, 2017) (internal citations and quotation marks omitted). Thus, "while summary testimony "need not summarize all the records at issue," it "may be based on a mere subset, provided that the testimony does not purport to represent all the evidence." *United States v. Markovich*, 95 F.4th 1367, 1378 (11th Cir. 2024).

Rule 1006 summary charts have often been used to synthesize "voluminous" business records or datasets that evade convenient in-court examination. *See, e.g.*, *United States v. Thompson*, 518 F.3d 832 (10th Cir. 2008) (financial records); *Goldberg v. United States*, 789 F.2d 1341 (9th Cir. 1986) (tax records); *United States v. Behrens*, 689 F.2d 154 (10th Cir. 1982) (pharmacists lists of prescriptions); *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753 (8th Cir. 2020) (lists of fees charged to insurance policyholders); *United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009) (bank records and checks); *United States v. Aubrey*, 800 F.3d 1115 (9th Cir. 2015)

GIBBONS P.C.

June 4, 2024
Page 4

(documents concerning deposits and withdrawals from accounts); *United States v. Mazkouri*, 945 F.3d 293 (5th Cir. 2019) (healthcare claims data); *United States v. Melgen*, 967 F.3d 1250 (11th Cir. 2020) (patient records); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2021 WL 4341317, at *4 (N.D. Ohio Sept. 23, 2021) (government and transactional data). Where Rule 1006 summary charts serve to synthesize communications, they generally do so with regard to sanitized, raw data, such as select date- and time-stamped phone calls where phone records would otherwise be overly burdensome for in-court examination. *See, e.g.*, *Blackwood*, 366 F. App'x at 212 (admitting a summary chart containing only phone records between three co-conspirators on three days "crucial" to the conspiracy charged); *United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) (admitting "telephone summary charts" used to highlight "patterns of telephone calls" drawing from a two-binder set of telephone-record summaries given to jury along with a limiting instruction).

But whatever their content, the law requires a particular approach to Rule 1006 summary charts, whereby "great care must be taken to ensure that the proposed summary contains no annotation or suggestion, even inferential, that may be considered argumentative." *UPS Store, Inc.*, 2017 WL 3309721, at *5 (internal citations and quotation marks omitted); *see also United States v. Grinage*, 390 F.3d 746, 750 (2d Cir. 2004) (explaining that "a summary witness for the Government" cannot tell the jury "what [is] in the evidence" and "what inferences to draw from it" under Federal Rule of Evidence 701). Indeed, the Second Circuit recognizes that a "[summary] chart submitted by the prosecution is a very persuasive and powerful tool and must be fairly used, since, by its arrangement and use, it is an argument to the jury during the course of the trial. . . . A chart which for any reason presents an unfair picture can be a potent weapon for harm, and permitting the jury to consider it is error." *Conlin*, 551 F.2d at 538-39; *see also United States v. Drougas*, 748 F.2d 8, 25 (1st Cir. 1984) ("Care must be taken to insure that summaries accurately reflect the contents of the underlying document and do not function as pedagogical devices that unfairly emphasize part of the proponent's proof or create the impression that disputed facts have been conclusively established or that inferences have been directly proved."); *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998) ("[A] summary document "must be accurate and nonprejudicial. This means first that the information on the document summarizes the information contained in the underlying documents accurately, correctly, and in a nonmisleading manner. Nothing should be lost in the translation.").

Accordingly, courts have circumscribed the use of summary charts in order to minimize the risks that they pose. Thus, for example, "in this Circuit it is improper for the Government 'to open its case with an overview witness who summarizes evidence that has not yet been presented to the jury. This practice is particularly problematic in criminal cases because it allows 'the government to paint a picture of guilt before the [supporting] evidence has been introduced.'" *United States v. Barnwell*, 15-CR-620, 2017 WL 1063457, at *2 (S.D.N.Y. Mar. 20, 2017) (cleaned up) (quoting *United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2005). That, of course, is precisely what the Government is seeking to do with regard to GX 1303, by putting it into evidence before Mr. Uribe testifies. On the other end of the case, "summary testimony cannot be

4

GIBBONS P.C.

June 4, 2024
Page 5

used to allow the Government to repeat its entire case-in-chief shortly before jury deliberations." *United States v. Ekwuruke*, 372 F. App'x 521, 524 (5th Cir. 2010) (internal citation omitted). Either way, the Court should be wary of the Government's approach to summary charts in this case, which is a transparent attempt to admit into evidence "the functional equivalent of . . . mini-summation[s]." *Bray*, 139 F.3d at 1110.

## II.     The Government's Summary Charts and Witnesses

The Rule 1006 summary charts marked as Government exhibits in this case are far more expansive in both quality and quantity of content than those commonly admitted into evidence by courts in this and other circuits. In short, they are anything but an actual "summary" of the evidence. Summary chart GX 1302, as the Court has seen, is a 98-page document containing some 1,275 line entries which in turn cite over 500 individual exhibits. The line entries are comprised of excerpts and descriptions of emails, text, and voice messages, phone records, financial records, and several other categories of evidence over a five-year date range, from December 2017 to January 2022. The senders and recipients of cited communications similarly range from the defendants and alleged co-conspirators in this case to third parties sending messages with no clear relevance or involvement in the charged conduct; indeed, several such third parties are unidentified on the summary chart. Summary chart GX 1303 similarly contains 1,145 line items comprising a similarly varied array of types of evidence over a six-year span, from December 2016 through June 2022. And GX 1304, coming later in trial, pertaining primarily to Mr. Daibes and the allegations related to Qatar, contains 339 line items, spanning 34 pages, from October 2020 through May 2022.

These types of summary exhibit are, then, very different from the kinds of Rule 1006 summary charts that courts in this Circuit have admitted, in the cases cited by the Government, which are generally narrowly tailored in timeline, topic, and by participant. *See, e.g.*, *United States v. Ho*, No. 1:17-CR-00779, ECF No. 198, *aff'd* 984 F.3d 191, 209 (2d Cir. 2020) (two admitted summary charts pinpointed less than 100 individual dates in a two-year timeline, with only one to five select communications—virtually all sent or received by defendant—excerpted for each of those individual days); *United States v. Miller*, 954 F.3d 551, 565 (2d Cir. 2020) (admitted summary chart contained only "phone bills pertaining to phone calls and text messages from December 21, 2010" between five co-conspirators); *United States v. Thiam*, 934 F.3d 89, 96 (2d Cir. 2019) (admitted summary chart showing only defendant's "luxury purchases" and a "text exchange" between defendant and a third party); *United States v. Morin*, 538 F. App'x 1, 3 (2d Cir. 2013) (affirming the admittance of chart "summarizing the hundreds of text messages between [defendant] and the minor female he was found to have attempted to entice into sexual activity"). Indeed, far from being "virtually identical in form" to the summary charts proffered in this case —as the Government argued in response to Senator Menendez's motion on GX 1302, ECF No. 409 at 4—those admitted over objection in *United States v. Skelos*, No. 15-CR-317 (S.D.N.Y. 2015) and *United States v. Calk*, No. 19-CR-366 (S.D.N.Y. June 22, 2021) are, like those described in pertinent Second Circuit precedent, much narrower in scope. *See* ECF No. 409-3 (the summary

5

GIBBONS P.C.

June 4, 2024
Page 6

chart in *Calk* totals three pages of text messages and phone records over three specific date ranges, July 27-August 9, 2016; November 1-14, 2016; December 21-23, 2016); ECF 409-2 (the summary chart in *Skelos* marks communications, virtually all between the two co-defendants or one co-defendant and a third-party, during specific, narrowly tailored date ranges within an eleven-month period). Finally, rather than "rejecting Fifth Circuit precedent regarding Rule 1006" by admitting a summary chart, as the Government argued this Court did in *United States v. Gatto*, No. 17-CR-686, Tr. 1443-1448 (S.D.N.Y. Oct. 16, 2018), ECF No. 409 at 4, the defense in that case argued that the purpose of a summary chart was to summarize voluminous evidence and that the government's proposed charts did not seek to offer a summary of otherwise voluminous exhibits.

Of course, appropriate cross-examination may level the playing field. *See, e.g.*, *Markovich*, 95 F.4th at 1378-79 (11th Cir. 2024) (finding the summary witness had "clearly explained" to the jury that her summary reflected only the patients whose files she reviewed—not the entire patient population—and defense counsel cross-examined the witness about the limitations of her summary); *In re Nat'l Prescription Opiate Litig.*, 2021 WL 4341317, at *5 (Rule 1006 summary chart prepared by plaintiff's expert witness admitted because, among other things, the chart would come in through the expert's testimony and "[d]efendants will have the opportunity to cross-examine [the expert] and to refute Plaintiffs' evidence with their own."). But here, the prejudice stemming from the Government agents' verbatim reading of cherry-picked messages to the jury, is exacerbated by the fact that, as set forth above, the agents presenting these exhibits were not involved in the investigation of this case, and were involved only for the limited purpose of verifying the information that the Government itself chose to include in the summary chart that it alone created. *See* May 28, 2024 Tr. at 1172:16-18 ("Q. What did you primarily do in connection with the investigation? A. I was -- I was not really involved in the investigation."); ECF No. 433 at 1 ("And as was the case with Special Agent Coughlin, who recently testified, the Government expects Special Agent Graves nearly exclusively to explain the methods by which she verified the summary chart and to read from or summarize portions of the summary charts and certain of the underlying documents cited in it."). That is, rather than either entering the summary charts into evidence for the jury to read themselves and/or referencing the messages contained therein during summation, or presenting the evidence through a witness who could meaningfully testify as to why certain exhibits were included and others not, the Government deliberately chose to call agents with minimal knowledge of the case, to read aloud an thus emphasize strategically selected messages not only from the body of evidence admitted or to-be admitted, in the case, but also from the charts themselves.

However, by selecting an unknowledgeable witness to simply read the results of the prosecutors' determinations (and by objecting to any questions beyond that testimony and even to the defense's efforts to emphasize certain entries on the summary charts), the creators of the charts—*i.e.* the prosecutors in this case—have effectively foreclosed Mr. Hana's ability to meaningfully cross-examine this witness and thus to test the evidence presented. Indeed, the law is clear that where the Government seeks to introduce a summary chart through witness testimony, "the witness who prepared the chart should introduce it." *United States v. Hemphill*, 514 F.3d

GIBBONS P.C.

June 4, 2024
Page 7

1350, 1358 (D.C. Cir. 2008). By eliciting testimony from agents with little, if any, knowledge of this case, Mr. Hana was and will continue to be significantly constrained in his ability to question the agents on the background and substance of the messages, and related messages that the Government deliberately chose to omit from its summary chart, essentially precluding him from eliciting testimony that would allow the jury to put the messages into their appropriate context. *See United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014) ("For a summary of documents to be admissible . . . the summary must be accurate and nonprejudicial; and the witness who prepared the summary should introduce it.").[3]

Furthermore, the Court's current rulings, addressed to the scope of cross-examination, first limited questioning to items contained on the chart and precluded any questioning that would identify communications and documents that the Government determined not to include in the summary charts, no matter how probative that evidence might be. *See* May 30, 2024 Tr. at 1628:5-10 ("Mr. Weitzman, I've given you a fair amount of leeway here, you'd concede, in light of the length of the government's direct examination, but you can't have him interpreting what's on there or talking about what's not on here. Just stick with what is on there. You can't ask him things outside of the four corners of this document."). Later, the Court also precluded counsel for Mr. Hana from doing exactly what the Government did with regard to matters that are on the chart. *See* May 31, 2024 Tr. at 1728:20-1729:4 ("THE COURT: Mr. Lustberg, so far you've highlighted, you directed this witness's attention to 540, 1095, and 536. But I think in essence what you've done is simply pointed the jury to what that said. That's not the purpose of cross-examination. Next question. MR. LUSTBERG: Thank you. I'm trying to stick to the chart. THE COURT: I understand. But, it's to ask this witness questions, not to just restate what's on the chart. Go ahead."); *id.* at 1739:15-24 ("Q. That was what was in the text message, correct? A. In this entry

---

[3] Not only did the Government's tactical decision place the agent's testimony beyond the scope of any effective cross-examination, but it impermissibly allowed the prosecution to inject their own actions—and place their own credibility before the jury—with respect to the development of these critical exhibits. *United States v. White*, 545 F. App'x. 69, 71 (2d Cir. 2013) ("A problem arises, we have suggested, where there is some 'indication in the record that [the prosecutor] sought to use [his] first-hand knowledge of [the] case to influence the jury.'"); *see* May 30, 2024 Tr. at 1570:25-1571:1 ("Q. . . . The prosecutors created the chart, is that correct? A. That's correct. Q. And they decided what line entries to include in the chart? A. I did not decide, so my assumption is they decided, yes."). That is, as a result of Special Agent Coughlin's testimony, it is now abundantly clear to the jury that the prosecutors themselves have determined which messages are important, including by quite simply deciding which messages to include or omit from the summary chart. But this approach impermissibly places the prosecution's credibility at issue and thereby further limits the defendants' ability to adequately cross-examine any summary witness in this case, as any questioning about the Government's summary chart will certainly now be seen as an impermissible attack on the prosecution as opposed to the testifying witness. *See United States v. Salameh*, 152 F.3d 88, 135 (2d Cir. 1998) ("A prosecutor must scrupulously refrain from injecting his credibility into any part of the trial." (citation omitted)).

GIBBONS P.C.

June 4, 2024
Page 8

on line 971? Q. Yes. A. Yes. Q. And it also says 'I'm not sure if you recall, but we discussed the promissory note over the telephone.' THE COURT: Sir, this the jury has it now. There is no point in just reading it. What's the question? MR. LUSTBERG: I want to make sure this was what was in fact in the text message."). Taken together, these rulings violate Mr. Hana's (and his co-defendants') right to cross-examination, with regard to exhibits that, as the case is being presented, are at the heart of this case. *See Pointer v. Texas*, 380 U.S. 400, 404 (1965) (reciting that the Confrontation Clause guarantees a criminal defendant the right "to confront the witnesses against him," which includes the right to cross-examine those witnesses); *United States v. Sponaugle*, 621 F. Supp. 3d 474, 493 (D. Del. 2022) ("Consistent with due process and federal practice, any witness called to the stand by a prosecutor to provide evidence to the factfinder as a basis for resolving a fact dispute is subject to cross-examination." (citations omitted)); *cf. Melgen*, 967 F.3d at 1261 (rejecting defendant's Confrontation Clause argument that he should have been able to cross "whoever selected the criteria" in preparing a Rule 1006 summary chart where the summaries "were drawn from non-testimonial Medicare records that do not implicate the Confrontation Clause under *Crawford v. Washington*").[4]

### III. Summary Chart GX 1303

With respect to GX 1303 specifically, one significant distinction between this summary chart and that set forth in GX 1302 is that the majority of underlying exhibits involve communications sent or received by a witness testifying in this case, Jose Uribe. Certainly, Mr. Uribe will be required to answer questions regarding the very same messages that the Government intends to have Special Agent Graves recite into the record. Permitting the Government to effectively preview Mr. Uribe's testimony via an FBI agent, who cannot herself be substantively cross-examined about these communications, inappropriately bolsters Mr. Uribe's own testimony, and is unnecessarily cumulative.

Foremost, it is antithetical to the core purpose of Rule 1006 to introduce via summary witness evidence of communications that can and likely will just as easily be admitted via the declarant or recipient of those communications. As explained above, Rule 1006 summary charts are appropriate only to situations in which "voluminous" materials "cannot be conveniently examined in court." Fed. R. Evid. 1006; *see United States v. Gordon*, No. 1:19-CR-00007, 2019 WL 4308127, at *4 (D. Me. Sept. 11, 2019) ("[Rule 1006] addresses situations in which a summary

---

[4] That Mr. Hana may call his own summary witness as part of a defense case to affirmatively present certain evidence left out of the Government's chart does not remedy these issues. Irrespective of any affirmative defense case that Mr. Hana may decide to present, he has the current right to confront witnesses against him through the "crucible of cross-examination," *Crawford v. Washington*, 541 U.S. 36, 60-61 (2004), and the Government's selected summary witnesses and the current limitations to the scope of cross-examination foreclose his ability to exercise that right with respect to these problematic summary charts.

GIBBONS P.C.

June 4, 2024
Page 9

is the only practicable means of making [the] content available to judge and jury, as well as situations in which an in-court examination of the underlying records would be inconvenient") (internal citations omitted)).  And here, there is no reason why the vast majority of GX 1303—namely text messages to and from Mr. Uribe—cannot "practicably" be admitted through the declarant and/or recipient of the communications himself, or how eliciting such evidence from Mr. Uribe would be inconvenient.  Indeed, in response to Senator Menendez's objections to summary chart GX 1302, the Government stated that if they are "not permitted to use such summary charts, the Government expects that it will have to call more witnesses and present more testimony to walk through hundreds of separate exhibits to convey the same information contained in Government Exhibit 1302. That process would materially lengthen the trial and create more work for the jury. Such a laborious organizational task is precisely what Rule 1006 is designed to avoid." ECF No. 409 at 3.  Here, the Government effectively seeks to admit a summary chart that, as the Government has reasoned, should obviate the need for "more witnesses" and "more testimony," while also apparently calling a witness who will and can certainly testify as to the majority of the evidence appearing on the same summary chart.  Simply put, this result is both contrary to the fundamental purpose of Rule 1006 summary charts—a purpose the Government has clearly stated in its prior briefing—and needlessly cumulative.  *See, e.g.*, *United States v. Christou*, 334 F. App'x 950, 952 (11th Cir. 2009) (affirming trial court's exclusion of a Rule 1006 summary chart where it "would have been cumulative evidence," as "the witnesses' testimony about [proposed content on the chart] was not so voluminous as to require" a summary chart).  Indeed, courts have found that witness testimony is improper for inclusion on a Rule 1006 summary chart.  While Mr. Uribe has of course not yet testified, the reasoning underlying courts' exclusion of witness testimony on Rule 1006 summaries applies equally here, where it is reasonably certain that Mr. Uribe can and will be questioned regarding the communications quoted and described on GX 1303.  *See United States v. Hawkins*, 796 F.3d 843, 865–66 (8th Cir. 2015) ("Witness testimony is not a record that falls within the purview of Rule 1006, but by its very nature such testimony consists of content the trial judge deems worthy and practicable of putting before the jury.") (citing *Bray*, 139 F.3d at 1112)).  Furthermore, the admission of summary chart GX 1303 via an FBI agent with no personal knowledge regarding the underlying exhibits, and no familiarity with the selective inclusion and exclusion of communications cited on GX 1303—assuming Special Agent Graves's testimony will, in substance, replicate Special Agent Coughlin's verbatim reading of GX 1302 into the record—is all the more unnecessary when Special Agent Graves cannot, as argued *supra*, be effectively cross-examined.  That is of course not the case with Mr. Uribe, who is the only appropriate witness to question regarding these communications.

IV.  **Conclusion**

In order to address the unusual and inappropriate manner in which the Government is here going about attempting to prove its case, Mr. Hana most respectfully requests that the Court broaden the scope of permissible cross-examination to allow Mr. Hana to question summary

9

GIBBONS P.C.

June 4, 2024
Page 10

witnesses about documents outside of the summary chart through asking the summary chart witnesses to (a) read relevant, but omitted, documents or other communications; and (b) highlight those entries in the Government's summary exhibits that the defense wishes to emphasize. In the alternative, the Court should (a) strike the testimony of Special Agent Coughlin; and (b) preclude the Government from adducing further summary evidence, particularly with respect to circumstances in which live witnesses with personal knowledge, such as Jose Uribe will be testifying.

Thank you for your consideration of this matter.

Respectfully submitted,

*s/ Lawrence S. Lustberg*

Lawrence S. Lustberg

3145600.7 116235-102180