

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 5, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.*,
                S4 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in the above-captioned matter to raise two concerns regarding defendant Robert Menendez's cross-examination of Dr. Charity Davis, the Government's DNA expert, which the Government expects may reoccur in his cross-examination of Kira Glass, the Government's latent print expert. Ms. Glass may testify as soon as tomorrow afternoon, Thursday, June 6, 2024. In light of these concerns, the Government (a) requests that the Court remind the jury tomorrow that the Government is not on trial and that the use or non-use of particular investigative techniques, such as what items to seek to test and how, is not the jury's concern, and (b) requests that, if the pertinent concerning line of cross-examination reoccurs, the Government be permitted to elicit either on re-direct examination or through another witness that a defendant has the right to inspect and to request to test evidence, *i.e.*, it is not necessarily the Government alone that can seek to have evidence scientifically examined and tested.

      I.      Menendez's Cross-Examination of Dr. Davis

      In his cross-examination of Dr. Davis, Menendez's counsel questioned Dr. Davis at length about what was *not* tested and what testing of other items—had that been done, which it was not—might have shown. (*E.g.*, Trial Tr. 2257-61 (asking a series of questions about whether DNA could be found on, among other things, paper, clothing, and a duffel bag); *id.* at 2266-67 (eliciting that more than 100 items were sent to the Federal Bureau of Investigation ("FBI") laboratory in Quantico, but only 16 were sent to DNA unit); *id.* at 2269 (eliciting that of those 16 items, only 9 items were tested).) After so doing, Menendez's counsel repeatedly suggested that the decision of what to test was, at least in part, influenced by the case agents assigned to this case. (*E.g.*, *id.* at 2270 ("Q. Did the case agents make suggestions to you about what should be tested?" A. "I do not recall, but normally when I make my determinations, I make my determinations prior to discussing anything with the case agent.").)

Honorable Sidney H. Stein
June 5, 2024
Page 2

Over the Government's objection, Menendez's counsel then went farther, suggesting that items that were not seized by the FBI—including, it appears, items that could not lawfully have been seized—could somehow have been tested by the Government, yet inexplicably were not. (*Id.* at 2271-72 (Q. "Your testimony is you didn't test any of the clothes in this picture or any clothes at all from 41 Jane Drive, is that fair to say?" Government: "Objection." Court: "Did you test any clothes? Of the items you tested, were there any clothes you tested?" A: "No. The items tested were the envelopes and a fabric bag."); *see also id.* at 2273-74 (Q: ("Were you ever shown a picture of the safe from which 16B-26 was recovered?" Government: "Objection." Court: "Were you ever shown something that looked like that object, ma'am?" A.: "No, no. I never would have been."); *see also id.* at 2279 (asking whether Dr. Davis had seen photographs of Room Q in home).)

II.   Discussion

A.   *The Improper Suggestions Arising from Menendez's Cross-Examination*

The foregoing lines of cross-examination, which comprised the bulk of Menendez's cross-examination of Dr. Davis, raise two separate, but related concerns.

*First*, given the combination of questions about what *could* have been tested followed immediately thereafter with questions about *who* made the decision about what to test, Menendez plainly was seeking to raise in the jury's mind whether the Government *should* have tested more. However, it is settled law that the jury should not consider the Government's choice of investigative techniques. *See, e.g.*, *United States v. Saldarriaga*, 204 F.3d 50, 52-53 (2d Cir. 2000) ("The Court properly charged the jury to base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged. The jury correctly was instructed that the government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and that the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged."). Menendez's cross-examination in this respect was particularly improper because, as described above, he then suggested—over the Government's objection—that the Government could and should have tested items, such as clothing, that the FBI did not seize and may not have been able to lawfully seize. Yet the witness had no knowledge of those facts, or ability to opine on the scope of the search warrant issued for the Menendez residence. In short, in multiple ways, Menendez sought to suggest that the jury should consider the Government's investigative decisions, and even should consider the failure to test items that were not seized (and thus could even be tested). That was not just improper, but unfair. *See, e.g.*, *United States v. Knox*, 687 F. App'x 51, 54-55 (2d Cir. 2017) (it is "appropriate" to instruct that "the government is not on trial" (internal quotation marks omitted)).

*Second*, and relatedly, the unavoidable inference from the same series of questions was not just that the Government should have tested more, but that *only* the Government could have done so. However, Menendez has a right to inspect the evidence against him (which right he invoked as to multiple items, including as to gold and cash), and the ability, where appropriate, to request testing. *See* Fed. R. Crim. Pro. 16(a)(1)(E); *United States v. Anderson*, 169 F. Supp. 3d 60, 69 (D.D.C. 2016) ("To the extent that there is DNA extract left, it shall be preserved for defense

use."). To be sure, he need not do these things—but the jury is not aware that he could and chose not to, at least with respect to certain items of evidence.

        B.    *The Government's Requests*

The Government now has two requests, tracking the two concerns set forth above.

*First*, the Government requests that the Court remind the jury tomorrow that the Government is not on trial, and that its investigative decisions, and, in particular, what to seek to have tested and how, is not the jury's concern, consistent with *Saldarriaga*, *Knox*, and uniform case law. *See also, e.g.*, *United States v. Barcelo*, No. 13 Cr. 38 (RJS), 2014 WL 4058066, at *13 (S.D.N.Y. Aug. 15, 2014) (instructing, "You've heard references to certain investigative techniques [that] were used or not used by law enforcement authorities in this case. There is no legal requirement that the government prove its case by any particular means. While you are to carefully consider the evidence presented by the government, you need not speculate as to why certain techniques were used or why others were not used. The government is not on trial, and law enforcement techniques are not your concern.", and noting "[t]he Second Circuit has repeatedly upheld this type of instruction" (brackets in original)).

*Second*, the Government requests that, if Menendez again suggests through cross-examination of Ms. Glass or another witness that only the Government can test evidence, the Government be permitted to elicit either on re-direct examination or through another witness that a defendant has the right to inspect and to request to test evidence, *i.e.*, it is not necessarily the Government alone that can seek to have evidence scientifically examined and tested.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

By:    s/ Daniel C. Richenthal
        Eli J. Mark
        Daniel C. Richenthal
        Paul M. Monteleoni
        Lara Pomerantz
        Catherine E. Ghosh
        Assistant United States Attorneys
        (212) 637-2431/2109/2219/2343/1114
        Christina A. Clark
        Special Assistant United States Attorney
        (202) 307-5191

cc:    (by ECF)

      Counsel of Record