

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 8, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Robert Menendez, et al.*,
                 S4 23 Cr. 490 (SHS)

Dear Judge Stein:

       The Government respectfully writes in the above-captioned matter to seek the resolution of objections based on the Speech or Debate Clause raised by defendant Robert Menendez to a small number of exhibits the Government intends to present in a summary chart, marked as Government Exhibit 1304, in connection with the direct testimony of its third summary witness, Special Agent Paul Van Wie of the Federal Bureau of Investigation. The Government has been meeting and conferring with the defense in order to narrow or moot objections not based on the Speech or Debate Clause, and expects to write separately to address those objections once that process is complete.

       **I.**    **Menendez's Objections on Speech or Debate Clause Grounds to Exhibits in the Third Summary Chart Should be Overruled**

           A.    *The Relevant Exhibits*

       Menendez objects to two lines on the summary chart, as well as the underlying exhibits corresponding to those lines, on the basis of the Speech or Debate Clause. (*See* GX A104-4 and GX 10G-1 (message sending link on September 29, 2021 and internet archive image of linked webpage several days later, attached hereto as Exhibits A and B, respectively); GX A104-5 and A104-E (message and attached screenshot sent November 4, 2021, attached hereto as Exhibits C and D, respectively).)[1] Both of these lines refer to text messages in which defendant Fred Daibes shared public information about a Senate resolution related to the State of Qatar with Menendez. Both of these text messages were referred to in the Indictment. (*See* Indictment ¶ 58 ("[O]n or about September 29, 2021, DAIBES used the same encrypted messaging application to text MENENDEZ a link to a website tracking a Senate resolution supportive of Qatar, which reflected

---

[1] The Government is in the process of revising the summary chart, including to address defense objections. The relevant lines will summarize these underlying exhibits.

Honorable Sidney H. Stein
June 8, 2024
Page 2

that one day earlier the resolution had been introduced and referred to the SFRC."); *id.* ¶ 60 ("[O]n or about November 4, 2021 . . . DAIBES used an encrypted messaging application to send MENENDEZ an update on the proposed Senate resolution supportive of Qatar.").) Neither refers to any legislative act by Menendez, who, to the Government's knowledge, had taken no action on the resolution at the point in time when Daibes sent those two messages.

In the first message, on September 29, 2021, Daibes texted Menendez a website link (specifically, https://www.congress.gov/bill/117th-congress/senate-resolution/390?loclr=cga-search) to Congress's public website tracking a particular piece of potential legislation, Senate Resolution 390 ("S. Res. 390"), "A resolution expressing appreciation for the State of Qatar's efforts to assist the United States during Operation Allies Refuge." (*See* Ex. A, at 2.) The text message also included an attachment with a file name of the resolution. The summary chart includes an excerpt of the information from Congress's public website that was linked in the message, which reflects that as of October 1, 2021, the "Latest Action" on the resolution listed was "09/28/2021 Referred to the Committee on Foreign Relations." (*See* Ex. B.)

In the second message, on November 4, 2021, Daibes texted Menendez a screenshot of information from Congress's public website on the page tracking S. Res. 390. (*See* Ex. C.) The screenshot reflected an alert email showing that a Senator (who was not Menendez) joined as a cosponsor to S. Res. 390. (*See* Ex. D.)

B.   *Discussion*

These messages, which do not evidence any legislative act of Menendez, fit squarely within the category of evidence that is not protected under the Speech or Debate Clause and indeed has been introduced without objection during this trial.

As an initial matter, Menendez's objection to these messages is belated and runs contrary to his position earlier in this investigation and prosecution. Prior to trial, Menendez never raised any Speech or Debate Clause objection to these two messages. On the contrary, Menendez's then-counsel produced the text messages to the Government after screening the materials for communications that may be protected by the Speech and Debate Clause. Thereafter, in pretrial briefing, Menendez did not assert that the Indictment's allegations describing the same messages violated the Speech or Debate Clause. (Dkt. 120, at 28.) Indeed, in his pretrial briefing, Menendez expressly acknowledged that the Government had avoided a potential Speech or Debate Clause issue as to the Qatar allegations by not alleging any legislative act by Menendez. (*See id.* ("the Qatar Investment Scheme" "rests on plainly unofficial acts" and "dances around an obvious Speech or Debate Clause pothole").)[2]

Consistent with the parties' understanding that the messages were not covered by the Speech or Debate Clause, both Government counsel and Menendez's counsel referenced these

---

[2] Immediately prior to trial, Menendez also indicated he wanted to argue he was not involved in the resolution, which the Government stated would likely waive Speech or Debate Clause protection for acts that the Government did not intend to offer but believed Menendez did in fact later take on the resolution, by reporting it out of committee to the full Senate, after the date of these messages. (*See* Dkt. 398, at 3 (referring to "Slide Eleven" of Menendez's anticipated Opening Slides); Trial Tr. 33-45.)

messages in their opening statements. (Trial Tr. 62 (Gov't opening), 108-09 (Menendez opening).) Menendez's counsel stated: "The government has another bribery theory involving Daibes, that in exchange for gold bars and cash, Bob introduced Fred Daibes to Qatar as a potential investor in a project that Fred Daibes was developing and that Bob and Fred Daibes discussed some sort of Senate resolution thanking Qatar and then Bob issued some press releases praising Qatar." (*Id.* at 108-09.)

In light of the foregoing, Menendez's present objection is belated, if not outright waived. *See United States v. Yu-Leung*, 51 F.3d 1116, 1120 (2d Cir. 1991) ("To be timely, an objection must be made as soon as the ground of it is known, or reasonably should have been known to the objector." (internal quotation marks omitted; alterations incorporated)). Menendez did not lodge any objection during the Government's opening statement. To be sure, after the parties' opening statements, Menendez sought a mistrial on the ground that the Government allegedly had violated the Speech or Debate Clause with respect to these messages—but his argument was not that the messages themselves could not be referenced or introduced into evidence, but that what the Government *said* about them crossed the line from what Daibes sent Menendez into an alleged act undertaken by Menendez. The Court denied Menendez's motion for a mistrial. (Trial Tr. 124.) It would be legally erroneous, contrary to the Court's prior ruling, and deeply unfair to the Government for Menendez now to obtain preclusion of the same evidence, which would give the impression to the jury that the Government had overstated what the evidence in this case would show.

Importantly, neither of the text messages references a legislative act by Menendez. Indeed, as a matter of fact, Menendez had *not* acted on the resolution at the time of either of the text messages. Nor do the messages suggest otherwise. Just the opposite. As the Government explained in connection with Menendez's motion for a mistrial, Daibes's transmission to Menendez of information about the resolution indicates that Daibes *wanted* Menendez to act in the future. And that is also precisely the inference that the Government will ask the jury to draw. Specifically, Daibes wanted Menendez to act, and Menendez accepted payment thereafter understanding that was what Daibes wanted. (*See*, *e.g.*, Indictment ¶ 2 ("MENENDEZ agreed to and did accept payment from DAIBES, knowing that DAIBES expected MENENDEZ in exchange to use his influence and power . . . to assist DAIBES, who was seeking millions of dollars in investment from a fund with ties to the Government of Qatar, by performing acts to benefit the Government of Qatar."); Trial Tr. 62 (Gov't Opening: "Daibes suggested ways Menendez could help Qatar, like by supporting a senate resolution praising Qatar. And so Menendez took the gold and he took the cash, knowing Daibes wanted him to take those actions.").)

Discussion of possible *future* legislative actions, as these text messages reflect, is not protected conduct as a matter of law. *See, e.g.*, *United States v. Helstoski*, 442 U.S. 477, 489 (1979) ("Promises by a Member [of Congress] to perform an act in the future are not legislative acts."); *see also id.* at 490 ("A promise to deliver a speech, to vote, or to solicit other votes at some future date is not 'speech or debate.'"). Rather, when made in exchange for a thing of value, it is a crime. *See United States v. McDonnell*, 579 U.S. 550, 572 (2016) ("A jury could, for example, conclude that an agreement was reached if the evidence shows that the public official received a thing of value knowing that it was given with the expectation that the official would perform an 'official act' in return."); *see also United States v. Silver*, 948 F.3d 538, 551 (2d Cir. 2020) (a "promise to perform an official act in exchange for payment" is a corrupt *quid pro quo*, and "it is not necessary that the public official in fact intend to perform the contemplated official act"

Honorable Sidney H. Stein
June 8, 2024
Page 4

(internal quotation marks and brackets omitted)), *cert. denied*, 141 S. Ct. 656 (2021); *United States v. Myers*, 692 F.2d 823, 842 (2d Cir. 1982) ("If Myers was 'playacting' and giving false promises of assistance to people he believed were offering him money to influence his official actions, he violated the bribery statute."). Because these messages do not reflect any past legislative act of Menendez, the Court should adhere to its prior ruling and admit this evidence. (*See* Tr. 564-66 (distinguishing between past and future legislative acts, remarking, "If the defense is going to raise this issue time and time and time again, the trial is going to be completely bogged down.").)

That the text messages refer to legislation that was then-"pending before" the Senate, *United States v. Brewster*, 408 U.S. 501, 527 (1972), and without any evidence that Menendez in fact took action on it, falls squarely within the categories the Supreme Court has held are not protected. *See id.* (bribery charge properly resting on payment in exchange for the official's "action, vote and decision on postage rate legislation which had been pending before him in his official capacity"); *cf., e.g.*, *United States v. Williams*, 644 F.2d 950, 952 (2d Cir. 1981) (rejecting argument that the Clause barred introduction of a video of a defendant's "discussion of a proposed immigration bill with the undercover agent"). And the fact that certain legislation was then pending, as reflected in these exhibits, is also not a legislative act by Menendez and, therefore, is not protected by the Speech or Debate Clause; rather, it is necessary and appropriate context for the bribery scheme. *See, e.g.*, *Brewster*, 408 U.S. at 528 ("The Speech or Debate Clause does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions."); *United States v. Myers*, 635 F.2d 932, 937 (2d Cir. 1980) ("Legislative actions are referred to in the indictment only for the entirely permissible purpose of detailing the nature of the corrupt promise allegedly made.").

Similarly, while one of the text messages links and the other attaches a screenshot of a webpage that refers to actions taken by *other* Senators (whose names the Government intends to redact consist with the Court's directive regarding other exhibits, *see* Exs. B, D) in sponsoring or co-sponsoring the legislation, those are not evidence of any legislative acts *by Menendez*, and he has no standing to raise a Speech or Debate Clause objection on that basis either. *See Gravel v. United States*, 408 U.S. 606, 622 (1972) (the Speech or Debate Clause is "invocable only by the Senator or by the aide on the Senator's behalf"); *see also Nunes v. NBCUniversal Media, LLC*, No. 22 Civ. 01633 (PKC) (SN), 2024 WL 1500945, at *2 (S.D.N.Y. Mar. 19, 2024) (same). Accordingly, these two messages from Daibes should be treated similarly to references to legislative acts by others, with the identities of the other senators redacted, consistent with the Court's prior ruling. (*See* Tr. 1018-19.)

Honorable Sidney H. Stein
June 8, 2024
Page 5

In short, Menendez's objection is both belated and meritless, and should be overruled.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:     s/ Eli J. Mark
Eli J. Mark
Daniel C. Richenthal
Paul M. Monteleoni
Lara Pomerantz
Catherine E. Ghosh
Assistant United States Attorneys
(212) 637-2431/2109/2219/2343/1114
Christina A. Clark
Special Assistant United States Attorney
(202) 307-5191

Enclosures

cc:     (by ECF)

      Counsel of Record