# PAUL HASTINGS

June 11, 2024

**VIA ECF**

Hon. Sidney H. Stein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *United States v. Robert Menendez et al.*, S4 23 Cr. 490 (SHS)

Dear Judge Stein,

We respectfully submit this letter in furtherance of Senator Menendez's application to admit two defense exhibits, DX 823 and DX 821 (the "Exhibits"), pursuant to Federal Rule of Evidence 806. Both Exhibits, which are submitted with this letter, have been redacted to focus on the core impeachment material.

FRE 806 provides that "when a hearsay statement – or a statement described in Rule 801(d)(2)(C), (D), or (E) — has been admitted in evidence, the declarant's credibility may be attacked . . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806. The rationale for this rule is that a hearsay declarant "is in effect a witness" and therefore "his credibility should in fairness be subject to impeachment . . . as though [the declarant] had in fact testified." *United States v. Stewart*, 907 F.3d 677, 687 (2d Cir. 2018) (internal punctuation omitted).

During Jose Uribe's direct examination, the government elicited testimony regarding out-of-court statements allegedly made by Defendant Wael Hana.[1] Specifically, in reference to a meeting at a Marriot hotel between Uribe, Hana and others, the government inquired of Uribe as follows:

      Q:    What did Will [Hana] say at the Glenpointe Marriott?

      A:    In substance, he confirmed to all of us that he has a way to make this investigation, to -- first of all, get a best resolution for Elvis [Parra] and make all of this investigations stop and kill if he receive a sum of, somewhere 200 to $250,000.

      …

      Q:    Did Will [Hana] mention Nadine [Arslanian] at this meeting?

---

[1] These statements, which are offered against Senator Menendez, are presumably admissible pursuant to FRE 801(d)(2)(E).



> A: Yes, he did.
>
> Q: Did [Hana] mention Robert Menendez?
>
> A: Yes, he did.
>
> Q: Did [Hana] specify at this meeting what he was going to do in order to make sure all investigations were stopped?
>
> A: Except for being in touch with Nadine and Senator Menendez, he did not . . ."

Trial Tr. at 2968:8-2969:1.

By eliciting this testimony, the government has "in effect" rendered Hana a "witness" and, therefore, "his credibility should in fairness be subject to impeachment . . . as though he had in fact testified." *Stewart*, 907 F.3d at 687. The Exhibits plainly do just that.

Indeed, the Exhibits tend to show that – despite Hana's alleged representation to Uribe that he could aid Uribe with legal troubles by leveraging his relationships with Nadine Arslanian and Senator Menendez – Hana was instead working with a *different lawyer*, Doug Anton, on the very same matters troubling Uribe. Specifically, DX 823 is a May 20, 2018 email from Anton to Hana with subject line "State of New Jersey vs. Elvis Parra – SENATOR MENENDEZ / NADINE ARSLANIAN" in which Anton describes various legal work he has purportedly undertaken on the Parra case, including analyzing the indictment and "reach[ing] out to the [Deputy Attorney General] to discuss the matter." DX 821 is a text message from Anton to Hana dated April 4, 2018, in which Anton thanks Hana for a meeting and expresses hope of future meetings.

As such, these documents tend to undermine Hana's supposed representation to Uribe that *Senator Menendez* would somehow be involved in addressing Uribe's legal problems, because they demonstrate that Hana was contemporaneously speaking to a different lawyer about those exact problems. From these documents, the jury could easily infer that Hana's hearsay statements were false, or incomplete, in as far as they omitted reference to Hana's work with Anton. *See Stewart* at 687 ("[s]tatements need not be diametrically opposed to be inconsistent," instead, inconsistency requires only "'any variance between' the impeachment material and the hearsay statement 'that has a reasonable bearing on credibility'"). To the extent the government has elicited, or will elicit, further out-of-court statements from Hana (or anyone else) tending to show that Hana had or would somehow cause Senator Menendez to intervene in the Parra and Phoenix matters, the Exhibits would of course impeach those statements as well.

Under FRE 806, Senator Menendez is entitled to impeach Hana's credibility as a hearsay declarant. The Exhibits serve precisely that purpose and should be admitted.



Respectfully submitted,

/s/ *Adam Fee*

Adam Fee
Avi Weitzman

*Attorneys for Defendant Robert Menendez*