

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 23, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

     Re:    *United States v. Robert Menendez, et al.*,
              S4 23 Cr. 490 (SHS)

Dear Judge Stein:

     The Government respectfully writes in the above-captioned matter to (a) expand upon its response to defendant Robert Menendez's asserted basis this past week to seek to question Geoffrey Mearns, a non-attorney employee of the United States Attorney's Office, as to whether Menendez's former counsel, Abbe D. Lowell, Esq., expressly asked for a presentation to the United States Attorney's Office on September 11, 2023 to be transmitted to the grand jury, and (b) request that, in light of Menendez's expected argument to the jury regarding this presentation, the Court either instruct the jury regarding how the grand jury operates, or permit the Government to present limited evidence on the same subject.

     **I.**     **Background**

     On June 20, 2024, during the cross-examination of Mr. Mearns, counsel for Menendez sought to ask: "At no point in time during his presentation regarding these four pages, or anything else, did the lawyer ask that this presentation be provided to the grand jury?" (Trial Tr. 4286.) The Court sustained the Government's objection, after which defense counsel sought and was granted a sidebar. (*Id.*)

     During the sidebar, which involved multiple issues, Menendez's counsel argued that he should be permitted to ask this question on the ground that the defense was entitled to seek to demonstrate whether the statements were intended to be transmitted to the grand jury, citing *United States v. Schwarz* (which the Government understands to have been a reference to *United States v.*

*Schwarz*, 283 F.3d 76 (2d Cir. 2002)). (Trial Tr. 4287-89.) After back-and-forth with the parties, the Court adhered to its decision, stating:

> I'm going to sustain the objection on 403 grounds, that it's starting to enter into an area that will be confusing to this jury, and the probative value is not [*sic*] substantially outweighed by the danger of delay and confusing this jury and, in fact, misleading it. It's also indeed beyond the scope. I'm going to read that case. That's my decision.

(*Id.* at 4298.)

## II. Applicable Law Regarding Obstruction of Justice

As both the Government's Requests to Charge and the Defendants' Requests to Charge state, to prove a defendant guilty of obstruction of justice, as charged in this case, the Government must prove that the defendant, with the requisite intent, acted to obstruct, or took action knowing that it had the natural and probable effect of obstructing, the due administration of justice. (Dkt. 354 (Gov't Requests to Charge), at 99; Dkt. 353 (Defense Requests to Charge), at 123.)

Contrary to the position that Menendez appeared to take at the sidebar, the law does not require that a defendant know that his false or misleading statements or information literally will be transmitted to the grand jury—or, as Menendez's proposed question to Mr. Mearns suggested, that the defendant or his agent must at least *ask* that the pertinent information be provided to the grand jury. *See, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 179 n.25 (2d Cir. 2006) ("we reject Quattrone's proposed instruction that the jury had to find he had knowledge of the scope and subject matter of the grand jury investigation, such that he knew what documents or categories of documents had been subpoenaed by the grand jury and that he corruptly endeavored to obstruct by causing the destruction of documents he knew to be sought in the investigation").

*Schwarz*, which predates *Quattrone*, is not to the contrary. Rather, *Schwarz* applied the longstanding principle that obstruction of justice—where, as here, the charge rests on a grand jury proceeding—requires proof that the defendant intended to obstruct the proceeding. *See Schwarz*, 283 F.3d at 109 (There must be "a specific intent to obstruct a federal judicial or grand jury proceeding. Accordingly, the conduct offered to evince that intent must be conduct that is directed at the court or grand jury and that, in the defendant's mind, has the 'natural and probable effect' of obstructing or interfering with that entity."). But nothing in *Schwarz* requires knowledge that the false or misleading statements at issue must literally be transmitted to the grand jury. Were the law otherwise, the word "endeavor" in the statute would be rendered meaningless. The defendants have not taken this position. (*See* Dkt. 353, at 123 ("Success of the endeavor is not an element of the crime.").) And it is, for very good reason, not the law. *See Quattrone*, 441 F.3d at 179 n.25 ("Under our analysis, it would be sufficient to show that [the defendant] knew that his actions were likely to affect the proceeding[.]"); *United States v. Aguilar*, 515 U.S. 593, 601–02, (1995) (The term "endeavor" has a "useful function to fulfill"—"[i]t makes conduct punishable

Honorable Sidney H. Stein
June 23, 2024
Page 3

where the defendant acts with an intent to obstruct justice, and in a manner that is likely to obstruct justice, but is foiled in some way.").

Nor does the law require an intent that the false or misleading information be literally transmitted to the grand jury itself, rather than an intent that "the proceeding" be "affect[ed]." *Quattrone*, 441 F.3d at 179 n.25; *Aguilar*, 515 U.S. at 601 ("Were a defendant with the requisite intent to lie to a subpoenaed witness who is ultimately not called to testify, or who testifies but does not transmit the defendant's version of the story, the defendant has endeavored to obstruct, but has not actually obstructed, justice."). Indeed, were there a requirement that the defendant intend that the false or misleading information literally be transmitted to the grand jury itself, the most successful obstruction schemes—in which the false or misleading information was intended to cause prosecutors *not* to seek an indictment from the grand jury, as Menendez here sought through the presentation—would be immune from prosecution as obstruction of justice. And numerous cases, in which defendants were convicted for agreeing to take and taking actions to seek to shape or prevent an indictment, would have been wrongly decided. *See, e.g., United States v. Mangano*, No, 16 Cr. 540 (JMA), 2022 WL 2872670, at *9 (E.D.N.Y. July 20, 2022) (rejecting argument that "lies to agents and prosecutors during the two proffer sessions were not sufficiently connected to the grand jury investigation to constitute obstruction"); *id.* at *11 ("[A] jury could conclude that, after the service of the grand jury subpoena by these FBI agents, the FBI and grand jury investigations were inextricably intertwined and the Manganos (and Singh) would have viewed them as such."); *United States v. Sutherland*, 921 F.3d 421, 428 (4th Cir. 2019) (affirming conviction where defendant was served with grand jury subpoenas seeking financial records, and thereafter his attorney sent to the U.S. Attorney's Office a letter that purported to explain away transactions relating to the subpoenaed materials and attached loan documents that were false); *United States v. Fassnacht*, 332 F.3d 440, 451 (7th Cir. 2003) (finding that "even if it believed that the defendants' obstructive efforts were primarily aimed at the IRS agents, the jury was entitled to make the rational inference that Fassnacht and Malanga understood that the IRS agents were acting as the 'arm of the grand jury,' and that impeding the agents' efforts necessarily meant obstructing the grand jury.").[1]

### III. Discussion

#### A. The Court's Decision to Preclude Menendez's Proposed Grand Jury Question Was Correct

The Court's decision to preclude Menendez from asking Mr. Mearns, "At no point in time during his presentation regarding these four pages, or anything else, did the lawyer ask that this presentation be provided to the grand jury?", was manifestly correct. Even if Menendez's proposed question were not beyond the scope of direct examination (and it was), and the question rested on a correct proposition of law (and it did not), as the Court properly recognized, the limited

---

[1] For the same reasons, to the extent that Menendez appeared to suggest that the jury must find that the presentation *itself* constituted a standalone obstruction of justice offense, rather than that Menendez engaged in a scheme to obstruct justice, of which the presentation was a part, Menendez was wrong. *Cf. Mangano*, 2022 WL 2872670, at *9-11 (describing evidence of scheme).

probative value of the answer was far outweighed by the danger of confusion of the jury, and more pointedly, "misleading" the jury. (Trial Tr. 4298.)

Indeed, as the Government noted during the sidebar (*id.*), 18 U.S.C. § 3500 material for Mr. Mearns, which was provided to the defendants prior to Mr. Mearns testifying, made plain that Mr. Lowell intended that the information he presented be relied upon to convince the U.S. Attorney's Office not to seek an indictment. (*See* 3565-004 (enclosed as Ex. A).) So too did a draft stipulation with respect to Mr. Lowell's expected testimony, provided to the defendants weeks ago, which Menendez has declined to sign, but the substantive accuracy of which he has not disputed. (*See* Ex. B.) That Mr. Lowell may not have expressly asked that the presentation itself be literally provided to the grand jury is of no moment, and any suggestion to the contrary would have been deeply misleading to the lay jury.

      B. <u>The Court Should Instruct the Jury Regarding How the Grand Jury Operates, or, in the Alternative, Permit the Government to Present Such Evidence</u>

In light of Menendez's apparent intent to argue to the jury that he should be acquitted because the presentation was made to federal prosecutors, rather than the grand jury itself, the Court should include in its jury charge an overview of how the grand jury operates, *i.e.*, that an indictment is obtained from a grand jury, after a factual presentation by federal prosecutors, and that it is the United States Attorney's duty to prosecute cases in his district. *See United States v. Hogan*, 712 F.2d 757, 759 (2d Cir. 1983) ("[I]t is the prosecutor who draws up the indictment, calls and examines the grand jury witnesses, advises the grand jury as to the law, and is in constant attendance during its proceedings."); Hon. Irving R. Kaufman, *The Grand Jury—Its Role and Its Powers*, 17 F.R.D. 331, 336 (1955) ("[The grand jury] is vested with the critically important power of subpoenaing witnesses . . . . The United States Attorney utilizes [the grand jury's] subpoena power to bring witnesses and documents before [the grand jury]."); *Sutherland*, 921 F.3d at 428 ("A prosecutor tasked with presenting to the grand jury is more akin to a witness who has been subpoenaed than one who has not. As with a subpoenaed witness, there is a strong likelihood that the U.S. Attorney's office would serve as a channel or conduit to the grand jury for the false evidence or testimony presented to it."); 28 U.S.C. § 547(1) (the United States Attorney shall "prosecute for all offenses against the United States"). Without this information, the jury would not have sufficient context to evaluate and weigh the evidence in light of the argument that it appears that Menendez intends to make. And because this information is neutral, legal, and does not touch upon what did or did not occur in this particular case, there is no unfair prejudice to Menendez, and he can still make any absence-of-evidence argument—to the extent it is fairly grounded in the record, and otherwise appropriate—that he wishes. In the alternative, the Government should be permitted to present limited evidence on the same subject, although the Government believes that, because this is a legal matter, it is most appropriately one for the Court to include in its instructions rather than for the parties to present evidence concerning. *Cf., e.g., United States v. Avenatti*, No. 19 Cr. 374 (JMF), 2022 WL 103298, at *2 (S.D.N.Y. Jan. 11, 2022) ("To the extent that legal ethics rules generally or California's rules of professional conduct specifically are relevant to the jury's consideration of the charges against Defendant in this case, the proper course is for the Court to give appropriate instructions to the jury, not for an expert to testify.").

Honorable Sidney H. Stein
June 23, 2024
Page 5

                          Respectfully submitted,

                          DAMIAN WILLIAMS
                          United States Attorney

By:    <u>s/ Daniel C. Richenthal</u>
        Eli J. Mark
        Daniel C. Richenthal
        Paul M. Monteleoni
        Lara Pomerantz
        Catherine E. Ghosh
        Assistant United States Attorneys
        (212) 637-2431/2109/2219/2343/1114
        Christina A. Clark
        Special Assistant United States Attorney
        (202) 307-5191

Enclosures

cc:    (by ECF)

       Counsel of Record