

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 26, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.*,
              S4 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in the above-captioned matter to identify for the Court the Government's present objections to evidence that the Government understands defendant Wael Hana will seek to introduce in his defense case. The Government intends to write separately to address certain of the Government's presently known objections to certain of Menendez's witness and exhibits.[1]

      For the reasons discussed below, the Court should preclude Hana from introducing the following proffered evidence pursuant to Federal Rules of Evidence 401, 403, and/or 802.

      I.    **Evidence of IS EG Halal's Operations After the Monopoly Should Be Precluded Under Rules 401 and/or 403**

      The Government has been informed by counsel for Hana that he intends in his defense case to call four current employees of IS EG Halal to testify about IS EG Halal's certification business in an effort to establish that IS EG Halal, in counsel's words, was a "legitimate business" and was "qualified to be Egypt's sole halal certifier." According to Hana's counsel's proffer, three of the four witnesses began working for IS EG Halal after January 2020 (*i.e.*, *after* Nadine Menendez was no longer receiving alleged consulting payments from the company). The one witness who apparently worked at IS EG Halal before January 2020 had previously been an Egyptian government official that participated in the 2019 delegation that audited U.S. beef slaughterhouses. In particular, Hana has informed the Government that he presently intends to call the following current employees, with the quoted portions from counsel's proffer:

---

[1] The Government received good-faith, substantive proffers from counsel to Hana as to his proposed witnesses, as described below.

Honorable Sidney H. Stein
June 26, 2024
Page 2

- IS EG Employee-1 "began working for IS EG Halal in or about February 2020 and is the Head of Religious Affairs Global as well as the Head of the Indian office."
- IS EG Employee-2 "has worked for IS EG Halal since its operations began and is responsible for the veterinary aspects of halal certification." From Rule 26.2 material, it appears that IS EG Employee-2 was also a former Egyptian government official who was part of the Egyptian delegation that participated in the 2019 audit of slaughterhouses, which audit was the subject of prior testimony in this trial.
- IS EG Employee-3 has been "working for IS EG Halal [since] in or about October 2019," out of the Brazil office, "but is involved in its operations through all of Latin America."
- IS EG Employee-4 "has worked for IS EG Halal in its United States offices from in or about July 2021.

The proffered testimony about IS EG Halal's global operations is generally irrelevant to this case, *see* Fed. R. Evid. 401, and to the extent it has any theoretical, limited probative value, such probative value is substantially outweighed by the risk of confusing the issues, presenting cumulative evidence, lengthening the already-lengthy trial, and wasting the jury's time. *See* Fed. R. Evid. 403.

As an initial matter, the nature and capabilities of IS EG Halal's global operations *after* it was awarded a monopoly by Egypt are irrelevant to this case. Whether IS EG Halal did a good or bad job as a halal certifier, or succeeded or did not succeed in making a profit, after it was granted a monopoly does not bear on any element of the charged offenses. Nor is there any dispute that IS EG Halal continued in the business after it was granted a monopoly, and that the business expanded. To be precise, how IS EG Halal operated after it received its monopoly and *after* Menendez called Ted McKinney to advise and pressure him to stop "interfering" with Egypt's grant of a monopoly to IS EG Halal does not inform whether or not Hana entered into a corrupt agreement with Menendez. Nor does it—or could it—reflect any pertinent information about Menendez's or Hana's mental states when Menendez contacted McKinney earlier in time.

Moreover, it would be inappropriate for any of the defendants to suggest that a jury should acquit because IS EG Halal's monopoly was somehow, over time, beneficial, or non-harmful. *See, e.g.*, *United States v. Skelos*, No. S1 15 Cr. 317 (KMW), 2016 WL 1532253, at *6 (S.D.N.Y. Apr. 14, 2016) (not a defense to bribery that charged actions allegedly "were consistent with 'the best interest of [defendant's] constituency and the citizens of New York State'"), *vacated on other grounds*, 707 F. App'x 733 (2d Cir. 2017); *see also City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 378 (1991) (a defendant may be "guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid").

Hana's counsel has stated to the Government that nonetheless Hana believes that this evidence "is relevant, among other things, to rebutting the Government's attacks and assertions (beginning with its opening statement, *see, e.g.*, [Trial] Tr. 54:11-55:11 that IS EG is not a legitimate business and is not qualified to be Egypt's sole halal certifier." But the Government

has never argued that IS EG Halal is not a real business, much less that, after it was granted the monopoly, it failed as a business. Rather, the Government made a point that Hana does not appear to dispute: that, at the time it was granted the monopoly, IS EG Halal was a "brand-new company," and "Hana didn't actually have any experience in this business [*i.e.*, the halal business]." (Trial Tr. 54.) None of the proffered testimony about IS EG Halal's operations in other countries *after* it was awarded a monopoly to operate in the United States in or around April 2019 would do anything to rebut the point that the Government made in its opening statement.

Hana's counsel also has suggested that the proffered evidence is relevant to establishing that the beef export market was not actually disrupted, which was one of the USDA's initial concerns. But whether or not the U.S. market was actually disrupted, and to what degree, is irrelevant to whether USDA, in formulating its official position, was concerned *at that time* with whether a monopoly would disrupt the market. And how IS EG Halal has operated in other markets across the globe does nothing to rebut the USDA's concerns about IS EG Halal's monopoly as it related to U.S. exports to Egypt.

Further, there is already ample evidence in the record from which Hana can argue, if he wishes, that meat continued to be exported to Egypt after IS EG Halal was awarded the monopoly, including testimony and documentary evidence. (*See, e.g.*, GX 8B-41 (May 2, 2019 email reflecting that "Representatives from IS EG informed industry that there will be market disruption"); GX 8B-36 (May 14, 2019 email from USMEF to USDA that "I've done some outreach to the packers and exporters . . . . They actually appreciated ISEG being proactive on this so as to not interrupt their business. I would say the general feeling is that they are leery of the ISE[G], but has not slowed down their exports to a large degree so they are following along to keep the product moving at this point."); GX 8B-18 (June 2019 cable reflecting that Egyptian Deputy Minister of Agriculture stated that ISEG did not impact the market and that beef imports had increased); DX 761-A (2022 United States Agricultural Export Yearbook, reflecting the value of U.S. exports of beef and beef products to Egypt was $94 million in 2022, which was greater than in 2019.); Trial Tr. 613-17 (cross-examination of Bret Tate).) Thus, given the low probative value, if any, of the proffered evidence, any further evidence regarding IS EG Halal's operations and the disruption or lack of disruption to the beef export market of IS EG Halal's monopoly would be cumulative, confuse the issues, and waste the jury's time.

II. **Evidence of a Former Egyptian Official's View on the Halal Certifiers That Operated Before IS EG Halal was Awarded its Monopoly Should Be Precluded Under Rules 401 and/or 403**

As noted above, IS EG Employee-2 apparently was a former Egyptian government official who was part of the Egyptian delegation that participated in the 2019 audit of slaughterhouses. Hana's counsel has proffered that IS EG Employee-2's testimony, from the time when he participated in the 2019 audit for the Egyptian delegation, is relevant to rebut testimony from the Government's USDA witnesses, which, in Hana's view, implied that the alleged concern(s) raised by Egyptian officials during the 2019 audits about the delisted halal certifiers were "not legitimate or were pretextual."

As an initial matter, a particular former Egyptian official's personal view on whether the prior halal certifiers were adequately performing their halal certification services is of little relevance to any issue at this trial. That opinion does not go to any element of the charges, particularly when it does not appear that this witness can competently testify to the bases for the Egyptian government's decision, which was made at far more senior levels. To be sure, one of the Government's witnesses testified about participating in the 2019 audit, but that does not render all such testimony relevant and proper. The Government witnesses' observations were offered and admitted for entirely different purposes. First, the witnesses' testimony was relevant to demonstrate the context and basis for the *U.S. Government's* official policy position on Egypt's awarding of the monopoly to IS EG Halal. And, second, the testimony was relevant as background and context to Hana's attempted participation in meetings with USDA officials at the close of the 2019 audit.

In any event, to the extent Hana intends to present testimony from IS EG Employee-2 to suggest that Egypt's decision to decertify the prior halal certifiers was made on the alleged merits, there is already ample evidence in the record from which Hana can make those arguments, including Bret Tate's testimony regarding Egypt's objections and Egypt's report finding that those certifiers were not performing adequately. (*See*, *e.g.*, GX 8B-41 (May 2, 2019 email reflecting that IS EG informed industry, among other things, "The government of Egypt is concerned about compliance with halal requirements and IS EG is committed to working with industry to resolve the issue."); GX C107-AT (Egyptian report "on Islamic centers slaughterhouses" suspending and rejecting U.S. halal certifiers); Trial Tr. 411 ("Dr. Ahmed had two sets of concerns. One set was about the way the animals were slaughtered. The second was about the way the animals were stunned."); *id.* 440 ("we understood that there was a problem with halal certifiers"); *id.* 441 ("In that [April 11, 2019] meeting he [Dr. Ahmed] said they had had concerns with U.S. halal certifiers.").) Thus, the additional proffered evidence about the audit would be cumulative and a waste of the jury's time, even assuming relevance.

Furthermore, even if IS EG Employee-2's testimony about the audit could survive Rules 401 and 403, such testimony also appears, at least in large part, to be either inadmissible hearsay and/or impermissible speculation. For example, Rule 26.2 material reflects that IS EG Employee-2 allegedly believed that slaughterhouses were engaged in deceptive practices—purportedly "showing 'live footage' of slaughter that was timestamped for different time." However, such testimony does not appear to have been based on that individual's own observations about the slaughter of the animals or the footage. Nor does it appear that this individual has any expertise in discerning whether such footage was allegedly manipulated. Nor does Hana purport to offer such alleged footage, such that the jury could decide for itself what it depicts. For these reasons, if the Court were inclined to permit any such testimony from IS EG Employee-2, the Government should be permitted to *voir dire* the witness outside the presence of the jury to ensure that any testimony on these alleged events is grounded in personal observations and otherwise proper to be provided by a lay witness.

Honorable Sidney H. Stein
June 26, 2024
Page 5

### III. At Least Certain of the Proffered Evidence of Work Nadine Menendez Allegedly Performed or Did Not Perform Should Be Precluded Under Rule 802

The last witness whom the Government has been informed Hana may call is a former IS EG employee, and now current EG Trade employee ("IS EG Employee-5"). IS EG Employee-5 worked in IS EG Halal's Uruguay offices from in or about September 2019 through in or about October 2023. Hana has proffered that this employee will "testify from first-hand knowledge as to her personal role with respect to Ms. Arslanian's work for IS EG Halal, her first-hand interactions with Ms. Arslanian related to Ms. Arslanian's expected work for IS EG Halal, and her personal knowledge of the removal of the assignment from Ms. Arslanian."

To the extent that the Government understands IS EG Employee-5's proffered testimony, at least a substantial portion is inadmissible hearsay. IS EG Employee-5 worked in Uruguay, and it appears she did not in fact review most or all of the alleged work of Nadine Menendez (then known as Nadine Arslanian). Rather, it seems that she communicated with Nadine Menendez and Hana concerning alleged work that Nadine Menendez had already undertaken and/or that Nadine Menendez had stated she would undertake—and that she intends to testify to conversations she had with Nadine Menendez and Hana saying that Nadine Menendez was to undertake certain work and that Nadine Menendez said she had done such work. That is inadmissible hearsay. If Hana wishes to testify to working with Nadine Menendez, he may do so. If Hana wishes to call an IS EG Halal employee who worked with Nadine Menendez and observed her doing work—assuming that such an employee exists—he may call such an employee to offer admissible testimony. But he cannot offer out-of-court statements supposedly confirming that such work was performed, to demonstrate that it was in fact performed, which would effect an end-run around the bar to hearsay.

Nor can Hana offer his own statements regarding Nadine Menendez allegedly being "remov[ed]" from an "assignment" through another witness, to seek to show that Hana allegedly in fact removed her and/or Hana's reasons for removing her. Indeed, it appears that IS EG Employee-5's supposed "personal knowledge" of this alleged fact is that Hana allegedly *told her* this had occurred. That is inadmissible hearsay.

\*\*\*

Honorable Sidney H. Stein
June 26, 2024
Page 6

      For the foregoing reasons, the proffered testimony Hana seeks to offer should be excluded, at least in large part.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    s/ Eli J. Mark
        Eli J. Mark
        Daniel C. Richenthal
        Paul M. Monteleoni
        Lara Pomerantz
        Catherine E. Ghosh
        Assistant United States Attorneys
        (212) 637-2431/2109/2219/2343/1114
        Christina A. Clark
        Special Assistant United States Attorney
        (202) 307-5191

cc:    (by ECF)

      Counsel of Record