Case 1:23-cr-00490-SHS   Document 486   Filed 06/27/24   Page 1 of 6



Lawrence S. Lustberg

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731 Fax: +1 973-639-6285
llustberg@gibbonslaw.com

June 22, 2024

**VIA ECF**

Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 23A
New York, New York 10007

          **Re:   United States of America v. Menendez, et al.,
           Dkt. No. 23-cr-490-SHS**

Dear Judge Stein:

      Please accept this letter, on behalf of Defendant Wael Hana, in lieu of a more formal motion *in limine* seeking the admission of testimony (or, in the alternative, a stipulation) under Federal Rule of Evidence 613(b) regarding contradictions between the trial testimony of Jose Uribe and his prior statements to the Government.[1]  In its opening statement, the Government told the jury that the evidence would show that Nadine Menendez "asked for [Mr.] Hana's company to pay off her late mortgage payments on her house"; that "[Mr.] Hana made the payment"; and that it was a "lie" that "the payment from Hana to Nadine's mortgage company was . . . a loan." 5/15/24 Tr. at 56:3-14; *id.* at 63:6-7.  During its direct examination of Mr. Uribe, the Government elicited testimony that was flatly inconsistent with a prior statement that Mr. Uribe had made to the Government regarding whether Nadine would pay Mr. Hana back for those mortgage payments. For the reasons below, Mr. Hana should be entitled to introduce Mr. Uribe's prior inconsistent statement for the purpose of impeaching his trial testimony.

**Mr. Uribe's Meeting with the Government**

      In one of his close to 30 sessions with the Government prior to testifying in this matter, Mr. Uribe, at a meeting with the Government on December 22, 2023, was shown a document containing a lengthy text message from Nadine Menendez (then Arslanian) to him dated June 15, 2019; this text message was later incorporated into Government exhibits (GX 1302, 1319) and introduced at trial. The message from Nadine stated the following:

---

[1] This letter and its accompanying exhibits were originally filed under seal on Saturday, June 22, 2024.  The parties have conferred regarding appropriate redactions and the letter and exhibits are now being filed on the public docket.

New Jersey   New York   Pennsylvania   Delaware   Washington, DC   Florida     gibbonslaw.com

GIBBONS P.C.

June 22, 2024
Page 2

> Thank you Jose. I did not make up the figure it came straight from the mortgage company. They will not even take payments on it.
>
> I NEVER forget when someone is there for me in bad times. NEVER . and I end up paying them back 100 fold.
>
> I will show him the letter from the mortgage company. This is nothing to him it's everything to me plus I saved him $15,000 at least that he was willing to give Karyann And he would never seen that money back
>
> When I feel comfortable and plan the trip to Egypt he will be more powerful than the president of Egypt.
>
> I have never asked for anything in the last two years . What I have done as priceless I would never have asked if I wasn't in the situation I am now.
>
> I will pay him back .
>
> Just finished with the family making the funeral arrangements. I can't believe he still has not called me once to ask or left me a message knowing she was going into surgery on Wednesday. He and Andy know what she meant to me. Maybe that's why he's not calling it's too late now and he realizes
>
> God for bid his mom passes away I would do everything and be there every hour of the day for him.
>
> Thank you

GX 1302 at 63; GX 1319 at 3.  At the referenced meeting with the Government, Mr. Uribe expressly stated to the Government that he understood the message "I will pay him back" to mean that Nadine Arslanian was going to pay Wael Hana back $18,000 for payments made to bring her mortgage current; this statement was memorialized in notes of this meeting memorialized in FBI 302s authored by Special Agents ▆▆▆▆▆▆▆▆ and ▆▆▆▆▆▆ and provided to the defense by the Government under 18 U.S.C. §3500.  See Exhibit A (GX 3542-037 at 10).

**Mr. Uribe's Testimony on Direct Examination**

At trial, Mr. Uribe was asked about this statement from Nadine on both direct and cross examination, and gave testimony that was clearly inconsistent with what he had previously told

GIBBONS P.C.

June 22, 2024
Page 3

the Government. Specifically, on direct examination, Mr. Uribe and the Government had the following colloquy:

> Q: Did there come a time when Nadine complained to you about Will not helping her with mortgage payments?
> A: Yes
> Q: What, if any, issues did Nadine tell you she had with her home?
> A: She was – she had fell behind in the payments and she was about to lose her home.
> Q: What, if anything, did Nadine tell you about whether anyone was helping her with her mortgage payments?
> A: She told me that Will [Hana] was going to help her with her mortgage payment, to bring the house, the payment mortgage up to date.

6/10/2024 Tr. at 3057:12-23.

The Government then showed Mr. Uribe GX 1319, a chart containing the lengthy text message from Nadine to Mr. Uribe that was shown to Mr. Uribe at his December 22, 2023 meeting with the Government and containing the following language: "I will pay him back." Mr. Uribe was asked by the Government on direct examination: "Mr. Uribe, did Nadine ever tell you that she was paying Will back for mortgage payments?" 6/10/2024 Tr. at 3061:2-7. Significantly, he responded: "No, she never did." *Id.*

**Mr. Uribe's Testimony on Cross Examination**

On cross-examination, Mr. Uribe was asked about this issue again. He testified that "Nadine was having some financial problems paying her mortgage"; that "she was complaining to [Uribe] that Will [Hana] had said he was going to help her but he wasn't doing that"; and that it was like Mr. Uribe was "in the middle of two children fighting." 6/11/2024 Tr. at 3313:14-25. He was then asked about his earlier testimony that Nadine told Mr. Uribe that she would pay Mr. Hana back for the mortgage payments. Mr. Uribe was shown GX 1319 again, specifically the line from Nadine stating that "I will pay him [Will Hana] back," and was asked if he remembered meeting with the Government and telling them that "when Nadine told you I will pay him back, [he] understood that Nadine was saying that she was going to pay Will [Hana] back the $18,000 that he let her borrow?" He said he did not recall making that statement. Mr. Uribe was shown page 10 of Exhibit A and asked if it refreshed his recollection; he stated that it did not. 6/11/2024 Tr. at 3314:22-25; 3315:1-25.

Mr. Uribe's trial testimony on direct examination was thus inconsistent with what he had previously told the Government. His statement at the December 22, 2023 meeting was that Nadine had told him that she would repay Mr. Hana for her mortgage payments. His statement at trial was

3

GIBBONS P.C.

June 22, 2024
Page 4

that she never told him any such thing. Mr. Hana's counsel confronted Mr. Uribe with his prior inconsistent statement at trial and given a chance to explain or deny it; he did neither, but instead stated that he did not recall making that statement.

**Mr. Hana's Proposed Stipulation**

To properly impeach this critical testimony, and to avoid the necessity of calling one of the case agents who heard Mr. Uribe's statement at the December 22 meeting, Mr. Hana's counsel emailed the Government a proposed stipulation, attached to this letter as Exhibit B. The Government declined to execute this stipulation, stating that "there is not a sufficient basis under Rule 613(b), and the statement is otherwise hearsay." Mr. Hana's counsel responded, explaining that impeachment evidence introduced under Rule 613 need not have a hearsay basis in order to be admissible for a non-hearsay purpose; the undersigned counsel indicated that, if the Government were to not enter into the stipulation, it would necessitate calling Special Agent ▌, or another case agent, to testify as to Mr. Uribe's statement to the Government. The Government responded that it still considered the statement inadmissible under Rule 613(b), contending that Mr. Uribe "did not deny making the [prior] statement, and it is not inconsistent [with] his testimony, in which he agreed that the message says what it says, just as he said in the interview to which you refer."

**Federal Rule of Evidence 613(b)**

Federal Rule of Evidence 613(b) provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Testimony from Special Agent ▌, or, in the alternative, the proposed stipulation, satisfies the requirements of this Rule.

*First*, Mr. Uribe's prior statement to the Government is obviously inconsistent with his later testimony at trial. In the prior statement to the Government, Mr. Uribe stated that he "understood the message 'I will pay him back' to mean that ARSLANIAN was going to pay back the $18k" to Mr. Hana. Ex. A at 10. But at trial, he stated that Ms. Arslanian did not "ever tell [him] that she was paying Will [Hana] back for mortgage payments." 6/10/2024 Tr. at 3061:2-7. These statements are flatly inconsistent; the former states that Nadine told Mr. Uribe that she would pay Mr. Hana back, the latter that she did not.

*Second*, on cross-examination by Mr. Hana's counsel, Mr. Uribe was given the opportunity to explain or deny the prior statement that Rule 613(b) requires; instead of explaining or denying the statement, he testified that he did not recall making it. But this does not mean that he was not provided the opportunity that the Rule demands.

*Finally*, the Government was given an opportunity on redirect examination to examine Mr. Uribe about the prior statement, and chose not to do so.

The Government disagrees that Mr. Uribe's earlier statement is inconsistent with his trial testimony. In its correspondence with Mr. Hana's counsel, the Government seeks to elide the manifest inconsistency by stating that Mr. Uribe "did not deny making the statement" to the Government, and that the statement was in any event "not inconsistent [with] his testimony, in which he agreed that the message says what it says, just as he said in the interview to which you refer." Neither argument is correct. *First*, whether or not Mr. Uribe denied making the statement to the Government is immaterial, and misidentifies the relevant inconsistency. The discrepancy at issue is not that Mr. Uribe testified at trial that he did not make a prior statement to the Government, when he in fact did so; the discrepancy is that his prior statement regarding his understanding of Nadine's text message contradicted his trial testimony. *Second*, the fact that Mr. Uribe agreed that the message from Nadine "says what it says" only strengthens the inconsistency between his trial testimony and his prior statement. Mr. Uribe's trial testimony could not be clearer: he specifically stated that Nadine never told him "that she was paying Will back for mortgage payments." 6/10/2024 Tr. at 3061:2-7. Mr. Uribe was aware of the text message stating that "I will pay him back"—indeed, it was on the screen while he was testifying—and nevertheless gave that testimony. His awareness of the text message, coupled with his sweeping statement regarding Nadine's communications with him, necessarily implies that, at the time of trial, he did not view the text message "I will pay him back" as meaning that Nadine would pay Mr. Hana back. This is in direct contradiction to the statement Mr. Uribe made to the Government.

As a result, Mr. Uribe's prior statement is indisputably admissible to impeach his trial testimony. In particular, contrary to the Government's position, there is no requirement that a prior inconsistent statement under Rule 613(b) must satisfy a hearsay exception, so long as it is introduced for a non-hearsay purpose. Moreover, hearsay is not here implicated: under governing Second Circuit law, "prior inconsistent statements offered for impeachment are, by definition, not hearsay. . . . Prior inconsistent statements are not offered for their truth, but rather to demonstrate the witness's lack of credibility." *United State v. Mergen*, 543 F. App'x 46, 49 (2d Cir. 2013); *Santos v. Murduck*, 243 F.3d 681, 684 (2d Cir. 2001) (prior inconsistent statements are admissible for impeachment purposes). Because Mr. Uribe's prior statement would, then, not be admitted for its truth, but only to demonstrate Mr. Uribe's lack of credibility—obviously a crucial issue in the case, it need not meet the requirements of Federal Rule of Evidence 801(d)(1)(A). *See, e.g.*, *Rivera v. Incorporated Village of Farmingdale*, 29 F. Supp. 3d 121, 139 (E.D.N.Y. 2013) ("The purpose of extrinsic evidence concerning Graf's 'prior inconsistent statement[]' . . . would not be to demonstrate the 'truth' of the prior statement, but rather to demonstrate his lack of credibility as a witness."); *see also United States v. Demosthene*, 334 F. Supp. 2d 378 (S.D.N.Y. 2004) (taped conversation between defendant's wife and cooperating witness was hearsay and not admissible for the truth, but could be used to impeach witness if he denied having made statements or contradicted statements in tape, holding that "[t]he Court finds that the recording constitutes an unsworn, out-of-court statement by a testifying witness that does not fall within any recognized

GIBBONS P.C.

June 22, 2024
Page 6

exception to the hearsay rule. As such, it may not be admitted to prove the truth of the matters asserted therein. As discussed above with respect the Demosthene's post-arrest statements, however, Federal Rule of Evidence 613(b) would permit Demosthene to use the tape recording to impeach Galette if Galette denies having made the statements he made in the taped recording or directly contradicts statements made therein."). And any concerns regarding the jury's consideration of such testimony can be mitigated by an appropriate limiting instruction, which Mr. Hana would not oppose.

**Conclusion**

The Government is aware that Mr. Uribe previously told the prosecutors that he understood Nadine's text to mean that she would pay Mr. Hana back for his payment of her mortgage. It nevertheless elicited testimony at trial that Nadine never told Mr. Uribe that she would pay Mr. Hana back for the mortgage. In order to impeach this false testimony, Mr. Hana has the right to elicit Uribe's prior inconsistent statement under Federal Rule of Evidence 613(b). Mr. Hana therefore respectfully requests that the Court permit the testimony of Special Agent ▮▮▮▮ (or another agent who attended the December 22, 2023 meeting between the Government and Mr. Uribe), or, in the alternative, admit such stipulation as the parties may agree upon containing the above information, along with (if the Government requests it) an appropriate limiting instruction indicating that Mr. Uribe's prior statement is not to be considered for its truth but for impeachment only.

Thank you for your kind consideration of this matter.

Respectfully submitted,

*s/ Lawrence S. Lustberg*

Lawrence S. Lustberg