

Lawrence S. Lustberg

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731 Fax: +1 973-639-6285
llustberg@gibbonslaw.com

July 6, 2024

**VIA ECF**

Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 23A
New York, New York 10007

      **Re:** **United States of America v. Menendez, et al., Dkt. No. 23-cr-490-SHS**

Dear Judge Stein:

    Please accept this brief letter motion on behalf of defendant Wael Hana, most respectfully seeking reconsideration of Your Honor's ruling precluding the presentation of defense witnesses. Specifically, on June 26, 2024, the Government moved to preclude much of Mr. Hana's defense case as irrelevant. ECF No. 485. Mr. Hana responded on June 28. ECF No. 487. On July 3, 2024, this Court granted most of the Government's motion, excluding several witnesses who would have testified as to IS EG Halal's operations after 2019, because "what's relevant is the time period up to the awarding of the monopoly contract in April of 2019 and the McKinney phone call, and perhaps a few months after that, to account for the disruptions in the market due to the award of the monopoly, or lack of disruptions in the market. But that's the time period. Yes, the conspiracy is alleged to continue beyond that. But there's nothing that I see in the indictment in regard to this aspect of the conspiracy that extends beyond April, May, June, that area of 2019. . . . I don't think it's relevant that IS EG Halal is a thriving business currently, if it is." Trial Transcript at 6061:6-16, 20-22. In response, counsel for Mr. Hana contended that while not dispositive of the question of whether IS EG Halal was a viable entity in 2019, that it has been in the years since, including today, is relevant and should be admitted for whatever weight the jury may give it. *Id.* at 6067:5 – 6068:24. The Court nonetheless adhered to its ruling. *Id.* at 6069:7-8.

    Since the argument, Mr. Hana has located pertinent authority supporting his application, authority which runs contrary to the Court's ruling. In general, that authority establishes that "the definition of relevance under Fed. R. Evid. 401 is very broad." *United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014). And the "standard of relevance established by the Federal Rules of Evidence is not high." *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985). "[E]vidence need not be conclusive in order to be relevant. An incremental effect . . . is sufficient." *Doe v. New York City Dep't of Social Servs.*, 649 F.2d 134, 147 (2d Cir. 1981). Thus, even documents with low relevance may still be relevant, and "[a]ny question as to the weight to be accorded a relevant document is a matter for the jury." *Sir Speedy, Inc. v. L&P*

GIBBONS P.C.

July 6, 2024
Page 2

*Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992). *See also United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, J.) ("The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved . . . does not render the evidence irrelevant.").

More specifically, courts have, in light of these principles, consistently held that subsequent events are relevant to the interpretation or understanding of preceding events, so long as evidence of those later events satisfies the minimal requirements of Federal Rule of Evidence 401. *See, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) (noting that "so long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry" and reversing exclusion of evidence postdating grand jury investigation that had a tendency to show that the defendant had forgotten about investigation). As Second Circuit Judge Straub has written, "the mere fact that proffered evidence came into existence after the events that the evidence is proffered to prove does not render the evidence irrelevant." *United States v. Miller*, 626 F.3d 682, 692 (2d Cir. 2010) (Straub, J., dissenting).[1]

Whether or not IS EG Halal was a competent, functioning business during the time period since 2019 satisfies the low standard of Rule 401 and is relevant to rebutting the Government's repeated insinuations that IS EG Halal was not qualified to receive its sole source contract from Egypt (though they have denied that this is its theory of prosecution, *see* Apr. 23, 2024 Tr. at 17:7-11 (stating that the Government is "not alleging that Senator Menendez caused Egypt to give the monopoly to Mr. Hana"). Specifically, as Mr. Hana has shown, *see* ECF No. 487 at 2-3, Government witnesses have testified that IS EG Halal was not worthy of receiving the sole source contract it did. But the high quality of IS EG Halal's operation since that time and now undermines those allegations, demonstrating that Mr. Hana in fact had the capacity to build a strong and successful organization from the very outset.

---

[1] For example, courts permit evidence of financial indicators like exchange rates that post-date a defendant's allegedly illegal trades to assess whether the defendant "acted with the requisite [illegal] intent or instead traded for a legitimate purpose." *United States v. Phillips*, 2023 U.S. Dist. LEXIS 183192, at *10-11 (S.D.N.Y. Oct. 10, 2023) ("Defendant's subjective belief is a critical issue in this case. And while the Government is correct that Defendant could not have known with absolute certainty what the USD/ZAR exchange rate would be in advance, evidence that corroborates the reasonableness of the legitimate investment thesis Defendant has proffered for his trades makes it "more . . . probable" that he traded on that basis." (quoting Fed. R. Evid. 401(a)). *See also In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 252 (S.D.N.Y. 2022) ("[C]ourts have held that such hindsight evidence is relevant, though not dispositive, in determining the reasonableness of a projection or prediction.").

GIBBONS P.C.

July 6, 2024
Page 3

      Nor would this evidence be time-consuming or confusing. Indeed, at this point, Mr. Hana—mindful of the Court's concern that information regarding operations outside of the United States is less relevant—moves only for permission to permit testimony from a single IS EG Employee (Employee-4), who would testify briefly as to IS EG Halal's review, certification, and onboarding process for all clients and thus the integrity of its operations today, and in the years since the grant of its contract with Egypt in 2019. This brief testimony—likely less than 15 minutes on direct examination, including the introduction of a few exhibits (previously agreed to by the Government and provided herewith to the Court for its consideration in connection with this motion, *see* Exhibits A-G (DX-Hana 030 through 036))—would not necessitate a change to the schedule set by the Court on July 3. It would, however, provide important information which should, in the interest of justice, be available to the jury, given the Government's presentation.

      Thank you for your kind consideration of this matter.

Respectfully submitted,

*s/ Lawrence S. Lustberg*

Lawrence S. Lustberg