O7C3MEN1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                v.                        23 Cr. 490 (SHS)

5   ROBERT MENENDEZ,
    WAEL HANA, a/k/a "Will Hana,"
6   and FRED DAIBES,

7                Defendants.
                                          Trial
8   ------------------------------x

9                                         New York, N.Y.
                                          July 12, 2024
10                                        9:45 a.m.

11

12  Before:

13                    HON. SIDNEY H. STEIN,

14                                        District Judge
15                                        -and a Jury-

16                    APPEARANCES

17  DAMIAN WILLIAMS
         United States Attorney for the
18       Southern District of New York
    BY:  PAUL M. MONTELEONI
19       DANIEL C. RICHENTHAL
         ELI J. MARK
20       LARA E. POMERANTZ
         CATHERINE E. GHOSH
21       Assistant United States Attorneys

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O7C3MEN1

1

2                          APPEARANCES CONTINUED

3

PAUL HASTINGS LLP
4        Attorneys for Defendant Menendez
BY:  ADAM FEE
5        AVI WEITZMAN
         PAUL GROSS
6        RITA FISHMAN

7

8   GIBBONS, P.C.
         Attorneys for Defendant Hana
9   BY:  LAWRENCE S. LUSTBERG
         ANNE M. COLLART
10        CHRISTINA LaBRUNO
         ANDREW J. MARINO
11        RICARDO SOLANO, Jr.
         ELENA CICOGNANI
12        JESSICA L. GUARRACINO

13

14  CESAR DE CASTRO
    SETH H. AGATA
15  SHANNON M. McMANUS
         Attorneys for Defendant Daibes
16

17

    Also Present:
18  Emna Zghal, Interpreter (Arabic)
    Rodina Mikhail, Interpreter (Arabic)
19

20

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

 1            (Trial resumed; jury not present)

 2            THE COURT:  The jury is here.  Please be seated.

 3            My current intention is not to give the indictment to

 4    the jury at the beginning.  I don't think that's needed.  But

 5    if they do ask for it, I'll give it to them.  So the parties

 6    should look at the indictment, and if they think there is any

 7    redactions that are needed to take place, you'll let me know.

 8    And then I'll rule on that if there is an issue.

 9            (Jury present)

10            THE COURT:  Good morning, ladies and gentlemen of the

11    jury.  If you're following along, I'm going to pick up where I

12    left off yesterday, which is at page 36.  And if you're not

13    following along, obviously, simply listen.

14            And this next charge I'm going to give you, you

15    already know because I gave it to you a couple of times during

16    the course of the trial and during the course of the

17    summations.  Actually, not during the trial itself, but during

18    summations I gave you the charge.

19            There are several individuals whose names you have

20    heard during the course of this trial but who did not testify

21    here in front of you.  I instruct you that each party had an

22    equal opportunity or lack of opportunity to call any of those

23    witnesses.  You should not draw any inferences or reach any

24    conclusions as to what they would have testified to had they

25    been called.  Their absence should not affect your judgment in

1    any way.

2            You should, however, remember that the law does not

3    impose on a defendant in a criminal case the burden or duty of

4    calling any witness or producing any evidence.  You know that;

5    I've told you that several times.

6            The defendants have called one or more witnesses who

7    have given an opinion of those defendants' characters or

8    reputations.  This testimony is not to be taken by you as the

9    witness's opinion as to whether each defendant is guilty or not

10   guilty.  That question is for you alone to determine.

11           You should, however, consider this evidence, together

12   with all the other facts and evidence in this case, in

13   determining whether the defendant you are considering is guilty

14   or not guilty of the charges against that defendant.

15           Thus, after considering all of the evidence, including

16   testimony about the witness's opinion of that defendant's good

17   character or reputation, you find a reasonable doubt has been

18   created as to a particular charge or charges, you must acquit

19   that defendant of those charge or charges.

20           On the other hand, after considering all of the

21   evidence, including that of the witness's opinion of that

22   defendant's character or reputation, you're satisfied beyond a

23   reasonable doubt that the defendant you are considering is

24   guilty, you should not acquit that defendant merely because you

25   believe that witness believes that defendant to be a person of

1    good character or to have a good reputation.

2            Now, the three defendants here did not testify in this

3    case.  Under our Constitution, a defendant has no obligation to

4    testify or to present any evidence, because it's the

5    government's burden to prove each defendant guilty beyond a

6    reasonable doubt, and that burden remains with the government

7    throughout the entire trial, and never shifts to the defendant.

8    Again, you already know that.

9            A defendant is never required to prove he is innocent.

10   Therefore, you may not attach any significance to the fact that

11   the three defendants here did not testify in this trial.  No

12   adverse inference against a defendant may be drawn by you

13   because that defendant did not take the witness stand and

14   testify.  You may not consider this against the defendant you

15   are considering in any way in your deliberations.

16           Some of the people who may have been involved in the

17   schemes alleged in this trial are not on trial.  That does not

18   matter.  You may not draw any inference, favorable or

19   unfavorable, toward the government or the defendants from the

20   fact that individuals other than these three defendants were

21   not named as defendants in the indictment in this action.  Nor

22   may you speculate as to the reasons why other persons are not

23   defendants here before you.  Those matters are wholly outside

24   your concern, and have no bearing on your function as jurors.

25           During this trial, the defendants have contended that

1    their actions were motivated by considerations that were not

2    unlawful.  However, even if true, it is not a defense to any

3    count that the defendant may have been motivated by both proper

4    and improper motives.  A defendant may be found to have the

5    requisite intent, even if he possesses a dual intent -- that

6    is, an unlawful intent and also a proper or a neutral intent.

7         Proof of motive is not a necessary element of the

8    crimes with which the defendants are charged.  Proof of motive

9    does not establish guilt nor does the lack of proof of motive

10   establish that a defendant is not guilty.  If the guilt of a

11   defendant is shown beyond a reasonable doubt, it is immaterial

12   what that defendant's motive for the crime or crimes may be, or

13   whether any motive be shown.  But the presence or absence of

14   motive is a circumstance which you may consider as bearing on

15   the intent of a defendant.

16        You have heard testimony that one or more of the

17   defendants made or caused others to make certain statements to

18   law enforcement or prosecutorial authorities in which he

19   claimed that his conduct was consistent with innocence and not

20   with guilt.  The government claims that these statements in

21   which the defendant attempted to exculpate himself are false.

22        If you find that a defendant gave a false statement in

23   order to divert suspicion from himself, you may, but are not

24   required to, infer that that defendant believed that he was

25   guilty.  You may not, however, infer on the basis of this alone

1    that the defendant is in fact guilty of the crimes with which

2    he is charged.

3            Whether or not the evidence as to a defendant's

4    statements shows that the defendant believed he was guilty and

5    the significance, if any, to be attached to any such evidence,

6    are matters for you, the jury, to decide.  And you know that

7    also because those are issues of fact.

8            Now, in this next charge, I've also told you before

9    right now.  The question of any possible punishment of the

10   defendant you are considering in the event of conviction is of

11   no concern to you, and should not in any sense enter or

12   influence your deliberations.  The duty of imposing any

13   sentence in the event of conviction rests exclusively upon me.

14   That's part of my job.  Not yours.

15           Your function is to weigh the evidence and to

16   determine whether or not each defendant is guilty beyond a

17   reasonable doubt based solely on the basis of evidence in this

18   trial.  Under your oath as jurors, you cannot allow

19   consideration of the punishment that may be imposed upon the

20   defendant in the event of conviction to influence your verdict

21   in any way or in any sense enter into your deliberations.

22           Those are my general instructions.  Now I'll turn to

23   the indictment itself, and give you first an overview.

24           The defendants -- Robert Menendez, Wael Hana, and Fred

25   Daibes -- have been charged in an indictment or also called a

1    superseding indictment.  Remember, the indictment is simply an

2    accusation.  It's the means by which a criminal case is

3    started.  It is not evidence, it is not proof of the guilt of

4    any defendant, it creates no presumption, and it permits no

5    inference that any defendant is guilty.  The law is just the

6    opposite.  You know that each defendant is presumed innocent of

7    the crimes charged, unless and until you find the government

8    has proven that defendant guilty beyond a reasonable doubt.

9          You are to give no weight to the fact that an

10   indictment has been returned against each of these defendants.

11   And each of the three defendants here has pled not guilty to

12   the charges in the indictment.

13         There are 18 counts.  Each count charges one or more

14   defendants with a different crime.  You must consider each

15   count separately and return a separate verdict of guilty or not

16   guilty for each.  Whether you find the defendant or defendants

17   guilty or not guilty as to one offense should not affect your

18   verdict as to any other crimes charged.

19         I'll now summarize the offenses.  And I can tell you

20   that I'm going to give you, I'll give the foreperson the

21   verdict sheet, and this will help you help guide your

22   deliberations.  And it's quite straightforward, and it goes

23   count by count, Count One, Count Two, and so forth.  And it

24   says what the charged crime is.  For example, in Count One it

25   says "conspiracy to commit bribery."  And then it will tell you

1   which defendants are charged in that count.  It's all laid out

2   for you.

3          So Count One, the three defendants charged in Count

4   One, conspiracy to commit bribery are Mr. Menendez, Mr. Hana,

5   and Mr. Daibes, and there is a line for each, then it says

6   guilty and not guilty.  Guilty or not guilty.  When you reach a

7   unanimous verdict on each defendant, you'll check the relevant

8   box, and you go right through to Count 18.  And then at the

9   end, after a unanimous verdict has been reached on each of the

10  counts against each of the defendants charged in each of those

11  counts, you'll sign, every juror will sign the verdict form.

12  It helps order your deliberations, if you choose to follow that

13  order.

14         Now, I've told you what that there are 18 counts.

15         Count One charges that Mr. Menendez, Mr. Hana, and

16  Mr. Daibes participated in a conspiracy to bribe a public

17  official from approximately 2018 until approximately 2023.

18         Conspiracy is an agreement by two or more people to

19  take an action or actions that violate the law.  When I say

20  it's in or about 2018 through in or about 2023, this simply

21  means approximately 2018 to approximately 2023.

22         Count Two charges from at least approximately 2018

23  through approximately 2023, those three defendants participated

24  in a conspiracy to commit honest services wire fraud.

25         And later in these instructions I'll go through what

1    each of those counts means.

2          Count Three charges from approximately the same time

3    period, Mr. Menendez participated in a conspiracy to commit

4    extortion under color of official right.  Again, I'll later in

5    these instructions tell with you what that crime consists of.

6          Count Four charges from approximately the same time

7    period, Mr. Menendez and Mr. Daibes conspired to endeavor, that

8    is, seek, to obstruct justice in connection with the federal

9    criminal prosecution of Mr. Daibes in the District of New

10   Jersey.

11         Count Five charges in the same time period,

12   Mr. Menendez demanded or accepted or received a bribe as a

13   public official in connection with actions to benefit Mr. Hana

14   and the government of Egypt.

15         Now, this is a substantive count, not a conspiracy

16   count.  There are two different types in this indictment.

17   Remember, conspiracy is an agreement by at least two people to

18   commit an illegal act.  And Count Five is the first of the

19   substantive counts.  And I'll explain the difference in a

20   moment, but a conspiracy count is a different count than the

21   substantive count.

22         Six, Count Six charges in the same time period,

23   Mr. Hana and Mr. Daibes offered or paid a bribe to a public

24   official in connection with actions to benefit Mr. Hana and

25   Egypt.  This is also a substantive crime.

1          Count Seven, same time period, charges Menendez, Hana,

2     and Daibes with committing honest services wire fraud in

3     connection with actions to benefit Hana and Egypt.

4          Count Eight, same time period, charges Menendez

5     committed extortion under color of official right in

6     connections with actions to benefit Hana and Egypt.

7          Nine, same time period, charges Menendez and Hana

8     committed honest services wire fraud in connection with actions

9     to benefit Jose Uribe and associates of Mr. Uribe.

10         Count Ten, same time period, charges Mr. Menendez with

11    committing extortion under color of official right in

12    connection with actions to benefit Uribe and his associates.

13         Count Eleven, same time period, charges Menendez

14    demanded or accepted or received a bribe as a public official

15    in connection with actions to benefit Daibes and to assist

16    Daibes by acting for the benefit of the government of Qatar.

17         Count Twelve of the indictment charges, same time

18    period, Daibes offered or paid a bribe to a public official in

19    connection with actions to benefit Daibes or to assist him by

20    acting for the benefit of the government of Qatar.

21         Thirteen, same time period, charges Menendez and

22    Daibes with committing honest services wire fraud in connection

23    with actions to benefit Daibes, and to assist Daibes by acting

24    for the benefit of the government of Qatar.

25         Count Fourteen charges, same time period, Menendez

1    with committing extortion under color of official right in

2    connection with actions to benefit Daibes and to assist Daibes

3    by acting for the benefit of the government of Qatar.

4             Count Fifteen charges from at least 2018 through in or

5    about 2022, Menendez and Hana participated in a conspiracy to

6    violate the federal statute that makes it unlawful for a public

7    official, here Mr. Menendez, to act as an agent of a foreign

8    principal required to register under the Foreign Agents

9    Registration Act.  And during the trial that act has been

10   referred to as FARA.  FARA, which is how it's commonly known.

11            Count Sixteen charges, from the same time period, that

12   Menendez was a public official acting as a foreign agent.

13            Seventeen charges that from approximately June of 2022

14   through in or about 2023, Menendez participated in a conspiracy

15   to obstruct justice in connection with a federal investigation

16   here in the Southern District of New York.

17            Count Eighteen, which is the last count in the

18   indictment, charges from approximately June 2022 through 2023,

19   Menendez sought to obstruct justice in connection with a

20   federal investigation in the Southern District of New York.

21            Now, I've already told you this, and you can see from

22   the verdict sheet, that you have to consider each count

23   separately, and each defendant who is involved in that count

24   separately, and you have to return a separate verdict of either

25   guilty or not guilty on each count for each defendant.  Again,

1     it's all laid out in the verdict sheet.

2              Whether you find the defendant you are considering

3     guilty or not guilty as to one offense must not affect your

4     verdict as to any other offense charged or any other defendant.

5              Now let's turn to the difference between the

6     conspiracy counts and substantive counts.

7              Counts One, Two, Three, Four, Fifteen and Seventeen

8     charge the defendants with conspiring, that is agreeing

9     together, to commit certain crimes.

10             The other counts charge what are called substantive

11    crimes, which are the charges underlying the conspiracy.

12    Remember that conspiracy is simply an agreement to commit a

13    crime.  The substantive counts are the crimes that were the

14    objects of the conspiracies.

15             A conspiracy charge, generally speaking, alleges that

16    two or more people agreed together to accomplish an unlawful

17    objective or objectives.  The focus of a conspiracy count is on

18    whether there was an unlawful agreement.  There can be no

19    conspiracy unless at least two people reach such an agreement,

20    whether expressed or implied.

21             So when you're looking at the conspiracy counts,

22    think:  Was there an agreement here?  If so, what was it?

23             The substantive count, on the other hand, charges the

24    defendant with the actual or attempted commission, or with

25    aiding and abetting or causing the commission of a crime.

1          The substantive offense may be committed by one

2   individual, and it doesn't have to involve any agreement or

3   assistance from anyone else.  One individual alone can commit a

4   substantive offense.  A conspiracy to commit a crime is a

5   completely separate offense from a substantive crime, although

6   the commission of a substantive crime may be an object or a

7   purpose of a conspiracy.

8          Since the essence of the crime of conspiracy is an

9   agreement or an understanding to commit a crime, it does not

10  matter if the crime, which was the object of the conspiracy,

11  was never committed.  In other words, if a conspiracy exists

12  and certain other requirements are met, the conspiracy is

13  punishable as a crime, even if its purpose is never

14  accomplished.

15         Consequently in a conspiracy charge, there is no need

16  to prove that the crime or crimes that were the objectives of

17  the conspiracy actually were committed.

18         Do you see that, ladies and gentlemen?  The conspiracy

19  is an agreement to commit a crime.  That's the crime.  So, it

20  doesn't matter whether the crime was actually committed.  It

21  will for purposes of the substantive charge, but not for

22  purposes of the conspiracy charge.  Because it is the agreement

23  to commit a crime, that's the crime of conspiracy.

24         To give you a simple example.  If two people agree to

25  hold up a liquor store and do something that put the agreement

1    into motion, they have committed the crime of conspiracy to

2    commit robbery, even if they never rob the liquor store.

3          By contrast, conviction of a substantive count

4    requires proof that the crime charged actually was committed or

5    attempted, but does not require proof of an agreement.

6          To take the liquor store example, there can be no

7    substantive crime of robbery unless the liquor store is

8    actually robbed or attempted to be robbed.

9          Of course, if a defendant both participates in a

10   conspiracy and commits the crime that was the object of the

11   conspiracy, for example, if the defendant agrees with somebody

12   to rob the liquor store and then goes on to commit the robbery,

13   that defendant may be guilty of both the conspiracy and the

14   substantive crime of robbery.

15         With respect to the substantive counts, you should be

16   aware that there are two ways in which you may find a defendant

17   guilty.  The first way is that you may find that defendant

18   either committed, or willfully caused someone else to commit or

19   attempt to commit, the substantive crime charged in the

20   indictment.  I'm going to refer to that way as a claim that a

21   defendant is guilty of a crime as what we call a "principal."

22         The second way is that you may find someone other than

23   the defendant committed the substantive crime at issue, and the

24   defendant aided and abetted the commission of that crime.  I'll

25   refer to that as a claim that a defendant is guilty of a crime

O7C3MEN1                           Charge

1    as an aider and abettor.

2              For the sake of convenience, I'll instruct you first

3    with respect to the counts that charge substantive crimes, then

4    I'll instruct you on the conspiracy counts.

5              And you'll see as we go along, there are certain

6    conspiracy counts that require that an overt act be taken

7    before you can find a defendant guilty of the conspiracy.  And

8    there are other conspiracy counts that don't require an overt

9    act.  But I'll go through those as we come to them.

10             Now, first we're going to do the substantive crimes,

11   then we'll do the conspiracy crimes.

12             Counts Five and Eleven charge receipt of a bribe.

13   Don't infer anything from the number of the counts.  The order

14   that the crimes are charged are of no import to you.  It

15   doesn't matter what order they're charged in.

16             Count Five charges Menendez with demanding, receiving,

17   or accepting a bribe in return for certain official actions to

18   benefit the government of Egypt and to benefit Mr. Hana.

19             Count Eleven charges Menendez with demanding,

20   receiving, or accepting a bribe in return for certain official

21   actions to benefit Daibes and to assist him by acting for the

22   benefit of the government of Qatar.

23             The defendant named in Counts Five and Eleven is

24   simply Mr. Menendez.  Nobody else.

25             To establish a violation of demanding, receiving, or

O7C3MEN1                    Charge

1    accepting a bribe for a public official, the government has to

2    prove each of the following four elements beyond a reasonable

3    doubt.

4            Again, when you go through these, and you can go

5    through the verdict sheet in any order you want, if you want,

6    since the first ones charged are Five and Eleven, you can go to

7    those first on the verdict sheet.  That's entirely up to you.

8    As you go through it, you can look at each element and decide

9    amongst yourselves whether the government has proved each of

10   the elements beyond a reasonable doubt.  And if the government

11   has, then you check as to that defendant, then you check off

12   guilty.  If you unanimously feel that the government hasn't

13   proved one or more of those elements against the defendant you

14   are considering, then you check off not guilty.  And if there

15   are varying views within the jury, you'll deliberate until you

16   reach an unanimous verdict.  You exchange views.  That's the

17   essence of deliberations.

18           Let's look at those four elements of Counts Five and

19   Eleven.

20           First, that at the time alleged in the indictment,

21   Mr. Menendez was a public official;

22           Second, that he directly or indirectly demanded,

23   sought, received, accepted, or agreed to receive something of

24   value, or for another person or entity at Mr. Menendez's

25   direction or for his indirect benefit to receive something of

1    value;

2            Third, that he did so in return for being influenced

3    in the performance or non-performance of an official act; and

4            Fourth, that he acted with corrupt intent.

5            I'll explain all of those concepts.

6            Let's turn to the first element.  I just told you that

7    the first element that the government has to prove beyond a

8    reasonable doubt is that Mr. Menendez was a public official.

9    The term "public official" for these counts includes a member

10   of Congress, as well as an officer or employee or person acting

11   for or on behalf of the United States or any department,

12   agency, or branch of government thereof, including the District

13   of Columbia, and any official function under or by authority of

14   any such department, agency, or branch of government.

15           That's a lot of words, ladies and gentlemen.  But I

16   can cut through it.  I instruct you, as a matter of law, that a

17   United States Senator is a public official.  All right.  That's

18   taken care of.  That's my instruction.  You don't have to

19   deliberate about that.  So the first element is taken care of

20   in your deliberations, because I've instructed you that a

21   United States Senator is a public official.  And you know from

22   the evidence here that Mr. Menendez is a United States Senator.

23           Now let's turn to the second element.  The second

24   element is that Mr. Menendez, directly or indirectly, demanded,

25   sought, received, accepted, or agreed to receive something of

1    value, or for another person or entity at his direction or for

2    his indirect benefit to receive something of value.

3           Here the indictment alleges that Menendez, both

4    directly and through his wife Nadine Menendez, and you know

5    that before they were married her name was Nadine Arslanian,

6    demanded, sought, received, accepted, or agreed to accept a

7    thing of value or multiple things of value as alleged in the

8    indictment.

9           Under the law, seeking or agreeing to receive a bribe

10   is just as much a violation of the statute as actually

11   receiving one.  All right?  His agreement, if you find there to

12   be one, to receive a bribe or to seek to receive a bribe, is

13   just as much a violation as if he actually received one.  The

14   law makes no distinction between demanding, seeking, receiving,

15   accepting, or agreeing to receive a bribe.

16          You need not find that the defendant you are

17   considering did all of these things.  If you find that the

18   evidence proves the defendant you are considering did at least

19   one of those things, then the second element is satisfied.

20          "A thing of value" includes things possessing

21   intrinsic value, whether tangible or intangible, that the

22   person giving or offering or the person demanding or receiving

23   considers to be worth something.  It is not necessary that the

24   thing of value be given at all, or if given, that it be given

25   directly to the public official.  Rather, it is sufficient that

1  the defendant you are considering understood or believed that

2  the thing of value was demanded, sought, received, accepted, or

3  agreed to be received by a family member or another person or

4  entity at the public official's direction or with the public

5  official's approval or for that public official's indirect

6  benefit.

7          Now, again remember, ladies and gentlemen, that I've

8  told you always use your common sense here. There are a lot of

9  words there, and I want you to follow the words. But you know

10 what a thing of value is. Here the words, and again, you

11 should follow the words, but it's common sense as to what a

12 thing of value is.

13         Let's turn to the third element. The third element is

14 that Mr. Menendez engaged in a quid pro quo. There has been a

15 lot of talk about a quid pro quo. The third element is that

16 Mr. Menendez engaged in a quid pro quo transaction in which he,

17 directly or indirectly, demanded, sought, received, accepted,

18 or agreed to receive something of value or for another person

19 or entity at Mr. Menendez's direction or for his indirect

20 benefit to receive something of value, in return for being

21 influenced in the performance or non-performance of an official

22 act.

23         All right. I'll tell you what an official act is,

24 then I'll tell you what a quid pro quo is.

25         An official act means any decision or action on any

O7C3MEN1                          Charge

action or matter that may at any time be pending or that may by

law be brought before any public official in his official

capacity or in his place of trust.  I've already defined public

official.

An official act must involve a decision or action on a

specific question or matter.  Thus, you must find two distinct

requirements are met to find an official act.  First, there

must be a question or matter pending before a public official;

and second, there must be a decision or action on that question

or matter.

The question or matter must involve a formal exercise

of governmental power that is similar in nature to a lawsuit

before a court, a determination before an agency, or a hearing

before a committee.  The question or matter must be something

specific and focused that is pending or may by law be brought

before any public official.  "May by law be brought" means

something within the specific duties of an official's

position -- the function conferred by the authority of that

official's office.  It also means that the question or matter

must be something relatively circumscribed and concrete.  The

kind of thing that might be put on an agenda or tracked for

progress and checked off as complete.  It must be something

that may by law be brought before a public official or may at

some time be pending before a public official, but not

necessarily the official who is alleged to have demanded,

1    received, or accepted a bribe.

2              To qualify as an official act, the public official

3    must make a decision or take an action on the applicable

4    question or matter, or agree to do so.  The decision or action

5    does not need to be specifically described in any law, rule, or

6    job description to be considered by you to be an official act.

7              The decision or action may include using one's

8    official position to exert pressure on another official to

9    perform or not perform an official act.  It may also include

10   using one's official position to provide advice to another,

11   knowing or intending that such advice will form the basis for

12   an official act by another.

13             However, not every action taken by a public official

14   qualifies as an official act.  Some examples of actions that

15   are not without more official acts are setting up a meeting --

16   these are things that are not official acts -- setting up a

17   meeting isn't an official act.  Talking with a lobbyist or

18   another official isn't an official act.  Organizing an event,

19   expressing support for an action, decision, or idea, without

20   more, those actions by themselves do not constitute a decision

21   on a question or matter and are therefore not official acts.

22             That is not to say that sort of activity is not

23   relevant.  For example, such activity may be evidence of an

24   agreement to take official acts or to advise or pressure

25   another official to take official acts.

1          What's an official act, ladies and gentlemen?  It's

2     for you, because it is a fact issue.  You will decide what an

3     official act is in the context of these charges.

4          Bribery involves an exchange of a thing or things for

5     official action by a public official.  In other words, a quid

6     pro quo, which is Latin for this for that or these for those.

7          I'm going to be using it when I talk to you about the

8     bribery charges, and when I talk to you about the honest

9     services wire fraud charges, and when I talk to you about the

10    extortion charges.

11         The government has to prove that the defendant you are

12    considering demanded, sought, received, or agreed for a public

13    official to receive a thing of value in exchange for the

14    promise or performance or non-performance of an official act.

15    To prove a quid pro quo, the government must show both (1)

16    there was a particular question or matter on which the official

17    promised to act in exchange for the thing of value and (2) that

18    the particular question or matter was identified and agreed

19    upon at the time the public official, here Mr. Menendez,

20    accepted or agreed to accept the payment or benefit.

21         While the government is not required to prove that the

22    particular act of influence was identified at the time the

23    public official accepted or agreed to accept the payment or

24    benefit, it is not sufficient if the government only shows that

25    a public official simply promised to take some or any official

O7C3MEN1                        Charge

1    action.  The government must prove at a minimum that the public

2    official promised to take official action on a particular

3    question or matter as the opportunity to influence that same

4    question or matter arose.

5          A quid pro quo must be explicit.  It has to be clear

6    and unambiguous.  But it does not have to be expressed or

7    stated.  If it had to be expressed or stated, the law could be

8    easily frustrated by knowing winks and nods.  You know,

9    wink-wink, nod-nod.  The solicitation or receipt of a thing of

10   value in return for an official act can be implied from words

11   and actions, so long as you find that the defendant you are

12   considering understood at the time that a thing of value was

13   being sought or given or received in exchange for the promise

14   or agreement of a public official to be influenced in the

15   performance or non-performance of an official act.

16         It is not necessary that the public official in fact

17   performed or had the actual authority or ability to perform the

18   act which the defendant you are considering promised or sought

19   the public official to perform.

20         Bribery requires an intent to effect an exchange of

21   money or other thing of value for official action.  But each

22   payment may not be correlated with a specific official act.

23   The requirement that there be payment of a thing of value in

24   return for the agreement to perform an official act is

25   satisfied so long as the evidence shows it is a course of

1    conduct of things of value flowing to a public official in

2    exchange for official action -- or a pattern of official

3    actions -- on a particular question or matter to be influenced.

4             In other words, the intended exchange in bribery can

5    be this for these or these for these.  It doesn't have to be

6    just this for that.  It is not necessary for the government to

7    prove that the public official intended to perform a set number

8    of official acts or any in return for the payments.

9             Also, because people rarely act for a single purpose,

10   the government is not required to prove that the defendant you

11   are considering acted solely in return for a thing of value.

12   This element can be satisfied, regardless of whether the

13   parties to the exchange had a prior relationship, nor does it

14   matter who initiated the exchange.

15            Please note that although I'll refer to official acts,

16   this element can be satisfied if the bribe was demanded or

17   sought or received in exchange for influencing the public

18   official to refrain from taking an official act.

19            Put differently, a quid pro quo can either involve

20   taking an official act that is beneficial to the payor or it

21   can also involve refraining from performing an official act

22   that would be detrimental to the payor.

23            I'll refer to both as official acts.  So you can agree

24   to take an official act and you can agree to refrain from

25   taking an official act.

O7C3MEN1                          Charge

```
 1              Keep in mind that in considering this element, it is
 2    whether the defendant you are considering intended for a public
 3    official to demand or receive a bribe in return for being
 4    influenced in the performance of an official act that is
 5    important, not what actually happened later.  It is not a
 6    defense that the public official would have performed the
 7    particular official act without the influence of a thing of
 8    value.
 9              In other words, it's not a defense that had there been
10    no bribe, the official might have taken the same action anyway.
11    Or that the acts or promises sought or taken were lawful,
12    desirable, or beneficial to the public.
13              The defendant you are considering is guilty of
14    demanding or accepting or agreeing to accept a thing of value,
15    even if he would have, for other reasons, taken the same action
16    for which that thing of value was sought, demanded, or received
17    or agreed to be received.
18              Not every gift or thing of value given to a public
19    official constitutes a bribe.  Again, always use your common
20    sense here.  Under the law, giving a gift or thing of value to
21    a public official to cultivate friendship or to build goodwill
22    in hopes of ultimately affecting one or more unspecified
23    official acts now or in the future is not federal bribery.  For
24    bribery there has to be a quid pro quo, a specific intent to
25    give or receive something of value, in exchange for an official
```

 1    act as I've defined for you a few moments ago.

 2            Payments, sometimes referred to as goodwill gifts,

 3    made with no more than some generalized hope or expectation of

 4    ultimate benefit on the part of the donor, are thus not bribes,

 5    since they were made neither with the intent to engage in a

 6    relatively specific quid pro quo with an official, nor because

 7    of a specified official act.  As to each defendant, consider

 8    whether that defendant intentionally gave or received the gift

 9    as part of an intended exchange for an official act by

10    Mr. Menendez.

11            Now, let's turn to that fourth element.  Corrupt

12    intent.  Again, this is all common sense when you follow these

13    instructions.

14            Corrupt intent means to act with an improper motive or

15    purpose.  The defendant must have demanded, sought, received,

16    or agreed to receive a thing of value with the improper motive

17    or purpose of a public official being corruptly influenced in

18    the performance or non-performance of an official act.

19            This involves conscious wrongdoing or, as it has

20    sometimes been described, a bad state of mind.  Although the

21    defendant need not be aware of the specific law that he is

22    charged with violating.

23            The party demanding or receiving a thing of value may

24    have a different intent from the party giving it or any other

25    party involved in an alleged offense.  Therefore, you must

1    decide the intent of the receiver separately from the intent of

2    the giver or from the intent of other parties involved in the

3    alleged offense.  In considering this element, remember that it

4    is the public official's intent to be influenced which is

5    important.  Not the public official's subsequent actions, if

6    indeed he took any actions.

7            It is no defense that the defendant acted because of

8    both proper and improper motives, and the defendant you are

9    considering may have a corrupt intent, even if he possessed

10   both an unlawful intent to seek or receive a bribe, and some

11   other non-criminal intent.

12           Remember, direct proof of intent is not required.

13   Corrupt intent by an individual may be established by

14   circumstantial evidence of that person's state of mind,

15   including proof of a person's words and conduct and the logical

16   inferences that can be drawn from that proof.

17           (Continued on next page)

18

19

20

21

22

23

24

25

O7cWmen2                      Charge

1          THE COURT:  Now we'll turn to Counts Six and Twelve,

2   which are also substantive counts:  Offer or payment of a bribe

3   to a public official.

4          We've been discussing the charges related to a public

5   official demanding or accepting a bribe, and now I'll turn to

6   the charges related to offering or paying a bribe.  You see

7   those were one side of the coin.  This is the other side of the

8   coin.

9          Counts Six and Twelve charge Hana and Daibes with

10  offering or paying bribes to a public official.  So you see the

11  difference.  Five and Eleven had to do with demanding,

12  receiving or accepting a bribe on the part of a public

13  official.  And now Six and Twelve are the other side of the

14  transaction, offering or paying a bribe to a public official.

15         Count Six alleges that from approximately 2018 through

16  approximately 2023, Hana and Daibes offered and provided bribes

17  to Menendez, who, as you know, was a public official, directly

18  and through Nadine Menendez, in exchange for certain official

19  actions benefiting both the government of Egypt and Hana.

20  That's Six.

21         Twelve alleges that, during the same time period,

22  Daibes offered and gave bribes to Menendez, directly and

23  through Nadine, in exchange for certain official actions to

24  benefit Daibes and to assist Daibes by acting for the benefit

25  of the government of Qatar.

O7cWmen2                        Charge

1              In order to establish that Hana and Daibes are guilty

2      of the crime charged in Count Six or that Daibes is guilty of

3      the crime charged in Count Twelve, the government has to prove

4      beyond a reasonable doubt here, too, four elements.

5              First, that on approximately the dates at issue, the

6      defendant you are considering, offered, promised or gave money

7      or something else of value to or for the benefit of a public

8      official;

9              Second, that the person who received or benefited from

10     the thing of value was then a public official;

11             Third, that the defendant did so to influence an

12     official act; and

13             Fourth, that he acted with corrupt intent.

14             All right.  We'll do the first element.

15             The first element is that the defendant you are

16     considering offered, promised or gave money or something else

17     of value to a public official or for the benefit of a public

18     official.

19             The law does not distinguish between offering,

20     promising, giving or agreeing to give a thing of value.  The

21     simple offer or promise of a thing of value is just as much a

22     crime as the actual giving of the thing of value.  All right?

23     Offering it is just as much a crime and actually giving it.

24             It's not necessary for the payment to have been made

25     at all, or, if made, that it be made directly to the public

O7cWmen2                        Charge

1      official, but the evidence must establish that the defendant

2      you are considering understood or believed that the payment or

3      thing of value was offered, promised or given to a family

4      member or another person or entity at the public official's

5      direction or with the public official's approval or for that

6      public official's indirect benefit.

7              The second element the government has to prove beyond

8      a reasonable doubt is that Mr. Menendez was a public official.

9      And I've already instructed you that, as a matter of law, a

10     United States senator is indeed a public official.

11             The third element is that the defendant you are

12     considering gave, promised, or offered money or some other

13     thing of value to a public official or, as noted above, to

14     another person or entity at the public official's direction or

15     for the public official's indirect benefit, to influence any

16     official act.

17             Because I have already instructed you regarding what

18     official act and *quid pro quo* mean, I'm not going to do so

19     again.  Apply the same instructions that I gave you earlier

20     regarding these terms.

21             And they'll come up again and I'll refer you back to

22     the instruction.  These instructions are long enough without my

23     constantly repeating these items.  But they're all important.

24             In considering this element, remember it is the

25     defendant's intent to influence the public official's action,

O7cWmen2                    Charge

1   and not the subsequent actions of the public official, that is

2   important.  Thus, the government does not have to prove that

3   the public official accepted the bribe or did the act sought.

4   It is not necessary that the public official even had the power

5   or authority to perform the act that the defendant sought.  For

6   the same reason, it does not matter that the defendant intended

7   to influence an official act that was lawful, or even desirable

8   or beneficial to the public interest.

9          The fourth element is that the defendant acted with

10  corrupt intent.

11         I've already instructed you regarding corrupt intent,

12  and apply those instructions here.

13         You have been instructed that your verdict, whether

14  it's guilty or not guilty, must be unanimous.  Remember I've

15  told you that a couple of times.  You have to be unanimous on

16  each count against each defendant, one way or the other.

17         Count Six alleges that Hana and Daibes committed

18  bribery regarding actions to benefit Hana and Egypt.  Here, the

19  defendants contend that the government has alleged that the

20  defendants engaged in two bribery schemes: the first relating

21  to payments to obtain certain benefits for Egypt, including

22  foreign military sales and financing; and the second to protect

23  a business monopoly granted to IS EG Halal.  The government

24  contends that the defendants engaged in a single bribery

25  scheme.  You cannot convict any of the defendants on these

O7cWmen2                          Charge

1    counts unless you are unanimous that the government has proven

2    its case beyond a reasonable doubt as to the same alleged

3    bribery scheme.

4            For example, if half the jury finds beyond a

5    reasonable doubt only that the charged defendants engaged in

6    bribes relating to paying foreign military sales and financing,

7    while the other half of the jury finds beyond a reasonable

8    doubt only that they engaged in bribes relating to IS EG Halal,

9    there would be no unanimity as to the theory of criminality,

10   and the jury must find the defendants not guilty.

11           The government does not have to prove all of these

12   theories of liability for you to return a guilty verdict here.

13   Proof beyond a reasonable doubt on one liability theory is

14   enough.  But in order to return a guilty verdict, all of you

15   must agree unanimously that the same theory has been proved.

16           Now we'll turn to a grouping of other substantive

17   crimes, and this grouping is called honest services wire fraud.

18   It's Counts Seven, Nine and Thirteen.  And again, while you're

19   deliberating, if you want to follow this charge, you can just

20   go to Counts Seven, Nine and Thirteen on the verdict sheet.

21           Seven, Nine and Thirteen charge certain defendants

22   with committing honest services wire fraud.

23           Seven charges from approximately 2018 to approximately

24   2023, Menendez, Hana and Daibes participated in a scheme to

25   defraud the public, by paying bribes to Menendez, in exchange

O7cWmen2                          Charge

1    for Menendez taking or not taking certain actions that deprived

2    the public of the right to have Menendez's honest services in

3    connection with certain actions benefiting the government of

4    Egypt and Hana.

5            Nine alleges, from approximately that same period,

6    Menendez and Hana participated in a scheme to defraud the

7    public, by paying bribes to Menendez, in exchange for Menendez

8    taking or not taking certain actions that deprived the public

9    of the right of Menendez's honest services in connection with

10   certain actions benefiting an individual named José Uribe and

11   Uribe's associates.

12           Thirteen alleges, from approximately that same period,

13   Menendez and Daibes participated in a scheme to defraud the

14   public, by paying bribes to Menendez, in exchange for Menendez

15   taking or not taking certain actions that deprived the public

16   of the right of Menendez's honest services in connection with

17   certain actions to benefit Daibes and to assist Daibes by

18   acting for the benefit of Qatar.

19           Now let's go to the elements.

20           In order to establish the offense of honest services

21   fraud, the government must prove the following four elements

22   beyond a reasonable doubt:

23           First, that the defendant you are considering

24   knowingly devised or participated in a scheme to defraud the

25   public of its right to the honest services of Robert Menendez

O7cWmen2                    Charge

1    as a U.S. senator and/or the chairman or ranking member of the

2    Senate Foreign Relations Committee through bribery;

3             You'll remember, ladies and gentlemen, that during the

4    trial the Senate Foreign Relations Committee was referred to

5    either by the full name or referred to as the SFRC.

6             Second, that the defendant acted knowingly with an

7    intent to defraud;

8             Third, the scheme or artifice to defraud involved a

9    material misrepresentation, omission, false statement, false

10   pretense or concealment of fact; and

11            Fourth, that in advancing, or furthering, or carrying

12   out the scheme to defraud, the defendant transmitted, or caused

13   to be transmitted, any writing, signal or sound by means of an

14   interstate or international wire communication.

15            The first element of honest services wire fraud is

16   that the defendant knowingly devised or participated in a

17   scheme or artifice to defraud the public of its intangible

18   right to a public official's honest services through a bribery.

19            A public official owes the duty of honest and faithful

20   service to the public he serves.  Public officials owe a

21   fiduciary duty to the public.  When a public official seeks or

22   obtains a corrupt payment for himself or a third party in

23   exchange for official action, that official has breached his

24   duty of honest service.

25            A scheme or artifice is simply a plan to accomplish

O7cWmen2                    Charge

1    some goal.  I'll refer to that as a scheme.  It's simply a plan

2    to get to some goal.

3         A scheme to defraud is any plan, device or course of

4    action to deprive another of the intangible right of honest

5    services by means of false or fraudulent pretenses,

6    representations or promises reasonably calculated to deceive

7    persons of average prudence.

8         To prove that a defendant engaged in a scheme to

9    deprive the public of the honest services of a public official

10   through bribery, the government must show a *quid pro quo*; that

11   is, an agreement to exchange a thing or things of value for

12   official action by a public official.

13        I previously told you what a *quid pro quo* is, and the

14   instructions described earlier on *quid pro quo* apply here.  A

15   defendant can participate in bribery even if he did not

16   initiate the payments, as long as he participated in the scheme

17   knowing that the payment was offered, demanded or made in

18   exchange for influencing or seeking to influence the public

19   official's official actions.

20        Now, I told you earlier what an official act is.

21   Remember I listed what an official act is, and then I listed

22   certain things that were not official acts, and I told you you

23   decide what an official act is in the context of this case.

24        The instructions earlier about what an official act is

25   apply here but with one difference.  In the bribery counts --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O7cWmen2                    Charge

1    Five, Six, Eleven and Twelve -- an official act is one

2    performed or caused by a public official, which includes

3    federal official.  For the purposes of honest services wire

4    fraud, an official act may also be performed or caused by a

5    nonfederal government official.  In all other respects,

6    however, an official act for the purposes of honest services

7    wire fraud is the same as an official act for the purposes of

8    bribery.  In particular, just like with bribery, an official

9    act for the purposes of honest services wire fraud may include

10   using one's official position to exert pressure on another to

11   perform or not perform an official act.

12          So, for example, the use of one's official position to

13   exert pressure on a state or local official to perform an

14   official act is itself official action for the purposes of

15   honest services wire fraud.  Similarly, using one's official

16   position to provide advice to a state or local official,

17   knowing or intending that such advice will form the basis for

18   an official act by a state or local official, is official

19   action for the purposes of honest services wire fraud.

20          The second element of honest services wire fraud is

21   that the defendant participated in the scheme to defraud

22   knowingly and with a specific intent to defraud.

23          A person acts knowingly if he acts intentionally and

24   voluntarily and not because of ignorance, mistake, accident or

25   carelessness.

O7cWmen2                          Charge

1            Specific intent to defraud means to act knowingly and
2    with the specific intent to deceive for the purpose of
3    depriving the public of its right to a public official's honest
4    services.  In other words, the deceit may consist of concealing
5    or helping another to conceal the things of value that the
6    public official has solicited or received or the public
7    official's implicit false pretense that he is faithfully
8    performing his official duties, including the duty not to
9    accept payments or things of value in exchange for performing,
10   or promising to perform, an official act.
11           Direct proof of knowledge and fraudulent intent is
12   almost never available, ladies and gentlemen.  It would be a
13   rare case where it could be shown that a person wrote or stated
14   that as of a given time in the past he committed an act with
15   fraudulent intent.  That's, again, logical.  Common sense tells
16   you that.  Such direct proof is not required.  The ultimate
17   facts of knowledge and criminal intent, although subjective,
18   may be established by circumstantial evidence, based on
19   someone's outward manifestations, such as his words, his
20   conduct, his acts, and all the surrounding circumstances
21   disclosed by the evidence in this case and the rational or
22   logical inferences that you may draw from them.  Circumstantial
23   evidence, if believed, is of no less value than direct
24   evidence.  You know that, because I've told you that several
25   times.

O7cWmen2                    Charge

         In either case -- that is, in the case of

circumstantial evidence and in the case of direct evidence --

the essential elements of the crime must be established beyond

a reasonable doubt, and you know that also.

         The third element the government must prove beyond a

reasonable doubt is that the scheme or artifice to defraud

involved a material misrepresentation, false statement, false

pretense or concealment of fact.

         A representation, statement, false pretense, omission

or concealment of fact is material if it would naturally tend

to lead or is capable of leading a reasonable person to change

his conduct or is capable of influencing a decision or action

by the public.  Put another way, a material fact is one that

would be expected to be of concern to a reasonable and prudent

person in relying upon the representation or statement in

making a decision.

         It is not necessary that the government prove that the

public official actually made a decision or took any action or

suffered any financial or other measurable loss from the

alleged scheme.  And it is not necessary for the government to

prove that the defendants realized any gain from it.  It is

sufficient for the government to prove that the public did not

receive the honest and faithful services of Robert Menendez, as

I explained them above.

         The fourth and final element that the government must

O7cWmen2                              Charge

establish beyond a reasonable doubt is that interstate or

international wire communications were used in furtherance of

the scheme to defraud.

Wire communications include telephone calls, faxes,

emails, texts and wire transfers between banks or other

financial institutions or companies.  The wire communications

must pass between two or more states or between a state and the

District of Columbia or from outside the United States into the

United States or from into the United States -- I'm sorry, or

vice versa.  Let me do that again:  Or from outside the United

States into the United States or vice versa.

It's not necessary for the defendant you are

considering to directly or personally use any wire facility, or

cause any wire, as long as such use is reasonably foreseeable

in the execution of the alleged scheme to defraud.

In this regard, it would be sufficient to establish

this element of the crime if the evidence justifies a finding

that the defendant caused or expected the wires to be used by

others, and this does not mean that the defendant himself must

have specifically authorized others to use a wire facility.

When one does an act with knowledge that the use of the wire

will follow in the ordinary course of business or where such

use of the wires can reasonably be foreseen, even though not

actually intended, then he or she causes the wires to be used.

The use of the wire need not be fraudulent.  The

O7cWmen2                    Charge

1    material wired need not contain any fraudulent representation.

2    It doesn't even have to involve any request for money.  The use

3    of the wires, however, must further or assist in carrying out

4    the scheme to defraud.

5          If you find that the wire communication was reasonably

6    foreseeable and that the interstate wire use charged in the

7    indictment took place, then this element is satisfied even if

8    it was not foreseeable that the wire communication would cross

9    state or national lines.

10          If you find that wire communications were used in

11    furtherance of the scheme to defraud, you must be unanimous as

12    to at least one of the particular interstate or international

13    wire communications in furtherance of the scheme had occurred.

14          You've been instructed that your verdict, whether it's

15    guilty or not guilty, must be unanimous.

16          Count Seven alleges that the defendants committed

17    honest services wire fraud to benefit Hana and Egypt.  Just as

18    with Count Six, and I've told you that already, the defendants

19    contend that the government has alleged that the defendants

20    engaged in two bribery schemes: the first relating to payments

21    to obtain certain benefits for Egypt, including foreign

22    military sales and financing; and the second to protect the

23    business monopoly granted to IS EG Halal.

24          The government contends that the defendants engaged in

25    a single bribery scheme.  You cannot convict any of the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O7cWmen2                    Charge

1    defendants on these counts unless you are unanimous that the

2    government has proven its case beyond a reasonable doubt as to

3    the same alleged bribery scheme.  Just as I've told you with

4    Count Six, the government does not have to prove all of these

5    theories of liability in order for you to return a verdict of

6    guilty here.  Proof beyond a reasonable doubt on one liability

7    theory is enough to convict, but in order to do so, all of you

8    must agree unanimously that that same theory has been proven.

9          Now we'll go to another grouping.  We're marching

10   through the charge.

11         This grouping is Counts Eight, Ten and Fourteen,

12   extortion under color of official right.  They charge Menendez

13   with obtaining one or more things under the color of official

14   right.

15         Count Eight relates to the alleged scheme by Menendez

16   to obtain things of value from Hana and Daibes in exchange for

17   certain official actions benefiting the government of Egypt and

18   Hana.

19         Ten relates to the alleged scheme by Menendez to

20   obtain things of value from Hana and Uribe in exchange for

21   certain official actions benefiting Uribe and his associates.

22         Fourteen relates to the alleged scheme by Menendez to

23   obtain things of value from Daibes in exchange for certain

24   official actions benefiting Daibes and to assist Daibes by

25   acting for the benefit of the government of Qatar.

O7cWmen2                         Charge

1          The crime of extortion under color of official right

2     is the use of one's position as a public official, or the

3     authority of public office, to obtain money for oneself, or for

4     another person, knowing the thing of value was made in return

5     for official acts.

6          In the context of extortion under color of official

7     right, it is the public officer's official power that supplies

8     the necessary element of coercion, and the wrongful use of

9     official power need not be accompanied by actual or threatened

10    force, violence or fear.

11         Now let's go to the elements of extortion under color

12    of official right.

13         The government has to prove beyond a reasonable doubt

14    four elements:

15         First, that Menendez was a public official or held

16    public office during the relevant time period;

17         Second, that he obtained property for himself or

18    someone else not legitimately due him as a public official;

19         Third, that the property was given to Menendez or

20    someone else with the consent of the giver in exchange for

21    official action by Menendez and that Menendez knew that the

22    property was given in exchange for official action;

23         Fourth, that interstate commerce, or an item moving in

24    interstate commerce, was delayed, obstructed or affected in any

25    way or degree.

O7cWmen2                        Charge

1          All right.  Let's unpack each of those four.  The

2    first one you know by now.

3          The first element is that the government has to prove

4    beyond a reasonable doubt that, at the relevant time charged,

5    Menendez was a public official or held public office.  That you

6    know.

7          The second element is that he obtained property for

8    himself or for someone else that was not legitimately owed the

9    public office that he occupied; that is, that it was not

10   legitimately owed to Menendez in his capacity as a United

11   States senator.

12         The term "property" includes money and tangible or

13   intangible things of value that are capable of being

14   transferred; that is, capable of being given from one person to

15   another.

16         Here's another example, ladies and gentlemen.  You

17   know what property is.  This charge has a lot of words, and you

18   should follow them, but you know what property is.

19         The government does not have to prove that the

20   property was given to Menendez directly or that the property

21   personally benefited Menendez.

22         Again, it all makes sense.

23         Let's turn to the third element.

24         The third element the government must prove beyond a

25   reasonable doubt is Menendez used the authority of his public

O7cWmen2                    Charge

office to obtain the property for himself or for someone else

and that the property was given, at least in part, in exchange

for official action by Menendez.

This element requires the existence of a *quid pro quo*.

I've defined that earlier.

To prove a *quid pro quo*, the government must prove

that Menendez obtained the property to which he was not

entitled by virtue of his public office, knowing that it was

given in exchange for official acts.  The government must also

prove that the party giving the payment was motivated, at least

in part, by the expectation that, as a result of the payment,

Menendez would perform or decline to perform official acts for

the benefit of that party and that Menendez was aware of that

party's motivation.

Again, as I charged you earlier, it's not necessary

that Menendez or the person giving the property state the *quid

pro quo* in express or stated terms.  It can be implied from

words and actions, because otherwise the law's effect could be

frustrated by knowing winks and nods.  But a *quid pro quo* must

nonetheless be explicit; that is, it must be clearly and

unambiguously made.

This element can be satisfied even if the party giving

the payment initiated the *quid pro quo* and even if that party

and Menendez had a friendly prior relationship.  If you find

either to be the case, however, each is a factor that you

O7cWmen2                     Charge

1    should consider in deciding whether the party giving the

2    payment and Robert Menendez intended to enter into a *quid pro*

3    *quo*.  The government's burden is to prove that the promise or

4    performance of official acts was at least a part of the

5    motivation for the other party to give over the payment and at

6    least part of what Menendez understood was motivating the other

7    party.  Thus, if you find that the transfer or acceptance of

8    payment was for entirely different reasons, stemming from

9    friendship or any other innocent reason, then this element will

10   not have been proven.

11           The government does not need to prove that Menendez

12   could or actually did perform any specific official act on

13   behalf of the party giving the property.  A public official

14   need not have actual or final authority over the official act

15   sought by a payor as long as the payor reasonably believed that

16   the public official had influence, power or authority over the

17   official act sought by the payor and paid based, at least in

18   part, on that belief.  If Robert Menendez did take official

19   action on the part of the payor, it is not a defense if the

20   actions he took were desirable or beneficial or that he would

21   have taken the same action regardless of the receipt of a

22   payment from the other party.  The extortion laws, like the

23   bribery and honest services wire fraud laws, are concerned with

24   the manner in which public officials take or agree to take or

25   to seek to cause another to take official action, not with

O7cWmen2                    Charge

1    whether the official actions are good or bad.

2              I have mentioned several times that Counts Eight, Ten

3    and Fourteen involve payments in exchange for an official act.

4    I already defined that term for you earlier in connection with

5    Counts Seven, Nine and Thirteen, the honest services wire fraud

6    counts, and it has the same meaning here.  That is, like with

7    the honest services wire fraud counts, the official act must

8    involve a nonfederal official, unlike in the bribery counts,

9    which relate only to official acts by federal officials.

10             The fourth element the government must prove beyond a

11   reasonable doubt for Counts Eight, Ten and Fourteen is that a

12   defendant's action or an action that he caused affected or

13   could affect interstate commerce in any way or degree.  If you

14   decide that Menendez obtained property under color of official

15   right, you must then decide whether this action did affect, or

16   would have affected, commerce between two or more states or

17   between a state and the District of Columbia.

18             Commerce between two or more states just means that

19   items are bought and sold by entities located in different

20   states or between a state and the District of Columbia.

21             If you decide that there was any effect at all on

22   interstate commerce, then that is enough to satisfy this

23   element.  The effect can be minimal.  For example, if a payment

24   obtained by a defendant traveled or went through interstate

25   commerce, that would be a sufficient effect on interstate

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    commerce.  Even a potential or subtle effect on commerce will

2    suffice.

3            You do not have to decide whether the effect on

4    interstate commerce was harmful or beneficial to a particular

5    person or business, or to commerce in general.  In addition, a

6    defendant need not have intended or anticipated or even known

7    of an effect on interstate commerce.  You can find this element

8    has been satisfied if the effect on interstate commerce would

9    have been a natural consequence of the actions he agreed with

10   others to undertake.

11           In addition, if you find beyond a reasonable doubt

12   that the target of the extortion related to something that

13   moved in interstate or foreign commerce, then this element will

14   have been met.

15           All right.  Now let's go to the last group of

16   substantive instructions.

17           MR. MONTELEONI:  Your Honor, might this be a good time

18   for a morning break?

19           THE COURT:  You're suggesting to me that it is.  I can

20   tell.

21           Let's do it.  All right.  Ten minutes, ladies and

22   gentlemen.  My voice definitely needs the break.

23           (Jury not present)

24           THE COURT:  Ten minutes.

25           MR. RICHENTHAL:  Two quick things, your Honor.

```
 1                  THE COURT:  You may be seated in the courtroom.
 2                  MR. RICHENTHAL:  Two quick things, your Honor.  We
 3      could handle it after a short break if folks want to go to the
 4      restroom or something.
 5                  First, we think the Court may have very modestly
 6      misspoken just now on something.
 7                  THE COURT:  All right.  Let's deal with it.
 8                  MR. RICHENTHAL:  That's the first, and the second is a
 9      separate issue.
10                  So on the first, on page 84 of the written charge, the
11      last sentence that is on that page --
12                  THE COURT:  Yes.
13                  MR. RICHENTHAL:  -- correctly says, "the official act
14      may involve."  I think the Court, at least according to Live
15      Note, said orally "must involve."  I think it was just a verbal
16      slip, and again, the written charge is correct, but if I --
17                  THE COURT:  I understand.  Let's see.
18                  (Discussion off the record)
19                  THE COURT:  OK.  I will go back and tell them.
20                  MR. RICHENTHAL:  Just to be clear, multiple members of
21      our team also heard "must."
22                  THE COURT:  That's all right.  That's No. 1.  I have
23      no objection to that.
24                  MR. RICHENTHAL:  But the second issue is unrelated to
25      the specific charge.
```

O7cWmen2                         Charge

1           We think, and forgive us if we're wrong, that the
2   Court may have shifted practices with respect to the courtroom
3   for the jury instruction portions of the trial.  We understand
4   that during the trial, obviously the courtroom was physically
5   open; people were free to come and go.  There may have been
6   prioritization given to family members or people associated
7   with the parties or the media and deliveries, since the
8   courtroom's been so busy.  And of course, there's an overflow
9   and a live connection.

10          We think, just because our paralegals told us -- they
11  may be wrong -- that when jury instructions started, that the
12  CSOs didn't want people reentering the courtroom.

13          THE COURT:  Yes.

14          MR. RICHENTHAL:  Obviously, the public and the media
15  are here and the overflow room is still working, but that's a
16  shift.  We just wanted to make sure we understood that that's,
17  in fact, the Court's shift and make sure that no party has an
18  objection.  We think it's fine.

19          THE COURT:  OK.  I need to keep the movement of people
20  in the courtroom down during a jury charge so that the jury can
21  focus on me.  So the compromise was I had my deputy ask the
22  CSOs to allow anyone to leave who wanted but not to have people
23  come and to make sure that everybody could go to the overflow
24  courtroom, which they have.

25          Now, if anyone has any objection to that, I'll alter

O7cWmen2                    Charge

1    it.

2              Is there any objection to that procedure?

3              MR. RICHENTHAL:  The government has no objection.  I

4    had a technical problem with a computer.  I wanted a paralegal

5    to be able to enter, and my understanding --

6              THE COURT:  Well, I would have thought they would have

7    let them.

8              MR. RICHENTHAL:  Yes, that's the only reason I raised

9    it.  We have no problem.  Frankly, it makes sense, but we

10   wanted to make sure that the defense has no problem that this

11   change has occurred during the charge.

12             THE COURT:  If you'll stop talking, they'll say they

13   have no problem.

14             MR. RICHENTHAL:  I'm sorry.

15             THE COURT:  OK.

16             MR. LUSTBERG:  No, your Honor.  I am familiar with

17   situations where the courtroom doors are locked during these

18   proceedings, so I think this is a perfectly appropriate

19   compromise.  We have no objection.

20             THE COURT:  Yes.  It wasn't locked.  Anyone who was

21   here could leave.  It was during the charge itself, but I'll

22   change it right now since there seems to be an issue.

23             Any problem?

24             MR de CASTRO:  No, Judge.

25             THE COURT:  Mr. Fee.

O7cWmen2                      Charge

1            MR. FEE:  Just so that the family members can come in.

2            THE COURT:  Oh, yes, family members.

3            MR. FEE:  Today was the first time they were actually

4    delayed.  I thank the government for raising it.

5            THE COURT:  You know what?  I'll change my

6    instructions to the CSOs, that people can come and go as they

7    please during the charge.

8            Mr. Fee, I wanted on the record that you had no

9    objection to the way it was set up.

10           MR. FEE:  I didn't know it.  I'm not going to make an

11   issue out of it.  I don't object to it.  I appreciate the

12   change.

13           THE COURT:  Yes.  Sure, we'll do it that way.

14           And at all times the overflow courtroom was available

15   with a live feed.

16           All right.

17           MR. RICHENTHAL:  And it still is available today as

18   well.

19           THE COURT:  Yes.

20           All right.  Thank you.

21           Take a few minutes.

22           (Recess)

23           (Jury present)

24           THE COURT:  Please be seated in the courtroom.

25           Ladies and gentlemen, you'll remember that

O7cWmen2                    Charge

1    Mr. Monteleoni said, your Honor, it may be a good time for a

2    break.  Those were his words, but what he meant was, your

3    Honor, we think you made a mistake and we want to tell you

4    about it.  And indeed I did.

5            For those who are following along, on page 84, in the

6    last paragraph, the last sentence says:  "That is, like the

7    honest services wire fraud counts, the official act may involve

8    a nonfederal official".  I misspoke.  I said "must involve a

9    nonfederal official."  It's "may," but let me give you that

10   paragraph again just so it's clear.

11           We're at the bottom of page 84.

12           I have mentioned several times that Counts Eight, Ten

13   and Fourteen involve payments in exchange for an official act.

14   I already defined that term for you earlier in connection with

15   Counts Seven, Nine and Thirteen, the honest services wire fraud

16   counts, and it has the same meaning here.  That is, like with

17   the honest services wire fraud counts, the official act may

18   involve a nonfederal official, unlike in the bribery counts,

19   which relate only to official acts by federal officials.

20           All right.  Now, if you're following along, I'll pick

21   it up at the top of page 86.

22           Count Eighteen charges Menendez with obstruction of

23   justice.  Specifically, it charges that from approximately June

24   2022 through at least about 2023 -- and you'll note that that

25   time period is slightly different than the time period in the

O7cWmen2                          Charge

1    other counts -- Menendez wrote checks and letters falsely

2    characterizing the return of bribe money to Hana and Uribe as

3    repayment for loans, and caused the then-counsel to make false

4    statements regarding the bribe money from Hana and Uribe, in an

5    effort to interfere with the federal investigation of Menendez

6    and others here in the Southern District of New York.

7            This law is designed to prevent a miscarriage of

8    justice resulting from corrupt methods.  It is aimed at a

9    variety of means by which the orderly and due process of the

10   administration of justice may be or is endeavored to be

11   impeded, thwarted or corrupted.  Success of the endeavor is not

12   an element of the crime.  Any corrupt effort, whether

13   successful or not, that is made for the purpose of influencing,

14   obstructing or impeding the due administration of process is

15   condemned.

16           The due administration of justice refers to the fair,

17   impartial, uncorrupted and unimpeded investigation,

18   prosecution, dispositions or trial of any matter, civil or

19   criminal, in the courts of the United States.  It includes

20   every step in a matter or proceeding in the federal courts to

21   assure the just consideration and determination of the rights

22   of parties, whether government or individual.  Thus, due

23   administration of justice includes, but is not limited to, a

24   federal grand jury proceeding, a grand jury investigation or a

25   federal civil or criminal trial.

In order to establish the offense charged in Count Eighteen, the government must prove each of four elements beyond a reasonable doubt:

First, that on or about the dates set forth in the indictment, there was a proceeding pending before a federal court or a grand jury;

Second, that the defendant you are considering -- here, this charge is solely against Menendez -- knew of the proceeding;

Third, that the defendant acted to obstruct or impede, or endeavored to obstruct or impede, the proceeding; and

Fourth, that the defendant acted with corrupt intent.

The first element the government has to prove beyond a reasonable doubt is that on approximately the dates set forth in the indictment -- and remember, all these dates can be approximate -- there was a proceeding pending before a federal court or grand jury.

The second element is that the defendant knew that such a proceeding was in progress. In order to satisfy this element, you need only determine that Menendez knew on or about the date charged in the indictment that a criminal case or a grand jury proceeding was in progress. In this regard, you may take into account all of the facts and circumstances surrounding the conduct with which Menendez is charged in determining whether he knew that a criminal case or grand jury

O7cWmen2                        Charge

1    proceeding was in progress.

2            The third element in regard to obstruction of justice

3    is that the defendant influenced, obstructed or impeded, or

4    endeavored to influence, obstruct or impede, the proceeding.

5            Endeavor means any effort or any act to obstruct,

6    impede or interfere with the trial or grand jury proceeding.

7    Success of the endeavor is not an element of the crime.  The

8    term "endeavor" is designed to reach all conduct which is aimed

9    at influencing, obstructing or impeding the due administration

10   of justice.  This element is satisfied if you find that

11   Menendez acted to obstruct, or took action knowing that it had

12   the natural and probable effect of obstructing, the due

13   administration of justice.

14           The final element is that Menendez must have acted

15   corruptly.  The word "corruptly" means simply having the

16   improper motive or purpose of obstructing justice.  Obstructing

17   justice need not have been the sole motivation for his conduct

18   as long as he acted, at least in part, with that improper

19   purpose.  You may consider all the evidence and surrounding

20   circumstances in determining whether Menendez acted corruptly.

21           A defendant's actions can qualify as a corrupt attempt

22   to interfere with a judicial or grand jury proceeding only if

23   the defendant specifically intends to interfere with the

24   proceeding.  That specific intent requires knowledge by the

25   defendant that his actions are likely to interfere with the

O7cWmen2                        Charge

1    proceeding.  In other words, there must be a nexus between the

2    actions and the proceeding.  The prosecution must prove that

3    the defendant engaged in conduct directed at the court or grand

4    jury that he believed would have the natural and probable

5    effect of interfering with a proceeding.

6         A defendant's interactions with third parties,

7    including prosecutors, are therefore relevant to this charge

8    only if the defendant knew that those interactions were likely

9    to affect the judicial or grand jury proceeding and

10   specifically intended that result.  It is not sufficient that

11   the defendant knew of the proceeding's existence, or even that

12   he hoped or thought it possible that his actions could affect

13   the proceeding.

14        Now let's turn to Sixteen, public official acting as

15   an agent of a foreign principal.

16        It is a crime for any public official to be or to act

17   as an agent of a foreign principal within the meaning of the

18   Foreign Agents Registration Act, which you know is referred to

19   as FARA.  Count Sixteen charges Menendez was a public official

20   who was and acted as an agent of the government of Egypt and

21   certain Egyptian officials from approximately 2018 until

22   approximately 2022.

23        FARA requires the registration with the Department of

24   Justice of anyone who is or acts as an agent of a foreign

25   principal.  However, a public official cannot act as an agent

O7cWmen2                          Charge

1    of a foreign principal, even though someone who is not a public

2    official can if he or she registers with the Department of

3    Justice.

4           All right?  People who are not public officials can

5    act as agents of a foreign principal if they register under

6    FARA, but public officials are not allowed to act as an agent

7    of a foreign principal.

8           In order to establish the offense charged in Count

9    Sixteen, the government must prove three elements beyond a

10   reasonable doubt:

11          One, that the defendant was a public official;

12          Two, that he was or acted as an agent of a foreign

13   principal;

14          Third, he acted knowingly.

15          The first element is that Menendez was a public

16   official during the relevant time period.  A public official

17   includes a U.S. senator.  Again, that's rather straightforward.

18          The second element is that Menendez was or acted as an

19   agent of a foreign principal.

20          The government of a foreign country, such as Egypt, is

21   a foreign principal.  OK?  The government of Egypt is a foreign

22   principal.  Where the government of a foreign country is the

23   pertinent foreign principal, the term "foreign principal"

24   includes the government's agencies, officials, officers and

25   employees.

O7cWmen2                          Charge

1                    An agent of a foreign principal includes the

2      following:

3                    (1) any person who acts as an agent, representative,

4      employee or servant, or any person who acts in any other

5      capacity at the order, request, or under the direction or

6      control, of a foreign principal or of a person any of whose

7      activities are directly or indirectly supervised, directed,

8      controlled, financed or subsidized in whole or in major part by

9      a foreign principal and who directly or through any other

10     principal --

11                   (i) engages within the United States in political

12     activities for or in the interests of such foreign principal;

13                   (ii) acts within the United States as a political

14     consultant for or in the interests of such foreign principal;

15     or

16                   (iii) within the United States represents the

17     interests of such foreign principal before any agency or

18     official of the government of the United States; or.

19                   (2) any person who agrees, consents, assumes or

20     purports to act as, or who is or holds himself out to be,

21     whether or not pursuant to contractual relationship, an agent

22     of a foreign principal.

23                    As you can see, the government does not have to prove

24     that a person engaged in all of the activities I've set forth

25     above for that person to be an agent of a foreign principal.

O7cWmen2                          Charge

1    Engaging in any one of those activities that I set forth above

2    would suffice to make that person an agent of a foreign

3    principal.

4            It would be enough, for example, if the government

5    proved that the person engaged within the United States -- at

6    the order, request, direction or control of a foreign

7    principal -- in political activities for or in the interests of

8    the foreign principal, because that is one way that one can be

9    an agent of a foreign principal.

10           The term "political activities" means any activity

11   that the person engaging in believes will, or that the person

12   intends to, in any way influence any agency or official of the

13   government of the United States or any section of the public

14   within the United States with reference to formulating,

15   adopting or changing the domestic or foreign policies of the

16   United States or with reference to the political or public

17   interests, policies or relations of a government of a foreign

18   country or a foreign political party.

19           (Continued on next page)

20

21

22

23

24

25

O7C3MEN3                           Charge

1            THE COURT:  The term "political consultant" means any

2     person who engages in informing or advising any other person

3     with reference to the domestic or foreign policies of the

4     United States, or the political or public interests, policies,

5     or relations of a foreign country or of a foreign political

6     party.

7            A person can act as an "agent of a foreign principal"

8     if he acts under the order, direction, or control of a foreign

9     principal or at the request of a foreign principal.  The term

10     "request" has a particular meaning here and it's narrower than

11     its meaning in everyday use.  Here, not every ask by a foreign

12     principal qualifies as such a request.  To qualify as a

13     request, an ask must be something more than an ordinary

14     solicitation, although it can be less than an order or command.

15     So a foreign principal does not make a qualifying request

16     merely by asking or persuading someone else for his own reasons

17     to do something, even if the request, if fulfilled, would

18     benefit the foreign principal.  Instead, the foreign principal

19     making the ask must have some degree of authority over the

20     agent.  To that end, the ultimate question, including based on

21     a request, is whether it is fair to draw the conclusion that an

22     individual is not acting independently, such as by simply

23     stating or believing his own views, but is instead acting as an

24     agent of the foreign principal.

25            To decide whether a person is in fact acting as an

O7C3MEN3                          Charge

agent of a foreign principal, you must determine whether that

person is acting based on his own volition or views or whether

he is instead taking direction, or acting at the order, under

the control, or in response to a request, as I've already

defined it to you, from a foreign principal.

In determining whether this agency test is met, the

surrounding circumstances must evince some level of power by

the principal over the agent or some sense of obligation on the

part of the agent to achieve the principal's request.

Factors that may support an agency relationship

include:  Specificity of the foreign principal's instructions

or requests, if the instructions or requests are coercive or

accompanied by the offer or the promise of compensation,

evidence of an ongoing relationship or coordination between the

principal and agent, whether the person seeks or receives

feedback on his work from the foreign principal, and if the

foreign principal's goals do not align with the alleged agent's

own interest or subjective viewpoint.

Conversely, the following factors may count against

finding an agency relationship:  If the foreign principal's

instructions or requests are more general, the foreign

principal's goals align with the alleged agent's own interests

or subjective viewpoint, or the alleged agent's interactions

with the foreign principal or its intermediaries are only

infrequent.

1             You should consider all of the surrounding

2       circumstances to determine whether the defendant acted as an

3       agent to foreign principal.

4             The third element is that the defendant acted

5       knowingly.  The term "knowingly" was earlier defined.  It has

6       the same meaning here.

7             In addition to the substantive offenses that I've just

8       described, the defendants are also charged with separate

9       conspiracies to violate federal laws.

10            We've discussed the substantive counts and I'm going

11      to revert to the conspiracy counts.

12            Count One is the conspiracy to bribe a public

13      official.  It charges Menendez, Hana, and Daibes with

14      participating in a conspiracy to bribe an public official from

15      at least in or about 2018 through approximately 2023, in

16      violation of 18, United States Code, Section 371.  It also

17      charges that certain overt acts were committed in furtherance

18      of the conspiracy.

19            You know a conspiracy is simply a criminal

20      partnership, a combination or agreement of at least two people

21      to join together to accomplish some unlawful purpose.  I've

22      already told you this.  Conspiracy simply means agreement.

23            The crime of conspiracy to violate a federal law is an

24      independent offense, separate and distinct from the commission

25      of the substantive crime.  You already know that.  Conspiracy

1      is different than the substantive crime.

2              If a conspiracy exists, it's punishable as a crime,

3      even if it should fail to achieve its purpose.  Consequently,

4      for a defendant to be guilty of conspiracy, there is no need

5      for the government to prove that he or any other conspirator

6      was actually successful in their criminal goals.  You may thus

7      find the defendant guilty of the crime of conspiracy, even if

8      you find that the substantive crimes that were the object of

9      the conspiracy were never actually committed.

10             Each member of a conspiracy may perform separate and

11     individual acts.  Some conspirators play major roles, other

12     play minor roles.  An equal role is not what the law requires.

13             When people enter into a conspiracy to accomplish an

14     unlawful end, they become agents and partners of one another in

15     carrying out the conspiracy.  Even a single act may be

16     sufficient to draw a defendant within the scope of a

17     conspiracy.

18             In order to find the defendant you are considering

19     guilty on Count One, which is conspiracy to bribe a public

20     official, the government has to prove beyond a reasonable doubt

21     each of the following three elements:

22             First, that the conspiracy charged in Count One in

23     fact existed.  In other words, that from approximately 2018 to

24     approximately 2023, or any portion of that time period, there

25     was an agreement or understanding among two or more people to

1    take action that would violate one or more of those provisions

2    of the law which make it illegal to demand or receive a bribe

3    as a public official or to offer or pay a bribe to a public

4    official;

5         Second, that the defendant you are considering

6    knowingly and willfully became a member of the conspiracy with

7    the intent to further its illegal purpose -- that is, with the

8    intent to achieve the illegal object of the charged conspiracy;

9    and

10         Third, that any one of the members of the conspiracy

11    knowingly committed at least one overt act in furtherance of

12    the conspiracy.

13         We'll look at the three elements.

14         First element is that you determine whether or not the

15    conspiracy existed.  You already know this.  A conspiracy is an

16    agreement by two or more people to take actions that violate

17    the law.

18         The essence of the crime of conspiracy is an agreement

19    to accomplish an unlawful objective.  Again, you know it.  It's

20    not necessary that a conspiracy actually succeed in its purpose

21    for you to conclude that it existed or that the defendant

22    actually committed the crime that is the object of the

23    conspiracy.  Indeed, you may find the defendants guilty of

24    conspiracy, despite the fact that it was factually impossible

25    for any of the defendants to commit the substantive crime or

1    goal of the conspiracy.  This is because the success or failure

2    of a conspiracy is not material to the question of the guilt or

3    innocence of the conspirator.

4           The crime of conspiracy is complete once the unlawful

5    agreement is made and an act is taken in furtherance of that

6    agreement, and the conspiracy is entirely separate and distinct

7    from the substantive crimes that may be the goal of the

8    conspiracy.  Again, you already know that.

9           In order for the government to satisfy this element,

10   you need not find that the alleged members of the conspiracy

11   met together and entered into any express or formal agreement.

12   And you don't need to find that the alleged conspirators stated

13   in words or writing what the scheme was or stated its object or

14   its purpose or stated every precise detail of the scheme or

15   stated the means by which its object or purpose was to be

16   accomplished.  But what the government must prove is that there

17   was a mutual understanding, it could have been spoken or it

18   could have been unspoken, between two or more people to

19   cooperate with each other to accomplish an unlawful act.

20          You may find that the existence of an agreement to

21   disobey or disregard the law has been established by direct

22   proof.  However, since conspiracy is by its very nature

23   characterized by secrecy, you may also infer its existence from

24   the circumstances of this case and the conduct of the parties

25   involved.

O7C3MEN3                          Charge

1          In determining whether there has been an unlawful

2     agreement, you may judge acts and conduct of the alleged

3     co-conspirators that are done to carry out an apparent criminal

4     purpose.  The adage "actions speak louder than words" is

5     applicable here.

6          In this regard, you may, in determining whether an

7     agreement existed here, consider the actions and statements of

8     all of those you find to be participants as proof that a common

9     design existed on part of the persons charged to act together

10    to accomplish an unlawful purpose.

11         Often the only evidence of a conspiracy that's

12    available is that of disconnected acts that, when taken

13    together and considered as a whole, evidence of a conspiracy or

14    agreement to secure a particular result as satisfactorily and

15    conclusively as more direct proof such as evidence of an

16    express agreement.

17         Of course, proof concerning the accomplishment of the

18    object or objects of the conspiracy may be the most persuasive

19    evidence of the existence of the conspiracy itself.  But it's

20    not necessary that the conspiracy actually succeed in its

21    purpose in order for you to conclude that the conspiracy

22    existed.

23         In considering whether a conspiracy existed, you

24    should consider all of the evidence that has been admitted with

25    respect to the conduct and statements of each alleged

 1    co-conspirator, and any inferences that may reasonably be drawn

 2    from that conduct and those statements.

 3            It is sufficient to establish the existence of the

 4    conspiracy if, after considering all of the relevant evidence,

 5    you find beyond a reasonable doubt that the minds of at least

 6    two alleged conspirators agreed, as I've explained, to work

 7    together in furtherance of one or more of the objects alleged

 8    in Count One of the indictment, and then an act was taken to

 9    further that agreement.  To find that the government has

10    established the existence of the conspiracy alleged in Count

11    One beyond a reasonable doubt, you must unanimously determine

12    that the government has proven that the conspiracy had as its

13    objective or objectives demanding or receiving of a bribe as a

14    public official, or offering or payment of a bribe to a public

15    official or both of those things.  Which I'll describe in

16    greater detail in a moment.

17            In short, you must all agree on one or more objects of

18    the conspiracy, but need not find both objects to find a

19    defendant guilty.

20            Count One charges that the conspiracy in Count One had

21    two objectives or objects.

22            One, that a public official would demand or receive a

23    bribe in return for being influenced in the performance of an

24    official act.  I've already instructed you on the elements of

25    this substantive crime in connection with my instructions on

O7C3MEN3                          Charge

1   Count Five and Eleven.

2          Two, offering or giving a bribe to a public official

3   with the intent to influence the performance of any official

4   act.

5          I've already instructed you on the elements of this

6   substantive crime in connection with my instructions for Counts

7   Six and Twelve.

8          As I noted, if you find that the conspirators agreed

9   to accomplish either one or both of these two objectives, then

10  the illegal purpose element will be satisfied.  But you must be

11  unanimous as to at least one objective.

12         As I instructed you earlier, you may find a defendant

13  guilty of conspiracy even if you find that the substantive

14  crimes that were the objects of the conspiracy were not

15  actually committed.

16         In order to satisfy the second element of Count One,

17  the government must prove that the defendant you are

18  considering willfully and knowingly entered into the

19  conspiracy, that is, that he agreed to take part in the

20  conspiracy with knowledge of its purposes and in furtherance of

21  one or more of its objectives as you've unanimously determined

22  those objectives to be in the first element.

23         An act is done knowingly if it is done purposely and

24  voluntarily, as opposed to mistakenly or accidently.  An act is

25  done willfully if it is done with an intention to do something

O7C3MEN3                            Charge

that the law forbids, that is, with a bad purpose to disobey
the law, although the defendant need not know of the precise
law that he or she was violating or that the law was a federal
law.

Now as I said earlier, knowledge is a matter of
inference from the proven facts.  However, you do have before
you the evidence of certain acts and conversations alleged to
have taken place involving one or more of the defendants or in
their presence, and you may consider this evidence in
determining whether the government has proven each defendant's
knowledge of the unlawful purposes of the conspiracy.

It is not necessary for the government to show that a
defendant was fully informed as to all the details of the
conspiracy in order for you to infer knowledge on his part.

To have guilty knowledge, a defendant need not have
known the full extent of the conspiracy or all of the
activities of all of its participants.  It is not even
necessary for a defendant to know every other member of the
conspiracy.

Nor is it necessary that the defendants received any
monetary benefit from their participation in the conspiracy or
even had a financial stake in the outcome.  Although proof of a
financial interest in the outcome of a scheme is not essential
or determinative, if you find that a defendant had or did not
have a financial or other interest, that is a factor you may

1    properly consider in determining whether the defendant was a

2    member of the conspiracy.

3            The duration and extent of each defendant's

4    participation has no bearing on the issue of his guilt.  He

5    need not have joined the conspiracy at the outset, and he need

6    not have received any benefit in return.  A defendant may have

7    joined it for any purpose at any time in its progress, and he

8    will be held responsible for all that was done before he

9    joined, and all that was done during the conspiracy's existence

10   while he was a member, if those acts were reasonably

11   foreseeable and within the scope of that defendant's agreement.

12           Each member of a conspiracy may perform separate and

13   distinct acts and may perform them at different times.  Some

14   conspirators may play major roles, while others may play minor

15   roles in the conspiracy.  One participating in a conspiracy is

16   no less liable because his part is minor or subordinate.  An

17   equal role or an important role is not what the law requires.

18   Even a single act can be sufficient to make a defendant a

19   participant in an unlawful conspiracy.

20           A person's mere association with a member of the

21   conspiracy, however, does not make that person a member of the

22   conspiracy, even when that association is coupled with

23   knowledge that a conspiracy is taking place.  Mere presence at

24   the scene of a crime, even coupled with knowledge that a crime

25   is taking place, is not sufficient to support a conviction.  In

other words, knowledge without agreement and participation is

not sufficient.  What is necessary is that a defendant

participate in the conspiracy with knowledge of its unlawful

purposes, and with an intent to aid in the accomplishment of

its unlawful objectives.

A conspiracy, once formed, is presumed to continue

until its objective is accomplished, or until there is some

affirmative act of termination by its members.  So, too, once a

person is found to be a participant in the conspiracy, that

person is presumed to continue being a participant in the

venture, until a venture is terminated, unless it is shown by

some affirmative proof that the person withdrew and

disassociated himself from it.

It is not essential that the government prove that a

particular conspiracy alleged in the indictment started or

ended on any of the specific dates described for that

conspiracy.  You know that because I've told you that.  It is

sufficient if you find that the conspiracy was formed, and that

it existed for some time around or within the dates set forth

in the indictment.  And that's why when I've been giving you

dates, I've been saying things like "in or about" or

"approximately."

In sum, the government must prove that a defendant,

with an understanding of the unlawful nature of the conspiracy,

knowingly and intentionally engaged, advised, or assisted in

O7C3MEN3                              Charge

1    the conspiracy for the purpose of furthering an illegal

2    conspiracy.  Only through that does a defendant become a

3    knowing and willing participant in the unlawful agreement.

4    That is to say, a conspirator.

5           Now let's turn to the third element of Count One, the

6    requirement of an overt act.

7           The last element the government must prove with regard

8    to Count One is that at least one overt act was knowingly

9    committed by at least one of the conspirators in furtherance of

10   the conspiracy.

11          You'll remember, ladies and gentlemen, earlier today I

12   told you some of the conspiracies required an overt act and

13   others didn't.  Count One requires an overt act.  An overt act

14   is an act that tends to carry out the conspiracy in part, but

15   need not necessarily be the object of the crime or itself wrong

16   or criminal.  The purpose of the overt act requirement is just

17   to ensure that the agreement went beyond the mere talking or

18   agreeing stage.

19          You need not find that all the defendants in this case

20   committed an overt act.  It is sufficient if you find that at

21   least one overt act was in fact performed by at least one

22   co-conspirator, whether a defendant or another co-conspirator,

23   to further the conspiracy within the time frame of the

24   conspiracy.  Nor is it necessary for the defendant you are

25   considering to commit an overt act in order to be a member of

1     the conspiracy.

2               Bear in mind that the overt act, standing alone, may

3     be entirely lawful.  Frequently, however, an apparently

4     innocent act sheds its harmless character if it is a step in

5     carrying out, promoting, aiding, or assisting the

6     conspiratorial scheme.  You are therefore instructed that the

7     overt act does not have to be an act which in and of itself is

8     criminal, or constitutes an objective of the conspiracy.  It

9     must be an act that furthers the object of the conspiracy.

10              The indictment charges that a number of particular

11    overt acts were committed in furtherance of the conspiracy.

12    It's not necessary for the government to prove that any of the

13    specified overt acts that are set forth in the indictment were

14    in fact committed.  Rather, the government can prove any overt

15    act, even if it's not listed in the indictment, provided that

16    the overt act is committed by one of the conspirators and it is

17    done to further the object of the conspiracy.

18              It is sufficient if you find beyond a reasonable doubt

19    that any one overt act occurred while the conspiracy was still

20    in existence.  Nor is it necessary for you to reach unanimous

21    agreement on whether a particular overt act was committed in

22    furtherance of the conspiracy.  You just need to all agree that

23    at least one overt act was in fact committed.

24              So that was Count One, the conspiracy to bribe a

25    public official.

1          Next relevant conspiracy is Count Four, conspiracy to

2     obstruct justice.  I previously discussed Count Eighteen, which

3     charges Menendez with obstructing justice in relation to an

4     investigation of being conducted here in the Southern District

5     of New York.

6          I'll now discuss two counts related to conspiracies to

7     obstruct justice.  First, Count Four.  Count Four charges

8     Menendez and Daibes with conspiring, remember conspiracy

9     requires at least two people to agree, so this conspiracy count

10    charges Menendez and Daibes with conspiring to obstruct justice

11    in relation to the federal criminal prosecution of Daibes in

12    the District of New Jersey.

13         For this count, the government must prove three

14    elements beyond a reasonable doubt:

15         First, that the conspiracy to obstruct justice charged

16    in Count Four actually existed, in other words, from

17    approximately 2018 through approximately 2023, or any portion

18    of that time, there was an agreement between two or more people

19    to take actions that would violate one or more of those

20    provisions of the law which make it illegal to obstruct

21    justice;

22         Second, that the defendant you are considering,

23    whether it's Menendez or Daibes, knowingly and willfully became

24    a member of the conspiracy with an intent to further its

25    purpose.  That is, with the intent to achieve the illegal

1    object of the charged conspiracy; and

2            Third, that any one of the members of the conspiracy

3    knowingly committed at least one overt act in furtherance of

4    the conspiracy.

5            I have just instructed you on these elements in

6    connection with Count One, and those instructions apply here as

7    well.  The difference between Counts One and Four is the goal

8    of the conspiracy.  As to Count Four, the government charges

9    that the goal of the conspiracy was to obstruct the criminal

10   prosecution of Daibes pending in the District of New Jersey.

11           I've already told you the elements of the substantive

12   crime of obstruction of justice in connection with my

13   instructions in Count Eighteen, which was the substantive crime

14   of obstruction of justice.

15           The other count related to conspiracy to obstruct

16   justice is Count Seventeen.  So there are two counts that are

17   conspiracies to obstruct justice.  One is Count Four, involving

18   Menendez and Daibes, and the other is Count Seventeen.  That

19   count charges Menendez with conspiring to obstruct justice in

20   relation to an investigation pending in the Southern District

21   of New York against him.

22           But this count the government must prove the following

23   three elements:

24           First, that the conspiracy charged in Count Seventeen

25   existed, that is, from approximately June 2022 through 2023, or

O7C3MEN3                          Charge

any portion of that time, there was an agreement or

understanding among two or more people to take actions that

violate one or more of those provisions of the law that make it

illegal to obstruct justice;

Second, that Menendez knowingly and willfully became a

member of the conspiracy with intent to further its purpose.

That is, with the intent to achieve the illegal object of the

charged conspiracy; and

Third, that any one of the members of the conspiracy

knowingly committed at least one overt act in furtherance of

the conspiracy.

I earlier instructed you on these elements in

connection with Count One.  Those instructions apply here.

The difference between this count and the other

conspiracy counts is the goal of the charged conspiracy.  In

regard to Count Seventeen, the government charges the goal of

the conspiracy was to obstruct an investigation pending in the

Southern District of New York.  I've instructed you on the

elements of the substantive crime of obstruction of justice in

connection with Count Eighteen when I went through the

substantive counts.

We've previously discussed Count Sixteen of the

indictment, which charges Menendez with being a public official

acting as the agent of a foreign principal.

Fifteen charges Menendez and Hana with conspiring,

O7C3MEN3                          Charge

 1    that is agreeing together, for a public official to act as an

 2    agent of a foreign principal from approximately 2018 until

 3    approximately 2022.

 4              I've instructed you already in connection with Counts

 5    One, Four and Seventeen on the three conspiracy elements that

 6    apply to Count Fifteen -- that the charged conspiracy existed;

 7    that the defendant you are considering knowingly and willfully

 8    became a member of the conspiracy, with intent to further its

 9    illegal purpose; and that one of the members had knowingly

10    committed an overt act.  Those instructions apply here as well.

11              As to Count Fifteen, the government charges that the

12    goal of the conspiracy was to have a public official,

13    specifically Menendez, act as an agent of a foreign principal.

14    That is, the government of Egypt and Egyptian officials.  I've

15    already instructed you on the elements of the substantive crime

16    of public official acting as an agent of a foreign principal in

17    connection with my instructions for Count Sixteen.

18              I'm now going to turn to Count Two, which is another

19    conspiracy count.  It charges conspiracy to commit honest

20    services wire fraud.  It charges Menendez, Hana, and Daibes

21    with participating in a conspiracy to violate the honest

22    services wire fraud statute, which I've described earlier.

23              You know that a conspiracy is a kind of criminal

24    partnership, an agreement of two or more people to join

25    together to accomplish an unlawful purpose.  In order to

1    satisfy its burden of proof with respect to Count Two, the

2    government must establish two elements beyond a reasonable

3    doubt:

4            First, the existence of the conspiracy charged in

5    Count Two; and

6            Second, that at some point the defendant you are

7    considering, whether Menendez, Hana, or Daibes, knowingly and

8    willfully became a member of and joined in the conspiracy.

9            Unlike the conspiracies charged in Counts One, Fifteen

10   and Seventeen, the conspiracy charged in Count Two does not

11   require an overt act.

12           I previously instructed you in connection with Count

13   One on the law relevant to determining whether a conspiracy

14   existed, and whether a defendant became a member of that

15   conspiracy.  Rely on those instructions and apply them to Count

16   Two, except that the conspiracy charged in Count Two has as its

17   object honest services wire fraud.

18           In deciding whether the conspiracy existed, determine

19   whether the conspirators agreed to accomplish that object, that

20   is, honest services wire fraud.  I've already instructed you on

21   the elements of the substantive crime of honest services wire

22   fraud in connection with my instructions for Count Seven, Nine

23   and Thirteen.

24           Now let's go to Count Three, which charges Menendez

25   with participating in a conspiracy to commit extortion under

O7C3MEN3                         Charge

color of official right, in violation of 18, United States

Code, Section 1951.

          In order to satisfy its burden of proof on this count,

the government must prove two elements beyond a reasonable

doubt:

          One, that the charged conspiracy existed; and

          Two, that Menendez knowingly and intentionally became

a member of the conspiracy with the intent to accomplish its

unlawful purpose.

          I've just charged you on these two elements in

connection with Count Two.  Apply those instructions here.  The

difference between Count Two and Count Three is the goal of the

conspiracy.  In Count Three the government charges that the

goal of the conspiracy was to commit extortion under color of

official right.  I've already instructed you on the elements of

the substantive crime of extortion, in connection with my

instructions for Count Eight, Ten and Fourteen.

          As you know, the government charged that a conspiracy

existed in Count One, conspiracy to bribe a public official,

and Count Two, conspiracy to commit honest services wire fraud.

The defendants contend that the government's proof fails to

show the existence of only one overall conspiracy in each of

Counts One and Two.  The defendants claim instead that the

government's proof only supports allegations of different,

separate and independent conspiracies with various groups of

1    members in each of those counts.

2           Whether there existed a single unlawful agreement in

3    each of those counts, or many such agreements, or indeed, no

4    agreement at all, is a question of fact for you, the jury, to

5    determine in accordance with these instructions.

6           When two or more people join together to form one

7    common unlawful design or purpose, a single conspiracy exists.

8    By way of contrast, multiple conspiracies exist when there are

9    separate unlawful agreements to achieve distinct purposes.

10          Proof of several separate and independent conspiracies

11   is not proof of a single, overall conspiracy charged in each of

12   Counts One and Two, unless one of the conspiracies proved

13   happens to be the single conspiracy described in the count you

14   are considering.

15          A single conspiracy does not become multiple

16   conspiracies, however, merely because it may involve two or

17   more phases or spheres of operations, so long as there is

18   sufficient proof of mutual dependence and assistance.  You may

19   find that there was a single conspiracy in the count you are

20   considering despite the fact that there were changes in either

21   personnel, or activities, or both, so long as you find that

22   some of the co-conspirators continued to act for the duration

23   of the conspiracy for the purposes charged in the count you are

24   considering.  The fact that the members of a conspiracy are not

25   always identical does not necessarily imply that separate

1   conspiracies exist.  In addition, if you find a master

2   conspiracy that includes certain sub-schemes, that does not

3   necessarily constitute a finding of multiple unrelated

4   conspiracies.

5          In determining whether a series of events constitutes

6   a single conspiracy or a separate and unrelated conspiracy or

7   conspiracies, you should consider whether there is a common

8   goal or goals among the alleged conspirators, whether there

9   existed common or similar methods, whether and to what extent

10  alleged participants overlapped in their various dealings,

11  whether and to what extent the activities of the alleged

12  conspirators were related and interdependent, how helpful each

13  conspirator's contributions were to the goal of others, and

14  whether the scheme contemplated a constituting objective that

15  could not be achieved without the ongoing consideration of the

16  conspirators.

17         The participants' goals need not coincide exactly for

18  a single conspiracy to exist, so long as their goals are not at

19  cross purposes, and co-conspirators need not agree on all of

20  the details of conspiracy, where the essential of the plan is

21  agreed upon.

22         On the other hand, if you find that the specific

23  single conspiracy charged in the count you are considering did

24  not exist, you cannot find any defendant guilty of that

25  conspiracy.  This is so even if you find that some conspiracy,

O7C3MEN3                           Charge

1    other than the one charged in the count you are considering,

2    existed, even though the purposes of both conspiracies may have

3    been the same and even though there may have been some overlap

4    in membership.

5          Similarly, if you find that a particular defendant was

6    a member of another conspiracy, and not the ones charged in the

7    count you are considering, then you must acquit that defendant

8    of the conspiracy charges for the applicable count or counts.

9          Therefore, what you must do is determine whether the

10   conspiracies charged in Counts One and Two in fact existed.  If

11   they did, then you must determine the nature of the conspiracy

12   and who its members were.

13         With respect to Counts One, Two, Six, Seven, Twelve,

14   and Thirteen, if you find defendant Fred Daibes guilty of one

15   or more of those counts, you must then determine for each those

16   counts on which you find Daibes guilty whether he was released

17   on bail in a federal case at the time of the offense.  For

18   those counts, the verdict form has a separate line for you to

19   answer this question, and you'll see it there.

20         I want to return to the two ways the defendant can

21   commit a substantive crime, which I talked about at the

22   beginning of these charges, he can commit a crime:  First, as a

23   principal, which includes both committing or willfully causing

24   someone else to commit the crime.  He can also commit a crime

25   as an aider and abettor.

O7C3MEN3                          Charge

1              With respect to Counts Five through Fourteen, Sixteen

2      and Eighteen, which charge the substantive offenses of bribery,

3      honest services wire fraud, extortion under color of official

4      right, obstruction, and a public official acting as a foreign

5      agent, the defendants charged in those counts are also charged

6      with having aided and abetted or willfully caused another

7      person to commit each of those offenses.  These are two

8      different, alternative ways of committing a crime, and you

9      don't have to consider whether a defendant did this if you find

10     that he is guilty himself of committing the crime you are

11     considering.

12             I'll take each of these concepts, that is, aiding and

13     abetting, and willfully causing a crime, those are different

14     concepts, in turn.

15             So let's look first at aiding and abetting.  The

16     aiding and abetting statute provides, in relevant part that:

17     Whoever commits an offense or aids, abets, counsels, commands,

18     induces, or procures its commission, is punishable as a

19     principal.  What that means, ladies and gentlemen, is that even

20     if the defendant you are considering did not himself commit the

21     offense, the government may meet its burden of proof by proving

22     that another person actually committed the offense with which

23     the defendant is charged; and proving that the defendant aided

24     or abetted, that is, helped, that person in the commission of

25     the offense.  A person who aids or abets someone else to commit

1   an offense is just as guilty of that offense as if he committed

2   the offense himself.  Accordingly, you may find a defendant

3   guilty of the substantive crime if you find beyond a reasonable

4   doubt that the government has proven that another person

5   committed the crime, and that the defendant you are considering

6   aided and abetted that person in the commission of the offense.

7            Again, that's a lot of words, but it's all very

8   logical, it seems to me.

9            In order to prove a defendant guilty as an aider and

10  abettor, the government has to prove beyond a reasonable doubt:

11           First, that one or more other persons committed the

12  charged offense, that is, all of the elements of the particular

13  crime were committed or caused to be committed by someone or

14  multiple people;

15           Second, that the defendant, knowing that such a crime

16  was being committed, intentionally associated himself with that

17  crime; and

18           Third, that the defendant intentionally took some

19  action to help the crime succeed.

20           To act intentionally means to act deliberately and

21  purposefully, rather than by mistake, accident, mere

22  negligence, or some other innocent reason.

23           Please note, however, that the mere presence of the

24  defendant where a crime is being committed, even coupled with

25  knowledge by the defendant that a crime is being committed, or

1    merely associating with others who were committing a crime is

2    not sufficient to establish aiding and abetting.  One who has

3    no knowledge that a crime is being committed or is about to be

4    committed, but who inadvertently does something that aids in

5    the commission of the crime, is not an aider and abettor.  And

6    again, that's all very logical.

7              An aider and abettor must know that the crime is being

8    committed and act in a way that intended to bring about the

9    success of the criminal venture.

10             To determine whether the defendant aided or abetted

11   the commission of the crime with which that defendant is

12   charged, ask yourself these questions:  Did the defendant

13   participate in the crime charged as something he wished to

14   bring about?  Did he associate himself with the criminal

15   venture knowingly and willfully?  Did he seek by his actions to

16   make the criminal venture succeed?

17             If he did, then he's an aider and abettor and guilty

18   of the offense.  If he did not, then he's not an aider and

19   abettor.

20             So I described to you what an aider and abettor is and

21   what aiding and abetting a crime means.  Now we'll turn to what

22   willfully causing a crime means.

23             Federal law provides that whoever willfully causes an

24   act to be done which, if directly performed by him, would be an

25   offense against the United States, is punishable as a

O7C3MEN3                         Charge

1   principal.

2           What does the term "willfully cause" mean?  It does

3   not mean that the defendant need have physically or personally

4   committed the crime or supervised or participated in the actual

5   criminal conduct charged in the indictment.  The meaning of the

6   term "willfully caused" can be found in the answers to the

7   following questions:  Did the defendant intend the crime to

8   occur?  Did he intentionally cause someone else or other people

9   to engage in the conduct constituting the crime?

10          If you are persuaded beyond a reasonable doubt that

11  the answer to both of those questions is yes, then the

12  defendant you are considering is guilty of the crime charged,

13  just as if he himself had actually committed it.

14          To prove the defendant guilty in this way, the

15  government need not prove that he acted through a guilty

16  person, that is, the defendant can be found liable even if he

17  acted through someone totally innocent and had no knowledge of

18  the crimes charged in the indictment.

19          Now let's turn to venue, and you've heard some

20  discussion in the summations about venue.

21          In addition to the foregoing elements of the offenses,

22  you must consider whether an essential part of each of the

23  crimes charged, or as to each of the conspiracy counts any act

24  in furtherance of the crimes charged, reasonably foreseeable

25  occurred within the Southern District of New York.

1          The Southern District of New York includes Manhattan,

2    the Bronx, Westchester, Rockland, Putnam, Sullivan, and Orange

3    Counties, the waterways surrounding these counties, including

4    the East River, the Hudson River, and the Kill Van Kull strait,

5    and all of the bridges that traverse those waterways, including

6    Verrazzano-Narrows Bridge which traverses the Narrows Strait,

7    the body of water separating Staten Island and Brooklyn; the

8    Bayonne Bridge, which traverses the Kill Van Kull strait, the

9    body of water separating Staten Island and Bayonne, New Jersey;

10   and the Goethals Bridge and the Outerbridge Crossing, both of

11   which traverse the Arthur kill strait, the body of water

12   separating Staten Island and Union and Middlesex Counties in

13   New Jersey.

14          I should note on this issue -- and the issue of venue

15   alone -- the government does not have to prove venue beyond a

16   reasonable doubt.  The burden on the government is a lower

17   burden.  The government has the burden of proving venue simply

18   by a preponderance of the evidence.  A preponderance of the

19   evidence means that the government must prove that it is more

20   likely than not that an essential part of the element or any

21   act in furtherance of the conspiracy you are considering

22   reasonably foreseeable occurred in the Southern District of New

23   York.  Thus, with regard to each count, the government has

24   satisfied its venue obligation if you conclude that it is more

25   likely than not that such a part of the crime charged, or any

1  act in furtherance of the conspiracy charged, reasonably

2  foreseeable occurred within the Southern District of New York.

3  The government does not have to prove that the complete crime

4  was committed within the Southern District of New York, or that

5  the defendants were ever actually in the Southern District of

6  New York.

7          You have to look at venue separately for each count.

8  Venue on one count does not establish venue on another count.

9  Although, if applicable, you may rely on the same evidence to

10  establish venue on any number of counts.

11          With respect to the conspiracy offenses, it is

12  sufficient to establish venue if the government proves that any

13  act in furtherance of the conspiracy charged reasonably

14  foreseeable occurred in the Southern District of New York.  The

15  act itself need not be a criminal act.  It could include, for

16  example, meeting with others involved in the criminal scheme

17  within this district, so long as it is in furtherance of the

18  conspiracy.  The act need not be taken by a defendant or a

19  conspirator, as long as the act was caused by the conduct of

20  the defendant or conspirator, and was reasonably foreseeable to

21  the defendant you are considering.

22          With respect to the substantive counts resting on a

23  bribe being demanded, sought, received, accepted, or agreed to

24  be received or accepted, Counts Five and Eleven, it is

25  sufficient to establish venue if you find that the demanding,

O7C3MEN3                          Charge

1    seeking, receiving, accepting, or agreeing to receive or accept

2    anything of value occurred in the Southern District of New

3    York, including acts that were part and parcel of this conduct.

4            With respect to the substantive counts resting on a

5    bribe being offered, given, or promised, Counts Six and Twelve,

6    it is sufficient to establish venue if you find that the

7    offering, giving, or promising of anything of value occurred in

8    the Southern District of New York, including acts that were

9    part and parcel of this conduct.

10           With respect to the substantive offenses of honest

11   services wire fraud, Count Seven, Nine, and Thirteen, it is

12   sufficient to establish venue if you find that any of the wire

13   communications you found to satisfy the fourth element of the

14   offense, use of interstate or international wires, were

15   transmitted from or to the Southern District of New York, so

16   long as the defendant reasonably anticipated that a wire

17   communication in furtherance of the scheme would be transmitted

18   from or to the Southern District of New York.

19           With respect to the substantive extortion counts,

20   Counts Eight, Ten, and Fourteen, it is sufficient to establish

21   venue if you find that interstate commerce was affected in this

22   district as I've defined affect on interstate commerce above,

23   or if you find that acts of extortion took place in this

24   district.

25           In addition, if you find a defendant guilty of any of

O7C3MEN3                          Charge

1    the substantive offenses on an aiding and abetting theory, you

2    don't have to consider venue with respect to that defendant, as

3    long as the government has established venue with respect to

4    the person whom the person aided and abetted.

5            Finally, with respect to the obstruction of justice

6    offenses, Counts Four, Eighteen, and Seventeen, venue exists in

7    the district to which the official proceeding, whether or not

8    pending are about to be instituted, was intended to be affected

9    or in the district to which the conduct constituted in the

10   alleged offense occurred.  An official proceeding includes a

11   federal grand jury.

12           As I said, unlike the elements of the offenses that I

13   have just discussed at length, each of which must be proved

14   beyond a reasonable doubt, the government is required to prove

15   venue simply by a preponderance of the evidence, which is a

16   lower standard of proof than proof beyond a reasonable doubt.

17           The government need only prove venue in one of the

18   applicable ways that I have described above for each count.

19           If you find that the government failed to prove venue

20   as to the defendant you are considering by a preponderance of

21   the evidence as to any count, you must return a verdict of not

22   guilty as to that defendant on that count.

23           Now, you know, because I've told you several times,

24   that the indictment alleges certain acts occurred on or about a

25   specific date or time or involved specific amounts.  We haven't

1    talked about the amounts, but we've talked about dates and

2    times.  It doesn't matter, ladies and gentlemen, if the

3    evidence you heard at trial indicates that a particular act

4    occurred on a different date or time or involved a different

5    amount.  The law requires only a substantial similarity between

6    the dates, times, and amounts alleged in the indictment and the

7    dates, times, and amounts that you find to have been

8    established by the evidence.

9         In addition, you must consider each count of the

10   indictment and each defendant's involvement in that count

11   separately, and you must return a separate verdict on each

12   defendant for each count in which he is charged.  And you know

13   that.  I've already told you.

14        Again, you go through the verdict sheet however you

15   want.  You can go through it in the order of the counts set

16   forth in these charges, or just One, Two, Three, or however you

17   want.  It may be easiest to go through it in the charges, but

18   that's entirely up to you.

19        In reaching your verdict, ladies and gentlemen, bear

20   in mind that guilt is personal and individual.  Your verdict

21   that a defendant is guilty or not guilty must be based solely

22   upon the evidence about each defendant.  The case against each

23   defendant on each count stands or falls upon the proof or lack

24   of proof against that defendant alone, and your verdict as to

25   any defendant on any single count should not control your

1    decision as to any other defendant or any other count.  No

2    other considerations are proper.

3         Let me give you some final directions on how you are

4    to arrive at your verdict.  The evidence presented has raised

5    factual issues that you must decide as the triers of the fact,

6    and you must decide those issues, resolve those issues, solely

7    on the basis of the evidence you have heard or the lack of

8    evidence, and these instructions on the law.

9         Your sworn duty as jurors is to determine whether each

10   defendant is guilty or not guilty, solely on the basis of the

11   evidence or lack of evidence and these instructions on the law.

12        You must not be influenced by sympathy, or by any

13   assumption, conjecture or inference stemming from personal

14   feelings, the nature of the charges, or your view of the

15   relative seriousness or lack of seriousness of the alleged

16   crimes.

17        I caution you, ladies and gentlemen, that under your

18   oath as jurors, you are not to consider the punishment that may

19   be imposed upon any defendant in the event of conviction.  I've

20   told you that already.  The duty of imposing a sentence in the

21   event of conviction rests exclusively on me, the Court.  Your

22   function -- and you know this -- is to weigh the evidence and

23   to determine the guilt or non-guilt of each defendant solely on

24   the basis of the evidence and the law which I have given you,

25   and which you must apply to the facts as you find them.

O7C3MEN3                          Charge

1              Each of you is entitled to your own opinion, but you

2    are required to exchange your views with your fellow jurors.

3    This is the essence of jury deliberations.

4              You know, before I told you not to discuss the

5    evidence.  Well now, it's your duty to discuss the evidence.

6    If you have a point of view, and after reasoning with other

7    jurors it appears that your own judgment is open to question,

8    then of course you should not hesitate in yielding your

9    original point of view, if you are convinced that the opposite

10   point of view is really one that satisfies your judgment and

11   your conscience.

12             However, you are not to give up a point of view that

13   you conscientiously believe in, simply because you may be

14   outnumbered or outweighed.  Vote with the others only if you

15   are convinced on the evidence and the facts and the law that

16   that's the correct way to decide the case.

17             (Continued on next page)

18

19

20

21

22

23

24

25

O7cWmen4                    Charge

1          THE COURT:  Just a moment, ladies and gentlemen.

2          Ladies and gentlemen, you've seen we've made a record

3     of these proceedings; you've seen the reporters here.  If you

4     wish at any time to have any part of the testimony read back,

5     have the foreperson send me a note and just say what you want

6     read back.

7          Now, just keep in mind a couple of things.  Be as

8     specific as you can be, because we have to find the area you're

9     looking for, the lawyers have to agree on it, with the Court,

10    as to what we're going to send back.  So be as specific as you

11    can.

12         Also, if you ask for all of the testimony of person X

13    and that person was on the stand for three days, it may take

14    three days to read it back.  It won't, actually, because we

15    don't read the objections and so forth, but it will take a

16    considerable period of time.  We're prepared to do that.  I'm

17    just alerting you to the fact that it will take time to read

18    anything back.  But you certainly can ask.  You have that

19    right, and we'll be pleased to respond to any questions you

20    have.

21         Now, I've already told you that we have a computer

22    that's been loaded with all the exhibits so you'll be able to

23    call up any of the exhibits, except the actual materials.  If

24    you want to see those, the cash or the gold or the jewelry,

25    you'll have to come back into the courtroom.  I'm not telling

O7cWmen4                          Charge

1    you you should do that or have to do it.  I'm just telling you

2    it's a service we have available and the exhibits will be

3    available to you in the courtroom.

4            You can send me any notes you want, or any questions,

5    for that matter, but they have to be in writing, signed by the

6    foreperson, dated and timed.  You'd say, your Honor, we'd like

7    the testimony of Mr. X in this regard or Ms. Y, whatever you

8    want.  But whenever you send me notes, do not give me any

9    indication of your vote.  I don't want any indication of

10   partial votes or anything like that.  And the foreperson should

11   sign any notes.

12           Now, it's my normal custom to appoint juror No. 1 as

13   the foreperson.

14           Juror No. 1, I'm doing that provisionally.  If for any

15   reason you don't wish to serve as foreperson, just let your

16   fellow jurors know that when you go back in, and then the jury

17   will select another foreperson.  I don't want any disputes or

18   anything like that.  If there's any difficulty in choosing

19   another foreperson, you'll let me know and I'll choose a

20   foreperson.  But in the normal course, you would be the

21   foreperson, juror No. 1.  Again, if you don't want to, just let

22   your colleagues know that.

23           Now, at the end of the process, after you've completed

24   the verdict sheet, what you should do is the foreperson will

25   have an envelope, everybody signs it, you put the verdict sheet

O7cWmen4                          Charge

 1    in an envelope and you send a note to say, your Honor, the jury

 2    has a verdict, without telling me what the verdict is.  And

 3    then we'll assemble everybody in open court.  The verdict must

 4    be taken in a rather formal proceeding in open court.  So don't

 5    tell me.  Keep the envelope sealed and keep the verdict sheet,

 6    the completed verdict sheet, in the envelope and come out into

 7    court.  And I'll guide everyone through the process of taking

 8    the verdict.

 9            The verdict must be announced only in open court at

10    the end of your deliberations.  And you must be unanimous.  It

11    must be a unanimous verdict of all of you.

12            Only 12 of you, the first 12 jurors, will be

13    deliberating.  The five jurors in the back will not be

14    deliberating.  However, I am not going to be excusing the five

15    jurors in the back, for reasons that I'll explain to the five

16    jurors in the back at a later time.  But what's important

17    now -- and the reason you saw that I stepped to the side --

18    normally, I would say start deliberating.  I'm informed by my

19    deputy that the jury would like to remain together, all of you,

20    for lunch.  And that's perfectly fine, except you can't start

21    deliberating now because there are going to be 17 of you there.

22            So it's a little unusual, but I'm not sending you off

23    to deliberate now.  It's 1 o'clock.  You'll go into the jury

24    room, enjoy your lunch.  Do not discuss this case for the next

25    hour.  OK?  Do not exchange views.  Talk about whatever you

O7cWmen4                    Charge

```
 1   like, but don't deliberate.  Don't discuss the case.  Enjoy the

 2   lunch.

 3            At 2 o'clock, I'll bring you back here.  There will be

 4   a marshal, I'll swear the marshal in, and I'll have you start

 5   your deliberations at 2 o'clock.  All right?  And I'll talk to

 6   the five people in the back.

 7            Enjoy the lunch.  Don't deliberate.  I'll see you here

 8   in an hour.

 9            (Jury not present)

10            THE COURT:  You may be seated in the courtroom.

11            Have the parties discussed whether or not the

12   indictment needs any redactions, in the event they ask for an

13   indictment?

14            MR. FEE:  We haven't discussed it, your Honor, but I

15   think it's evident it will be redacted.  I think we agree on

16   that subject.

17            THE COURT:  All right.  Go ahead and do it.

18            MR. RICHENTHAL:  We prepared a potential redacted

19   version, excising certain matters that the Court had ruled were

20   part of the speech and debate clause.  We'll provide that to

21   the defense, and hopefully the parties can confer and agree on

22   a redacted version.

23            THE COURT:  Yes.  I don't think it should be

24   difficult.

25            All right.  Thank you.
```

O7cWmen4                    Charge

1           MR. RICHENTHAL:  And in addition, let me note the

2    laptop is available.  It has been inspected by all defense

3    counsel.  It's being provided by our paralegals, so that's

4    ready to go.

5           THE COURT:  Don't put it into the jury room yet.

6           MR. RICHENTHAL:  No.  No, it's not.  I just wanted to

7    put on the record that all the defense counsel have had the

8    opportunity to inspect it.

9           THE COURT:  All right.

10           MR. RICHENTHAL:  The final thing, and it's probably

11    immaterial, but in the list of counties that are in the

12    Southern District of New York, the written charge is correct

13    and includes Dutchess County.  I think the Court didn't say

14    Dutchess County.  I do not think it matters.  I'm just noting

15    it.

16           MR. FEE:  Objection, your Honor.

17           MR. RICHENTHAL:  I'm not aware of anything that

18    happened in Dutchess County.  I don't think the Court needs to

19    direct anything.  I'm just letting you know.

20           THE COURT:  Does any party want me to correct that, to

21    add Dutchess County?

22           MR. FEE:  No, your Honor.

23           THE COURT:  All right.  I learned a lot about the

24    waterways when I was reading it.

25           Are there any exceptions that wish to be taken to the

O7cWmen4

1   charge as read?

2           Government.

3           MR. RICHENTHAL:  Not other than what we covered

4   earlier today.

5           THE COURT:  Yes.

6           MR. FEE:  No.

7           MR. LUSTBERG:  Your Honor, just those that we've

8   previously noted.

9           THE COURT:  Of course.

10          MR de CASTRO:  No.

11          THE COURT:  All right.

12          You have, of course, all the objections that were set

13   forth in the charging conference.

14          I'll see everybody in one hour.  Thank you.

15          (Luncheon recess)

16

17

18

19

20

21

22

23

24

25

O7cWmen4

```
 1                        AFTERNOON SESSION

 2                           2:00 p.m.

 3            (Jury present)

 4            THE COURT:  Good afternoon, ladies and gentlemen.

 5       You may be seated in the courtroom.

 6            I now am going to have the jury commence

 7       deliberations, but first we need to swear the marshal in.

 8            Marshal, please come forward.  My deputy will address

 9       you.

10            (Marshal sworn)

11            THE COURT:  Thank you.

12            Ladies and gentlemen, you know I've been telling you

13       not to deliberate.  Now I'm going to direct you to deliberate.

14       You each have a copy of the charge.  My deputy will hand you a

15       copy of the verdict sheet.  Pardon me.  The marshal has it.

16       And you will find that the computer has been loaded with all of

17       the exhibits.  You also will have paper and pencils or pens.

18            We're here as long as you want.  In the normal course

19       we would end at 5 o'clock.  If you wanted to stay later, just

20       let me know in a note from the jury, but assuming I don't hear

21       anything from you, I'll bring you in and have you end your

22       deliberations for the day and come back on Monday.  It's

23       entirely up to you as to when you leave.

24            As I said, you must exchange your views now.  When you

25       go home in the evening, again, don't discuss the case with
```

O7cWmen4

1    anyone.  Don't do any research or Google or anything or read

2    any publicity or anything along those lines.

3        Ladies and gentlemen, if the first two rows of jurors

4    will rise, the first 12 jurors, I now instruct you to commence

5    your deliberations.  Thank you.

6        (At 2:10 p.m., the jury retired to deliberate)

7        THE COURT:  You may be seated in the courtroom.

8        Jurors 13 and up, I want to thank you for being here

9    over these nine weeks.  It's a great public service that you

10    have undertaken, and I and my staff and the parties, the

11    lawyers, genuinely appreciate it.

12        I don't want you to think that your service has been

13    for naught -- for at least two reasons.  One is that I assure

14    you that the lawyers here were watching all of the jurors,

15    yourselves included, because they try to determine what the

16    jurors are thinking, and they were watching you throughout.

17    Your aspect, I'm sure, has given them information to interpret

18    however they want.

19        But more important, or as important, I'm not going to

20    discharge you now, and the reason for that is there are

21    occasions when one of the sitting 12 jurors has to be excused,

22    for one reason or another.  And in that event, I will need to

23    call on one of you to take the place of that juror.  Now, it's

24    not that usual; that is, that a juror is excused.  It's not

25    that usual, but it does happen.  In fact, it occurred this

O7cWmen4

morning in this courthouse in another trial here, where a

sitting juror had to be excused and one of the -- I'll call you

alternate jurors.  It's not technically true, but the alternate

juror had to be called back.

I can't do that if I discharge you.  So I'm not going

to discharge you now.  You still will technically be serving as

jurors.  But I can tell you you don't have to come back here in

the morning or go to the jury clerk or anything like that.  You

should go about your lives.  OK?

I am going on to direct you, because there is a

possibility that one or more of you may have to be seated as

jurors, to continue the rules I set forth earlier; that is,

don't discuss this case with anyone else.  Don't discuss it

amongst the five of you or with your family members or anyone

else.  Keep an open mind.  Don't listen to any of the publicity

or social media or anything of that nature.

If you want, you can ask my deputy to notify you when

a verdict is reached, and then you'll know there's no

possibility that you'll be asked to come back.  You don't have

to do that, but I guess the main thing is you should go about

your lives.  You don't need to report here or do anything here.

Is that clear?  Any questions?

I genuinely thank all five of you.  It's been two

months, and it's a great service.  Thank you again.  I can't

discharge you, but you can go about your business.

O7cWmen4

1            Thank you.  My deputy will show you out.

2                  (Alternate jurors not present)

3            THE COURT:  The lawyers should stay close.  I do find

4     that in the first 15 or 20 minute, quite frequently, the

5     jurors, as they get settled, will send a note out asking for

6     this or that.  In any event, make sure my deputy knows how to

7     reach you, and I want everybody to stay relatively close to the

8     courthouse in case you need to come back.

9            All right.  Thank you very much.

10                 (Recess pending verdict)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (In open court; jury not present)

2              THE COURT:  We have a jury note from earlier.  It's

3       labeled Court Exhibit No. 1 at 2:25 p.m.

4              "We need a display port cable to connect the laptop to

5       the TV screen."  And the parties provided that.  This note was

6       given to the parties by my deputy.  The parties provided that.

7              It's 5 o'clock.  We'll let the jury go home now.  I'm

8       just going to have them line up in front of me, we'll discharge

9       them.  Bring the jury in, please.

10             I'm told they need time to do something.  So be

11      seated.  Five minutes.  I guess they're getting their stuff

12      together.

13             I'm going to step off the bench.  You don't need to

14      rise.

15             (Pause)

16             (Jury present)

17             THE COURT:  Good evening, ladies and gentlemen of the

18      jury.  I'm told you wish to leave.  It's 5 o'clock.

19             My instructions are the same.  Do not discuss this

20      case with anyone else.  Don't do any research.  Don't watch any

21      social media or any news reports about it over the weekend.

22             We'll see you at 9:30 on Monday.  We cannot begin

23      until all 12 of you are here, and don't begin deliberating

24      until I see all 12 of you are here, you're brought out by the

25      marshal, I see that you're here, and then I'll tell you to

O7C3MEN5                          Deliberations

1    commence deliberating again.  Okay.  Until then, don't

2    deliberate in small groups or anything, and don't discuss the

3    case with anyone else.  Don't do any research.

4                Enjoy the weekend.  We'll see you at 9:30 on Monday.

5                (Jury excused)

6                THE COURT:  I'll see everyone on Monday.  Enjoy the

7    weekend.

8                (Adjourned until July 15, 2024, at 9:30 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25