UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                                                                  :

UNITED STATES OF AMERICA                  :

                  -*v.*-                                   :        S4 23 Cr. 490 (SHS)

NADINE MENENDEZ,
   a/k/a "Nadine Arslanian,"                :

                      Defendant.      :

------------------------------------------------------------x

# THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE THE DEFENDANT'S PROFFERED EXPERT TESTIMONY

                                        MATTHEW PODOLSKY
                                        Chief Counsel to the Acting United States Attorney
                                        Attorney for the United States, Acting under
                                        Authority Conferred by 28 U.S.C. § 515

Daniel C. Richenthal
Paul M. Monteleoni
Lara Pomerantz
Catherine Ghosh
Assistant United States Attorneys
- Of Counsel -

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................ 1

APPLICABLE LAW ............................................................................................................ 5

    A.    Expert Testimony ................................................................................................ 5

    B.    Notice of Expert Testimony ................................................................................ 8

ARGUMENT ........................................................................................................................ 9

I.    THE PROFFERED TESTIMONY SHOULD BE PRECLUDED IN ITS ENTIRETY ..... 9

    A.    The Defendant's Notice Is Materially Deficient ....................................................... 9

    B.    The Defendant Fails to Establish that the Proffered Expert Testimony Is Admissible under Rule 702 ................................................................................ 11

CONCLUSION ................................................................................................................... 17

## PRELIMINARY STATEMENT

The Government respectfully moves *in limine* to preclude in its entirety the defendant's proffered testimony of Christa Salamandra, an anthropology professor at Lehman College, City University of New York. Notice of this proffered testimony is materially deficient both as to the witness's alleged qualifications and the bases and reasons for her opinions, and even if it were not, the proffered testimony is irrelevant, not a proper subject for expert testimony, and subject to preclusion under Federal Rule of Evidence 403.

## SUMMARY OF ARGUMENT

According to the defendant, Professor Salamandra

> would be prepared to opine on how Middle Eastern cultures -- in particular, the Lebanese and Armenian cultures where Ms. Menendez's family has its roots -- treat and regard gifts of things of value between friends and business associates. Gift-giving in these cultures has a different connotation and significance than similar conduct in the United States. Gifts of things of substantial value, such as gold and cash, are more common in Lebanese and Armenian cultures than they are in the United States. A gift is an expression of affection, affinity, and respect. It does not necessarily connote a "quid pro quo," in the sense of a payment for any particular service. Indeed, part of what makes a gift a gift is that, while some form of reciprocity is expected, it cannot be immediate or in kind. The giving of such gifts is a key feature of the patronage system that dominates Lebanese society. A gift often is intended to foster trust and good will. Business and other relationships are built and maintained through these open-ended interactions. This is a facet of social and political life in Middle Eastern cultures. This system has emerged in the absence of functioning state institutions, or what in the US would be called "proper channels" that guarantee citizens' rights and access to resources.

(Defendant's January 14, 2025 Expert Witness Notice (enclosed as Exhibit A), at 1-2.)

The defendant's notice of this proffered testimony is materially deficient in multiple ways.

*First*, the entirety of the defendant's explanation of her proffered expert's qualification to give these opinions is: "Professor Salamandra is an expert in Middle Eastern cultures and has lived,

worked, and conducted ethnographic research in Beirut." (*Id.* at 1.) The defendant says nothing more. And she says nothing *at all* about her proffered expert's supposed qualification to give an opinion about the culture in Armenia (and which her proffered expert appears never to have worked in (*see id.* at 22)).

Nor does anything in her proffered expert's *curriculum vitae*, which the defendant encloses, demonstrate that her proffered expert is qualified to give the opinions that the defendant would like the jury to hear. (*See id.* at 4-27.) On the contrary, the proffered expert's *curriculum vitae* lists her subject areas as "Media; Television Drama, Urban Studies, Heritage; Visual, Popular, and Expressive Culture" (*id.* at 5), and from what the Government can tell, *all* of her articles or other publications, at least for more than a decade, are about (a) media, and in particular, television, and/or (b) Syria (*see id.* at 5-10). That is not surprising, because on the proffered expert's own webpage, which is listed on her *curriculum vitae*, the proffered expert says that she "specializes in Arabic language fictional media." http://www.christasalamandra.net/ (last visited, January 19, 2025); *see also, e.g.*, Christa Salamandra, Associate Professor, Department of Anthropology, Lehman College and the CUNY Graduate Center, https://www.roosevelthouse.hunter.cuny.edu/?conference-speaker=christa-salamandra ("Christa Salamandra is a Syrian media specialist and Associate Professor of Anthropology at Lehman College and the Graduate Center, City University of New York.") (last visited, January 19, 2025). The Government has no view on, and does not intend in any way to demean, the potential value of specialization in this area—but it has nothing to do with the opinions the defendant would like the jury to hear. The proponent of expert testimony bears the burden of demonstrating the admissibility of such testimony. *See, e.g.*, *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir.

2

2016); *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).  In this case, the defendant fails even to demonstrate that her proffered expert is qualified in the allegedly relevant area.

*Second*, even if her proffered expert were qualified in the allegedly relevant area, the defendant does not even attempt to explain the bases on which her proffered expert has reached the opinions the defendant would like the jury to hear.  That failure violates the express requirement that an expert notice provide not just "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief," but also "the *bases and reasons* for them."  Fed. R. Crim. P. 16(b)(1)(C)(iii) (emphasis added).  And that failure, only weeks from trial, alone warrants preclusion.

In any event, even if the defendant's notice were proper (or supplemented to remedy its deficiency as to both qualifications and bases for opinions, notwithstanding that trial is only weeks away), the defendant's proffered expert testimony should be precluded for multiple, independent reasons.

*First*, it is irrelevant.  As the Court is aware, the defendant has lived in the United States for the past nearly *50 years* (and the entirety of her adult life).  (*See* Tr. 5869-70 (defendant left Beirut for London as a result of Lebanese civil war in 1975, and shortly thereafter moved to California); Tr. 5868 (defendant was 10 or 11 years old when she left Lebanon).)  There is accordingly no relevance to "Lebanese and Armenian cultures" (Ex. A at 1, 2) at present or in recent years, which appears to be—at most—to what the defendant's proffered expert could speak.

And even apart from the massive temporal disconnect between the proffered testimony and the defendant's actual history, it is improper, as matter of law, for the defendant to offer evidence or argument regarding the supposed cultural customs in other places, absent a connection to her

3

*own* contemporaneous knowledge and intent. *Cf., e.g.*, *United States v. Berg*, 710 F. Supp. 438, 445 (E.D.N.Y. 1989) (testimony concerning the "custom of other arms dealers in complying with arms export laws" precluded on the ground that such evidence was irrelevant to the state of mind of the defendants), *aff'd in part, rev'd in part on other grounds sub nom. United States v. Schwartz*, 924 F.2d 410 (2d Cir. 1991); *United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (affirming preclusion of evidence in embezzlement case as to how persons other than the defendant used funds because "only [the defendant's] actions and state of mind were material to her guilt").[1]

*Second*, even if the testimony were otherwise proper, it is not an appropriate subject for expert testimony. The defendant may not dress up what is or is not a "gift," a concept that is well within the ken of the jury, in the language of expert testimony, in order to place the defendant's apparent closing argument in the mouth of a supposed expert witness. Far from needing a supposed expert, the defendant could choose to testify about her own history with so-called "gifts" (to the extent her testimony complied with the Federal Rules of Evidence). So could other fact witnesses, such as the defendant's sister, who testified at the first trial, or her father, whom the defendant has indicated she may call (again, to the extent their testimony complied with the Federal Rules of Evidence). In short, to the extent the defendant is interested in presenting evidence, if

---

[1] It would also be wholly improper for a proffered expert to testify that a so-called "system" of so-called "gifts" supposedly "emerged in the absence of functioning state institutions, or what in the US would be called 'proper channels' that guarantee citizens' rights and access to resources" (Ex. A at 2). That opinion is a thinly veiled invitation to jury nullification. Even if the defendant were permitted to offer evidence about the alleged cultures in other places, she should not be permitted to offer evidence that appears to seek to justify or excuse bribery. Nor would it be proper for a proffered expert to testify about what is or is not a "quid pro quo" (*id.* at 2). *Cf., e.g.*, *United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1985) (improper to testify as to whether there was "[m]anipulation," a "scheme to defraud," or "fraud" because these are legal terms), *rev'd in part on reh'g on other grounds*, 856 F.2d 5, 7 (2d Cir. 1988).

any exists, that she contemporaneously believed that the things of value she was provided were mere "gifts," that is a subject for lay witness testimony from persons with firsthand and admissible knowledge about the relevant facts, not expert testimony from an anthropologist with no relevant personal knowledge (even assuming *arguendo* that she were qualified).

*Finally*, even if the defendant's proffered expert testimony were otherwise admissible, it should be precluded under Rule 403, because it would turn a trial about whether the defendant engaged in bribery into a trial about complicated political and sociological issues far afield from what the jury has to decide, materially lengthening the trial and distracting the jury—all purportedly to make a point about which the witness has no firsthand knowledge or ability to make.

## APPLICABLE LAW

### A. Expert Testimony

A properly and timely noticed expert may be permitted to testify on a relevant subject "if he or she 'is qualified, reliable, and helpful.'" *United States v. Kaufman*, No. 19 Cr. 504 (LAK), 2021 WL 4084523, at *18 (S.D.N.Y. Sept. 8, 2021) (citing *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021), and Fed. R. Evid. 702) (explaining exclusion of proffered expert testimony), *aff'd*, No. 21-2589, 2023 WL 1871669 (2d Cir. Feb. 10, 2023). The scope of such testimony is "'guided' by Federal Rule of Evidence 702," *id.*, which provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" may offer an opinion if "the expert's scientific, technical, or other specified knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and the testimony is the product of reliable facts and methods the expert has reliably applied. Fed. R. Evid. 702. District courts play an important "gatekeeping role" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993).

The first of these requirements—that the "expert's scientific, technical, or other specified knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"—serves two purposes. First, "[i]n requiring that expert testimony be directed to 'scientific, technical, or specialized' knowledge," the requirement "ensures that expert witnesses will not testify about lay matters" that are properly left for the jury, such as "facts or opinions stated by other potential witnesses" or "interpretations of conduct or views as to the motivation of parties." *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004). In short, the Federal Rules of Evidence preclude a party from offering "expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror." *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994); *see also, e.g.*, *United States v. Nouri*, 711 F.3d 129, 145 (2d Cir. 2013) (district court was "well within its discretion" to preclude testimony on customary commissions by brokerage firms where cumulative of other evidence at trial); *United States v. Collins*, 581 F. App'x 59, 60 (2d Cir. 2014) (affirming preclusion of testimony by lawyers on materiality of an agreement and "the work of transactional lawyers," where "fact witnesses" covered the same ground).

Second, even testimony that is properly based on scientific, technical, or specialized knowledge must "fit" the particular "facts of the case." *Daubert*, 509 U.S. at 591. This "requirement is really just a specialized relevance inquiry that asks whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Maxwell*, No. 20 Cr. 330 (AJN), 2021 WL 5283951, at *5 (S.D.N.Y. Nov. 11, 2021) (internal quotation marks omitted).

Rule 702 also requires that proffered expert testimony be "the product of reliable principles and methods" that are "reliably applied . . . to the facts of the case." Fed. R. Evid. 702. In *Daubert*, the Supreme Court set out a list of non-exclusive factors that the trial court may consider in determining whether an expert's reasoning or methodology is reliable: (1) whether the theory or technique used by the expert can be, or has been, tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) the known or potential rate of error of the method used; (4) whether there are standards controlling the technique's operation; and (5) whether the theory or method has been generally accepted within the relevant scientific community. *Daubert*, 509 U.S. at 593-94. The Court is not required "to admit opinion evidence that is connected to [the facts] only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (citations omitted). The proponent of expert testimony—here, the defendant—bears the burden of demonstrating the admissibility of the testimony. *See, e.g.*, *In re Pfizer Inc. Sec. Litig.*, 819 F.3d at 658; *Williams*, 506 F.3d at 160.

While an expert may rely on "facts or data" that "otherwise may be inadmissible" under the hearsay rules, Rule 703 does not permit an expert witness "to circumvent rules prohibiting hearsay" by "relying on . . . conversations with non-testifying witnesses . . . in order to prove 'the truth of the matter asserted'" about a fact. *United States v. Dukagjini*, 326 F.3d 45, 59 (2d Cir. 2003); *see also United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) ("The expert may not . . . simply transmit that hearsay to the jury."). "Otherwise, the expert is simply repeating hearsay

evidence without applying any expertise whatsoever, a practice that allows the [defendant] to circumvent the rules prohibiting hearsay." *Id.* (internal quotation marks omitted).

Expert testimony, even if otherwise proper, may also be excluded under Federal Rules of Evidence 402 and 403 if it is irrelevant or if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. "Indeed, the Supreme Court, echoed by members of our own court, has noted the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (citing *Daubert*, 509 U.S. at 595).

### B.     Notice of Expert Testimony

A defendant seeking to introduce expert testimony must provide a timely written disclosure for each expert witness, which must contain, among other things, "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and "the bases and reasons for them." Fed. R. Crim. P. 16(b)(1)(C)(iii). "Disclosure of the 'bases relied upon by the expert . . . should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts.'" *United States v. Weiner*, No. 22 Cr. 19 (PGG), 2024 WL 82729, at *5 (S.D.N.Y. Jan. 8, 2024) (quoting Fed. R. Crim. P. 16 Adv. Comm. Notes, 1993 Amendment). While this requirement "does not require a verbatim recitation of the testimony the expert will give at trial," Fed. R. Crim. P. 16 Adv. Comm. Notes, a "brief summary of the proposed testimony" that does not set forth a "full statement of . . . opinions and reasons for them" is insufficient, *United States v. Dzionara-Norsen*, No. 21-454, 2024 WL 191803, at *4 (2d Cir. Jan. 18, 2024). "Where a defendant fails to comply with such

8

disclosure requirements, a court may prohibit [her] from introducing the evidence at trial." *Id.*; *see also, e.g.*, *United States v. Valle*, No. 12 Cr. 847 (PGG), 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013); *United States v. Mahaffy*, No. 05 Cr. 613 (ILG), 2007 WL 1213738, at *2 (E.D.N.Y. Apr. 24, 2007); *United States v. Ferguson*, No. 06 Cr. 137 (CFD), 2007 WL 4539646, at *1 (D. Conn. Dec. 14, 2007).

This is for good reason. The expert disclosure provisions of the Rules exist to allow opposing counsel the opportunity to challenge the admissibility of testimony, prepare for cross-examination, and decide whether to retain rebuttal experts. *See, e.g.*, *United States v. Rajaratnam*, No. S2 09 Cr. 1184 (RJH), 2011 WL 723530, at *3 (S.D.N.Y. Feb. 25, 2011) ("[T]he purpose of reciprocal expert disclosures is 'to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" (quoting Fed. R. Crim. P. 16 Advisory Committee's Note)); *Valle*, 2013 WL 440687, at *5 (same); *United States v. Day*, 524 F.3d 1361, 1372 (D.C. Cir. 2008) (same).

## ARGUMENT

### I. THE PROFFERED TESTIMONY SHOULD BE PRECLUDED IN ITS ENTIRETY

The defendant's proffered testimony should be precluded, in its entirety, for multiple, independent reasons.

#### A. The Defendant's Notice Is Materially Deficient

The defendant's notice does not meet the requirements of Rule 16(b)(1)(C) because the notice neither adequately demonstrates that the proffered expert is qualified to give the proffered opinions nor discloses the *bases or reasons* for the proffered expert's opinions. Indeed, as

9

described above, the notice barely attempts to explain the proffered expert's relevant qualifications, and does not even attempt to explain the bases for her conclusions.

The law is settled. As the Court explained in precluding Robert Menendez's proffered expert (*see* Tr. 761-62), to comply with the notice requirement of Rule 16, "[a]n expert opinion requires some explanation as to how the expert came to his [or her] conclusion and what methodologies or evidence substantiate that conclusion." *United States v. Kwok*, No. 23 Cr. 118 (AT), 2024 WL 1773143, at *1 (S.D.N.Y. Apr. 24, 2024) (quoting *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006)). Even assuming *arguendo* that the proffered expert here were qualified to give the opinions the defendant would like the jury to hear—and the defendant, who bears the burden, fails to show such qualification—the defendant does not even attempt to comply with the requirement that she provide "explanation as to how the expert came" to her proffered views. Simply asserting that the proffered expert is "an expert in Middle Eastern cultures and has lived, worked, and conducted ethnographic research in Beirut" (Ex. A at 1), in an unexplained area of focus, at an unexplained time, in an unexplained manner, as the basis for her opinions, as the defendant's notice does, is a "patent evasion of the Rule's requirements." *United States v. Mrabet*, No. 23 Cr. 69 (JSR), 2023 WL 8179685, at *2 (S.D.N.Y. Nov. 27, 2023). As the Court explained with respect to Robert Menendez's proffered expert, simply "putting forth [that expert's] 'experience and research' as a basis for her conclusion provides no meaningful information to the government." (Tr. 763.) So too here. Indeed, the defendant provides even *less* information. Providing an expert's *curriculum vitae* does not remedy this material problem, particularly where the *curriculum vitae* does not indicate that the proffered expert has conducted any research in the

relevant area. (*Cf. id.* ("Indeed, the provided curriculum vitae is facially devoid of any experience in either [relevant area].").)

Without the specificity required by Rule 16, it is impossible for the Government to fully assess the proffered expert's opinions—and that is a particularly significant problem given that (a) the proffered expert appears unqualified to give such opinions, (b) the proffered opinions are irrelevant, and (c) there is a substantial risk that the jury would be improperly swayed by those opinions or misapprehend their limits. Nor does the defendant's deficient notice permit the Court to effectively perform its critical gatekeeping function. (*Cf.* Tr. 766 (Robert Menendez "has not met his burden of showing that [his proffered expert]'s testimony is the product of reliable principles and methods and that her opinion reflects a reliable application of the principles and methods to the facts of the case.").)

> **B.    The Defendant Fails to Establish that the Proffered Expert Testimony Is Admissible under Rule 702**

Even if the defendant's notice were sufficient—and it is not—her proffered expert testimony is inadmissible, for multiple, independent reasons.

*First*, as described above, it is irrelevant. The defendant does not even attempt to explain how her proffered expert's opinions about current or recent "cultures" in certain parts of the Middle East supposedly are relevant to the jury's determination of whether the defendant—who has not lived in the Middle East for nearly *50 years*—engaged in bribery. But even assuming away this massive temporal disconnect, it is improper for the defendant to offer evidence or argument regarding the supposed cultural customs in other places, absent a connection to her *own* contemporaneous knowledge and intent. *See, e.g.*, *Berg*, 710 F. Supp. at 445; *Oldbear*, 568 F.3d at 821; *see also, e.g.*, *United States v. Kaplan*, 490 F.3d 110, 121-22 (2d Cir. 2007) (holding district

11

court erred in admitting evidence of one person's knowledge to show defendant's knowledge without evidence that defendant was aware of the same information, expressing doubt that evidence was relevant, and explaining that, in any event, it should have been precluded under Rule 403 because it "required [the jury] to draw a series of inferences, unsupported by other evidence," yet was offered on "the ultimate issue in the case"); *United States v. Martoma*, 993 F. Supp. 2d 452, 455-56 (S.D.N.Y. 2014) (in insider trading case, excluding expert opinion that a stock was overvalued absent evidence that the defendant had himself conducted such analyses or been contemporaneously reading such analyses).

*Second*, the defendant fails to show that the proffered opinions are a proper subject of expert testimony *at all*. As described above, the Federal Rules of Evidence preclude a party from offering "expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror." *Amuso*, 21 F.3d at 1263; *see also, e.g.*, *Nouri*, 711 F.3d at 145 (district court was "well within its discretion" to preclude testimony on customary commissions by brokerage firms where cumulative of other evidence at trial); *Collins*, 581 F. App'x at 60 (affirming preclusion of testimony by lawyers on the materiality of an agreement and "the work of transactional lawyers," where "fact witnesses" covered the same ground); *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d at 546, 541 (expert witnesses should "not testify about lay matters" that are properly left for the jury, such as "facts or opinions stated by other potential witnesses" or "interpretations of conduct or views as to the motivation of parties").

The defendant's proffered expert testimony is irreconcilable with this fundamental principle. Her proffered expert has no firsthand knowledge of the defendant, or any other of the

12

persons or events in this case—yet the defendant purports to call her proffered expert in support of the argument that she allegedly believed that the things of value she received were mere "gifts" because of her alleged family history. But that is a subject to which the defendant, or other lay witnesses, could testify. *Cf. United States v. Long*, 917 F.2d 691, 701-02 (2d Cir. 1990) (it was an abuse of discretion to permit an expert to testify about "organized crime families" when "the fact" that was relevant, whether an individual was connected to organized crime and demanded a fee, could have been testified to by a lay witness). And indeed, as the Court is aware, the defendant's sister testified at the first trial regarding her family's alleged history of having and gifting gold. The defendant has also indicated that she may call her father at her trial. The defendant is not entitled to avoid cross-examination of such fact witnesses by calling an expert instead. Nor is she entitled to suggest that because an expert—who knows nothing about her or her family—has certain opinions of one or more cultures abroad, those fact witnesses, should they testify, must be found credible. As the Court explained with respect to Robert Menendez's proffered expert:

> [The proffered expert], were she permitted to testify, would essentially be reciting to the jury the same background, details and conclusions that Menendez will be able to tell the jury himself if he so chooses to testify in his defense, or, for that matter, the testimony of another witness, a lay witness who had firsthand knowledge of the events who could testify to those events if he or she had firsthand knowledge of them.
>
> To be sure, Mr. Menendez is under absolutely no obligation whatsoever to testify, but the proposed expert testimony is an effort to transmit the defendant's story to the jury without his deciding to take the stand and be subject to cross-examination while at the same time adding a patina of expert opinion to his lay testimony. Again, I repeat, he's under absolutely no obligation to testify, but he can't get what would be his testimony to the jury by virtue of this expert's testimony.

(Tr. 768.) Again, so too here.

Moreover, the defendant's proffered expert's opinions on the supposed cultural definitions of gifts improperly seek to place an imprimatur on commonplace concepts that are well within the ken of the jury. A jury does not need a supposed "expert" in another culture, even an allegedly relevant culture, to apprehend that "[a] gift is an expression of affection, affinity, and respect" and that "[i]t does not necessarily connote a 'quid pro quo,' in the sense of a payment for any particular service." (Ex. A at 2.) To the contrary, that is the common understanding of a gift (*see, e.g.*, *id.* (stating this is "part of what makes a gift a gift")), which is well within the ken of the jury, and in no way appropriate to dress up as an expert opinion. *See, e.g.*, *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1335 (11th Cir. 2014) ("[C]ommon-sense concepts are especially appropriate for consideration by a jury."); *see also, e.g.*, *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) ("[T]he district court should not admit testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." (nternal quotation marks omitted)). It would be unfairly prejudicial to the Government to allow a supposed expert to expound on what is a "gift," as if that is an area of specialized knowledge that the jury should credit, when, at bottom, what the supposed expert would be doing is parroting defense arguments—that the things of value demanded and received by the defendant were not part of a corrupt *quid pro quo*. *See, e.g.*, *DeWit v. UPS Ground Freight, Inc.*, No. 16 Civ. 36, 2017 WL 5905575, at *2 (N.D. Fl. Jul. 25, 2017) (precluding expert opinion that "merely takes a commonsense concept and applies it to a specific field," stating opinion does not "concern matters that are beyond the understanding of the average lay person," and that it "therefore would not be helpful to the jury and offers nothing more than what lawyers for the parties can argue in closing arguments" (internal quotation marks omitted)).

The unfair prejudice of allowing a supposedly expert witness to expound on the understanding of a gift would be exacerbated by the fact that she apparently seeks to do so by also communicating or using the *legal* concept of a *quid pro quo*, which is not a matter for expert testimony, but one for the Court's instructions, and ultimately one for the jury to apply to the facts based on those instructions. *See, e.g.*, *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) ("Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury."); *see also, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (holding expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it"); *id.* ("[T]estimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice."); *cf. e.g.*, *Scop*, 846 F.2d at 140 (improper to testify as to whether there was "[m]anipulation," a "scheme to defraud," or "fraud" because these are legal terms).

*Finally*, even if the defendant's proffered expert testimony were otherwise properly noticed, reliable, relevant, and admissible, it should be precluded under Rule 403. As is relevant here, the questions before the jury, in sum, are whether the defendant agreed to and did engage in bribery—not whether other people, at other times, in other places, might have engaged in conduct that is or was not, in those places, seen as bribery (or would be supposedly justified in those places). But even assuming *arguendo* that the proffered expert's opinions were relevant, any modicum of theoretical relevance is greatly outweighed by the material lengthening of the trial, and the very

15

real risks that the jury will be distracted or confused, or believe that the defendant's fact witnesses are entitled to special treatment because a proffered expert mirrored their testimony. *Cf., e.g.*, *United States v. Amawi*, 695 F.3d 457, 480 (6th Cir. 2012) (affirming exclusion of proposed expert testimony about "politics and cultural norms in the Middle East," and explaining that there was a "very weak link, if any" between that testimony and "the relevant states of mind of the defendants"); s*ee also United States v. Amawi*, 552 F. Supp. 2d 669, 675 (N.D. Ohio 2008) (similar proposed expert testimony "involves matters ancillary to the issues in the case, and to what the jury must decide," and accordingly its probative value, if any, "would be substantially outweighed by the risk of confusion of the issues for the jury").

Moreover, if the defendant's proffered expert were permitted to testify, the Government would have no choice but to respond, including by potentially calling a rebuttal expert who could explain, among other things, that bribery is illegal in both Lebanon and Armenia. *See, e.g.*, United Nations, List of Ratifiers of Convention Against Corruption, https://treaties.un.org/Pages/ViewDetails.aspx?src=IND&mtdsg_no=XVIII-14&chapter=18&clang=_en (last visited, January 19, 2025). The Government would also potentially have to reassess its present intention not to offer evidence of Robert Menendez's prior federal corruption indictment, and/or public admonishment by the Senate, both of which would assist in rebutting any argument that the defendant, in light of her supposed history, did not recognize the exchange of things of value for official acts as a corrupt "quid pro quo" (Ex. A at 2). This too would materially lengthen and complicate the trial, yet may be necessary lest the jury have a serious misimpression about the defendant's awareness of the wrongfulness of her conduct,

in light of her proffered expert's testimony, which would put an unwarranted imprimatur on her apparent defense.

In sum, while the defendant's proffered expert testimony should be precluded for multiple reasons independent of Rule 403, even assuming *arguendo* that the testimony otherwise were proper and admissible, it should be precluded on that ground as well.

## CONCLUSION

For the foregoing reasons, the defendant's proffered expert testimony should be precluded in its entirety.

Dated: New York, New York
January 20, 2025

Respectfully submitted,

MATTHEW PODOLSKY
Chief Counsel to the Acting United States Attorney
Attorney for the United States, Acting under
Authority Conferred by 28 U.S.C. § 515

By:   s/ Daniel C. Richenthal
Daniel C. Richenthal
Paul M. Monteleoni
Lara Pomerantz
Catherine Ghosh
Assistant United States Attorneys
(212) 637-2109/2219/2343/1114