UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

UNITED STATES OF AMERICA

        v.

NADINE MENENDEZ,

        *Defendant*.

-------------------------------------------------------- x

Case No. 1:23-cr-490 (SHS-2)

## MOTION TO QUASH DEFENDANT NADINE MENENDEZ'S SUBPOENAS FOR TRIAL TESTIMONY OF NICHOLAS LEWIN

Jose Uribe and his former attorney, Nicholas Lewin (collectively, the "Movants") respectfully move to quash the subpoena served by Defendant Nadine Menendez ('Defendant" or "Mrs. Menendez") upon Mr. Lewin on April 5, 2025 seeking his trial testimony ("April 5 Subpoena")[1].

## INTRODUCTION

On April 5, 2025, Defendant inappropriately served the Subpoena upon counsel for Mr. Lewin seeking his testimony at Mrs. Menendez's trial even though this Court already precluded Mr. Lewin's testimony at the prior trial ("First Trial") of her husband, former Senator Robert Menendez ("Mr. Menendez"), Wael Hana, and Fred Diabes.  At the First Trial, Mr. Uribe's current and former counsel successfully moved to quash the subpoenas[2] served upon them for documents and, in Mr. Lewin's case, testimony.

As the record makes clear, the Court excluded Mr. Lewin's testimony in the First Trial and provided a detailed explanation both on the record and in a written order for that exclusion.[3] Notwithstanding the Court's clear rulings, Defendant now seeks to have Mr. Lewin testify at her own trial for nearly identical reasons that the Court already has rejected.   Movants respectfully submit that Defendant's April 5 Subpoena should be quashed for the same reasons that the defendants in the First Trial were foreclosed from calling Mr. Lewin as a witness.

---

[1] A true and correct copy of the April 5 Subpoena is attached hereto as Exhibit "A" to the Declaration of Ann St. Peter-Griffith, dated April 11, 2025 (the "St. Peter-Griffith Declaration").
[2] Mr. Uribe and Mr. Lewin incorporate by reference herein all of their applicable arguments from the Motions to Quash and related filings during the First Trial.  (ECF No. 390 & 419).
[3] A true and correct copy of the redacted transcript of this Court's ruling on Mr. Uribe's counsels' Motion to Quash filed during the First Trial ("First Trial Tr.") is attached hereto as Exhibit "B" to the St. Peter-Griffith Declaration.  A true and correct copy of this Court's written order granting the Motion to Quash (ECF No. 432) is attached hereto as Exhibit "C" to the St. Peter-Griffith Declaration.

## FACTUAL BACKGROUND TO SUBPOENA REQUESTS

a.    *The Movants*

Mr. Uribe was a co-defendant with Mrs. Menendez and the other defendants in this criminal case until March 1, 2024, when Uribe pled guilty to a separate criminal information [S3 23 Cr. 490 (SHS)] pursuant to a cooperation agreement.  He testified at Defendant's trial on April 7 and 8, 2025.  Mr. Uribe has standing to bring this Motion as Mr. Lewin represented him until shortly after he was indicted at which time the Kasowitz firm took over his representation.   With a very narrow and limited exception, Mr. Lewin's communications with Mr. Uribe are protected by the attorney-client privilege, which Mr. Uribe has continuously and presently maintains. Defendant's attempt to have Mr. Lewin testify at trial creates a significant risk that either that Mr. Uribe's attorney-client privilege will be abrogated, or that the jury could be hopelessly confused. Significantly, Mr. Lewin has never met or even spoken with Mrs. Menendez.

b.    *Basis For Seeking Mr. Lewin's Testimony*

Pursuant to this Court's order, Defendant has made two proffers to the Government disclosing what she expects to elicit from Mr. Lewin as a witness at trial:

First, on March 28, 2025 at 8:10 p.m., Defendant's counsel wrote to the Government and disclosed the following proffer ("Initial Proffer") regarding the subject of the testimony it sought from Mr. Lewin, indicating that he: "[w]ould testify about a financial transaction in which he was involved with Jose Uribe and the Defendant, relating to an alleged loan transaction." *See* composite Exhibit "D" hereto at ECF No. 809-1 at 4.

Second, on April 6, 2025, Defendant provided an "additional" proffer ("Supplemental Proffer") relating to Mr. Lewin that her counsel attached as Exhibit 4 to Mr. Coburn's letter filed at ECF No. 817-5 at 1-2.  *See* composite Exhibit "D" attached to the St. Peter-Griffith Declaration.

3

In that additional proffer, Mr. Coburn largely "cuts and pastes" directly from a letter to this Court provided by Mr. Menendez's counsel explaining why Mr. Menendez sought Mr. Lewin's testimony in the First Trial.

Those reasons included: (a) seeking evidence of how Mr. Uribe successfully misled his counsel; (b) seeking evidence to permit the jury to infer that Mr. Menendez was "duped" by other members of the conspiracy[4] about the Mercedes car payments; (c) seeking evidence of Mr. Uribe's misleading his lawyer, and how that act by Mr. Uribe occurred, that supported Mr. Menendez's defense that he was misled;  and, (d) confirming Mr. Lewin's statement to the Government as memorialized in the Government's notes.  Mr. Menendez claimed that Mr. Lewin's testimony was necessary to impeach Mr. Uribe concerning what he believed about Mr. Menendez's knowledge of Mr. Uribe's payments for the Mercedes.  *See* composite Exhibit D at ECF No. 817-5 at 1-2.

c.    *Mr. Uribe's Testimony In This Trial*

From April 7 and 8, 2025, Mr. Uribe testified in the Government's case in chief, and was crossed examined by Defendant's counsel on April 8, 2025.  With respect to the obstruction of justice activity associated with Mr. Lewin's unwitting provision of information at Mr. Uribe's direction to mislead the Government concerning the bribe payments for the Mercedes, at trial Mr. Uribe testified, in pertinent part, as follows:

> Q:    Were the payments you made to Nadine a loan?
> A:    No, they were not.
> Q:    So why did you suggest to Nadine at the Glenpointe Marriott that you would say, if asked by the FBI, that the payments you made were a loan?
> A:    For once I never thought that I was going to be charged with federal crimes.  I didn't want to be telling on my friends, and I thought I was going to get away with this.

---

[4] Given that for purposes of the First Trial and this trial, only Mr. Menendez, Mr. Uribe, and the Defendant were charged with the conspiracy associated with obstruction of justice associated with false statements to the Government, presumably the only other co-defendant other than Mr. Uribe that Mr. Menendez was claiming he was misled by was his wife, the Defendant in this trial.

Exhibit E[5], Trial Tr. 1678, Lines 9-16.

Q:    Mr. Uribe, were the payments you made on the Mercedes a personal loan?
A:    No, they were not a loan
Q:    What did you do with this check?
A:    I deposited the check.
Q:    Did you deposit the check because you, in fact believed it was a repayment of a loan?
A:    No.
Q:    What was your understanding of how Nadine calculated the amount of $21,000?
A:    I had no idea.
Q:    How does the $21,000 compare to the amount you spent on the car?
A:    Less than.

Exhibit E, Trial Tr. 1681, Lines 1-16.

Q:    After that meeting, but before you were charged in September of 2023, did your lawyers speak with the prosecutors about you?
A:    Yes, they did.
Q:    Did there come a time when you authorized your lawyers to tell the prosecutors about the payments you made related to the Mercedes for Nadine?
A:    Yes.
Q:    Why – excuse me, what did you authorize them to say about those car payments?
A:    I authorize my lawyer to said that the payments to Nadine's car was me helping a friend that was in financial problems, and that when she does better, she was going to pay me back.
Q:    Was that true?
A:    No, it was not.
Q:    Were the payments on the Mercedes for the defendant a loan?
A:    No, they were not.
Q:    So why did you authorize your lawyers at the time to tell prosecutors that they car payments were a loan?
A:    Again, I never thought I was going to get charged with federal crimes.  I didn't want to be talking about my friends, and I thought I was going to get away with this.
Q:    Did you authorize your lawyers to provide information to the prosecutors at that time?
A:    Yes, I did.

Exhibit E, Trial Tr. 1683, Line 13 to 1684 Line 12.

Q:    Before your lawyer provided information to the prosecutors that the payments were a loan, did they tell you that they were going to say that?

---

[5] Excerpted pages of the Trial Transcript ("Trial Tr.") in the instant case are attached as Exhibit "E" to the St. Peter-Griffith Declaration.

> A:    I authorized my lawyers at the time to convey what I told them about the payment to the prosecutors.
> Q:    After the conversation you authorized your lawyers to have with prosecutors, were you charged with federal crimes?
> A:    Yes.

Exhibit E, Trial Tr. 1684, Line 21 to 1685, Line 3.

> Q:    Did you plead guilty to conspiracy to commit obstruction of justice and obstruction of justice?
> A:    Yes, ma'am.
> Q:    What made you guilty?
> A:    After I was served subpoenas, I met with Nadine, and I made up the story about the payments to the car being a loan.

Exhibit E, Trial Tr. 1687, Lines 15-20.

Counsel for Defendant had the opportunity to cross-examine Mr. Uribe. He elected not to ask any questions on cross-examination concerning the above testimony.

d.    *This Court's Prior Ruling*

In her amended proffer, Defendant invokes effectively the same arguments that Mr. Menendez offered for seeking Mr. Lewin's testimony in the First Trial. But this Court previously quashed the subpoena for Mr. Lewin's testimony at the First Trial, without needing to reach the question of whether the attorney-client privilege would be abrogated. *See* Exhibit B, First Trial Tr. *generally*.

This Court determined Mr. Lewin should not testify at the First Trial based on a number of grounds, all of which are equally or even more applicable here. Following Mr. Uribe's extensive testimony and cross-examination in the First Trial, this Court determined that whether Mr. Lewin believed his client that the payments for the Mercedes were a "loan" was "not relevant to the charges in [the First Trial]". Exhibit B, First Trial Tr. 5490. This Court held:

> [T]he inquiry sought by Menendez into what Lewin's belief was as to the truthfulness of his client is not an appropriate subject for questioning. A lawyer's belief in his client's statements – or lack thereof – is irrelevant to impeaching Uribe

or assisting Menendez.  It is impermissible opinion testimony.

Exhibit B, First Trial. Tr. 5490, Line 24 to 5491, Line 4.  The Court also determined that "any possible probative value is substantially outweighed by the danger of confusing the issues, wasting time and misleading the jury, under Rule 403."  Exhibit B, First Trial Tr. 5491, Lines 9-11.[6]

Additionally, this Court determined that Mr. Lewin's testimony was not admissible to impeach Mr. Uribe regarding his testimony about his belief that Mr. Menendez knew that Mr. Uribe was making payments for the car.  That issue is not present here – Defendant and not Mr. Menendez – who was previously convicted – is on trial here.  In so ruling, the Court also pointed to the fact that Mr. Menendez at the first trial had the chance to cross-examine Mr. Uribe – just as the Defendant has already done in this trial on April 8, 2025.  Exhibit B, First Trial Tr. 5492, Lines 8-22.

With respect to the use of Mr. Lewin's testimony to impeach Mr. Uribe in the First Trial, this Court concluded that even if *arguendo* Mr. Lewin's testimony was proper impeachment fodder, Mr. Menendez already cross-examined Mr. Uribe in the Government's case.  Calling Mr. Lewin in the defense's case to try to impeach Mr. Uribe "would be improper, pursuant to Rule 613, which only permits extrinsic evidence of his prior inconsistent statement if Uribe is given an opportunity to explain or deny the statement."  Exhibit B, First Trial Tr. 5492, Lines 16-22. Finally, the Court concluded that Mr. Lewin's testimony "essentially repeating Uribe's testimony that the July 19 proffer was not truthful is needlessly cumulative under Rule 403."  Exhibit B, First Trial Tr. 5492 Line 23 to 5493 Line 1.

---

[6] During the First Trial, Mr. Menendez asserted that he sought Mr. Lewin's testimony at trial to show that Mr. Uribe's lies to his attorney about the payments were reflective of Mr. Uribe's capacity to "dupe" Mr. Menendez into believing that the Mercedes payments were a loan. The Court rejected this argument.  Exhibit B, First Trial Tr. at 5491, Line 13 to 5492, Line 13.  It is unclear whether the Defendant here would make such an argument.

## ARGUMENT

This Court's rulings excluding Mr. Lewin as a witness in the First Trial apply with equal force here. Defendant's proffers reasons do not support the Defendant's need for Mr. Lewin testimony at this trial and provide no basis for this Court revisiting its decision making at the First Trial. Moreover, this Court has already ruled at the instant trial that Mr. Lewin's testimony would be irrelevant.

## I. Defendant's Proffered Reasons For Mr. Lewin's Testimony Are Unavailing

While neither Mr. Lewin nor Mr. Uribe were privy to all of the communications between the Government and Defendant regarding defense witness proffers in this case, from the public record it appears that there has been a lengthy history of back and forth between the parties. Nevertheless, based on her public filings, Defendant's stated reasons for needing Mr. Lewin's testimony in both the Initial Proffer and the Supplemental Proffer are unavailing.

(i)     *Initial Proffer.*

Defendant first stated that she anticipated Mr. Lewin "[w]ould testify about a financial transaction in which he was involved with Jose Uribe and the Defendant, relating to an alleged loan transaction." Again, Mr. Lewin has never met or spoken with the Defendant, nor has he been "involved with" a financial transaction with Mr. Uribe or the Defendant. The only conceivable matters that the Initial Proffer could relate to are: (1) Mr. Uribe's provision of false "loan" story to Mr. Lewin about the payments for the Mercedes and Mr. Lewin's unwitting relating of the same false information to the Government; or, (2) how it came to be that Mr. Uribe came into possession of the $21,000 check and the accompanying letter from Defendant. *See* Trial Exhibit 3B-1A admitted at trial at Exhibit E, Trial Tr. 1679, Lines 13-19.

Mr. Uribe testified extensively concerning his providing the false story of the loan to Mr.

Lewin (without referencing Mr. Lewin's name) during trial. As discussed further below, Mr. Lewin's testimony would be irrelevant, cumulative, and prejudicial at trial, and could not properly be used to impeach Mr. Uribe. And, as a fact witness, Mr. Lewin is not in a position to provide any new information not already in evidence.

Mr. Uribe also has already testified about how he came into possession of the $21,000 check and the letter from the Defendant. The check and the redacted letter were admitted into evidence without objection, and there is no dispute as to their provenance or authenticity. Critically, the Court already concluded that Mr. Lewin's testimony about *how* Mr. Uribe came into possession of the check through correspondence to Mr. Lewin would be both irrelevant and potentially prejudicial. At a break discussion on April 8, 2025, after admitting the check and correspondence (Trial Exhibit 3B-1A) into evidence without objection, this Court stated:

> THE COURT: But the fact that it was a lawyer who did it is not what's relevant to the transaction, and in fact it, muddies the waters about whether involvement of a lawyer is in some way sanitizing the transaction. And the involvement of the lawyer, in the context of what we're talking about here, is irrelevant to the jury.

Exhibit E, Trial Tr. 1693, Lines 1-6.

> THE COURT: The only things that have been brought up to me, the involvement of the lawyer is not relevant and runs the risk of the jury thinking, again, it's been sanitized, and everything's clean because the lawyer was involved. So, from the standpoint of this transaction, it seemed to me irrelevant and potentially prejudicial to inject the issue of a lawyer into that transaction.

Exhibit E, Trial Tr. 1693, Line 23 to 1694 Lines 1-4. The Government is in the best position to assert its objections to this testimony, but in light of this Court's comments concerning Mr. Lewin's involvement in the check Mr. Uribe received, anything Mr. Lewin could testify about concerning how Mr. Uribe came into possession of Trial Exhibit 3B-A1 would be irrelevant and could cause juror confusion. Mr. Lewin and Mr. Uribe accordingly respectfully submit that Defendant's Initial Proffer is unavailing and that Mr. Lewin should be precluded from testifying

at this trial.

(ii)    *Supplemental Proffer*

Defendant's Supplemental Proffer similarly provides no reason for why Mr. Lewin's testimony is needed in this trial, and, by outward appearances, is not relevant to Mrs. Menendez's defense.  The Supplemental Proffer simply quotes from *Mr. Menendez's* stated reasons in a letter to this Court as to why Mr. Lewin should be required to testify in the First Trial.  Exhibit D,  ECF No. 817-5 at 1-2.  Mr. Lewin's testimony in this trial is not needed to support *Mr. Menendez's* defense *in this trial* as he was already convicted in 2024 by a jury, including on the obstruction counts.

Mr. Menendez's defense asserted in the First Trial that he was in the dark about the source of the Mercedes payments because Mr. Uribe and Defendant "duped" him.  As the Supplemental Proffer recites: "evidence that Uribe duped his lawyer into believing that the car payments were a loan is admissible evidence that Uribe's and Arslanian's [meaning the *Defendant's*] scheme worked."  Nonsensically, the stated reason in the Supplemental Proffer for Mr. Lewin's testimony *in this trial* is to assist in proving that both Mr. Uribe and the Defendant conspired to lie to federal authorities about Mr. Uribe's payments for the Mercedes without Senator Menendez's knowledge – which appears to be an attempted "own goal" shot that is counterproductive to Mrs. Menendez's defense and could create the risk of a future claim by Defendant of ineffective assistance of counsel.

But even if the reasoning advanced in the Supplemental Proffer were relevant to *this Defendant's* defense, this Court already rejected these very same arguments in the First Trial.  *See* Exhibit B, First Trial. Tr. 5490, Line 21 to 5491, Line 4.  The Defendant has offered no reason for the Court to revisit this decision.

II.     **Mr. Lewin's Testimony Is Irrelevant And/Or Would Unnecessarily Risk Disclosure Of Privileged Materials**.

In addition to the foregoing, Mr. Lewin cannot testify about his discussions with Mr. Uribe without violating the attorney-client privilege and his duty of confidentiality.  It is a long-standing principle that the attorney-client privilege promotes "'broader public interests in the observance of law and administrative of justice' by encouraging 'full and frank communication between attorneys and their clients.'"  *Cuomo v. Off. of New York State Att'y Gen.,* No. 22-MC-3044 (LDH) (TAM), 2024 WL 4593407, at *12 (E.D.N.Y. Oct. 28, 2024) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  The Southern District of New York recognizes the "practical importance of assurance of the lawyer's non-disclosure of confidences the lawyer learns in the course of her representation," including the "force and value of the policy that the lawyer may not reveal the confidences of her client".  *Astraea NYC LLC v. Rivada Networks, Inc.*, 592 F. Supp. 3d 181, 183 (S.D.N.Y. 2022) (quashing information subpoena); *see also United States v. Xu*, No. 23-CR-133-5 (JMF), 2024 WL 4504352, at *2-3 (S.D.N.Y. Oct. 16, 2024) (denying proposed subpoena that "plainly" called for documents protected by the attorney-client privilege or work-product doctrine where subpoena requested "all documents and communications…relating to documents and communication between [law firm] and the Government").

Affording this Defendant the opportunity to question Mr. Uribe's attorney obviously runs the risk of impermissibly letting Defendant probe him for privileged information and would force him to reveal client confidences.  This Court has previously concluded that there is no reason to abrogate that privilege under any legally cognizable exception to the attorney-client privilege, nor has Defendant even suggested a viable argument concerning why Mr. Uribe's attorney-client privilege should be pierced or his client confidences publicly revealed.  Consequently, as a matter of law, Mr. Lewin is foreclosed from testifying regarding his privileged conversations with Mr.

Uribe, and there is no legitimate reason to call him as a witness.

But even if there were a reason to abrogate Mr. Uribe's attorney-client privilege—and there is not—any testimony Mr. Lewin might provide would be cumulative. Mr. Uribe provided fulsome testimony concerning the false loan story imparted to the Government during the July 19 proffer session. The Government's notes corroborate what Mr. Lewin said during that proffer regarding Mr. Uribe's false loan story. Mr. Lewin's testimony is not necessary or germane to this case other than as cumulative corroboration of what is reflected in the Government's notes and in Mr. Uribe's trial testimony.

## III. The Court's Prior Ruling At The First Trial Is Equally Applicable Here And Bars Mr. Lewin's Testimony, Including For Impeachment

(i)    *Improper Impeachment.*

Utilizing Mr. Lewin's testimony for impeachment purposes would be improper for the same reasons it was improper in the First Trial. Mr. Uribe's testimony has concluded, and Defendant had her chance to cross-examine him on the topic and elected not to. Mr. Lewin's testimony cannot be used to impeach an already excused[7] witness (who is not identified as a defense witness here), nor can Defendant point to how Mr. Lewin's testimony would provide evidence of a prior out of court statement by Mr. Uribe that would contradict his testimony at this trial. Just as in this trial, in the First Trial Mr. Uribe already had testified that his attorney's July 19 proffer to the Government was not true. There is no basis to believe that Mr. Lewin's testimony would be inconsistent with this testimony. *See* Fed. R. Evid. 613(b) (authorizing impeachment

---

[7] Federal Rule of Evidence 613(b) provides in pertinent part:

> **(b) Extrinsic Evidence of a Prior Inconsistent Statement.** Extrinsic evidence of a witness's prior inconsistent statement is admissible ***only if the witness is given an opportunity to explain or deny the statement*** and an adverse party is given an opportunity to examine the witness about it, or if justice so requires.

with an inconsistent statement only).  Accordingly, the Federal Rules of Evidence would not permit Mr. Lewin's testimony as a means to impeach Mr. Uribe.  *See id.*

      (ii)    *Mr. Lewin's Testimony Would Be Irrelevant And Impermissible Under Rule 403.*

      Defendant's Supplemental Proffer suggests that she seeks Mr. Lewin's testimony to impeach Mr. Uribe's testimony regarding *Mr. Menendez's* belief in the false loan story.  But as this Court ruled previously, whether Mr. Lewin believed Mr. Uribe when Mr. Uribe told him the lie about the payments for the Mercedes being a loan has no bearing on this trial.  As this Court already has ruled during the First Trial, "[a] lawyer's belief in his client's statements – or lack thereof – is irrelevant to impeaching Uribe" or assisting the Defendant here.  Consequently, it would constitute impermissible opinion testimony.  Exhibit B, First Trial. Tr. 5490, Line 21 to 5491, Line 4.

      But even if it were relevant, Mr. Lewin's presence as a defense witness could unfairly mislead and confuse the jurors by leaving the impermissible (and false) impression in their minds that Mr. Lewin, who has never met or spoken with the Defendant, is testifying as a defense witness to discredit his former client's testimony.  And the jurors may be further confused when Mr. Lewin has no non-cumulative testimony to provide.  Just as in the First Trial, any possible probative value of Mr. Lewin's testimony "is substantially outweighed by the danger of confusing the issues, wasting time and misleading the jury, under Rule 403."  Exhibit B, First Trial Tr. 5491, Lines 9-11.

\* \* \*

      In sum, Mr. Lewin, a busy trial attorney, should not have to be burdened with being called to trial so the Defendant can attempt to elicit inadmissible, privileged, irrelevant and/or cumulative testimony that would potentially confuse or mislead the jury.  His former client, Mr. Uribe, should

not be burdened with having his current counsel attend a trial in which he is only a witness to observe Mr. Lewin's testimony, and, interject to protect his attorney-client privilege if necessary. And, most importantly, there is no reason to waste this Court's and the jury's precious juror time to hear from Mr. Lewin and entertain the inevitable objections to that testimony.

## CONCLUSION

For all of the foregoing reasons, Mr. Lewin, and his former client, Mr. Uribe, respectfully request that this Court quash the April 5 Subpoena served upon Mr. Lewin seeking his trial testimony.

Dated: April 11, 2025

KASOWITZ BENSON TORRES LLP

By: */s/ Daniel J. Fetterman*
    Marc E. Kasowitz
    Daniel J. Fetterman
    Fria R. Kermani
    1633 Broadway
    New York, NY 10019
    Tel: (212) 506-1700
    Fax: (212) 506-1800
    mkasowitz@kasowitz.com
    dfetterman@kasowitz.com
    fkermani@kasowitz.com

    Ann M. St. Peter-Griffith
    1441 Brickell Avenue, Suite 1420
    Miami, Florida 33131
    Tel: (786) 587-1054
    Fax: (305) 377-1664
    astpetergriffith@kasowitz.com

    *Counsel for Jose Uribe*


By: */s/ Daniel S. Noble*
    Daniel S. Noble
    Benjamin W. Perotin
    KKL LLP
    350 Fifth Avenue, 77th Floor
    New York, New York 10118
    (212) 390-9550

    *Attorneys for Nicholas Lewin*