UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | 23-Cr-490 (SHS) |
| ROBERT MENENDEZ, WAEL HANA, and FRED DAIBES, | OPINION & ORDER |
| Defendants. | |

---

SIDNEY H. STEIN, U.S. District Judge.

In September 2023, a grand jury indicted then-U.S. Senator Robert Menendez ("Menendez"), Nadine Menendez ("Nadine"), Wael Hana, Fred Daibes, and Jose Uribe for their roles in a complex, years-long scheme to bribe Menendez to take official acts to benefit them and foreign governments. After a nine-week trial, a jury found defendants Menendez, Hana, and Daibes guilty on all counts with which they had been charged in the S4 Indictment. (ECF No. 511.) Following the jury's verdict, defendants each filed extensive post-trial motions seeking a judgment of acquittal or in the alternative a new trial. (*See* ECF Nos. 590, 592, 600.) The Court subsequently denied those motions in two Opinions: *United States v. Menendez*, No. 23-cr-490, --- F. Supp. 3d ----, 2024 WL 5103452 (S.D.N.Y. Dec. 13, 2024) and *United States v. Menendez*, No. 23-cr-490, --- F. Supp. 3d ----, 2025 WL 268892 (S.D.N.Y. Jan. 22, 2025). The reader is referred to those Opinions for necessary background information.

On January 29, 2025, the Court sentenced defendants principally to terms of imprisonment: Menendez was sentenced to 132 months' imprisonment, Hana was sentenced to 97 months' imprisonment, and Daibes was sentenced to 84 months' imprisonment. (ECF Nos. 732, 733, 735.) Following entry of the judgments against them, defendants have each appealed their convictions to the U.S. Court of Appeals for the Second Circuit. (ECF Nos. 742, 748, 753.) Now before this Court are defendants' motions for release pending appeal pursuant to 18 U.S.C. § 3143(b). (ECF Nos. 719, 743, 745.) For the following reasons, the Court denies defendants' motions.

I. APPLICABLE LAW

Pursuant to the Bail Reform Act, a court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained," unless the court makes

certain findings by "clear and convincing evidence." 18 U.S.C. § 3143(b)(1). Specifically, the court must find:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
>
> (2) that the appeal is not for purpose of delay;
>
> (3) that the appeal raises a substantial question of law or fact; and
>
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed.

*United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (citation omitted). This framework "establishes a presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). "[T]he burden of persuasion rests on the defendant" to demonstrate that each of these four requirements has been satisfied. *Randell*, 761 F.2d at 125.

The government does not dispute that defendants are not likely to flee or pose a danger to the community if released pending their appeals. Nor does the government contend that defendants' appeals are mere delay tactics. The Court agrees. Thus, the Court focuses its analysis on the third and fourth requirements enunciated in *Randell*.

A "substantial question of law or fact" is a "'close' question or one that very well could be decided the other way." *Id.* (citation omitted). It is a question "of more substance than would be necessary to a finding that it was not frivolous." *Id.* Then, "[i]f a court does find that a question raised on appeal is 'substantial,' it must . . . consider whether that question is 'so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.'" *Id.* (quoting *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985)). The Second Circuit has clarified that this analysis does not require a district court to "predict the probability of reversal." *Id.* at 124 (quoting *Miller*, 753 F.2d at 23). Rather, the court must assess "the significance of the substantial issue to the ultimate disposition of the appeal." *Id.* (quoting *Miller*, 753 F.2d at 23). "Put differently, the appeal must raise a substantial question that, if decided in defendant's favor, will likely result in a reversal or order for a new trial as to all counts for which a defendant has been sentenced to prison." *United States v. Handler*, No. 23-cr-004, 2024 WL 5004536, at *4 (S.D.N.Y. Dec. 6, 2024) (quoting *United States v. Bodouva*, No. 16-cr-214, 2016 WL 7351634, at *2 (S.D.N.Y. Dec. 16, 2016)).

Menendez, Hana, and Daibes have each moved for release pending the resolution of their appeals. The Court addresses each defendant's motion in turn below.

## II. MENENDEZ DOES NOT IDENTIFY A SUBSTANTIAL QUESTION THAT, IF DECIDED IN HIS FAVOR, WOULD LIKELY RESULT IN REVERSAL OR A NEW TRIAL AS TO ALL COUNTS FOR WHICH A TERM OF IMPRISONMENT HAS BEEN IMPOSED.

Menendez contends that his appeal raises substantial questions concerning the meaning of "official act" under *McDonnell v. United States*, 579 U.S. 550 (2016); the constitutionality of 18 U.S.C. § 219 as applied to him; the sufficiency of the government's venue evidence; the Speech or Debate Clause of the U.S. Constitution; and the improperly redacted exhibits inadvertently loaded onto the jury's laptop.

### A. Official Acts Under *McDonnell*

Menendez contends that his appeal raises substantial questions about the definition of an official act under *McDonnell v. United States*, 579 U.S. 550 (2016). Specifically, Menendez points to two events: (i) his call to Ted McKinney, then-Undersecretary at the U.S. Department of Agriculture ("USDA") and (ii) his call and subsequent meeting with then-New Jersey Attorney General Gurbir Grewal. In its December 13, 2024 Opinion, the Court analyzed these events and concluded that a reasonable jury could find that these events were either official acts or evidence of Menendez's promise to perform an official act in exchange for things of value in the charged scheme. *Menendez*, 2024 WL 5103452, at *7-8, *13-14.

First, Menendez suggests that his call to McKinney cannot constitute an official act because the United States' decision as to whether or not to oppose Egypt's grant of a monopoly to IS EG Halal Certifiers Inc. ("IS EG") does not involve a "formal exercise of governmental power," as *McDonnell* requires. *See* 579 U.S. at 574. This Court disagreed. *See Menendez*, 2024 WL 5103452, at *8. The United States' stance on Egypt's grant of a monopoly and specifically whether it would undertake efforts to oppose such a monopoly was a "question, matter, cause, suit, proceeding or controversy," 18 U.S.C. § 201(a)(3), and such a decision was a "focused and concrete" matter that fell squarely within the "specific duties" conferred upon Undersecretary McKinney "by the authority of his office." *McDonnell*, 579 U.S. at 570. (*See* Tr. 1769 (testifying that his duties as Undersecretary included attempting to influence foreign governments).) Indeed, there can be no doubt that McKinney formally used the power of his office when he sent a letter to the Egyptian Deputy Minister of Agriculture expressing the USDA's "deep[] concern" about the monopoly contract and imploring the Egyptian Deputy Minister to "[e]ffective immediately[] please reinstate the seven U.S. halal certifiers." (GX 8B-20.) Contrary to Menendez's assertions, McKinney was not simply

3

"expressing a view on something." (ECF No. 719 at 16.) Rather, the record in this case firmly establishes that McKinney used the power of his office—Undersecretary at the USDA—to express the official position of the USDA, and more broadly, that of the United States on Egypt's grant of a monopoly to IS EG. *Cf. United States v. Silver*, 864 F.3d 102, 122 (2d Cir. 2017) (explaining that "taking a public position on an issue, by itself, [was] not a formal exercise of governmental power" in *Silver* because the "record d[id] not establish that [defendant] formally used his power as Speaker of the Assembly" to express the position).[1]

Moreover, with respect to the Egypt scheme, the government introduced evidence of at least one other official act: Menendez's text message to Nadine instructing her to "[t]ell Will I am going to sign off this sale to Egypt today." (GX A101-14.)[2] Menendez does not contest that this text message constitutes an official act. Therefore, even if the Second Circuit were to adopt Menendez's position on the McKinney call, it would not result in reversal or a new trial on any count.

Second, Menendez urges that "the Second Circuit could very well agree . . . that [the Grewal call and meeting] were *not* official acts." (ECF No. 719 at 14.) Even accepting this statement—which the Court does not—Menendez does not dispute that his interactions with Grewal may properly serve as evidence of an *agreement* to perform an official act. *See Menendez*, 2024 WL 5103452, at *14; *see also McDonnell*, 579 U.S. at 573 ("If an official sets up a meeting, hosts an event, or makes a phone call on a question or matter that is or could be pending before another official, that could serve as evidence of an agreement to take an official act."); *id.* at 572 ("[A] public official is not required to actually make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy'; it is enough that the official agree to do so." (citation omitted)). "It is up

---

[1] Menendez also renews his assertion that his phone call to McKinney raises a substantial question of whether Menendez "exert[ed] pressure" or "advise[d]" McKinney, as required by *McDonnell*. *See* 579 U.S. at 574. While Menendez is entitled to his view of the evidence, the evidence the jury heard concerning this call and its context (set forth in detail in the Court's December 13, 2024 Opinion, *Menendez*, 2024 WL 5103452, at *7-8) amply supports the conclusion that Menendez was seeking to pressure McKinney within the meaning of *McDonnell*. More fundamentally, even if Menendez's call does not meet *McDonnell*'s standard of advice or pressure, the jury was certainly entitled to view this call as evidence Menendez had *agreed* to take an official act, which is sufficient under the law.

[2] In relevant part, the text message reads: "Tell Will I am going to sign off this sale to Egypt today. Egypt: 46,000 120MM Target Practice Rounds and 10,000 Rounds Tank Ammunition: $99 million." (GX A101-14.) Menendez contends the admission of this text message into evidence violates the Speech or the Debate Clause. The Court addresses this contention in Section II.D, *infra*.

4

to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged *quid pro quo*." *Id.* at 572-73.

Thus, Menendez has not identified a substantial question with respect to official acts.

### B. The Constitutionality of 18 U.S.C. § 219 as Applied to Menendez

Menendez contends his conviction under 18 U.S.C. § 219 raises a substantial question because "there are serious reasons to doubt [section] 219's constitutionality" (ECF No. 719 at 18) and section 219 "has never before been invoked to prosecute a Member of Congress." (*Id.* at 20.) He urges that the application of this statute violates separation-of-powers principles. As an initial matter, the mere fact of bringing a constitutional challenge does not automatically warrant a grant of bail pending appeal. *See United States v. Hilliard*, No. 19-cr-358, 2023 WL 3391016, at *2 (E.D.N.Y. May 11, 2023). Menendez submitted thorough briefing on this issue prior to trial and, after considering the parties' arguments, the Court concluded in its March 14, 2024 Opinion that section 219 does not run afoul of separation-of-powers principles, guided by decisions from three Courts of Appeals, including the Second Circuit. *See United States v. Menendez*, 720 F. Supp. 3d 301, 314-19 (S.D.N.Y. 2024) (discussing and relying on *United States v. Rose*, 28 F.3d 181 (D.C. Cir. 1994), *United States v. Menendez*, 831 F.3d 155 (3d Cir. 2016), and *United States v. Myers*, 635 F.2d 932 (2d Cir. 1980)). The Court accordingly does not believe that the constitutionality of section 219 as applied to Menendez raises a substantial question for purposes of section 3143(b).

In any event, only a single count—out of the fifteen counts for which a term of imprisonment was imposed on Menendez—implicates section 219. Thus, while the Court concludes that this issue does not raise a substantial question, it certainly does not raise one that reaches all counts for which Menendez has been sentenced to incarceration.

### C. The Sufficiency of the Government's Venue Evidence

Next, Menendez asserts that his appeal will raise substantial questions as to the sufficiency of the government's evidence regarding venue. Menendez specifically takes issue with four contacts with the Southern District of New York: (i) a dinner between Menendez, Hana, and Nadine in midtown Manhattan; (ii) a car ride provided by Daibes for Menendez and Nadine from JFK airport to their home in Englewood Cliffs, New Jersey; (iii) Nadine's facilitation of a sale in this District of two gold bars from Daibes; and (iv) Nadine's travel through this District to deposit bribe payments.

5

Menendez contends that these acts are insufficient to support a finding of venue in this District for a myriad of reasons, all of which he raised in post-trial briefing. The Court addressed these arguments in detail in its December 13, 2024 Opinion, *Menendez*, 2024 WL 5103452, at *32-40, concluding that the trial evidence was more than sufficient to establish that venue was proper in this District for all counts. The Court will not restate its analysis here, but for the purposes of the current motion, the Court finds that the venue evidence in this case does not raise the substantial questions or "close calls" that Menendez purports them to be, especially considering that the government need only prove venue by a preponderance of the evidence. *See United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2015).

But even assuming *arguendo* that the government's venue evidence raises a substantial appellate question, it does so at most only for the substantive counts—not the conspiracy counts. Indeed, venue is more narrowly construed on the substantive counts than the conspiracy counts. *See Menendez*, 2024 WL 5103452, at *39; *Tzolov*, 642 F.3d at 318-20. For conspiracy charges, "venue is proper in any district in which 'an overt act in furtherance of the conspiracy was committed.'" *Tzolov*, 642 F.3d at 319-20 (quoting *United States v. Royer*, 549 F.3d 886, 896 (2d Cir. 2008)). "An overt act is *any act* performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy." *Id.* at 320 (emphasis added).

For example, the dinner in this District that Nadine, Menendez, and Hana attended and during which Hana sent a text message to General Shawky, the military attaché at the Egyptian embassy in Washington, scheduling a meeting between Menendez and Egyptian officials clearly constitutes an overt act in furtherance of the charged conspiracy. The car ride through this District that Daibes provided to Nadine and Menendez upon their return from Egypt and Qatar is similarly an overt act in furtherance of the conspiracies.[3]

In sum, even if it were a "close call" whether the government has established that venue is proper in this District for the substantive counts—which the Court does not believe it is—it is most certainly not a substantial question whether the government has met its burden with respect to venue for the conspiracy charges.

---

[3] Menendez continues to urge this Court to conduct a "substantial contacts" inquiry as part of its venue analysis. The Second Circuit has explained that this inquiry is "made only if 'the defendant argues that his prosecution in the contested district will result in a hardship to him, prejudice him, or undermine the fairness of his trial.'" *United States v. Rutigliano*, 790 F.3d 389, 399 (2d Cir. 2015) (quoting *United States v. Coplan*, 703 F.3d 46, 80 (2d Cir. 2012)). Menendez has not made any showing that would warrant such an inquiry.

### D. The Speech or Debate Clause

Menendez contends that his appeal raises a host of substantial questions concerning the bounds of the Speech or Debate Clause's protection. Specifically, he raises the following questions: (i) whether the admission of Menendez's text message to Nadine instructing her to "[t]ell Will I am going to sign off" on a foreign military sale to Egypt violates the Speech or Debate Clause; (ii) whether certain meetings with Egyptian officials constitute information gathering protected by the Speech or Debate Clause; and (iii) whether a Senator's pre-nomination recommendations to the President—in this case, Menendez's recommendation of Philip Sellinger for the position of U.S. Attorney for the District of New Jersey to President Biden—are "Advice" under the Advice and Consent Clause.

First, the admission of Menendez's text message instructing Nadine to "[t]ell Will I am going to sign off this sale to Egypt today" (GX A101-14) does not raise a substantial question. The Supreme Court has made clear that the protection afforded by the Speech or Debate Clause "extends only to an act that has already been performed." *United States v. Helstoski*, 442 U.S. 477, 490 (1979). "Promises by a Member [of Congress] to perform an act in the future are not legislative acts" shielded by the Speech or Debate Clause. *Id.* at 489. That this text message constituted such a promise is not a close question; it manifestly is a promise to perform an act in the future. *See Menendez*, 2024 WL 5103452, at *46.

Second, Menendez contends that the admission of certain evidence concerning his meetings with Egyptian officials violates the Speech or Debate Clause. Putting aside the fact that Menendez does not identify any specific evidence in his motion, the jury properly heard evidence of Menendez's dinners and meetings with Egyptian officials in accordance with Supreme Court precedent. Indeed, the Supreme Court has written that "[w]hile the Speech or Debate Clause recognizes speech, voting, and other legislative acts as exempt from liability that might otherwise attach, it does not privilege either Senator or aide to violate an otherwise valid criminal law in preparing for or implementing legislative acts." *Gravel v. United States*, 408 U.S. 606, 626 (1972). Thus, when a Member of Congress "is alleged to have done just that,"—i.e., to have violated a criminal law in the preparation for or implementation of legislative acts—those meetings cannot be regarded as legislative acts. *United States v. Renzi*, 651 F.3d 1012, 1026 (9th Cir. 2011). As this Court set forth in its March 14, 2024 Opinion:

> [T]he Second Circuit has found that even activity that might otherwise sit comfortably within the heartland of the Speech or Debate Clause—speech on the House floor—is denied protection from the Clause when the speech [is] not made "in the course of the legislative process," but rather functions as a "whispered

7

> solicitation[ ] to commit a crime." *United States v. Myers*, 692 F.2d 823, 860 (2d Cir. 1982). Surely meetings with, and the provision of information to, Egyptian officials in relation to a corrupt bribery scheme must be viewed as occurring outside of the legislative process, and indeed as similar to the activity that was denied Speech or Debate Clause protection in *Myers*.

*Menendez*, 720 F. Supp. 3d at 313. With this in mind, the Court cannot conclude that the admission of this evidence raises a close question or "one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (citation omitted).

Finally, Menendez contends that the admission of evidence of his recommendation of Sellinger raises a substantial question. In denying Menendez's motion to dismiss the S2 Indictment, this Court in the March 14, 2024 Opinion explained at length why the Advice and Consent Clause does not reach pre-nomination activities. *See Menendez*, 720 F. Supp. 3d at 309. That analysis will not be repeated here. In any event, the Court need not decide whether this question is substantial because the evidence concerns only the counts involving the Daibes federal prosecution scheme. Thus, even if this question were answered in Menendez's favor on appeal, it would not result in reversal on *all* counts for which imprisonment has been imposed.

### E. Improperly Redacted Exhibits on the Jury Laptop

Months after the jury's verdict, the government notified the Court that, while preparing for the then-upcoming trial of Nadine, it had discovered that improperly redacted versions of a limited number of exhibits had been mistakenly loaded onto the laptop provided by the parties to the jury for use in its deliberations. Following this discovery, defendants each filed supplemental motions for a new trial. (ECF Nos. 641, 644, 645.) Those motions were denied in the Court's Opinion dated January 22, 2025, and the reader is referred to that Opinion. *See Menendez,* 2025 WL 268892.

There, this Court concluded—applying Second Circuit law—that defendants were "as responsible as the prosecutor for seeing to it that only proper exhibits [were] sent to the jury room." *Id.* at *4 (quoting *United States v. Camporeale*, 515 F.2d 184, 188 (2d Cir. 1975)). All three teams of defense counsel had reviewed the jury laptop but had failed to object to the few documents that were not properly redacted. Any objection by the defense to the submission of the jury laptop—specifically, to the improperly redacted exhibits—was thus waived. *See id.* at *4-6. Moreover, Menendez was not prejudiced such that a new trial was required; an examination of the record demonstrates that it is extraordinarily unlikely that the jury was even aware of the miniscule amount of extra-record material on the laptop. *Id.* at *6.

8

Menendez continues to present this as a Speech or Debate Clause issue, claiming that the prosecutors "showed the jury evidence of [Menendez] actually signing off on sizeable aid," which the Speech or Debate Clause forbids. (ECF No. 719 at 11-12.) But again, the record makes clear that the prosecutors did *not* show the jury any such evidence—no party, witness, or attorney ever referred to, or presented to the jury, in any form, the improperly redacted messages. *Menendez*, 2025 WL 268892, at *7. To the contrary, the extra-record material consisted of a few phrases buried in the many thousands of pages of evidence in the more than 3,000 exhibits to which the jury had access for a total of twelve hours. *Id.*[4] Thus, the Court cannot conclude that its decision not to order a new trial based on this record constitutes a substantial question on appeal.

*  *  *

Accordingly, Menendez has not raised a substantial question that, if decided in his favor, "is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed." *Randell*, 761 F.2d at 125. Specifically, Menendez was charged with conspiracy to commit obstruction of justice (Count 17) and obstruction of justice (Count 18). A jury convicted Menendez on these counts and the Court sentenced him to a term of imprisonment of 60 months on the conspiracy count and 120 months on the substantive obstruction count, to run concurrently. (ECF No. 733.) As the government points out, Menendez raises no purported substantial question with respect to these counts. Instead, he simply contends that the only way a jury could conclude that he "tried to cover up a bribe [is] if it first found that he took a bribe in the first place." (ECF No. 719 at 27.) In Menendez's view, the obstruction counts are part of the "three-legged stool" that is the government's case, so that "if any of these legs fall out, the whole enterprise must topple." (*Id.* at 26.) The Court does not share this view.

As a general principle, as all parties acknowledge, one can commit obstruction of justice without committing bribery or any other offense. But more to the point, 18 U.S.C. § 1503 does not require that a defendant intend to hide a crime. Rather, as the Second Circuit has explained, for a defendant to be convicted of obstruction of justice under section 1503, he need only "corruptly intend[] to impede the administration of that judicial proceeding." *Menendez*, 2024 WL 5103452, at *28 (quoting *United States v.*

---

[4] In addition, all defense counsel failed to notice the improper redactions during their own preparation and review of the jury laptop, and for a full four months thereafter. *Menendez*, 2025 WL 268892, at *6. It was the *government* that disclosed the error to defense counsel, who—even after conducting a *document-by-document review*, failed to identify four additional exhibits containing improper redactions, which the government discovered in mid-December. *Id.*

*Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006)). In other words, he must "know[] that his actions [we]re likely to affect the judicial proceeding." *Id.* (quoting *United States v. Aguilar*, 515 U.S. 593, 599 (1995)). Here, the record reveals substantial evidence to support the jury's conclusion that Menendez knew that writing checks to Nadine in order for her to pay back a supposed "loan" were likely to affect the grand jury proceeding. Specifically, the government introduced evidence that in July 2022—merely one month after Menendez and Nadine received their first grand jury subpoenas—Nadine and Uribe met in person to discuss the subpoenas Nadine and Uribe had received and devise a story to tell the FBI if they inquired about the payments Uribe had made for the Mercedes-Benz. *Id.* at *29. Menendez then wrote checks that comported with that plan, namely, that the payments to Nadine were a loan. *Id.* at *29-30. It is not true that these checks were not obstruction "unless they were designed to obscure or conceal bribe payments." (ECF No. 767 at 21 (emphasis removed).) It is enough that they were designed to affect the grand jury proceeding; the evidence and timing amply support the conclusion that Menendez acted with the necessary intent, and this conclusion is not necessarily predicated on a finding that he committed a separate crime. *Cf. United States v. Mangano*, No. 16-cr-540, 2022 WL 2872670, at *5 (E.D.N.Y. July 20, 2022) ("[E]ven assuming *arguendo* that [defendant's] 'advice' argument [under *McDonnell*] raises a substantial question concerning all four bribery counts, . . . [he] still has not raised a substantial question concerning his obstruction of justice conviction.").

Thus, Menendez has not raised a substantial question that reaches all fifteen of the counts for which he was sentenced to a term of imprisonment.[5]

### III. HANA DOES NOT IDENTIFY A SUBSTANTIAL QUESTION.

Hana contends that his appeal will raise substantial questions concerning official acts,[6] the sufficiency of the government's *quid pro quo* evidence, as well as several

---

[5] In his reply, Menendez adds that he plans to challenge the sufficiency of the government's evidence on Counts 17 and 18. Nevertheless, for all the reasons set forth in the Court's December 13, 2024 Opinion, *Menendez*, 2024 WL 5103452, at *28-31, and in light of the Second Circuit's recent decision in *United States v. Mangano*, 128 F.4th 442 (2d Cir. 2025), the Court does not find that this raises a substantial question.

[6] Hana's contentions concerning official acts largely overlap with those advanced by Menendez. For the reasons set forth *supra*, the Court does not find that they pose substantial questions for the purposes of section 3143(b). Separately, Hana challenges Menendez's text message to Nadine "[t]ell Will I am going to sign off this sale to Egypt today." (GX A101-14.) As an initial matter, Hana does not dispute that approving a military sale constitutes an official act. He simply protests that this text cannot constitute a promise of official action. This, too, is not a substantial question.

evidentiary issues. As explained below, the Court concludes that none raises a substantial question.

### A. The Sufficiency of the Government's *Quid Pro Quo* Evidence

Hana asserts that his appeal raises a substantial question as to whether the government proved a *quid pro quo*, or an "understanding that the payments were made in return for official action." *Menendez*, 2024 WL 5103452, at *5 (quoting *United States v. Silver*, 948 F.3d 538, 551 (2d Cir. 2020)). In its December 13, 2024 Opinion, this Court thoroughly analyzed the evidence supporting each *quid pro quo* charged by the government, concluding that the government provided ample evidence to prove that Menendez promised to perform official acts in exchange for things of value. *See, e.g.*, *id.* at *9 ("The jury was . . . presented with ample evidence to conclude that Menendez promised to perform official acts to benefit Egypt and Hana in exchange for things of value, including a $23,568.54 payment towards Nadine's mortgage and three $10,000 checks from IS EG to Nadine for performing essentially no work for IS EG."); *id.* at *14 ("The government presented ample evidence for the jury to conclude that Uribe, with assistance from Hana, paid for a new Mercedes-Benz for Nadine in exchange for Menendez's official acts (or promises to take official acts) to 'stop and kill' the NJAG's prosecution of Parra and investigation into Peguero."). In light of this extensive evidence, which the Court summarized at length in its December 13, 2024 Opinion, *id.* at *7-17, the Court does not find that this raises a substantial question.

### B. Evidentiary Rulings

Hana claims his appeal will raise substantial questions concerning several evidentiary rulings made by this Court. Specifically, he points to the exclusion of the testimony of certain IS EG employees, the admission of the government's summary charts and related witness testimony, and the improperly redacted material on the jury laptop.

At the outset, it bears noting that the Second Circuit reviews a district court's evidentiary rulings "under a deferential abuse of discretion standard[] and . . . will disturb an evidentiary ruling only where the decision to admit or exclude evidence was 'manifestly erroneous.'" *United States v. Litvak*, 889 F.3d 56, 67 (2d Cir. 2018) (quoting *United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015)).

First, Hana challenges this Court's exclusion of certain witnesses employed by IS EG. As part of the defense case, Hana sought to call these employees to testify about IS EG's legitimate business operations after 2019—i.e., *after* the date when Egypt granted IS EG a monopoly contract and decertified or otherwise rejected the seven companies that had previously been certified as halal beef exporters. *Menendez*, 2024 WL 5103452,

at *7. Hana sought to introduce this testimony to show that IS EG "maintained its contract with Egypt on the merits." (ECF No. 744 at 22.)

The Court allowed Hana to introduce testimony through the date Egypt awarded the monopoly contract to IS EG in April 2019 and "a few months after that[] to account for the disruptions in the market due to the award of the monopoly, or lack of disruptions in the market," but precluded testimony beyond that time period. (Tr. 6061.) The Court explained that it was simply not relevant "that [IS EG] is a thriving business currently, if it is." (*Id.*) It is this ruling with which Hana disagrees and now claims raises a substantial question on appeal.

Simply put, IS EG's performance *after* receiving its monopoly contract has no bearing on whether or not IS EG was qualified to receive such a contract *before or at the time the monopoly contract was awarded*. How it performed after receiving the monopoly contract is not relevant to "whether it was worthy in the first place." (ECF No. 765 at 7-8.) This evidence is similarly irrelevant to whether or not Menendez and Hana entered into a corrupt agreement in which Menendez agreed to take official acts in exchange for bribe payments. Ultimately, "the fact that this ruling is a discretionary decision . . . undermines any claim that it is a 'close' question." *United States v. Singh*, No. 21-cr-397, 2022 WL 16855789, at *2 (E.D.N.Y. Nov. 10, 2022) (citation omitted).

Second, Hana contends that the government's use of summary charts and summary witnesses to present voluminous evidence to the jury under Federal Rule of Evidence 1006 raises a substantial question because "the manner in which the Government used summary charts as the centerpiece of the trial of this matter was unprecedented." (ECF No. 744 at 34.) This issue has been extensively briefed, most recently in connection with Hana's August 19, 2024 motion for a new trial. (*See* ECF No. 600 at 7-51; ECF No. 611 at 105-30; ECF No. 622 at 2-13.) In denying that motion, the Court thoroughly analyzed and rejected each of the contentions Hana raises now concerning these summary charts and related testimony, relying on Second Circuit precedent to do so. *See, e.g.*, *Menendez*, 2024 WL 5103452, at *42 (citing Second Circuit case law). Indeed, the Second Circuit has previously approved the use of summary charts that presented a "narrative supporting the prosecution's theory of the case." *Id.* (citing *United States v. Ho*, 984 F.3d 191, 209-10 (2d Cir. 2020)); *see also United States v. Parnas*, No. 19-cr-725, 2022 WL 669869, at *7 (S.D.N.Y. Mar. 7, 2022), *aff'd sub nom. United States v. Kukushkin*, 61 F.4th 327 (2d Cir. 2023). Moreover, the Second Circuit has repeatedly acknowledged that "[t]he scope and extent of cross examination are generally within the sound discretion of the trial court." *Menendez*, 2024 WL 5103452, at *43 (quoting *United States v. Whitten*, 610 F.3d 168, 183 (2d Cir. 2010)); *see also United States v. Koskerides*, 877 F.2d 1129, 1136-37 (2d Cir. 1989). Finally, Hana cites no decision—in this Circuit or elsewhere—that supports his contention that the act of selecting exhibits for inclusion in a summary chart under Rule

12

1006 is testimonial such that the Confrontation Clause is implicated. In sum, the Court cannot conclude that this raises a substantial question for purposes of section 3143(b).

Finally, Hana urges that the submission of the laptop to the jury containing a relatively few number of improperly redacted exhibits raises a substantial question. It does not. Even putting waiver aside, Hana's claim that "the erroneously submitted evidence . . . severely prejudiced him" is meritless. (ECF No. 744 at 36.) As this Court set forth, there is an essentially infinitesimal chance the jury happened upon this evidence, let alone understood or even attributed the significance to these improperly redacted phrases that Hana now does. But assuming the jury did—which this Court has repeatedly stated is highly unlikely—this evidence did not uniquely display Menendez's special treatment towards Egypt, as Hana claims. To the contrary, Menendez's treatment of Egypt was the subject of extensive documentary evidence and witness testimony. *Menendez*, 2025 WL 268892, at *8 (S.D.N.Y. Jan. 22, 2025) (summarizing evidence). (*See also, e.g.*, Tr. 867 (Josh Paul testifying regarding U.S. foreign military financing to Egypt); Tr. 4510-12 (Sarah Arkin testifying regarding Menendez's public stance on Egypt).)

In sum, Hana has not identified a substantial question such that release pending appeal is warranted pursuant to section 3143(b).

## IV. DAIBES DOES NOT IDENTIFY A SUBSTANTIAL QUESTION.

Daibes claims his appeal will raise substantial questions concerning the sufficiency of the government's *quid pro quo* and venue evidence, the improperly redacted exhibits on the jury laptop, and the preclusion of specific acts of prior gift-giving.[7] None do.

First, with respect to the *quid pro quo* evidence, the Court reiterates that the jury's findings were supported by ample evidence in the record such that it does not raise a substantial question.

Second, Daibes contends that the government's venue evidence as to Count 4 raises a substantial question. Count 4 charged Daibes with conspiracy to commit obstruction of justice. (ECF No. 238 at 48-49.) Venue for a conspiracy charge is proper "in any district in which 'an overt act in furtherance of the conspiracy was committed.'" *Tzolov*, 642 F.3d at 319-20 (quoting *United States v. Royer*, 549 F.3d 886, 896 (2d Cir. 2008)). "An overt act is any act performed by any conspirator for the purpose of accomplishing the

---

[7] In a footnote, Daibes adds that he "will likely join in Senator Robert Menendez's appellate arguments regarding the violation of his Speech or Debate protections." (ECF No. 746 at 8 n.1.) The Speech or Debate Clause, however, affords Daibes no protections. *E.g.*, *Gravel*, 408 U.S. at 622 (Speech or Debate Clause privilege is "invocable only by the Senator or by the aide on the Senator's behalf").

objectives of the conspiracy." *Id.* at 320. "The act need not be unlawful; it can be any act, innocent or illegal, as long as it is done in furtherance of the object or purpose of the conspiracy." *Id.*

With that in mind, venue for this count is not a close question. The car ride that Daibes provided to Menendez and Nadine from JFK airport to Englewood Cliffs, New Jersey, passing through the Southern District of New York, qualifies as an act that satisfies venue. Similarly, Nadine's sale of the gold bars from Daibes, effectuated in the Diamond District in Manhattan, is such an act. (*See* GX 1304, row 270, GX D102-8 (Nadine texting Daibes "Vasken just called me. I'm going to meet him at 2 PM.").)

Third, Daibes contends that his appeal will raise a substantial question concerning the improperly redacted exhibits discussed *supra*. But he identifies no source of prejudice, instead positing that no one knows precisely what files were loaded onto this laptop. That is wrong. In the first instance, defendants were provided with the set of government exhibits to be loaded onto the laptop, as well as the laptop itself, before it went to the jury. (Tr. 7165.) And then following the discovery of the improperly redacted exhibits, the government sent defense counsel a full set of the government exhibits that were loaded onto the laptop, which defense counsel reviewed in November. (*See* ECF No. 631 at 2 (defense counsel stating they will conduct a "document by document" review of the exhibits that were loaded onto the laptop to determine whether any other exhibits were improperly provided to the jury).) Thus, Daibes' contention that the "Court did not possess the appropriate information to make informed decisions regarding the gravity of the harm to the defendants" is unfounded. (ECF No. 746 at 16.)

Finally, Daibes turns to the Court's preclusion of evidence of specific instances of his generosity, asserting that this raises a substantial question.[8] At trial, Daibes sought to admit this evidence pursuant to Federal Rule of Evidence 405(b) to support his defense that the cash and gold bars found in the Menendez home from him were gifts, not bribes. Daibes contended that this argument elevated his generosity to an "essential element" of his defense thereby permitting evidence of prior acts pursuant to Rule 405(b). The Court rejected this argument on the ground that "the government is not required to prove that Daibes lacked generosity in order to prove its case." (Tr. 5544.) *See also* Fed. R. Evid. 405 advisory committee's note to 1972 amendment ("[T]he rule

---

[8] Daibes introduced—and this Court admitted—character evidence concerning his trait of generosity in the form of opinion and reputation testimony.

14

confines the use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry.").

As this Court has repeatedly determined, Daibes' generosity is, at most, "relevant to rebut an inference of his corrupt intent but the Second Circuit has cautioned that 'if specific good deeds could be introduced to disprove intent or intention, which are elements in most crimes, the exception to Rule 405(b) would swallow the general rule of 405(a) that proof of specific acts is not allowed.'" (Tr. 5544 (quoting *United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997).) *See also Menendez*, 2024 WL 5103452, at *49-50. In light of the Second Circuit authority on this issue, along with the deferential review afforded to evidentiary decisions on appeal, the Court's preclusion of Daibes' prior acts evidence does not raise a substantial question.

In sum, Daibes has not raised a substantial question.[9]

## V. CONCLUSION

After a nine-week trial involving nearly 40 witnesses and more than 3,000 exhibits and extensive pre- and post-trial motion practice, Menendez has failed to identify a substantial question that, if determined in his favor, "is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed." *Randell*, 761 F.2d at 125. In addition, Hana and Daibes have failed to identify a substantial question of law or fact raised by their appeals.

---

[9] In addition to raising purported substantial questions, Daibes contends two additional factors warrant his release pending appeal: the speed of this case and his community's reliance on his generosity. The statutory framework, however, is clear. "[T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, *unless* the judicial officer" makes the requisite findings. 18 U.S.C. § 3143(b) (emphasis added). The text makes no mention of the speed of the case or the defendant's ties to the community. In line with other courts to consider the issue, this Court "is unwilling to fashion its own standard for determining whether bail is warranted which flies in the face of the clear language of . . . § 3143(b)." *See, e.g.*, *United States v. Blythe*, No. 14-0591, 2016 WL 808339, at *3 (D. Md. Mar. 2, 2016) (citation omitted); *United States v. Scheiner*, 873 F. Supp. 927, 933 n.5 (E.D. Pa. 1995).

15

Accordingly, defendants have failed to meet their burden and their motions for release pending appeal pursuant to 18 U.S.C. § 3143(b) are denied.

Dated: New York, New York
April 25, 2025

SO ORDERED:

*[signature]*

Sidney H. Stein, U.S.D.J.